**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| IN RE: CARNIVAL CORP. SECURITIES LITIGATION | **Case No. 1:20-cv-22202-KMM** |
| ABRAHAM ATACHBARIAN, Individually and On Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>          vs.<br><br>CARNIVAL CORPORATION, CARNIVAL PLC, ARNOLD W. DONALD, DAVID BERNSTEIN, and MICKY ARISON,<br><br>                    Defendants. | **Case No. 1:20-cv-23011-RNS** |

**MEMORANDUM OF LAW IN SUPPORT OF MOVANT JOSEPH FUSCALDO'S MOTION TO: (1) CONSOLIDATE THE RELATED ACTIONS; (2) APPOINT LEAD PLAINTIFF; AND (3) APPROVE SELECTION OF COUNSEL**

1

Plaintiff Joseph Fuscaldo ("Movant") respectfully submits this memorandum of law in support of his motion for an Order, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"):

(1)     consolidating the related Securities Class Actions (defined below);

(2)     appointing Movant as Lead Plaintiff for the class of all purchasers or who otherwise acquired the securities of Carnival Corporation and/or Carnival PLC (collectively, "Carnival" or the "Company") between September 26, 2019 and April 30, 2020, inclusive (the "Class Period")[1];

(3)     approving Movant's selection of The Rosen Law Firm, P.A. ("Rosen Law") as Lead Counsel for the Plaintiff and the Class.

## INTRODUCTION AND BACKGROUND

The first-filed action *Service Lamp* Action was commenced on May 27, 2020, against Carnival Corporation, Arnold W. Donald, and David Bernstein for violations under the Exchange Act. That same day, an early notice was issued pursuant to the PSLRA advising class members of, inter alia, the allegations and claims in the complaint, the Class Period, and advising class members

---

[1] The action *Service Lamp Corp. Profit Sharing Plan v. Carnival Corp. et al.,* 1:20-cv-22202-KMM ("*Service Lamp* Action") has a class period of between January 28, 2020 and May 1, 2020. The action *Elmensdorp v. Carnival Corp., et al*., 1:20-cv-22319-KMM ("*Elmensdorp* Action") has a class period of between September 26, 2019 and April 30, 2020. The action *Atachbarian v. Carnival Corp., et al.,* 1:20-cv-23011-RNS ("*Atachbarian* Action" and with the *Service Lamp* Action and the *Elmensdorp* Action, the "Securities Class Actions") has a class period of between January 27, 2020 and May 1, 2020. A more inclusive class period is favored at the lead plaintiff stage. *Deering v. Galena Biopharma, Inc.*, No. 3:14-CV-00367-SI, 2014 WL 4954398, at *10 (D. Or. Oct. 3, 2014) (recognizing that courts commonly select "most inclusive class period" at lead plaintiff stage); *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113- 114 (E.D.N.Y. 2012) (court favoring a broader class which "encompasses more potential class members" early in the litigation at the lead plaintiff stage). As such, movant requests this court adopt the class period between September 26, 2019 and April 30, 2020.

of their option to seek appointment as Lead Plaintiff. *See* Declaration of Laurence Rosen ("Rosen Decl."), Ex. 1, filed herewith.

On June 3, 2020, the related *Elmensdorp* Action was commenced alleging substantially the same violations under the Exchange Act against additional defendants Carnival PLC and Micky Arison and expanded class period. On July 6, 2020, this Court consolidated the *Elmensdorp* Action with the *Service Lamp* Action under the caption *In re: Carnival Corp. Securities Litigation*, Case No. 1:20-cv-22202-KMM, and ordered the Clerk to administratively close the *Elmensdorp* Action. (Dkt. 10).

On July 21, 2020, the related *Atachbarian* Action was commenced alleging substantially the violations under the Exchange Act against the same defendants as the *Elmensdorp* Action and for an overlapping class period of *Service Lamp* Action and *Elmensdorp* Action.

Carnival bills itself as the world's largest leisure travel company and the largest cruise company, carrying nearly 45 percent of global cruise guests. The Company has operations in North America, Australia, Europe and Asia, operating a portfolio of global, regional and national cruise brands that sell tailored cruise products, services and vacation experiences on 104 cruise ships to destinations around the world.

The complaints allege that throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about Carnival's business, operations, and prospects. Specifically, Defendants failed to disclose to investors that: (1) the Company's medics were reporting increasing events of COVID-19 illness on the Company's ships; (2) Carnival was violating port of call regulations by concealing the amount and severity of COVID-19 infections on board its ships; (3) in responding to the outbreak of COVID-19, Carnival failed to follow the Company's own health and safety protocols developed in the

3

wake of other communicable disease outbreaks; (4) by continuing to operate, Carnival ships were responsible for continuing to spread COVID-19 at various ports throughout the world; and (5) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

At the beginning of the Class Period on September 26, 2019, and consistent with its historical failure to disclose life-threatening issues related to its unwillingness and inability to address infectious disease concerns on its ships, Carnival filed a Form 10-Q and a Form 8-K with the SEC that purported to describe all of the "risks" facing the Company, yet both Forms contained a verbatim list of risks that wholly omitted any reference to the susceptibility of its ships to the transmission of infectious diseases among passengers and crew and to the Company's manifest inability to address the spread of infectious diseases on its ships.

On January 27, 2020, as reported by Jonathan Levin, reporter for Bloomberg, Carnival stated: "*Although the risks to our guests, crew and business around the world is very low*, we are closely monitoring the situation" (Emphasis added).

In Carnival's 2018 10-K, filed with the SEC on January 28, 2019, the Company made numerous representations that the Company remained committed to the health, safety, and comfort of its guests and crew.

Throughout the class period, the Company's cruise ships were constantly under scrutiny for their failure to protect their passengers. On April 16, 2020, Bloomberg Businessweek detailed the Company's many failures in handling COVID-19 outbreaks. Among other things, this article also exposed Defendants' efforts to downplay the seriousness of the virus and the effects of outbreaks on Carnival ships.

4

On May 1, 2020, as a result of the many outbreaks on Carnival ships, as well as reporting that exposed the effects of Carnival's actions and inactions, the United States House of Representatives opened an investigation into Carnival's handling of COVID-19, initiated by a letter addressed to Carnival's chief executive officer requesting records regarding the Company's COVID-19 response (the "Congressional Letter"). The Congressional Letter, which cited prior outbreaks, stated that the request for records was based on concerns that Carnival was "ignoring the public health threat posed by coronavirus to potential future passengers and crew," and that "officials at Carnival were aware of the threats to some of its ships and did not take appropriate actions, which may have led to greater infections and the spread of the disease."

On this news, the price of Carnival's common stock declined $1.97 per share, or 12.4%, from a close of $15.90 per share on April 30, 2020, to close at $13.93 per share on May 1, 2020. Similarly, the price of Carnival's ADSs declined $1.49 per ADS, or 10.7%, from a close of $13.92 per ADS on April 30, 2020, to close at $12.43 per ADS on May 1, 2020.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**ARGUMENT**

I.      **THE RELATED ACTIONS SHOULD BE CONSOLIDATED**

Consolidation of related cases is proper where, as here, the actions involve common questions of law and fact such that consolidation would prevent unnecessary cost or delay in adjudication. When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters at issue in the actions; it may

5

order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay. Fed. R. Civ. P. 42(a).

The PSLRA contemplates consolidation where "more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed." 15 U.S.C. §78u-4(a)(3)(A)(ii). As such, the PSLRA does not displace the traditional legal standards for consolidation under Fed. R. Civ. P. 42(a).

Each of the above-captioned related actions has been filed in this District alleging similar factual and legal grounds to support allegations of violations of the Exchange Act by substantially similar Defendants arising from the public dissemination of false and misleading information to investors. Accordingly, the above-captioned cases should be consolidated pursuant to Fed. R. Civ. P. 42(a) for all purposes.

## II.     MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF

The PSLRA sets forth procedures for the selection of Lead Plaintiff in class actions brought under the Act.  The PSLRA provides a "rebuttable presumption" that the most "adequate plaintiff" to serve as Lead Plaintiff is the "person or group…" that:

(aa) has either filed the complaint or made a motion in response to a notice . . .;

(bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii); *see also Sherleigh Associates, LLC v. Windmere-Durable Holdings, Inc.*, 184 F.R.D. 688, 693 (S.D. Fla. 1999).

As set forth below, Movant satisfies all three of these criteria and thus is entitled to the presumption that he is the most adequate plaintiff of the class and, therefore, should be appointed Lead Plaintiff.

### A.   MOVANT IS WILLING TO SERVE AS CLASS REPRESENTATIVE

Movant has filed herewith a PSLRA certification attesting that Movant is willing to serve as representative of the class and remains willing to provide testimony at deposition and trial, if necessary. *See* Rosen Decl., Ex. 2. Accordingly, Movant satisfies the first requirement to serve as Lead Plaintiff for the Class.

### B.   MOVANT HAS THE LARGEST FINANCIAL INTEREST IN THE ACTION

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person … that . . . has the largest financial interest in the relief sought by the class" 15 U.S.C. § 78u-4(a)(3)(B)(iii); *Edward J. Goodman Life Income Tr. v. Jabil Circuit, Inc.*, 2007 WL 170556, at *3 (M.D. Fla. Jan. 18, 2007). In determining the movant with the largest financial interest, Courts have employed the *Olsten/Lax* analysis: (1) the number of shares purchased during the class period; (2) the net number of shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate loss suffered during the class period. *In re Comverse Technology, Inc. Secs. Litig.*, 2007 WL 680779 * 3 (E.D.N.Y. Mar. 2, 2007) (*citing Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036 * 5 (N.D. Ill. Aug. 11, 1997); *In re Olsten Corp. Secs. Litig.*, 3 F. Supp.2d 286, 296 (E.D.N.Y. 1998).

Of the *Lax/Olsten*-styled factors in determining the largest financial interest, the financial loss is the most significant factor. *See In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 437 (S.D.N.Y. 2008). Indeed, "the best yardstick by which to judge 'largest financial interest' is the amount of loss, period." *In re Bally Total Fitness, Sec. Litig.*, 2005 WL 627960 * 4 (N.D. Ill. Mar. 15, 2005).

7

Movant lost approximately $134,550.00 in connection with his purchases of Carnival securities. *See* Rosen Decl. Ex., 3. Accordingly, Movant satisfies the largest financial interest requirement to be appointed as Lead Plaintiff for the class.

### C. MOVANT SATISFIES THE REQUIREMENTS OF RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satis[fy] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that the Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification -- a *prima facie* showing that the movants satisfy the requirements of Rule 23 is sufficient. *Fuwei Films*, 247 F.R.D. at 439 (only a *prima facie* showing is required) (citations omitted) Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998).

### 1. Movant's Claims are Typical

The Rule 23(a) typicality requirement is satisfied when a plaintiff's claims arise from the same event, practice or course of conduct that gives rise to other class members' claims and plaintiff's claims are based on the same legal theory. *See In re Livent, Inc. Noteholders Sec. Litig.*,

210 F.R.D. 512, 516 (S.D.N.Y. 2002). Rule 23 does not require the lead plaintiff to be identically situated with all class members. *Id*.

Here, Movant's claims are typical of the claims asserted by the Class. Movant, like all members of the Class, alleges that Defendants violated the Exchange Act by issuing false and misleading statements about Carnival's business and its health and safety regulations and protocols. Movant's interests are closely aligned with the other Class members' and Movant's interests are, therefore, typical of the other members of the Class.

### 2.      Movant Is Adequate

The adequacy of representation of Rule 23 is satisfied where it is established that a representative party has the ability to represent the claims of the class vigorously, has obtained adequate counsel, and there is no conflict between a potential representative's claim and those asserted on behalf of the class. *In re Cendant Corp. Litigation*, 264 F.3d. 201, 265 (3d Cir. 2001).

Here, Movant has communicated with competent, experienced counsel concerning this case, and made this motion to be appointed as Lead Plaintiff. Movant is not aware that any conflict exists between Movant's claims and those asserted on behalf of the Class. Movant also sustained substantial financial losses from investments in Carnival securities and is, therefore, extremely motivated to pursue claims in this action.

### D.      Movant Is Presumptively the Most Adequate Plaintiff

The presumption in favor of appointing Movant as Lead Plaintiff may be rebutted only upon proof "by a purported member of the Plaintiffs' class" that the presumptively most adequate plaintiff:

(aa) will not fairly and adequately protect the interests of the class; or

(bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

The presumption that Movant is the most adequate Lead Plaintiff is not, therefore subject to rebuttal. Movant has suffered substantial financial losses and has the largest financial interest in this case of any timely lead plaintiff. The ability of Movant to represent the Class fairly and adequately is discussed above. Movant is not aware of any unique defenses Defendants could raise against him that would render Movant inadequate to represent the Class.

Thus, the close alignment of interests between Movant and other class members, as well as his strong desire to prosecute this action on behalf of the class, provides ample reason to grant Movant's motion to serve as Lead Plaintiff.

## III.     MOVANT'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with Lead Plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *Plumbers & Pipefitters Local 51 Pension Fund v. Darden Restaurants, Inc.,* No. 608-CV-388-ORL-19DAB, 2008 WL 2608111, at *2 (M.D. Fla. July 1, 2008) (when a law firm has prosecuted securities class actions in the past successfully, courts will generally not interfere with a lead plaintiff movant's choice of counsel.).

Movant has selected Rosen Law as Lead Counsel. Rosen Law has been actively researching the class plaintiffs' claims, reviewing financial and legal documents, and gathering other information in support of the claims against the Defendants. Furthermore, Rosen Law is experienced in the area of securities litigation and class actions and has successfully prosecuted

securities litigation and securities fraud class actions on behalf of investors in this Court and courts across the country. *See* Rosen Decl., Ex. 4.

As a result of the firm's experience in litigation involving issues similar to those raised in this action, Movant's counsel has the skill and knowledge to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving Movant's selection of Lead Counsel, the members of the class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Movant respectfully requests that the Court issue an Order: (1) consolidating the related Securities Class Actions; (2) appointing Movant as Lead Plaintiff for the Class; (3) approving Movant's selection of Rosen Law as Lead Counsel; and (4) granting such other relief as the Court may deem to be just and proper.

Dated: July 27, 2020                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

*/s/Laurence Rosen*
Laurence Rosen, Fla. Bar No. 0182877
275 Madison Avenue, 40th Floor
New York, New York10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for
Plaintiff and the Class*

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 27, 2020, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ *Laurence Rosen*