UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| SERVICE LAMP CORPORATION PROFIT SHARING PLAN, individually, and on behalf of all other persons and entities similarly situated, | Case No.  1:20-cv-22202-KMM |
| Plaintiff, | **MEMORANDUM OF LAW IN SUPPORT OF MOTION OF STEPHEN HARRIS FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL** |
| v. | |
| CARNIVAL CORPORATION, ARNOLD W. DONALD, AND DAVID BERNSTEIN, | |
| Defendants. | |
| ABRAHAM ATACHBARIAN, individually and on behalf of all others similarly situated, | Case No.  1:20-cv-23011-RNS |
| Plaintiff, | |
| v. | |
| CARNIVAL CORPORATION, CARNIVAL PLC, ARNOLD W. DONALD, DAVID BERNSTEIN, and MICKY ARISON, | |
| Defendants. | |

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 2

STATEMENT OF FACTS ....................................................................................................... 3

ARGUMENT ............................................................................................................................ 5

    I.      THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES ............................................................................................................... 5

    II.     MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF .............................. 7

         A.     Movant Is Willing to Serve as Class Representative ................................. 8

         B.     Movant Has the "Largest Financial Interest" in the Related Actions ......... 8

         C.     Movant Otherwise Satisfies the Requirements of Rule 23 ........................ 9

    III.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED ................................................................................................................ 11

CONCLUSION ...................................................................................................................... 14

## TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Brustein v. Lampert*, 04-61159-CIV-LENARD/KLEIN,
2005 U.S. Dist. LEXIS 51106 (S.D. Fla. June 15, 2005) ...........................................................9

*In re Molson Coors Brewing Co. Sec. Litig.*,
233 F.R.D. 147 (D. Del. 2005) ...............................................................................................11

*In re Oxford Health Plans, Inc. Sec. Litig.*,
182 F.R.D. 42 (S.D.N.Y. 1998) ..............................................................................................10

*In re Sunbeam Sec. Litig.*, No. 98-8258-CIV-MIDDLEBROOKS,
1998 U.S. Dist. LEXIS 21490 (S.D. Fla. Dec. 4, 1998) ........................................................6, 7

*In re WorldCom, Inc. Sec. Litig.*, No. 02 CIV 3288 (DLC),
2004 WL 2591402 (S.D.N.Y. Nov. 12, 2004)..........................................................................13

*Lax v. First Merchants Acceptance Corp.* No. 97 C 2715,
1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997).........................................................8, 9

*Miller v. Dyadic Int'l, Inc.*, No. 07-80948-CIV,
2008 U.S. Dist. LEXIS 32271 (S.D. Fla. Apr. 18, 2008) .....................................................1, 11

*Mulvaney v. GEO Group, Inc.*, 16-cv-81494-MIDDLEBROOKS,
2016 U.S. Dist. LEXIS 193402 (S.D. Fla. Nov. 18, 2016)......................................................11

*Newman v. Eagle Bldg. Techs.*,
209 F.R.D. 499 (S.D. Fla. 2002).................................................................................................7

*Nghiem Tran v. Erba Diagnostics, Inc.*, 15-cv-24440-COOKE/TORRES,
2016 U.S. Dist. LEXIS 186864 (S.D. Fla. Apr. 8, 2016) ........................................................10

*Piven v. Sykes Enters.*,
137 F. Supp. 2d 1295 (M.D. Fla. 2000).....................................................................................10

*Plymouth County Ret. Sys. v. Carter's, Inc.*, 08-CV-2940-JOF,
2009 U.S. Dist. LEXIS 20582 (N.D. Ga. Mar. 13, 2009).........................................................9

*Prado-Steinman ex rel. Prado v. Bush*,
22 F.3d 1266 (11th Cir. 2000) ..................................................................................................10

*Thorpe v. Walter Inv. Mgmt., Corp.*, 1:14-cv-20880-UU,
2016 U.S. Dist. LEXIS 33637 (S.D. Fla. Mar. 16, 2016)........................................................10

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
216 F.R.D. 248 (S.D.N.Y. 2003) ........................................................................................11

## Statutes

15 U.S.C. §78u-4 ................................................................................................... *passim*

## Rules

Fed. R. Civ. P. 23................................................................................................... *passim*

Fed. R. Civ. P. 42...............................................................................................................1, 2, 6

Stephen Harris ("Movant") respectfully submits this Memorandum of Law in support of his motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(3) (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and Rule 42 of the Federal Rules of Civil Procedure, for an Order: (1) consolidating the above-captioned related actions (the "Related Actions"); (2) appointing Movant as Lead Plaintiff on behalf of a class consisting of all persons and entities who purchased or otherwise acquired Carnival Corporation and/or Carnival plc (together, "Carnival" or the "Company") securities, including, without limitation, Carnival's common stock (NYSE: CCL), Carnival's American Depository Shares (NYSE: CUK), and/or all persons and entities who sold put option contracts or purchased call options for the shares of Carnival common stock, between September 26, 2019, and May 1, 2020, inclusive (the "Class Period")[1] (the "Class"); and (3)

---

[1] On May 27, 2020, the first-filed complaint of the Related Actions was filed under the style *Service Lamp Corporation Profit Sharing Plan v. Carnival Corporation et al*, No. 1:20-cv-22202 (S.D. Fla.) (the "*Service Lamp* Action"), alleging a class period of January 28, 2020, to May 1, 2020, inclusive. *See Service Lamp* Action, Docket ("Dkt.") No. 1. On June 3, 2020, a related action's complaint was filed under the style *Elmensdorp v. Carnival Corporation et al*, No. 1:20-cv-22319 (S.D. Fla.) (the "*Elmensdorp* Action"), alleging a class period of September 26, 2019, to April 30, 2020, inclusive. *See Elmensdorp* Action, Dkt. No. 1. On July 21, 2020, another related action's complaint was filed under the style *Atachbarian v. Carnival Corporation et al*, No. 1:20-cv-23011 (S.D. Fla.) (the "*Atachbarian* Action"), alleging a class period of January 27, 2020, through May 1, 2020. Rather than relying on the class period alleged in the first-filed of related actions, courts in this Judicial District have found "that the better rule, as many other courts have held, is the rule that chooses the most inclusive class period at this early stage in the litigation" and "that the longest and most inclusive class period . . . is the appropriate class period for purposes of appointing a lead plaintiff" in actions under the PSLRA "because it encompasses more potential class members." *See Miller v. Dyadic Int'l, Inc.*, No. 07-80948-CIV, 2008 U.S. Dist. LEXIS 32271, at *11-*12 (S.D. Fla. Apr. 18, 2008) (internal quotation marks omitted). Accordingly, the Class Period, as defined herein, is comprised of the earliest start date and latest end date of the class periods alleged in the *Service Lamp* Action, the *Elmensdorp* Action, and the *Atachbarian* Action, to avoid excluding any potential class members at this stage of the litigation, and so that all potential class members of the Related Actions are included in the proposed Class, who might otherwise be excluded from the Class. *See id.* at *10-*12 (selecting the largest, most inclusive class period for purposes of determining the lead plaintiff in an action under the PSLRA).

approving proposed Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") and Barrack, Rodos & Bacine ("Barrack Rodos") as Co-Lead Counsel, and Shepherd, Finkelman, Miller & Shah, LLP ("SFMS") as Liaison Counsel, for the Class.

## PRELIMINARY STATEMENT

The complaints in the Related Actions allege that the above-captioned defendants ("Defendants") defrauded investors in violation of the Exchange Act. Carnival investors, including Movant, incurred significant losses following the disclosure of the alleged fraud, which caused Carnival's share price to fall sharply, damaging Movant and other Carnival investors.

Pursuant to the PSLRA, the court is to appoint as Lead Plaintiff the movant or group of movants who possesses the largest financial interest in the outcome of the action and who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Movant, with losses of approximately $389,561, believes that he has the largest financial interest in the relief sought in the Related Actions.

Beyond his considerable financial interest, Movant also meets the applicable requirements of Rule 23 because his claims are typical of absent class members and because he will fairly and adequately represent the interests of the Class.

To fulfill his obligations as Lead Plaintiff and vigorously prosecute the Related Actions on behalf of the Class, Movant has selected Pomerantz and Barrack Rodos as Co-Lead Counsel, and SFMS as Liaison Counsel, for the Class. These firms are highly experienced in the area of securities litigation and class actions, and have successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firms' respective resumes.

Consolidation is appropriate under Federal Rule of Civil Procedure 42(a) where actions involve common questions of law or fact. Here, the Related Actions are both putative class actions

2

alleging violations of the federal securities laws by an overlapping group of defendants arising from the same alleged fraudulent misconduct.  As such, the Related Actions involve common questions of both law *and* fact, and consolidation is plainly warranted.

Accordingly, Movant respectfully requests that the Court enter an order consolidating the Related Actions, appointing Movant as Lead Plaintiff for the Class, and approving his selection of Pomerantz and Barrack Rodos as Co-Lead Counsel, and SFMS as Liaison Counsel, for the Class.

## STATEMENT OF FACTS

As alleged in the Complaint filed in the *Service Lamp* Action, Carnival bills itself as the world's largest leisure travel company and the largest cruise company, carrying nearly 45 percent of global cruise guests.  The Company has operations in North America, Australia, Europe and Asia, operating a portfolio of global, regional and national cruise brands that sell tailored cruise products, services and vacation experiences on 104 cruise ships to destinations around the world.

The Related Actions allege that Carnival and several officers of the Company made a series of false and misleading statements and concealed material information relating to the Company's adherence to its health and safety protocols in the wake of the COVID-19 pandemic, Carnival's role in facilitating the transmission of the virus, and the Company's violations of port-of-call regulations.  As a result of these false and misleading statements and omissions made throughout the Class Period, Carnival securities traded at inflated prices.

On January 28, 2020, Carnival filed with the United States Securities and Exchange Commission its annual report on Form 10-K for the fiscal year ending November 30, 2019 ("2019 10-K").  That same day, the Company announced in a press release the resignation of Debra Kelly-Ennis, who resigned from her position as a director of the Company, including her role as a member of their Health, Environmental, Safety and Security committees, effective January 27,

3

2020, which resignation enabled Kelly-Ennis to step out from under her obligation as a director to sign the 2019 10-K.

The following week, by February 5, 2020, 3,700 passengers and crew were quarantined about the Diamond Princess, a Gem-class ship operated by Princess Cruises, a cruise line owned by Carnival. Then on February 20, 2020, the Grand Princess, the first of the Grand-class cruise ships, docked in San Francisco and at least one known COVID infected person disembarked. That COVID-infected individual had reportedly been seen by the ship doctor, exhibiting symptoms for at least six days while on board the Grand Princess. By March 4, 2020, there was a COVID-related fatality onboard the Grand Princess, and seven Company ships accounted for 49 of the 70 cruise ship fatalities.

On April 16, 2020, when the Company still had at sea two of its cruise ships, *Bloomberg Businessweek* published an article titled "Carnival Executives Knew They Had a Virus Problem, But Kept the Party Going," which revealed that Carnival may have failed to adequately protect passengers from COVID-19 on a series of cruise voyages and indeed continued to operate new cruise departures despite knowledge of the proliferation of COVID-19. On this news, the Company's share price fell $0.53 per share from a prior close of $12.38 per share to close at $11.85 per share on April 16, 2020.

Then, on May 1, 2020, *The Wall Street Journal* published an article titled "Cruise Ships Set Sail Knowing the Deadly Risk to Passengers and Crew," which detailed how cruise ships, including Carnival ships, facilitated the spread of COVID-19 and provided new facts about early warning signs Carnival and its cruise lines possessed and the Company's related COVID-19 disclosure failures. The article also noted that testimony from an investigation in Australia revealed that Carnival and its cruise lines may have misled shore officials by concealing those

4

exhibiting COVID-19 symptoms before docking.  On the same day, it was revealed that the Chair of the House Committee on Transportation and Infrastructure and Chair of the House Subcommittee on Coast Guard and Maritime Transportation had initiated a records request regarding the response of Carnival to COVID-19 or other infectious disease outbreaks aboard cruise ships.  On this news, the Company's share price fell $1.97 per share from a prior close of $15.90 per share to close at $13.93 per share on May 1, 2020, further damaging Carnival investors.

Throughout the Class Period, Defendants made materially false and/or misleading statements, and/or failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors that: (1) the Company's medics were reporting increasing events of COVID-19 illness on the Company's ships; (2) Carnival was violating port of call regulations by concealing the amount and severity of COVID-19 infections on board its ships; (3) in responding to the outbreak of COVID-19, Carnival failed to follow the Company's own health and safety protocols developed in the wake of other communicable disease outbreaks; (4) by continuing to operate, Carnival ships were responsible for continuing to spread COVID-19 at various ports throughout the world; and (5) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

## ARGUMENT

## I.   THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

Consolidation of related cases is appropriate where, as here, the actions involve common questions of law and fact, and therefore consolidation would avoid unnecessary cost, delay, and overlap in adjudication: "If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the

actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a); *see also Manual for Complex Litigation (Third)* § 20.123 (1995). Consolidation is appropriate when the actions before the court involve common questions of law *or* fact. *See* Fed. R. Civ. P. 42(a); *In re Sunbeam Sec. Litig.*, No. 98-8258-CIV-MIDDLEBROOKS, 1998 U.S. Dist. LEXIS 21490, at *8 (S.D. Fla. Dec. 4, 1998) (consolidating actions "alleg[ing] substantially similar claims that share common questions of fact and law").

The Related Actions at issue here clearly involve common questions of law *and* fact. The Related Actions both, *inter alia*: (i) are putative federal securities law class action lawsuits brought under the PSLRA on behalf of those who transacted in Carnival securities during substantially the same time period; (ii) allege two counts, namely, violations of Section 10(b) and 20(a) of the Exchange Act, against an overlapping and (following consolidation of the *Elmensdorp* Action with the *Service Lamp* Action) identical group of defendants for substantively the same misconduct, specifically, issuing false and misleading statements and omissions to the public and public officials regarding Carnival's handling of the COVID-19 pandemic in connection with the Company's cruise line business; and (iii) allege that these misstatements artificially inflated the price of Carnival securities during an overlapping period of time, the truth of which was revealed on May 1, 2020, following which Carnival's share price fell from $15.90 per share to $13.93 per share, causing the Related Actions' plaintiffs and the Class to suffer substantial losses in connection with their class period transactions in Carnival securities. *See Service Lamp* Action, Dkt. No. 1; *Elmensdorp* Action, Dkt. No. 1; *Atachbarian* Action, Dkt. No. 1. Accordingly, the Related Actions here clearly allege substantially the same wrongdoing, namely, that the Defendants issued materially false and misleading statements and omissions related to Carnival's handling of COVID-19 that artificially inflated the price of Carnival's securities and subsequently

6

damaged Class members when Carnival's share price plunged as the truth emerged.  For substantively the same reasons, this Court already consolidated the *Elmensdorp* Action with the *Service Lamp* Action.  *See Service Lamp* Action, Dkt. No. 10.  Consolidation of the Related Actions is therefore appropriate.  *See Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 502 (S.D. Fla. 2002) ("The class actions currently before the Court are ideally situated for consolidation. The complaints present virtually identical claims for relief based upon a single course of conduct during the Class Period."); *In re Sunbeam*, 1998 U.S. Dist. LEXIS 21490, at *7-*8 ("Consolidation of related complex actions, and securities cases in particular, is commonplace and an effective use of judicial resources.").

## II.      MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF

Movant should be appointed Lead Plaintiff because, to his knowledge, Movant has the largest financial interest in the Related Actions and otherwise satisfies the requirements of Rule 23.  The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action and to do so by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) & (ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice.  Specifically, the Court "shall" appoint "the presumptively most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

> (cc) otherwise satisfies the requirements of Rule 23 of the Federal
> Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Movant satisfies all three of these criteria and thus is entitled to the presumption that he is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

### A.       Movant Is Willing to Serve as Class Representative

On May 27, 2020, Pomerantz, counsel for plaintiff in the first-filed of the Related Actions, published a notice over *Globe Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, which announced that a securities class action had been filed against Defendants, and which advised investors in Carnival securities that they had until July 27, 2020—*i.e.*, 60 days—to file a motion to be appointed as Lead Plaintiff (the "Notice"). *See* Declaration of Jayne A. Goldstein in Support of Motion ("Goldstein Decl."), Exhibit ("Ex.") A. Movant has filed the instant motion pursuant to the Notice, and has attached a Certification attesting that he is willing to serve as a representative for the Class and to provide testimony at deposition and trial, if necessary. *See id.*, Ex. B. Accordingly, Movant satisfies the first requirement to serve as Lead Plaintiff of the Class.

### B.       Movant Has the "Largest Financial Interest" in the Related Actions

The PSLRA requires a court to adopt a presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). To the best of his knowledge, Movant has the largest financial interest of any putative Class member seeking to serve as Lead Plaintiff. For the purposes of lead plaintiff appointment pursuant to the PSLRA, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares

8

purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered.  No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866, at *7-*8 (N.D. Ill. Aug. 6, 1997); *see also Plymouth County Ret. Sys. v. Carter's, Inc.*, 08-CV-2940-JOF, 2009 U.S. Dist. LEXIS 20582, at *5 (N.D. Ga. Mar. 13, 2009) (assessing financial interest with reference to *Lax* factors).

During the Class Period, Movant: (1) purchased 30,500 shares of Carnival securities; (2) expended $1,098,035 on purchases of Carnival shares; (3) retained 20,000 of his shares of Carnival securities; and (4) incurred losses of $389,561 in connection with his transactions in Carnival securities.  *See* Goldstein Decl., Ex. C.  To the extent that Movant possesses the largest financial interest in the outcome of this litigation, he is the presumptive "most adequate" plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### C.     Movant Otherwise Satisfies the Requirements of Rule 23

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule 23(a) provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that a lead plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification. Instead, a *prima facie* showing that the movant satisfies the requirements of Rule 23 is sufficient. *Brustein v. Lampert*, 04-61159-CIV-LENARD/KLEIN, 2005 U.S. Dist. LEXIS 51106, at *14

9

(S.D. Fla. June 15, 2005); *Nghiem Tran v. Erba Diagnostics, Inc.*, 15-cv-24440-COOKE/TORRES, 2016 U.S. Dist. LEXIS 186864, at *3 (S.D. Fla. Apr. 8, 2016). Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998); *see also Thorpe v. Walter Inv. Mgmt., Corp.*, 1:14-cv-20880-UU, 2016 U.S. Dist. LEXIS 33637, at *18 (S.D. Fla. Mar. 16, 2016). Here, the complaints in the Related Actions sufficiently plead Rule 23(a)(1) numerosity and Rule 23(a)(2) common questions in a manner common to all lead plaintiff candidates.

The typicality requirement of Federal Rule of Civil Procedure 23(a)(3) is satisfied where the named representative's claims have the "same essential characteristics as the claims of the class at large." *Prado-Steinman ex rel. Prado v. Bush*, 22 F.3d 1266, 1279 (11th Cir. 2000); *Piven v. Sykes Enters.*, 137 F. Supp. 2d 1295, 1306 (M.D. Fla. 2000) (same).

Movant's claims are typical of those of the Class. Movant alleges, as do all Class members, that Defendants violated the federal securities laws by making untrue statements of material fact and omitting to state material facts necessary to make the statements made not misleading. Movant, as did all Class members, purchased Carnival securities at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions and was damaged upon the disclosures of those misrepresentations and/or omissions that drove Carnival's share price downward. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the class."

Class representatives must also have "sufficient interest in the outcome of the litigation to ensure vigorous advocacy." *Miller v. Dyadic Int'l, Inc.*, 07-80948-CIV-DIMITROULEAS, 2008 U.S. Dist. LEXIS 32271, at *19 (S.D. Fla. Apr. 18, 2008) (quoting *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 253 (S.D.N.Y. 2003)).

Movant has submitted a signed Certification declaring his commitment to protecting the interests of the Class. *See* Goldstein Decl., Ex. B. There is no evidence of antagonism or conflict between Movant's interests and the interests of the Class. The significant losses incurred by Movant demonstrate that he has a sufficient interest in the outcome of this litigation.

## III. LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with a lead plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Mulvaney v. GEO Group, Inc.*, 16-cv-81494-MIDDLEBROOKS, 2016 U.S. Dist. LEXIS 193402, at *8 (S.D. Fla. Nov. 18, 2016); *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 150 (D. Del. 2005) ("Once the lead plaintiff is chosen, that party is primarily responsible for selecting lead counsel.").

Here, Movant has selected Pomerantz and Barrack Rodos as Co-Lead Counsel for the Class. Pomerantz is highly experienced in the area of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume. *See* Goldstein Decl., Ex. D. Pomerantz recently secured a recovery of $3 billion on behalf of investors in the securities of Petróleo Brasileiro S.A. — Petrobras, the largest class action settlement in a decade and the largest settlement ever in a class action involving a foreign issuer. Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re*

11

*Comverse Technology, Inc. Securities Litigation*, No. 06-CV-1825 (E.D.N.Y.), in June 2010.  *See*

Goldstein Decl., Ex. D.  Most recently, Pomerantz announced as Lead Counsel on behalf of a class

of Fiat investors that it has reached a $110 million settlement with the company.  *See* Patrick

Thomas, *Fiat Chrysler to Settle Lawsuit for $110 Million*, Wall St. J., Apr. 8, 2019 (available at

https://www.wsj.com/articles/fiat-chrysler-to-settle-lawsuit-for-110-million-11554746066).

Courts in this Judicial District and throughout the country have recognized Pomerantz's

qualifications to serve as class counsel, and Pomerantz has recently been appointed lead counsel

in actions including *Dillard v. Platform Specialty Prods. Corp.*, 16-cv-80490 (S.D. Fla.); *Mulvaney*

*v. GEO Group, Inc.*, 16-cv-81494 (S.D. Fla.); and *Kessman v. Myriad Genetics, Inc.*, 18-cv-336

(D. Utah).

Barrack, Rodos & Bacine has extensive experience successfully litigating securities class

actions on behalf of injured investors, obtaining landmark results for the class members in those

cases.  For instance, Barrack, Rodos & Bacine served as a co-lead counsel in the *In re WorldCom,*

*Inc. Securities Litigation*, in which settlements totaling over $6 billion were achieved.  The

Honorable Denise Cote described the services provided by lead counsel as follows:

> The quality of representation given by Lead Counsel is unsurpassed in this Court's
> experience with plaintiffs' counsel in securities litigation.  Lead Counsel has been
> energetic and creative.  Its skill has matched that of able and well-funded defense
> counsel.  It has behaved professionally and has taken care not to burden the Court
> or other parties with needless disputes.  Its negotiations with the Citigroup
> Defendants have resulted in a settlement of historic proportions.  It has cooperated
> with other counsel in ways that redound to the benefit of the class and those
> investors who have opted out of the class.  The submissions of Lead Counsel to the
> Court have been written with care and have repeatedly been of great assistance.
>
> In sum, the quality of the representation that Lead Counsel has provided to the class
> has been superb.…  Lead Counsel has performed a valuable public service in
> prosecuting this action with vigor and skill.

*In re WorldCom, Inc. Sec. Litig.*, No. 02 CIV 3288 (DLC), 2004 WL 2591402 *18-20 (S.D.N.Y. Nov. 12, 2004).

The firm also served successfully as a lead counsel in, among other securities cases, *In re Cendant Corp. Litigation,* No. 98-cv-1664 (WHW) (D.N.J.) (settlements totaling over $3.3 billion, the largest in the Third Circuit and the largest amount ever against an outside accounting firm in a securities class action, plus significant corporate governance changes), and *In re McKesson HBOC, Inc. Securities Litigation*, No. 99-cv-20743 (N.D. Cal.) (settlements totaling $1.0425 billion, the largest recovery in a securities class action in the Ninth Circuit); *In re DaimlerChrysler Securities Litigation*, 00-cv-993, 00-984, 01-004-JJF (D. Del.) (settlement of $300 million for the class, the largest securities class action recovery in Delaware); and *In re The Mills Corporation Securities Litigation*, No. 1:06-cv-00077-LO-TRJ (E.D. Va.) (settlements totaling over $200 million, the largest recovery as of that time in a securities class case in Virginia). More recently, Barrack, Rodos & Bacine obtained recoveries of $970.5 million and $335 million in class actions against the American International Group and Bank of America. Further, as shown in the firm's biography, the firm has demonstrated the ability to take cases successfully to trial and has achieved significant recoveries in many other cases for class members. *See* Goldstein Decl., Ex. E.

SFMS is also well-qualified to serve as Liaison Counsel in the Related Actions. As its firm resume reflects, SFMS maintains an office in Fort Lauderdale, Florida, and the firm specializes in securities class action matters, among other practice areas. *See* Goldstein Decl., Ex. F. SFMS has experience in achieving substantial recoveries in class actions, and its attorneys have extensive familiarity with the Local Civil Rules and practice norms of this Judicial District.

As a result of their extensive experience in litigation involving issues similar to those raised in the Related Actions, Movant's counsel have the skill, knowledge, expertise, and experience that

will enable them to prosecute the Related Actions effectively and expeditiously.  Thus, the Court may be assured that by approving the selection of counsel by Movant, with Pomerantz and Barrack Rodos as Co-Lead Counsel and SFMS as Liaison Counsel for the Class, the members of the Class will receive the best legal representation available.

**CONCLUSION**

For the foregoing reasons, Movant respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Movant as Lead Plaintiff for the Class; and (3) approving Lead Plaintiff's selections of Pomerantz and Barrack Rodos as Co-Lead Counsel, and SFMS as Liaison Counsel, for the Class.

Dated:  July 27, 2020

**SHEPHERD, FINKELMAN, MILLER & SHAH, LLP**

By: */s/ Jayne A. Goldstein*
Jayne A. Goldstein
1625 N. Commerce Pkwy, Suite 320
Fort Lauderdale, FL 33326
(866) 849-7545
Fax: (866) 300-7367
jgoldstein@sfmslaw.com

*Counsel for Movant and Proposed Liaison Counsel for the Class*

**BARRACK, RODOS & BACINE**
Daniel E. Bacine
(*pro hac vice* application forthcoming)
Jeffrey A. Barrack
(*pro hac vice* application forthcoming)
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
(215) 963-0600
Fax: (215) 963-0838
dbacine@barrack.com
jbarrack@barrack.com

14

**POMERANTZ LLP**
James M. LoPiano
(*pro hac vice* application forthcoming)
600 Third Avenue
New York, NY 10016
(212) 661-1100
Fax: (917) 463-1044
jlopiano@pomlaw.com

*Counsel for Movant and Proposed Co-Lead Counsel for the Class*

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, NY 10165
(212) 697-6484
Fax: (212) 697-7296
peretz@bgandg.com

*Additional Counsel for Movant*

15