**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| SERVICE LAMP CORPORATION PROFIT SHARING PLAN, individually, and on behalf of all other persons and entities similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>CARNIVAL CORPORATION, ARNOLD W. DONALD, AND DAVID BERNSTEIN,<br><br>        Defendants. | Case No. 1:20-cv-22202-KMM<br><br>Judge K. Michael Moore<br><br><u>CLASS ACTION</u> |
| ABRAHAM ATACHBARIAN, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>CARNIVAL CORPORATION, CARNIVAL PLC, ARNOLD W. DONALD, DAVID BERNSTEIN, and MICKY ARISON,<br><br>        Defendants | Case No. 1:20-cv-23011-RNS<br><br>Judge Robert N. Scola, Jr. |

**MOTION OF LIUNA PENSION FUND OF CENTRAL AND EASTERN CANADA FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF LEAD COUNSEL, AND <u>INCORPORATED MEMORANDUM OF LAW IN SUPPORT THEREOF</u>**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

I.      FACTUAL BACKGROUND .................................................................................... 4

II.     ARGUMENT ........................................................................................................... 8

        A.      The Actions Should be Consolidated .......................................................... 8

        B.      LiUNA Pension Fund Should be Appointed Lead Plaintiff ........................ 9

                1.      The PSLRA Standard For Appointing Lead Plaintiff ...................... 9

        C.      LiUNA Pension Fund Is the "Most Adequate Plaintiff" .......................... 10

                1.      LiUNA Pension Fund's Motion Is Timely .................................... 10

                2.      LiUNA Pension Fund Has the Largest Financial Interest in
                        the Relief Sought by the Class ....................................................... 11

                3.      LiUNA Pension Fund Satisfies Rule 23's Typicality and
                        Adequacy Requirements ................................................................ 11

                        (a)     LiUNA Pension Fund's Claims Are Typical of
                                Those of the Class ............................................................... 11

                        (b)     LiUNA Pension Fund Satisfies the Adequacy
                                Requirement of Rule 23 ...................................................... 12

                4.      LiUNA Pension Fund Is Precisely the Type of Lead
                        Plaintiff Congress Envisioned When It Passed the PSLRA ......... 13

        D.      LiUNA Pension Fund's Selection of Counsel Merits Approval ................ 15

III.    CONCLUSION ...................................................................................................... 16

LOCAL RULE 7.1(b) REQUEST FOR HEARING .......................................................... 16

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Biver v. Nicholas Fin., Inc.*,
No. 8:14-cv-250-T-33TGW, 2014 WL 1763211 (M.D. Fla. Apr. 30, 2014) ......................8, 12

*Cambridge Ret. Sys. v. Mednax, Inc.*,
No. 18-61572-CIV, 2018 WL 8804814 (S.D. Fla. Dec. 6, 2018).......................................3, 14

*Carvelli v. Ocwen Fin. Corp.*,
No. 9:17-cv-80500, 2017 WL 3473482 (S.D. Fla. Aug. 14, 2017) .........................................14

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)...................................................................................................15

*Einhorn v. AxoGen, Inc.*,
No. 8:19-cv-69-EAK-AAS, 2019 WL 5636382 (M.D. Fla. Apr. 30, 2019)............................10

*Jahm v. Bankrate, Inc.*,
No. 14-cv-81323, 2015 WL 13650037 (S.D. Fla. Jan. 16, 2015)...........................................14

*Kinnett v. Strayer Educ., Inc.*,
No. 8:10-CV-2317-T-23MAP, 2011 WL 317758 (M.D. Fla. Jan. 31, 2011)..........................14

*Kux-Kardos v. VimpelCom, Ltd.*,
151 F. Supp. 3d 471 (S.D.N.Y. 2016)....................................................................................11

*Lowinger v. Global Cash Access Holdings, Inc.*,
No. 08 Cv. 3516 (SWK), 2008 WL 2566558 (S.D.N.Y. June 26, 2008) .................................8

*Luczak v. Nat'l Beverage Corp.*,
No. 0:18-cv-61631-KMM, 2018 WL 9847842 (S.D. Fla. Oct. 12, 2018)........................10, 11

*Miller v. Dyadic Int'l, Inc.*,
No. 07-80948-CIV, 2008 WL 2465286 (S.D. Fla. Apr. 18, 2008)...........................................1

*Newman v. Eagle Bldg. Techs.*,
209 F.R.D. 499 (S.D. Fla. 2002)........................................................................................8, 11

**Rules & Statutes**

Fed. R. Civ. P. 23................................................................................................... *passim*

Fed. R. Civ. P. 42(a) .........................................................................................................8

Local Rule 7.1(a)(3)..........................................................................................................2

Local Rule 7.1(b) ...........................................................................................................16

15 U.S.C. § 78u-4 et seq. ................................................................................... *passim*

**Docketed Cases**

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
    No. 04-cv-8141 (S.D.N.Y.)...........................................................................................15

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
    No. 08-md-1963 (S.D.N.Y.) ..........................................................................................15

*City of Pompano Beach Gen. Emps.' Ret. Sys. v. Synovus Fin. Corp.*,
    No. 09-cv-01811 (N.D. Ga.) ..........................................................................................15

*Gammel v. Hewlett-Packard Company*,
    No. 11-cv-01404 (C.D. Cal.) .........................................................................................14

*In re HealthSouth Corp. Sec. Litig.*,
    No. 03-cv-1500 (N.D. Ala.)............................................................................................15

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 ................3, 13, 14, 15

S. Rep. No. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679....................................................3

**INTRODUCTION**

Proposed Lead Plaintiff, LiUNA Pension Fund of Central and Eastern Canada ("LiUNA Pension Fund"), by their undersigned counsel, hereby moves this Court, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for the entry of an Order: (i) consolidating the above-captioned actions (the "Actions")[1]; appointing LiUNA Pension Fund as Lead Plaintiff on behalf of a class consisting of all persons and entities who purchased or otherwise acquired the publicly traded securities of Carnival Corporation and Carnival plc (together, "Carnival" or the "Company"), including common stock (NYSE: CCL), American Depository Shares (NYSE: CUK), and call options, and/or sold put contracts on Carnival common stock, from September 26, 2019, through May 1, 2020, both dates inclusive (the "Class Period"), and were damaged thereby (the "Class")[2]; (iii) approving LiUNA Pension Fund's selection of Labaton Sucharow LLP ("Labaton Sucharow") as Lead Counsel for the Class and Kopelowitz Ostrow Ferguson Weiselberg Gilbert ("KO") as Liaison Counsel to the Class; and (iv) granting such other and further relief as the Court may deem just and proper.[3]

---

[1] Counsel for LiUNA Pension Fund notes that the related action captioned: *Elmensdorp v. Carnival Corporation*, No. 20-cv-22319 (S.D. Fla.), has already been consolidated with the lowest-docketed action captioned: *Service Lamp Corporation Profit Sharing Plan v. Carnival Corporation*, No. 20-cv-22202 (S.D. Fla.). *See* ECF No. 10.

[2] While the related actions pending against the Company have all asserted varying class periods and class definitions, for the purposes of lead plaintiff appointment, the most expansive class definition typically governs, and has therefore been utilized for the purposes of this motion. *See, e.g.*, *Miller v. Dyadic Int'l, Inc.*, No. 07-80948-CIV, 2008 WL 2465286, at *4 (S.D. Fla. Apr. 18, 2008) ("However, the Court finds that the better rule, as many other courts have held, is the rule that chooses the most inclusive class period at this early stage in the litigation.").

[3] The PSLRA provides that within 60 days after publication of the required notice, any member of the proposed class may apply to the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the underlying action. Consequently, counsel for LiUNA Pension Fund have no way of knowing who, if any, the competing lead plaintiff candidates are at this time. As a result, counsel for LiUNA Pension Fund have been unable to conference with opposing counsel as
*(continued ... )*

LiUNA Pension Fund—a sophisticated institutional investor—respectfully submits that it should be appointed Lead Plaintiff in the Actions on behalf of the Class.  The Actions, which are brought against Carnival and certain of its executive officers (collectively, "Defendants"), seek to recover damages caused by Defendants' alleged violations of the federal securities laws under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

The PSLRA requires that the Court appoint the "most adequate plaintiff" to serve as Lead Plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(i).  In that regard, the Court must determine which movant has the "largest financial interest" in the relief sought by the Class, and also whether such movant has made a *prima facie* showing that it is a typical and adequate Class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

For the reasons discussed below, LiUNA Pension Fund respectfully submits that it is the "most adequate plaintiff" under the PSLRA and should be appointed as Lead Plaintiff.  LiUNA Pension Fund incurred collective losses of *$1,148,178.83* on its Class Period transactions in Carnival securities as calculated on a last-in-first-out ("LIFO") basis.[4]  Accordingly, LiUNA Pension Fund has a substantial financial interest in directing this litigation and recovering losses

---

*( … continued)*
 prescribed in Local Rule 7.1(a)(3), and respectfully request that the conference requirement of Local Rule 7.1(a)(3) be waived in this narrow instance.

[4] A copy of the Certification of LiUNA Pension Fund, signed by David D'Agostini, as Administrator of LiUNA Pension Fund ("Certification"), is attached as Exhibit A to the Declaration of Daniel Tropin (the "Tropin Decl."), submitted herewith.  The Certification sets forth all of LiUNA Pension Fund's transactions in Carnival securities during the Class Period.  In addition, a table reflecting the calculation of financial losses sustained by LiUNA Pension Fund on its Class Period transactions in Carnival securities ("Loss Analysis") is attached as Exhibit B to the Tropin Decl.

attributable to Defendants' violations of federal securities laws—an interest believed to be greater than that of any other qualified movant.

In addition to asserting a substantial financial interest in this litigation, LiUNA Pension Fund also meets the typicality and adequacy requirements of Rule 23 because: (i) its claims arise from the same course of events as those of the other Class members, (ii) it relies on similar legal theories to prove Defendants' liability, and (iii) it has retained experienced counsel and is committed to vigorously prosecuting the Action.  Furthermore, the PSLRA's legislative history shows that a large, sophisticated institutional investor like LiUNA Pension Fund is precisely the type of investor that Congress intended to empower to lead securities class action litigation.  *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733; S. Rep. No. 104-98, at 6 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 685; *see also Cambridge Ret. Sys. v. Mednax, Inc.*, No. 18-61572-CIV, 2018 WL 8804814, at \*11–12 (S.D. Fla. Dec. 6, 2018) (noting "widely-recognized intent of the PSLRA to encourage more institutional investors to be involved in private securities litigation").

Finally, pursuant to the PSLRA, LiUNA Pension Fund respectfully requests that the Court approve its selection of Labaton Sucharow as Lead Counsel for the Class.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v) ("[T]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class").  Labaton Sucharow is a nationally recognized securities class action litigation firm that has recovered billions of dollars in damages for defrauded investors, and has the expertise and resources necessary to handle litigation of this complexity and scale.

Accordingly, LiUNA Pension Fund respectfully requests that the Court appoint it as Lead Plaintiff for the Class and approve its selection of Lead Counsel.

### I.    FACTUAL BACKGROUND

Carnival, headquartered in Miami, Florida, operates the world's largest cruise company, carrying nearly forty-five percent of global cruise passengers through nine different business segments, including Carnival Cruise Line, Princess Cruises, Holland America Line, Seabourn, P&O Cruises (Australia), Costa Cruises, AIDA Cruises, P&O Cruises (UK), and Cunard.

The Actions allege that, throughout the Class Period, the Defendants made materially false, and/or misleading statements, and failed to disclose material adverse facts about Carnival's manifest inability to address the spread of infectious disease on its ships and the susceptibility of its ships to the transmission of such diseases among its crew and passengers. As a result of the foregoing, Defendants' statements about Carnival's commitment to the health, safety, and comfort of its passengers and crew members as well as its assurances to safeguarding passengers and crew and, thereby its profitability, were false and/or misleading and/or lacked a reasonable basis.

The Class Period begins on September 26, 2019, when Carnival filed its Form 10-Q for the quarterly period ended August 31, 2019, and a Form 8-K, in which Carnival purported to describe all the primary risks that potentially could impact Carnival and its shareholders, yet the 10-Q and 8-K entirely omitted any reference to the potential harm to shareholders that would be caused by Carnival's inadequate facilities and preparation for a viral infection and/or other outbreaks of diseases on one or more of its ships.  These omissions were consistent with a host of pre-Class Period statements wherein Carnival stated that the welfare of its passengers was paramount, but omitted any reference to its inability to adequately address the spread of infectious disease among passengers and crew members on its ships and its need to downplay outbreaks to maintain bookings and reservations.

In December 2019, a novel strain of coronavirus, COVID-19, was first reported in Wuhan, Hubei province, China.  COVID-19 quickly spread to numerous countries and has since been designated a global pandemic by the World Health Organization.  Carnival launched several cruise ships in early 2020, putting tens of thousands of passengers and crew at serious risk and turned Carnival's ships into vessels for seeding the virus across the globe.  On January 27, 2020, as COVID-19 spread beyond China, Carnival, however, claimed that the risks of COVID-19 posed to the company's guests, crew, and global business were "very low."

Carnival continued to double-down on its statements of "low risk" throughout the next two months by permitting cruises to continue (except those traveling to and from China or where quarantined by authorities) in the face of mounting cruise passenger illnesses and deaths on its own ships due to COVID-19, or soon after disembarking its own ships.  On February 3, 2020, just a few days after Carnival reiterated that COVID-19 was "very low" risk to Carnival's guests, crew, and business, Carnival admitted that a passenger who had been onboard its Diamond Princess ship, from January 20, 2020, through January 25, 2020, had tested positive for COVID-19.  This diagnosis caused Japanese authorities to conduct a review of all guests and crew as the ship was docked in Yokohama, Japan, causing a delay in the next leg of the ship's journey.

On this news, the price of Carnival's common stock declined $0.78 per share, or approximately 2%, from a close of $43.53 per share on January 31, 2020, to close at $42.75 per share on February 3, 2020.  Similarly, the price of Carnival's ADSs declined $0.45 per share, or 1.1%, from a close of $41.10 per ADS on January 31, 2020, to close at $40.65 per ADS on February 3, 2020.

5

Investors began to learn the truth about Carnival's prior false and misleading statements through a series of additional disclosures to the market during the Class Period.  Notably, on March 4, 2020, the Company announced that the CDC was investigating a cluster of COVID-19 cases in connection with passengers who had recently traveled on the Company's Grand Princess ship, then docked in or near the Port of San Francisco, California—and, further, that dozens of passengers and crew members on the Grand Princess's  current voyage were also experiencing symptoms.  In response to these disclosures, the price of Carnival's common stock declined $4.59 per share, or 14.1%, from a close of $32.46 per share on March 4, 2020, to close at $27.87 per share on March 5, 2020.  Similarly, the price of Carnival's ADSs declined $3.96 per ADS, or 12.9%, from a close of $30.58 per ADS on March 4, 2020, to close at $26.62 per ADS on March 5, 2020.

Evidence revealing how Carnival's conduct allowed outbreaks on its ships to spread also surfaced. For example, on March 8, 2020, *The New York Times* reported that the Diamond Princess quarantine failed, at least in part, due to Carnival's mishandling of the outbreak—in light of known risks—despite Carnival's false assurances that risks on its cruises were "very low."  On this news, the price of Carnival's common stock declined $5.41 per share, or 19.9%, from a close of $27.15 per share on March 6, 2020, to close at $21.74 per share on March 9, 2020.  Similarly, the price of Carnival's ADSs declined $2.46 per ADS, or 19.7%, from a close of $12.48 per ADS on March 6, 2020, to close at $10.02 per ADS on March 9, 2020.

Additional information emerged on April 16, 2020, when *Bloomberg Businessweek* detailed the Company's many failures in handling COVID-19 outbreaks, despite Defendants possessing "insight into the global situation much earlier than most." Among other things, this article also exposed Defendants' efforts to downplay the seriousness of the virus and the effects

of outbreaks on Carnival ships.  In response to the revelations in the *Bloomberg* article, the price of Carnival's common stock declined $0.53 per share, or 4.3%, from a close of $12.38 per share on April 15, 2020, to close at $11.85 per share on April 16, 2020. Similarly, the price of Carnival's ADSs declined $0.41 per ADS, or 3.6%, from a close of $11.33 per ADS on April 15, 2020, to close at $10.92 per ADS on April 16, 2020.

Finally, on May 1, 2020, and as a result of the many outbreaks on Carnival ships, as well as reporting that exposed the effects of Carnival's actions and inactions, the United States House of Representatives opened an investigation into Carnival's handling of COVID-19, initiated by a letter addressed to Carnival's Chief Executive Officer requesting records regarding Carnival's COVID-19 response (the "Congressional Letter").  The Congressional Letter, which cited prior outbreaks, stated that the request for records was based on concerns that Carnival was "ignoring the public health threat posed by coronavirus to potential future passengers and crew," and that "officials at Carnival were aware of the threats to some of its ships and did not take appropriate actions, which may have led to greater infections and the spread of the disease."

On this news, the price of Carnival's common stock declined $1.97 per share, or 12.4%, from a close of $15.90 per share on April 30, 2020, to close at $13.93 per share on May 1, 2020. Similarly, the price of Carnival's ADSs declined $1.49 per ADS, or 10.7%, from a close of $13.92 per ADS on April 30, 2020, to close at $12.43 per ADS on May 1, 2020.

As a result of Defendants' allegedly wrongful acts and omissions, and the resulting decline in the market value of the Company's securities, LiUNA Pension Fund, and other Class members, have suffered significant losses and damages.

7

II.     **ARGUMENT**

A.      **The Actions Should be Consolidated**

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter [is] filed," the court shall not appoint a lead plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii).

Consolidation pursuant to Rule 42(a) is appropriate when actions "involve a common question of law or fact." *Biver v. Nicholas Fin., Inc.*, No. 8:14-cv-250-T-33TGW, 2014 WL 1763211, at *2 (M.D. Fla. Apr. 30, 2014). "Under Rule 42(a), this Court has broad discretion to consolidate cases pending within its district." *Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 501 (S.D. Fla. 2002) (citing *Hargett v. Valley Fed. Savings Bank*, 60 F.3d 754, 765 (11th Cir. 1995)). Further, "[c]onsolidation of shareholder class actions is recognized as benefitting the court and the parties by expediting pretrial proceedings, reducing case duplication, and minimizing the expenditure of time and money by all persons concerned." *Id.* at 501–02 (citation omitted); *see also Lowinger v. Global Cash Access Holdings, Inc.*, No. 08 Cv. 3516 (SWK), 2008 WL 2566558, at *1 (S.D.N.Y. June 26, 2008) ("consolidation is particularly appropriate in the context of securities class actions if the complaints are based on the same public statements and reports") (internal quotation marks and citation omitted).

Here, the Actions are well-suited for consolidation. The complaint filed in each of the Actions alleges that Defendants violated the Exchange Act. Each action sets forth overlapping allegations relating to similar parties, transactions, and events. Because consolidation will promote judicial efficiency and conserve the resources of the Class and all other parties, consolidation is appropriate pursuant to Rule 42(a). Accordingly, LiUNA Pension Fund

8

respectfully requests that the Court consolidate the Actions, and any other subsequently filed action.

### B.   LiUNA Pension Fund Should be Appointed Lead Plaintiff

LiUNA Pension Fund respectfully submits that it should be appointed Lead Plaintiff because it timely filed the instant motion, believes it has the largest financial interest of any qualified movant, and satisfies the typicality and adequacy requirements of Rule 23.

### 1.   The PSLRA Standard For Appointing Lead Plaintiff

The PSLRA provides a straightforward, sequential procedure for selecting a lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." *See* 15 U.S.C. § 78u-4(a)(l); *see also* 15 U.S.C. § 78u-4(a)(3)(B) (setting forth procedure for selecting lead plaintiff). First, Section 21D(a)(3)(A)(i) of the Exchange Act, as amended by the PSLRA, specifies that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class –
>
> (I) of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Next, pursuant to the PSLRA, the Court is to consider any motion made by Class members to serve as Lead Plaintiff and appoint the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(i). In adjudicating the lead plaintiff motions, the Court shall adopt a presumption that the "most adequate plaintiff" is the person who: (i) filed a complaint or timely filed a motion to

serve as Lead Plaintiff; (ii) has the largest financial interest in the relief sought by the Class; and (iii) who otherwise satisfies the requirements of Rule 23.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Luczak v. Nat'l Beverage Corp.*, No. 0:18-cv-61631-KMM, 2018 WL 9847842, at *1 (S.D. Fla. Oct. 12, 2018).   This presumption may be rebutted only by "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Einhorn v. AxoGen, Inc.*, No. 8:19-cv-69-EAK-AAS, 2019 WL 5636382, at *1–3 (M.D. Fla. Apr. 30, 2019).

Under the framework established by the PSLRA, LiUNA Pension Fund is "the most adequate plaintiff" and should be appointed as Lead Plaintiff.

## C.      LiUNA Pension Fund Is the "Most Adequate Plaintiff"

### 1.      LiUNA Pension Fund's Motion Is Timely

LiUNA Pension Fund filed this motion to serve as Lead Plaintiff in a timely manner. Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the plaintiff in the first-filed action against Defendants caused notice regarding the pending nature of this case to be published on *GlobeNewsWire*, a widely-circulated, national, business-oriented news wire service, on May 27, 2020.  *See* Notice, Tropin Decl., Ex. C.  Thus, pursuant to the PSLRA, any person who is a member of the proposed Class may apply to be appointed Lead Plaintiff within sixty days after publication of the notice, *i.e.*, on or before July 27, 2020.  LiUNA Pension Fund filed its motion seeking appointment as Lead Plaintiff within this deadline and has thus satisfied the procedural requirements of the PSLRA.

### 2.     LiUNA Pension Fund Has the Largest Financial Interest in the Relief Sought by the Class

The PSLRA requires a court to adopt the rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii); *see also Eagle Bldg. Techs.*, 209 F.R.D. at 502 ("The most important factor in determining the lead plaintiff is the amount of financial interest claimed.").

LiUNA Pension Fund incurred substantial losses of ***$1,148,178.83*** on its relevant transactions in Carnival securities on a LIFO basis during the Class Period.  *See* Loss Analysis, Tropin Decl., Ex. B.  Accordingly, LiUNA Pension Fund has a substantial financial interest as a qualified movant seeking Lead Plaintiff status and is thus the presumptive "most adequate plaintiff."  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).

### 3.     LiUNA Pension Fund Satisfies Rule 23's Typicality and Adequacy Requirements

The PSLRA further provides that in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(cc).  At the lead plaintiff selection stage all that is required to satisfy Rule 23 is a "preliminary showing" that the lead plaintiff's claims are typical and adequate.  *Nat'l Beverage Corp.*, 2018 WL 9847842, at *2; *see also Kux-Kardos v. VimpelCom, Ltd.*, 151 F. Supp. 3d 471, 477 (S.D.N.Y. 2016).  Here, LiUNA Pension Fund unquestionably satisfy both requirements.

### (a)     LiUNA Pension Fund's Claims Are Typical of Those of the Class

The Rule 23(a) typicality requirement is satisfied when there is "a nexus between the class representative's claims or defenses and the common questions of fact or law which unite

the class." *Nicholas Fin., Inc.*, 2014 WL 1763211, at *5 (quoting *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)). On this point, "'[a] sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory."' *Id.* (quoting *Carnival Cruise Lines, Inc.*, 741 F.2d at 1337).

As applied, LiUNA Pension Fund's claims are typical of the claims asserted by the proposed Class. Like all members of the Class, LiUNA Pension Fund alleges that Defendants made material misstatements and omissions regarding the Company's health and safety protocols and COVID-19. LiUNA Pension Fund, as did all of the members of the Class, transacted in Carnival securities during the Class Period in reliance on Defendants' alleged misstatements and omissions and was damaged thereby. Because LiUNA Pension Fund's claims arise from the same course of events as do the claims of other Class members, the typicality requirement is satisfied.

### (b)   LiUNA Pension Fund Satisfies the Adequacy Requirement of Rule 23

"[T]he adequacy prong requires that the class representatives have common interests with the nonrepresentative class members and requires that the representatives demonstrate that they will vigorously prosecute the interests of the class through qualified counsel." *Id.* (quoting *Piazza v. Ebsco Indus. Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001)). "Thus, the adequacy of representation analysis involves two inquiries: '(1) whether any substantial conflicts of interest exist between the representatives and the class, and (2) whether the representatives will adequately prosecute the action.'" *Id.* (quoting *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003)).

As applied, LiUNA Pension Fund has satisfied the adequacy requirement of Rule 23.

12

*First*, LiUNA Pension Fund understands and accepts the duties and obligations as a Lead Plaintiff under the PSLRA.  *See* Certification, Tropin Decl., Ex. A.  *Second*, no antagonism exists between the interests of LiUNA Pension Fund and those of the absent Class members; rather, the interests of LiUNA Pension Fund and the Class are squarely aligned.  LiUNA Pension Fund suffered substantial losses due to Defendants' alleged misconduct and, therefore, has a sufficient interest in the outcome of this case to ensure vigorous prosecution of this action.  *Third*, there is no proof that LiUNA Pension Fund is "subject to unique defenses that render such plaintiff incapable of representing the class," because no such proof exists.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  *Fourth*, LiUNA Pension Fund has retained counsel highly experienced in prosecuting securities class actions vigorously and efficiently, *see infra* at Section II.D, and timely submitted its choice to the Court for approval, in accordance with the PSLRA.  *See* 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II) and (B)(v).  *Finally*, as discussed in further detail herein, as an institutional investor, LiUNA Pension Fund unquestionably has the sophistication and resources necessary to direct and oversee counsel in the course of litigating the Actions on behalf of the Class.

Accordingly, LiUNA Pension Fund is adequate to represent the Class.

### 4. LiUNA Pension Fund Is Precisely the Type of Lead Plaintiff Congress Envisioned When It Passed the PSLRA

In addition to satisfying the requirements of Rule 23, LiUNA Pension Fund—a large, sophisticated institutional investor—is precisely the type of investor Congress envisioned, through the enactment of the PSLRA, to encourage to assume a more prominent role in securities litigation.  *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of

13

representation in securities class actions."). Congress reasoned that increasing the role of institutional investors, which typically have a large financial stake in the outcome of the litigation, would be beneficial because institutional investors with a large financial stake are more apt to effectively manage complex securities litigation. *See id.* at 34-35, *reprinted in* 1995 U.S.C.C.A.N. at 733-34.

To this end, many courts, including courts in this District, have recognized that the legislative history reflects a clear preference for institutional investors to be appointed as lead plaintiff in securities class actions. *See, e.g., Mednax, Inc.*, 2018 WL 8804814, at *11–12 (noting "widely-recognized intent of the PSLRA to encourage more institutional investors to be involved in private securities litigation"); *Carvelli v. Ocwen Fin. Corp.*, No. 9:17-cv-80500, 2017 WL 3473482, at *3 (S.D. Fla. Aug. 14, 2017) (affirming appointment of institutional investor over group of individual investors claiming a larger financial interest, citing to "presumption inherent in Congress' enactment of the PSLRA that institutional investors serve as better lead plaintiffs") (citation omitted); *Jahm v. Bankrate, Inc.*, No. 14-cv-81323, 2015 WL 13650037, at *2 (S.D. Fla. Jan. 16, 2015) (noting congressional intent of having institutional investors serve as lead plaintiff in passing the PSLRA); *Kinnett v. Strayer Educ., Inc.*, No. 8:10-CV-2317-T-23MAP, 2011 WL 317758, at *1 (M.D. Fla. Jan. 31, 2011) ("Congress reasoned that such large investors would have an incentive to actively monitor the conduct of their attorneys and ensure that members of the class were well represented") (citation omitted).

Moreover, in line with this congressional intent, LiUNA Pension Fund has already successfully served as a lead plaintiff in prior securities matters. For example, in *Gammel v. Hewlett-Packard Company*, No. 11-cv-01404 (C.D. Cal.), which settled for $57 million, LiUNA Pension Fund served as co-lead plaintiff with Labaton Sucharow serving as co-lead counsel.

14

LiUNA Pension Fund also served as co-lead plaintiff in the case captioned, *City of Pompano Beach General Employees' Retirement System v. Synovus Financial Corp.*, No. 09-cv-01811 (N.D. Ga.), which settled for $11.75 million.

Accordingly, LiUNA Pension Fund has the sophistication and resources necessary to effectively litigate this matter and supervise Class counsel.

### D.      LiUNA Pension Fund's Selection of Counsel Merits Approval

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the court's approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *In re Cendant Corp. Litig.*, 264 F.3d 201, 276 (3d Cir. 2001) (stating that "the Reform Act evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention").  Consistent with Congressional intent, a court should not disturb the lead plaintiff's choice of counsel unless it is "necessary to protect the interests of the plaintiff class."  *See* H.R. Conf. Rep. No. 104-369, at 35 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 734.

Here, LiUNA Pension Fund has selected the law firm of Labaton Sucharow to represent the Class.  Labaton Sucharow has excelled as lead counsel in numerous actions on behalf of defrauded investors.  For example, Labaton Sucharow served as lead counsel in *In re American International Group, Inc. Securities Litigation*, No. 04-cv-8141 (S.D.N.Y.), in which it achieved a recovery totaling more than $1 billion for injured investors, and secured a $294.9 million recovery in *In re Bear Stearns Cos., Inc. Securities, Derivative, & ERISA Litigation*, No. 08-md-1963 (S.D.N.Y.), in which the Firm served as co-lead counsel.  Labaton Sucharow has also achieved noteworthy results in cases within this Circuit.  For example, Labaton Sucharow served as co-lead counsel in *In re HealthSouth Corp. Securities Litigation*, No. 03-cv-1500 (N.D. Ala.), in which the firm achieved a recovery of $671 million on behalf of harmed investors, and similarly served as co-lead counsel in *Eastwood Enterprises, LLC v. Farha* (WellCare Securities

15

Litigation), No. 07-cv-1940 (M.D. Fla.), in which it secured a recovery of $200 million. Labaton Sucharow presently serves as lead or co-lead counsel in several significant investor class actions. *See* Labaton Sucharow Firm Resume, Tropin Decl., Ex. D.

Finally, KO is well-qualified to represent the Class as Liaison Counsel. KO maintains an office in this District and has substantial class action litigation experience and several leadership positions in federal courts, including in this District. *See* KO Firm Resume, Tropin Decl., Ex. E. Thus, the firm is well qualified to represent the Class as Liaison Counsel. *See* Manual for Complex Litigation (Fourth) § 10.221 (2004) (discussing role of liaison counsel and noting that "[l]iaison counsel will usually have offices in the same locality as the court.").

In light of the foregoing, the Court should approve LiUNA Pension Fund's selection of Labaton Sucharow as Lead Counsel for the Class and KO as Liaison Counsel to the Class. The Court can be assured that, by approving LiUNA Pension Fund's choice of counsel, the Class will receive the highest caliber of representation.

## III. CONCLUSION

For the foregoing reasons, LiUNA Pension Fund respectfully request that the Court issue an Order: (i) consolidating the above-captioned actions; (ii) appointing LiUNA Pension Fund as Lead Plaintiff for the Class; (iii) approving LiUNA Pension Fund's selection of Labaton Sucharow as Lead Counsel for the Class and KO as Liaison Counsel to the Class; and (iv) granting such other relief as the Court may deem just and proper.

### LOCAL RULE 7.1(b) REQUEST FOR HEARING

LiUNA Pension Fund respectfully requests oral argument on this Motion. Counsel for LiUNA Pension Fund believe that oral argument, estimated to take one hour, will assist the Court in making a determination as to which movant should be appointed Lead Plaintiff in accordance with the PSLRA.

DATED:  July 27, 2020                        Respectfully submitted,

                                             */s/  Daniel Tropin*
                                             **KOPELOWITZ OSTROW**
                                             **FERGUSON WEISELBERG GILBERT**
                                             Daniel Tropin
                                             Florida Bar No. 100424
                                             Jeff Ostrow
                                             Florida Bar No. 121452
                                             2800 Ponce de Leon Blvd., Ste. 1100
                                             Coral Gables, Florida 33134
                                             Telephone: (305) 529-8858
                                             Facsimile: (954) 525-4300
                                             tropin@kolawyers.com
                                             ostrow@kolawyers.com

                                             *Proposed Liaison Counsel for the Class*

                                             **LABATON SUCHAROW LLP**
                                             Christopher J. Keller
                                             (*pro hac vice* forthcoming)
                                             Eric J. Belfi
                                             (*pro hac vice* forthcoming)
                                             Francis P. McConville
                                             (*pro hac vice* forthcoming)
                                             140 Broadway
                                             New York, NY 10005
                                             Telephone: (212) 907-0700
                                             Facsimile: (212) 818-0477
                                             ckeller@labaton.com
                                             ebelfi@labaton.com
                                             fmcconville@labaton.com

                                             *Counsel for Lead Plaintiff Movant LiUNA*
                                             *Pension Fund of Central and Eastern*
                                             *Canada and Proposed Lead Counsel for the*
                                             *Class*

17

## CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2020, a true and accurate copy of the above document was electronically filed with the Clerk of the Court by using the CM/ECF system which will send Notice of Electronic Filing to all counsel of record.

*/s/ Daniel Tropin*
Daniel Tropin