**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| IN RE CARNIVAL CORP. SECURITIES LITIGATION | Case No. 1:20-cv-22202-KMM <br><br> <u>CLASS ACTION</u> |
| ABRAHAM ATACHBARIAN, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> CARNIVAL CORPORATION, CARNIVAL PLC, ARNOLD W. DONALD, DAVID BERNSTEIN, and MICKY ARISON, <br><br> Defendants. | Case No. 1:20-cv-23011-RNS <br><br> <u>CLASS ACTION</u> |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE NEW ENGLAND CARPENTERS PENSION AND GUARANTEED ANNUITY FUNDS AND THE MASSACHUSETTS LABORERS' PENSION AND ANNUITY FUNDS FOR APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF THEIR <u>SELECTION OF COUNSEL, AND CONSOLIDATION OF RELATED ACTIONS</u>**

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

SUMMARY OF THE RELATED ACTIONS ......................................................................... 4

ARGUMENT ........................................................................................................................... 7

      A.    New England Carpenters and Massachusetts Laborers Should Be
           Appointed Lead Plaintiff ................................................................................ 7

          1.    New England Carpenters and Massachusetts Laborers Have Timely
               Moved for Appointment as Lead Plaintiff .................................................. 7

          2.    New England Carpenters and Massachusetts Laborers Have the
               Largest Financial Interest in the Relief Sought by the Class ..................... 8

          3.    New England Carpenters and Massachusetts Laborers Satisfy the
               Requirements of Rule 23 ............................................................................ 9

          4.    New England Carpenters and Massachusetts Laborers are the
               Prototypical Lead Plaintiff Envisioned by the PSLRA .............................. 11

      B.    New England Carpenters' and Massachusetts Laborers' Selection
           of Counsel Should Be Approved .................................................................... 14

      C.    The Related Actions Should Be Consolidated ................................................ 17

CONCLUSION ....................................................................................................................... 19

## TABLE OF AUTHORITIES

CASES                                                      PAGE(S)

*In re Bank of Am. Corp. Sec., Derivative & Emp't Ret. Income Sec. Act (ERISA) Litig.*,
2010 WL 1438980 (S.D.N.Y. Apr. 9, 2010)................................................................18

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
258 F.R.D. 260 (S.D.N.Y. 2009) ..............................................................................12, 14

*Blue Chip Stamps* v. *Manor Drug Stores*,
421 U.S. 723 (1975)...................................................................................................18

*In re Cendant Corp. Litig.*,
182 F.R.D. 476 (D.N.J. 1998).....................................................................................18

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)........................................................................................11

*Eastwood Enters. LLC v. Farha*,
2008 WL 687351 (M.D. Fla. Mar. 11, 2008) .........................................................11, 13

*Edward J. Goodman Life Income Tr. v. Jabil Cir., Inc.*,
2007 WL 170556 (M.D. Fla. Jan. 18, 2007)...........................................................10, 12

*Hedick v. Kraft Heinz Co.*,
2019 WL 4958238 (N.D. Ill. Oct. 8, 2019)................................................................19

*Johnson v. J.C. Penney Co.*,
2015 WL 12780596 (E.D. Tex. June 10, 2015)..........................................................19

*Kaplan v. Gelfond*,
240 F.R.D. 88 (S.D.N.Y. 2007) ..................................................................................18

*Luczak v. Nat'l Beverage Corp.*,
2018 WL 9847842 (S.D. Fla. Oct. 12, 2018)..............................................................10

*Miami Police Relief & Pension Fund v. Fusion-io, Inc.*,
2014 WL 2604991 (N.D. Cal. June 10, 2014).............................................................2

*Miller v. Dyadic Int'l, Inc.*,
2008 WL 2465286 (S.D. Fla. Apr. 18, 2008) ...........................................................1, 10

*Mulvaney v. Geo Grp., Inc.*,
2016 WL 10519276 (S.D. Fla. Nov. 21, 2016).............................................................9

*Newman v. Eagle Bldg. Techs.*,
209 F.R.D. 499 (S.D. Fla. 2002)..................................................................................12

*Prado-Steiman ex rel. Prado v. Bush*,
  221 F.3d 1266 (11th Cir. 2000) ....................................................................................9

*Reimer v. Ambac Fin. Grp., Inc.*,
  2008 WL 2073931 (S.D.N.Y. May 9, 2008) ............................................................14

*Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*,
  2020 WL 815136 (E.D. Pa. Feb. 19, 2020) ............................................................14

*Schlimm v. Welbilt, Inc.*,
  2019 WL 3815149 (M.D. Fla. July 3, 2019) ..........................................................13

*In re Sunbeam Sec. Litig.*,
  1998 WL 1990884 (S.D. Fla. Dec. 4, 1998) ............................................................8

*Vincelli v. Nat'l Home Health Care Corp.*,
  112 F. Supp. 2d 1309 (M.D. Fla. 2000) ................................................................19

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
  2014 WL 1395059 (E.D. Pa. Apr. 10, 2014) ..........................................................12

**STATUTES**

15 U.S.C. § 78c(a)(10) ........................................................................................18

15 U.S.C. § 78u-4(a)(3) ............................................................................ *passim*

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(a)(4) ......................................................................................10

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 (1995) ....................11

The New England Carpenters Pension and Guaranteed Annuity Funds ("New England Carpenters") and the Massachusetts Laborers' Pension and Annuity Funds ("Massachusetts Laborers") respectfully submit this memorandum of law in support of their motion, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an order: (i) appointing New England Carpenters and Massachusetts Laborers as Lead Plaintiff; (ii) approving their selection of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") and Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") as Lead Counsel and Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C. ("Carella Byrne") as Liaison Counsel for the Class; (iii) consolidating all related securities class actions pursuant to Rule 42(a) of the Federal Rules of Civil Procedure ("Rule 42(a)"); and (iv) granting such other relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

The above-captioned actions (the "Related Actions") allege that between September 26, 2019 and May 1, 2020, inclusive (the "Class Period"), Carnival Corporation and Carnival plc (collectively, "Carnival" or the "Company") and certain of its senior executives (collectively, "Defendants") defrauded investors in violation of Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)), and U.S. Securities and Exchange Commission Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).[1]  The Related Actions allege that, throughout

---

[1] Three substantially similar securities class actions have been filed in this District.  *See Service Lamp Corp. Profit Sharing Plan v. Carnival Corp.*, No. 1:20-cv-22202 ("*Service Lamp*"); *Elmensdorp v. Carnival Corp.*, No. 1:20-cv-22319 ("*Elmensdorp*"); *Atachbarian v. Carnival Corp.*, No. 1:20-cv-23011 ("*Atachbarian*").  On July 6, 2020, this Court consolidated the *Elmensdorp* action with the *Service Lamp* action.  *See* ECF No. 10.  For purposes of this motion, New England Carpenters and Massachusetts Laborers have used the longest-pleaded class period in the Related Actions (the "Class Period") to calculate their financial interest, and refer to the

the Class Period, Defendants misrepresented the Company's adherence to its health and safety protocols in the wake of illnesses including the COVID-19 pandemic, Carnival's role in facilitating the transmission of viruses, and the Company's violations of port-of-call regulations. Carnival investors—including New England Carpenters and Massachusetts Laborers—incurred significant losses following a series of disclosures revealing the Company's total lack of preparedness to combat the spread of COVID-19, which ultimately resulted in thousands of people contracting the virus while on Carnival cruise ships and at least 58 deaths.

Pursuant to the PSLRA, the Court is to appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court is required to determine which movant has the "largest financial interest" in the relief sought by the Class in this litigation and whether that movant has made a *prima facie* showing that it is a typical and adequate Class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). For the reasons set forth below, New England Carpenters and Massachusetts Laborers are the "most adequate plaintiff" by virtue of, among other things, the approximately $5.7 million in losses that they incurred on their purchases of 206,149 shares of Carnival stock during the Class Period.[2]

---

broadest set of claims asserted and defendants named in the Related Actions. *See, e.g.*, *Miller v. Dyadic Int'l, Inc.*, 2008 WL 2465286, at *4 (S.D. Fla. Apr. 18, 2008) (finding that "the longest, most inclusive class period is appropriate at this stage in the litigation because it encompasses more potential class members") (internal quotations and citation omitted); *Miami Police Relief & Pension Fund v. Fusion-io, Inc.*, 2014 WL 2604991, at *1 n.3 (N.D. Cal. June 10, 2014) ("For purposes of appointing a lead plaintiff, the longest class period governs.").

[2] New England Carpenters' and Massachusetts Laborers' PSLRA-required Certifications are provided as Exhibit A to the Declaration of Zachary S. Bower in Support of the Motion of the New England Carpenters Pension and Guaranteed Annuity Funds and the Massachusetts Laborers' Pension and Annuity Funds for Appointment as Lead Plaintiff, Approval of Their Selection of Counsel, and Consolidation of Related Actions ("Bower Decl."). In addition, charts setting forth calculations of New England Carpenters' and Massachusetts Laborers' losses are provided as Exhibit B to the Bower Decl.

2

In addition to asserting the largest financial interest in this litigation, New England Carpenters and Massachusetts Laborers also satisfy the relevant requirements of Rule 23 because their claims are typical of all Class members and they will fairly and adequately represent the interests of the Class. New England Carpenters and Massachusetts Laborers are a paradigmatic Lead Plaintiff under the PSLRA because they are sophisticated institutional investors with a substantial financial interest in the litigation, and have experience serving as lead plaintiffs and supervising the work of outside counsel in other securities class actions, including as part of small, cohesive groups. Accordingly, New England Carpenters and Massachusetts Laborers have both the incentive and ability to supervise and monitor counsel.

Further, as set forth in greater detail in their Joint Declaration submitted herewith, New England Carpenters and Massachusetts Laborers fully understand the Lead Plaintiff's obligations to the Class under the PSLRA, and are willing and able to undertake the responsibilities of the Lead Plaintiff to ensure the vigorous prosecution of this action.[3] New England Carpenters' and Massachusetts Laborers' decision to seek joint Lead Plaintiff appointment was influenced, in significant part, by the pre-existing professional relationships among representatives of the funds, as discussed in greater detail in the Joint Declaration, and the collaborative history and experience they would bring to the leadership of the Related Actions. *See* Bower Decl., Ex. C, Joint Decl. ¶10. Moreover, prior to seeking a role as Lead Plaintiff, representatives from New England Carpenters and Massachusetts Laborers held a conference call to discuss, among other things, the

---

[3] *See* Joint Declaration of Richard S. Monarca and Louis A. Mandarini, III in Support of the Motion of the New England Carpenters Pension and Guaranteed Annuity Funds and the Massachusetts Laborers' Pension and Annuity Funds for Appointment as Lead Plaintiff, Approval of Their Selection of Counsel, and Consolidation of Related Actions ("Joint Decl."), Bower Decl., Ex. C.

merits of the claims against Defendants, as well as their respective funds' common goals in the litigation. *See id*. ¶12.

The PSLRA also provides that "the most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v).  New England Carpenters and Massachusetts Laborers have further demonstrated their adequacy through their selection of Bernstein Litowitz and Kessler Topaz, law firms with substantial experience in successfully prosecuting securities class actions, to serve as Lead Counsel and Carella Byrne to serve as Liaison Counsel for the Class.

Accordingly, based on New England Carpenters' and Massachusetts Laborers' significant financial interest and their commitment and ability to jointly oversee the prosecution of the litigation in a cohesive and coordinated fashion, New England Carpenters and Massachusetts Laborers respectfully request that the Court appoint them as Lead Plaintiff and otherwise grant their motion.

## SUMMARY OF THE RELATED ACTIONS

Headquartered in Miami, Florida, Carnival is the world's largest cruise company, carrying nearly 45 percent of global cruise guests.  The Company owns a portfolio of global, regional and national cruise brands, which collectively operate 104 cruise ships around the world.

The Related Actions allege that, throughout the Class Period, Carnival made a series of false and misleading statements and concealed material information relating to the Company's adherence to its health and safety protocols prior to and during the COVID-19 pandemic, Carnival's role in facilitating the transmission of viruses, and the Company's violations of port-of-call regulations.  Specifically, during the Class Period, Carnival repeatedly assured investors that it was "committed to operating a safe and reliable fleet and protecting the health, safety and

4

security of our guests, employees and all others working on our behalf." Even after Carnival learned that COVID-19 was spreading among its passengers, Carnival continued to launch new cruises, further exposing its passengers and crew to the virus, and emphasized that "the risks [of COVID-19] to our guests, crew and business around the world is very low."

The truth began to be revealed on February 3, 2020, when Carnival admitted that a passenger who had recently been onboard the Company's Diamond Princess cruise ship, then docked in Yokohama, Japan, had tested positive for COVID-19 after disembarking. This revelation forced Carnival to quarantine passengers and crew while Japanese authorities examined other guests and crew members for the virus. As a result, the price of Carnival's common stock declined $0.78 per share, or approximately 2%, from a close of $43.53 per share on January 31, 2020, to close at $42.75 per share on February 3, 2020.

On March 4, 2020, the Company announced that the Centers for Disease Control and Prevention was investigating a cluster of COVID-19 cases in connection with passengers who had recently traveled on the Company's Grand Princess ship, then docked in or near the Port of San Francisco, California. Of those passengers, at least one died from COVID-19, and dozens of other passengers and crew members on the ship were also experiencing symptoms. Accordingly, the Company cancelled the ship's next voyage, which was set to depart on March 7, 2020. As a result, the price of Carnival's common stock declined $4.59 per share, or 14.1%, from a close of $32.46 per share on March 4, 2020, to close at $27.87 per share on March 5, 2020.

On March 8, 2020, *The New York Times* reported that the Diamond Princess quarantine failed, at least in part, because the Company had: (i) ignored an email from a port representative notifying the Company that one of its Diamond Princess passengers had tested positive for COVID-19; (ii) incorrectly assumed that the risk was minimal; (iii) initiated only the lowest-level

cleaning protocols for outbreaks; (iv) failed to provide sufficient protective gear for its crew members; and (iv) delayed announcing the infection and placing restrictions on passengers.  As a result, the price of Carnival's common stock declined $5.41 per share, or 19.9%, from a close of $27.15 per share on March 6, 2020, to close at $21.74 per share on March 9, 2020.

On March 27, 2020, the Company revealed that four passengers on another Carnival-owned cruise ship—the MS Zaandam—had died, with additional confirmed cases of COVID-19 onboard, and more than 100 people exhibiting symptoms of the virus.  As a result, the price of Carnival's common stock declined $3.41 per share, or 19.1%, from a close of $17.82 per share on March 26, 2020, to close at $14.41 per share on March 27, 2020.

On April 16, 2020, *Bloomberg Businessweek* published a feature article extensively detailing the Company's many failures in handling the COVID-19 crisis, as well as its efforts to downplay the scope of outbreaks on Carnival ships and the effects of the Company's actions, or lack thereof.  As a result, the price of Carnival's common stock declined $0.53 per share, or 4.3%, from a close of $12.38 per share on April 15, 2020, to close at $11.85 per share on April 16, 2020.

Then, on May 1, 2020, the United States House of Representatives opened an investigation into Carnival's handling of COVID-19, initiated by a letter addressed to Carnival's chief executive officer requesting records regarding the Company's COVID-19 response (the "Congressional Letter").  The Congressional Letter, which cited prior outbreaks, stated that the request for records was based on concerns that Carnival was "ignoring the public health threat posed by coronavirus to potential future passengers and crew," and that "officials at Carnival were aware of the threats to some of its ships and did not take appropriate actions, which may have led to greater infections and spread of the disease."  As a result, the price of Carnival's common stock declined $1.97 per

6

share, or 12.4%, from a close of $15.90 per share on April 30, 2020, to close at $13.93 per share on May 1, 2020.

## ARGUMENT

### A.    New England Carpenters and Massachusetts Laborers Should Be Appointed Lead Plaintiff

New England Carpenters and Massachusetts Laborers respectfully submit that they should be appointed Lead Plaintiff because they are the "person or group of persons" that are "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA sets forth the procedure for selecting the Lead Plaintiff in class actions arising under the federal securities laws. When selecting a Lead Plaintiff, the PSLRA establishes a presumption that the plaintiff "most capable of adequately representing the interests of class members" is the movant that has the "largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). As discussed below, New England Carpenters and Massachusetts Laborers believe they are the "most adequate plaintiff" and should be appointed as Lead Plaintiff.

### 1.    New England Carpenters and Massachusetts Laborers Have Timely Moved for Appointment as Lead Plaintiff

Under the PSLRA, any Class member may move for appointment as Lead Plaintiff within 60 days of the publication of notice that the first action asserting substantially the same claims has been filed. *See* 15 U.S.C. § 78u-4(a)(3)(A). On May 27, 2020, the first of the Related Actions, *Service Lamp*, was filed in this District on behalf of "all those who purchased or otherwise acquired Carnival common stock and securities between January 28, 2020 and May 1, 2020, inclusive." ECF No. 1 ¶1. That same day, counsel for the plaintiff in *Service Lamp* published a notice on *Globe Newswire* alerting investors to the pendency of the action and informing them of the July 27, 2020 deadline to seek appointment as Lead Plaintiff. *See* Bower Decl., Ex. D. On June 3,

7

2020, *Elmensdorp* was filed in this District asserting substantially similar claims on behalf of "all persons and entities who purchased or otherwise acquired Carnival's common stock (NYSE: CCL) and/or Carnival's American Depository Shares ("ADSs") (NYSE: CUK) between September 26, 2019 and May 1, 2020, inclusive." *Elmensdorp*, ECF No. 1 ¶1.  That same day, counsel for the plaintiff in *Elmensdorp*, Kessler Topaz, published a notice on *PR Newswire* alerting investors to the pendency of the action and the expanded class period, and reiterating the July 27, 2020 deadline to seek Lead Plaintiff appointment.  *See* Bower Decl., Ex. E.[4]  Accordingly, New England Carpenters and Massachusetts Laborers have timely moved for appointment as Lead Plaintiff through the filing of this motion.

> **2.     New England Carpenters and Massachusetts Laborers Have the Largest Financial Interest in the Relief Sought by the Class**

New England Carpenters and Massachusetts Laborers should be appointed Lead Plaintiff because they believe that they have the "largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).  As demonstrated by their accompanying Certifications and loss calculations, New England Carpenters and Massachusetts Laborers incurred losses of approximately $5.7 million on their Class Period purchases of 206,149 shares of Carnival stock.

---

[4] On July 21, 2020, *Atachbarian* was filed in this District asserting substantially similar claims on behalf of "all persons and entities who sold put option contracts or purchased call options for the shares of Carnival common stock [] during the period of January 27, 2020 through May 1, 2020." *Atachbarian*, ECF No. 1 ¶15.  After filing that complaint, counsel for the plaintiff in *Atachbarian* issued a notice purporting to establish a new deadline for seeking appointment as Lead Plaintiff in *Atachbarian.  See* Bower Decl., Ex. F.  But the PSLRA is clear that only notice of the first-filed case is required and later filed complaints "asserting substantially the same claim or claims" do not reset the time for class members to seek appointment as Lead Plaintiff.  *See* 15 U.S.C. § 78u-4(a)(3)(A)(ii); *see also In re Sunbeam Sec. Litig.*, 1998 WL 1990884, at *2 & n.2 (S.D. Fla. Dec. 4, 1998) (finding that the "filing of subsequent actions alleging different class periods [does] not require publication of new notices or start a new 60-day period for the filing of motions to appoint lead plaintiff or lead counsel").  Because *Atachbarian* asserts nearly identical claims on behalf of an overlapping class of investors as both *Service Lamp* and *Elmensdorp*, the filing of *Atachbarian* does not alter the deadline to seek appointment as Lead Plaintiff.

*See* Bower Decl., Exs. A-B. To the best of New England Carpenters' and Massachusetts Laborers' knowledge, there is no other applicant seeking Lead Plaintiff appointment that has a larger financial interest in the litigation. Accordingly, New England Carpenters and Massachusetts Laborers have the largest financial interest of any qualified movant seeking Lead Plaintiff status, and are the presumptive "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

### 3. New England Carpenters and Massachusetts Laborers Satisfy the Requirements of Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, New England Carpenters and Massachusetts Laborers otherwise satisfy the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). On a motion to serve as Lead Plaintiff, a movant need only make a "preliminary showing" that it satisfies Rule 23's typicality and adequacy requirements. *Mulvaney v. Geo Grp., Inc.*, 2016 WL 10519276, at *2 (S.D. Fla. Nov. 21, 2016) ("[A]t the lead plaintiff selection stage, all that is required is a preliminary showing that the lead plaintiff's claims are typical and adequate."). Here, New England Carpenters and Massachusetts Laborers unquestionably satisfy both requirements.

New England Carpenters and Massachusetts Laborers assert claims that are typical of the claims of other members of the Class. Typicality is satisfied when the representative party's claims share "the same essential characteristics as the claims of the class at large." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1278-79 n.14 (11th Cir. 2000) (citation and emphasis omitted). Here, New England Carpenters, Massachusetts Laborers, and each Class member will make virtually identical arguments to prove Defendants' liability. Like all other Class members, New England Carpenters and Massachusetts Laborers (i) purchased Carnival securities during the Class Period, (ii) at prices allegedly artificially inflated by Defendants' materially false and misleading statements and/or omissions, and (iii) were damaged as a result. *See Edward J. Goodman Life*

9

*Income Tr. v. Jabil Cir., Inc.*, 2007 WL 170556, at *3 (M.D. Fla. Jan. 18, 2007) (typicality satisfied where members of proposed lead plaintiff group "purchased Jabil shares during the class period in reliance on allegedly false and misleading statements issued by Defendants and suffered financial losses allegedly due to Defendants' conduct").  Accordingly, because New England Carpenters' and Massachusetts Laborers' claims are based on the same legal theories and arise from the same events and course of conduct as the claims of the putative Class, they satisfy Rule 23(a)(3)'s typicality requirement.

New England Carpenters and Massachusetts Laborers likewise satisfy the adequacy requirement of Rule 23.  Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  In order for the Class's interests to be fairly and adequately represented, a Lead Plaintiff must demonstrate that: "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the class members' interests are not antagonistic to one another; and (3) the class has sufficient interest in the outcome of the case to ensure vigorous advocacy." *Luczak v. Nat'l Beverage Corp.*, 2018 WL 9847842, at *2 (S.D. Fla. Oct. 12, 2018) (quoting *Dyadic Int'l*, 2008 WL 2465286, at *6).  New England Carpenters and Massachusetts Laborers satisfy these elements because their substantial financial stake in the litigation provides the ability and incentive to vigorously represent all of the Class's claims.  Indeed, their interests are perfectly aligned with those of the other Class members and are not antagonistic in any way.  There are no facts to suggest any actual or potential conflict of interest or other antagonism between New England Carpenters, Massachusetts Laborers, and other Class members.

Finally, New England Carpenters and Massachusetts Laborers have demonstrated their adequacy through their selection of Bernstein Litowitz and Kessler Topaz as proposed Lead

Counsel and Carella Byrne as proposed Liaison Counsel to represent the Class in this action.  As discussed more fully below, Bernstein Litowitz and Kessler Topaz are highly qualified and experienced in the area of securities class action litigation and have repeatedly demonstrated an ability to conduct complex securities class action litigation effectively.  Thus, as demonstrated herein, New England Carpenters and Massachusetts Laborers satisfy the requirements of Rule 23.

4.   **New England Carpenters and Massachusetts Laborers are the Prototypical Lead Plaintiff Envisioned by the PSLRA**

In addition to satisfying the requirements of Rule 23, New England Carpenters and Massachusetts Laborers—sophisticated institutional investors with a substantial financial interest in the litigation—are exactly the type of investors Congress sought, through the enactment of the PSLRA, to encourage to lead securities class actions.  *See* H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995) ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions.").

The PSLRA expressly permits the appointment of a group of Class members as Lead Plaintiff, 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), and courts throughout the country, including courts in this Circuit and District, have recognized the propriety of appointing such groups of institutional investors that are capable of "fairly and adequately protect[ing] the interests of the class." *Eastwood Enters. LLC v. Farha*, 2008 WL 687351, at *2 (M.D. Fla. Mar. 11, 2008) (adopting reasoning of the Third Circuit and holding that courts "have allowed aggregation of a group's loss in order to determine whether the group is the presumptively most adequate plaintiff") (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d Cir. 2001)); *see also Jabil Cir.*, 2007 WL 170556, at *2 ("[A]ggregation is acceptable for the purposes of [appointing a] lead plaintiff in private

11

securities litigation.") (quoting *Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 503-04 (S.D. Fla. 2002)).

As set forth in their Joint Declaration, New England Carpenters and Massachusetts Laborers have demonstrated their commitment to working cohesively in the prosecution of this action. *See* Bower Decl., Ex. C, Joint Decl.; *W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, 2014 WL 1395059, at *7 (E.D. Pa. Apr. 10, 2014) (appointing group and noting "declaration lay[ing] out the duties and obligations of" the group's members); *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 270 (S.D.N.Y. 2009) (appointing group and noting "declarations demonstrating cooperative efforts among" the group's members). Indeed, New England Carpenters and Massachusetts Laborers are a small, cohesive partnership of sophisticated institutional investors that determined on their own to jointly seek appointment as Lead Plaintiff. *See* Bower Decl., Ex. C, Joint Decl. ¶¶8, 11. New England Carpenters' and Massachusetts Laborers' decision to seek joint Lead Plaintiff appointment was also influenced by the pre-existing professional relationships among representatives of New England Carpenters and Massachusetts Laborers, as discussed in greater detail in the Joint Declaration, and the collaborative history and experience they would bring to bear on behalf of the Class in this action. *See id.* ¶10.

The Joint Declaration also explains the reasons why these investors are collaborating in this litigation and establishes how New England Carpenters and Massachusetts Laborers intend to oversee counsel and this litigation. *See id.* ¶¶9-12, 15-18. The Joint Declaration demonstrates that New England Carpenters and Massachusetts Laborers have already taken (and will continue to take) measures to ensure the vigorous prosecution of this action and oversee counsel. *See id.* ¶¶12, 15-18. As reflected in the Joint Declaration, before seeking appointment as Lead Plaintiff,

12

representatives of New England Carpenters and Massachusetts Laborers discussed together, among other things: the merits of the claims against Defendants; their respective funds' losses arising from Defendants' misconduct; and their common goals, including ensuring that the Class will benefit from their active involvement and supervision of Class counsel and the litigation. *See id*. ¶12.  As a result of their shared goals, and the importance of this litigation to all Carnival investors, New England Carpenters and Massachusetts Laborers agreed that their partnership is well-suited for this litigation and would advance the interests of the Class, a view that was informed by the fact that they are like-minded institutional investors that each have experience in supervising the work of outside counsel.  Indeed, New England Carpenters and Massachusetts Laborers each have experience serving as a plaintiff in securities-related litigation and serving in lead plaintiff groups comprised of institutional investors in other complex securities class actions. *See id*. ¶¶3, 5, 9.

The evidence submitted by New England Carpenters and Massachusetts Laborers demonstrating their commitment to vigorously and effectively represent the interests of the Class as members of a Lead Plaintiff group is more than adequate to satisfy the adequacy and typicality requirements. *See, e.g.*, *Schlimm v. Welbilt, Inc.*, 2019 WL 3815149, at *2 (M.D. Fla. July 3, 2019) (appointing group of pension funds that submitted joint declaration and "argue[d] it is willing and able to vigorously prosecute this action with its resources and experience"); *Eastwood Enters.*, 2008 WL 687351, at *3 (appointing group and noting joint declaration demonstrating they would "ensure . . . that the action is prosecuted for the benefit of the Class in an efficient and cost-effective manner and that they would oversee counsel's prosecution of this action") (internal quotations omitted); *Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*, 2020 WL 815136, at *5 (E.D. Pa. Feb. 19, 2020) (appointing group that "agreed to be fully responsible for providing fair and

adequate representation and overseeing counsel and espoused its commitment to prosecuting this litigation vigorously and efficiently" and had "established litigation oversight and communication procedures") (internal citations omitted); *In re Bank of Am.*, 258 F.R.D. at 270 (finding that "demonstrated cooperation among plaintiffs [through discussions and declarations memorializing their joint oversight over counsel and the action], particularly plaintiffs that are sophisticated institutional investors, satisfies concerns about designating groups as lead plaintiffs that are in fact dominated by counsel"); *Reimer v. Ambac Fin. Grp., Inc.*, 2008 WL 2073931, at \*3 (S.D.N.Y. May 9, 2008) (finding that "joint conference calls" regarding litigation strategy between group members demonstrated the group was able to function independently of counsel).

**B.      New England Carpenters' and Massachusetts Laborers' Selection of Counsel Should Be Approved**

The Court should approve New England Carpenters' and Massachusetts Laborers' selection of Bernstein Litowitz and Kessler Topaz to serve as Lead Counsel and Carella Byrne to serve as Liaison Counsel.  Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), a plaintiff shall, subject to court approval, select and retain counsel to represent the class they seek to represent, and the court should not disturb plaintiff's choice of counsel unless it is necessary to "protect the interests of the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Bernstein Litowitz is among the preeminent securities class action law firms in the country. *See* Bower Decl., Ex. G (Bernstein Litowitz's Firm Résumé).  Bernstein Litowitz served as lead counsel in *In re WorldCom, Inc. Securities Litigation*, No. 02-cv-3288 (S.D.N.Y.), in which settlements totaling in excess of $6 billion—one of the largest recoveries in securities class action history—were obtained for the class.  More recently, Bernstein Litowitz obtained a $1.06 billion recovery (inclusive of attorneys' fees) for the class in *In re Merck & Co., Inc. Securities, Derivative & "ERISA" Litigation*, No. 05-cv-1151 (D.N.J.).  Other cases in which courts in the Eleventh

14

Circuit, including courts in this District, have recognized Bernstein Litowitz as adequate and qualified class counsel include: *Eastwood Enterprises LLC v. Farha*, No. 07-cv-1940 (M.D. Fla.) (recovering over $200 million for investors as co-lead counsel, the largest recovery in a securities class case in Florida and the second-largest in the Eleventh Circuit); *In re Rayonier, Inc. Securities Litigation*, No. 14-cv-1395 (M.D. Fla.) (recovering $73 million for investors as co-lead counsel); *City of Sunrise General Employees' Retirement Plan v. FleetCor Technologies, Inc.*, No. 17-cv-2207 (N.D. Ga.) (recovering $50 million for investors as lead counsel); and *In re Altisource Portfolio Solutions, S.A. Securities Litigation*, No. 14-cv-81156 (S.D. Fla.) (recovering $32 million for investors as lead counsel).

Kessler Topaz specializes in prosecuting complex class action litigation and is one of the leading law firms in its field. *See* Bower Decl., Ex. H (Kessler Topaz's Firm Résumé). The firm is actively engaged in complex litigation and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors and has obtained record recoveries in those cases, including in *In re Tyco International, Ltd. Sec. Litig.*, No. 02-md-1335 (D.N.H.) ($3.2 billion recovery) and *Luther v. Countrywide Fin. Corp.*, No. 12-cv-5125 (C.D. Cal.) ($500 million recovery). Kessler Topaz has also successfully litigated several actions in the District, including *In re Ocwen Financial Corp. Securities Litigation*, No. 14-cv-81057 (S.D. Fla.) (recovering $57 million for investors as lead counsel); and *The City of Los Angeles v. Bankrate, Inc.*, No. 14-cv-81323 (S.D. Fla.) (recovering $20 million for investors as lead counsel). Further, Kessler Topaz is currently serving as lead counsel in some of the most significant securities fraud class actions across the country, including *Sjunde AP-Fonden v. General Electric Co.*, No. 17-cv-8457 (S.D.N.Y.), *Sjunde AP-Fonden v. The Goldman Sachs Group, Inc.,* No. 18-cv-12084 (S.D.N.Y.), and *Washtenaw County Employees' Retirement System v. Walgreen Co.*, No. 15-cv-3187 (N.D.

15

Ill.).  Kessler Topaz also obtained a rare jury verdict in investors' favor after a week-long trial in *In re Longtop Financial Technologies Ltd. Sec. Litig.*, No. 11-cv-3658 (S.D.N.Y.)—which at the time was one of just thirteen securities class actions to reach a verdict since enactment of the PSLRA in 1995 (based on post-enactment conduct).

Moreover, Bernstein Litowitz and Kessler Topaz have a history of successfully prosecuting securities fraud class actions together.  Bernstein Litowitz and Kessler Topaz's joint prosecutions, which have resulted in recoveries collectively exceeding $4.5 billion in recent years, include, among others: *In re Bank of America Corp. Securities, Derivative, and Employee Retirement Income Security Act (ERISA) Litigation*, No. 09-md-2058 (S.D.N.Y.) ($2.425 billion recovery with Bernstein Litowitz and Kessler Topaz as co-lead counsel); *In re Citigroup Inc. Bond Litigation*, No. 08-cv-9522 (S.D.N.Y.) ($730 million recovery with Bernstein Litowitz as lead counsel and Kessler Topaz as additional counsel); *In re Wachovia Preferred Securities & Bond/Notes Litigation*, No. 09-cv-6351 (S.D.N.Y.) ($627 million recovery with Bernstein Litowitz and Kessler Topaz as co-lead counsel); *In re Lehman Bros. Equity/Debt Securities Litigation*, No. 08-cv-5523 (S.D.N.Y.) ($615 million recovery with Bernstein Litowitz and Kessler Topaz as co-lead counsel); and *In re JPMorgan Chase & Co. Securities Litigation*, No. 12-cv-3852 (S.D.N.Y.) ($150 million recovery with Bernstein Litowitz and Kessler Topaz as co-lead counsel).  Furthermore, Bernstein Litowitz and Kessler Topaz are currently serving together as co-lead counsel in: *In re Kraft Heinz Securities Litigation*, No. 19-cv-1339 (N.D. Ill.); *In re HP Inc. Securities Litigation*, No. 20-cv-1260 (N.D. Cal.); and *Cohen v. Luckin Coffee Inc.*, No. 20-cv-1293 (S.D.N.Y.).

The Court should also approve the selection of Carella Byrne as Liaison Counsel for the Class.  Carella Byrne, which maintains an office in this District, is a leading law firm for general and complex litigation, and is recognized throughout the United States for its extensive range of

16

capabilities and expertise. The firm has extensive experience prosecuting securities and other class actions in both a lead and liaison counsel capacity, and has helped achieve billions of dollars of recoveries for investors and other injured parties. For instance, Carella Byrne served as liaison counsel in *In re Merck & Co., Inc. Securities, Derivative & "ERISA" Litigation*, No. 05-cv-1151 (D.N.J.), which resulted in a recovery of $1.06 billion for investors. Carella Byrne also served as liaison counsel in *In re Schering-Plough Corporation/Enhance Litigation*, No. 08-cv-397 (D.N.J.), and *In re Merck & Co. Inc. Vytorin/Zetia Securities Litigation*, No. 08-cv-2177 (D.N.J.), which resulted in combined settlements of $688 million for the class. Accordingly, Carella Byrne is well qualified to represent the Class as Liaison Counsel.

Thus, the Court may be assured that by granting this motion, the Class will receive the highest caliber of legal representation. Accordingly, the Court should approve New England Carpenters' and Massachusetts Laborers' selection of Bernstein Litowitz and Kessler Topaz as Lead Counsel and Carella Byrne as Liaison Counsel for the Class.

## C.     The Related Actions Should Be Consolidated

There are three related securities fraud class actions pending in this District against Defendants:

| Case | Civil No. | Date Filed |
|---|---|---|
| *Service Lamp Corporation Profit Sharing Plan v. Carnival Corporation* | 1:20-cv-22202 | May 27, 2020 |
| *Elmensdorp v. Carnival Corporation* | 1:20-cv-22319 | June 3, 2020 |
| *Atachbarian v. Carnival Corporation* | 1:20-cv-23011 | July 21, 2020 |

Each of the plaintiffs in the above-captioned actions is an investor in Carnival and asserts claims against common defendants and present virtually identical factual and legal issues because they each assert claims under Sections 10(b) and 20(a) of the Exchange Act against Carnival and its senior executives, and are premised upon substantially similar alleged misstatements

17

concerning Defendants' adherence to its health and safety protocols in the wake of the COVID-19 pandemic, Carnival's role in facilitating the transmission of the virus, and the Company's violations of port-of-call regulations.[5]   Indeed, the Court has already consolidated *Service Lamp* and *Elmensdorp*, upon finding that the cases "have common questions of fact."   ECF No. 10. Moreover, *Service Lamp* asserts claims on behalf of investors in Carnival "securities," a term that is broadly construed and unquestionably includes the claims asserted in *Atachbarian* on behalf of investors in call or put options on Carnival stock.  *See* 15 U.S.C. § 78c(a)(10) (defining "security" to include "any put, call, straddle, option, or privilege on any security"); *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 751 (1975) ("puts, calls, options, and other contractual rights or duties to purchase or sell securities" are "securities for purposes of Rule 10b-5").

In any event, courts have repeatedly rejected the notion that potential differences in the nature of the investment justifies separate treatment.  *See, e.g.*, *In re Bank of Am. Corp. Sec., Derivative & Emp't Ret. Income Sec. Act (ERISA) Litig.*, 2010 WL 1438980, at *2 (S.D.N.Y. Apr. 9, 2010) (consolidating the actions and denying option investor's motion to represent a putative separate options class); *Johnson v. J.C. Penney Co.*, 2015 WL 12780596, at *3 (E.D. Tex. June

---

[5] While all actions assert the same Exchange Act claims against overlapping Defendants, the *Service Lamp* action asserts a class period of January 28, 2020 to May 1, 2020, while the *Elmensdorp* action asserts a class period of September 26, 2019 to April 30, 2020, and the *Atachbarian* action asserts a class period of January 27, 2020 to May 1, 2020.  These minor differences do not render consolidation inappropriate, however, because the cases present common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation.  *See In re Cendant Corp. Litig.*, 182 F.R.D. 476, 478 (D.N.J. 1998) ("Courts which have addressed the issue have held that differing class periods alone will not defeat consolidation or create a conflict."); *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007) ("Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation.").

18

10, 2015) (same); *Hedick v. Kraft Heinz Co.*, 2019 WL 4958238, at * 9 (N.D. Ill. Oct. 8, 2019) (denying request of investors to be appointed as lead plaintiff to represent a putative separate class of investors that traded derivative securities).   Consolidation of all three actions would promote the conservation of judicial resources by preventing the substantial duplication of labor that would result if the actions were heard by different judges.  *See, e.g.*, *Vincelli v. Nat'l Home Health Care Corp.*, 112 F. Supp. 2d 1309, 1316 (M.D. Fla. 2000) (consolidating actions that "share both factual and legal issues in common").   Accordingly, consolidation of the Related Actions is appropriate under Rule 42(a).

## CONCLUSION

For the reasons stated herein, New England Carpenters and Massachusetts Laborers respectfully request that the Court (i) appoint them as Lead Plaintiff, (ii) approve their selection of Bernstein Litowitz and Kessler Topaz as Lead Counsel and Carella Byrne as Liaison Counsel for the Class, (iii) consolidate all related securities class actions pursuant to Rule 42(a), and (iv) grant such other relief as the Court may deem just and proper.

Dated: July 27, 2020

Respectfully submitted,

*/s/ Zachary S. Bower*
ZACHARY S. BOWER
Florida Bar No. 17506
**CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.**
Security Building
117 NE 1st Avenue
Miami, FL 33132-2125
zbower@carellabyrne.com
Tel: (973) 994-1700
Fax: (973) 994-1744

*Liaison Counsel for Proposed Lead Plaintiff New England Carpenters and Massachusetts Laborers and Proposed Liaison Counsel for the Class*

19

Hannah Ross
Avi Josefson
Michael D. Blatchley
**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444
hannah@blbglaw.com
avi@blbglaw.com
michaelb@blbglaw.com

*Counsel for Proposed Lead Plaintiff New England Carpenters and Massachusetts Laborers and Proposed Lead Counsel for the Class*


Naumon A. Amjed
Darren J. Check
Ryan T. Degnan
**KESSLER TOPAZ MELTZER
  & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
namjed@ktmc.com
dcheck@ktmc.com
rdegnan@ktmc.com
Tel: (610) 667-7706
Fax: (610) 667-7056

*Counsel for Proposed Lead Plaintiff Massachusetts Laborers and Proposed Lead Counsel for the Class*

20

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 27, 2020, I caused a true and correct copy of the foregoing to be filed with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

/s/ Zachary S. Bower
ZACHARY S. BOWER
Florida Bar No. 17506