**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| SERVICE LAMP CORPORATION PROFIT SHARING PLAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CARNIVAL CORPORATION, ARNOLD W. DONALD, and DAVID BERNSTEIN,<br><br>Defendants. | Case No. 1:20-cv-22202-KMM<br><br>Judge K. Michael Moore<br><br><u>CLASS ACTION</u><br><br><u>ORAL ARGUMENT REQUESTED</u> |
| JOHN P. ELMENSDORP, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CARNIVAL CORPORATION, CARNIVAL PLC, ARNOLD W. DONALD, DAVID BERNSTEIN, and MICKY ARISON,<br><br>Defendants. | Case No. 1:20-cv-22319-KMM<br><br>Judge K. Michael Moore |
| ABRAHAM ATACHBARIAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CARNIVAL CORPORATION, CARNIVAL PLC, ARNOLD W. DONALD, DAVID BERNSTEIN, and MICKY ARISON,<br><br>Defendants. | Case No. 1:20-cv-23011-RNS<br><br>Judge Robert N. Scola |

**DECLARATION OF ETAN MARK IN SUPPORT OF ROY AND JOAN MCCARROLL'S MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL**

I, Etan Mark, declare as follows:

I am a member in good standing of the bar of the State of Florida and am admitted to practice before this Court. I am a Partner at the law firm of Mark Migdal & Hayden proposed Liaison Counsel for the Class. I submit this Declaration in support of the Motion filed by proposed Lead Plaintiffs Roy and Joan McCarroll for the entry of an Order: (i) consolidating the above-captioned actions; (ii) appointing Roy and Joan McCarroll as Lead Plaintiffs; (iii) approving Roy and Joan McCarroll's selection of Bernstein Liebhard LLP as Lead Counsel for the Class and Mark Migdal & Hayden as Liaison Counsel to the Class; and (iv) granting such other and further relief as the Court may deem just and proper.

Attached hereto as Exhibits A through E are true and correct copies of the following documents:

EXHIBIT A:   Signed Certification of Roy and Joan McCarroll, pursuant to the requirements of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(2);

EXHIBIT B:   Loss analysis for Roy and Joan McCarroll;

EXHIBIT C:   Notice of pendency of *Service Lamp Corporation Profit Sharing Plan v. Carnival Corporation et al.*, No. 1:20-cv-22202 (S.D. Fla.), published on May 27, 2020;

EXHIBIT D:   Firm Resume of Bernstein Liebhard; and

EXHIBIT E:   Firm Resume of Mark Migdal & Hayden.

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge.

DATED:  July 27, 2020

Respectfully submitted,

_____

Etan Mark, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2020, a true and accurate copy of the above document was electronically filed with the Clerk of the Court by using the CM/ECF system which will send Notice of Electronic Filing to all counsel of record.

/s/ Etan Mark
Etan Mark, Esq.

# EXHIBIT A

DocuSign Envelope ID: 2E0E0753-6B13-42E5-9889-1C93A0C76850

## CERTIFICATION OF NAMED PLAINTIFFS
## PURSUANT TO FEDERAL SECURITIES LAWS

ROY and JOAN MCCARROLL ("Plaintiffs"), declare the following as to the claims asserted under the federal securities laws:

1.      Plaintiffs have reviewed a complaint filed in this matter and have authorized the filing of a motion for appointment as lead plaintiffs.  Plaintiffs retain Bernstein Liebhard LLP and such counsel they deem appropriate to associate with to pursue such action.

2.      Plaintiffs did not purchase or acquire the security that is the subject of this action at the direction of Plaintiffs' counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.      Plaintiffs, individually or as part of a group, are willing to serve as representative parties on behalf of the class, including providing testimony at deposition and trial, if necessary. A lead plaintiff is a representative party who acts on behalf of other class members in directing the action, and whose duties may include testifying at deposition and trial.  Plaintiffs understand that the litigation is not settled, this is not a claim form, and sharing in any recovery is not dependent upon the execution of this Certification.

4.      Plaintiffs' transactions in CARNIVAL CORPORATION securities during the relevant period as specified in the complaint are set forth in "Attachment A" to this Certification.

5.      Plaintiffs have not sought to serve or served as a representative party in a class action that was filed under the federal securities laws within the three-year period prior to the date of this Certification.

6.      Plaintiffs will not accept any payment for serving as representative parties on behalf of the class beyond Plaintiffs' pro rata share of any recovery, except as ordered and approved by the court, any award for reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

We declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED: July 23, 2020        DATED: July 23, 2020
_____.                   _____.

DocuSigned by:               DocuSigned by:

A920BEF77EC46C...            A620BDF774BC46C...
ROY MCCARROLL                JOAN MCCARROLL

DocuSign Envelope ID: 2E0E0753-6B13-42F5-9889-1C93A0C76850

## ATTACHMENT A

ROY and JOAN MCCARROLL

Transactions in CARNIVAL CORPORATION

| TRANSACTION TYPE | DATE | SHARES | PRICE |
|---|---|---|---|
| Sale | 12/19/2019 | 9,300 | $47.00 |
| Sale | 12/24/2019 | 1,700 | $50.05 |
| Sale | 12/24/2019 | 6,800 | $50.05 |
| Purchase | 1/8/2020 | 1,800 | $48.35 |
| Purchase | 1/8/2020 | 3,000 | $48.40 |
| Purchase | 1/8/2020 | 4,000 | $48.35 |
| Sale | 1/16/2020 | 1,800 | $50.05 |
| Sale | 1/16/2020 | 4,000 | $50.05 |
| Sale | 1/16/2020 | 3,000 | $50.05 |
| Purchase | 1/24/2020 | 1,850 | $49.75 |
| Purchase | 1/24/2020 | 7,300 | $49.75 |
| Purchase | 1/28/2020 | 2,100 | $48.20 |
| Purchase | 1/28/2020 | 9,300 | $48.50 |

# EXHIBIT B

**Carnival Corporation (NYSE : CCL)**

FIFO/LIFO Losses
Class Period:  09/26/2019 - 05/01/2020

Hold Price:        $16.1803

| MOVANT | SETTLEMENT DATE | SHARES | PURCHASE PRICE | PURCHASE AMOUNT | SETTLEMENT DATE | SHARES | SALES PRICE | SALES AMOUNT | SHARES HELD | ESTIMATED VALUE (1) | ESTIMATED LOSSES |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | PURCHASE TRANSACTIONS | | | | SALES TRANSACTIONS | | | | | |
| ROY and JOAN MCCARROLL | pre-class | 17,800 | | | 12/19/19 | 9,300 | 47.00 | | | | |
| | | | | | 12/24/19 | 1,700 | 50.05 | | | | |
| | | | | | 12/24/19 | 6,800 | 50.05 | | | | |
| | 01/08/20 | 1,800 | 48.35 | 87,030.00 | 01/16/20 | 1,800 | 50.05 | 90,090.00 | | | |
| | 01/08/20 | 3,000 | 48.40 | 145,200.00 | 01/16/20 | 4,000 | 50.05 | 200,200.00 | | | |
| | 01/08/20 | 4,000 | 48.35 | 193,400.00 | 01/16/20 | 3,000 | 50.05 | 150,150.00 | | | |
| | 01/24/20 | 1,850 | 49.75 | 92,037.50 | | | | | | | |
| | 01/24/20 | 7,300 | 49.75 | 363,175.00 | | | | | | | |
| | 01/28/20 | 2,100 | 48.20 | 101,220.00 | | | | | | | |
| | 01/28/20 | 9,300 | 48.50 | 451,050.00 | | | | | | | |
| **ROY and JOAN MCCARROLL Totals** | | **29,350** | | **$1,433,112.50** | | **8,800** | | **$440,440.00** | **20,550** | **$332,505.97** | **($660,166.53)** |

(1) Common Stock held as of the date of this filing are valued using the average price of $16.1803 per share.

# EXHIBIT C

# Pomerantz Law Firm Announces the Filing of a Class Action against Carnival Corporation and Certain Officers – CCL

 Email    Print Friendly    Share

May 27, 2020 17:21 ET | **Source:** Pomerantz LLP

NEW YORK, May 27, 2020 (GLOBE NEWSWIRE) -- Pomerantz LLP announces that a class action lawsuit has been filed against Carnival Corporation ("Carnival" or the "Company") (NYSE: CCL) and certain of its officers. The class action, filed in United States District Court for the Southern District of Florida, and docketed under 20-cv-22202, is on behalf of a class consisting of investors who purchased or otherwise, acquired Carnival common stock and securities between January 28, 2020, and May 1, 2020, inclusive (the "Class Period"), seeking to pursue remedies against Carnival and certain of its officers under the Securities Exchange Act of 1934 (the "Exchange Act").

If you are a shareholder who purchased Carnival securities during the class period, you have until July 27, 2020, to ask the Court to appoint you as Lead Plaintiff for the class. A copy of the Complaint can be obtained at **www.pomerantzlaw.com**. To discuss this action, contact Robert S. Willoughby at **rswilloughby@pomlaw.com** or 888.476.6529 (or 888.4-POMLAW), toll-free, Ext. 7980. Those who inquire by e-mail are encouraged to include their mailing address, telephone number, and the number of shares purchased.

**[Click here for information about joining the class action]**

Carnival Corporation & Plc operates as a leisure travel company. The company's ships visit approximately 700 ports under the Carnival Cruise Line, Princess Cruises, Holland America Line, Seabourn, P&O Cruises (Australia), Costa Cruises, AIDA Cruises, P&O Cruises (UK), and Cunard brand names. It also provides vacations to various cruise destinations, as well as owns and operates hotels, lodges, glass-domed railcars, and motor coaches. The company sells its cruises primarily through travel agents and tour operators.

The Complaint alleges that throughout the Class Period, Defendants made materially false and/or misleading statements, and/or failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors that: (1) the Company's medics reported increasing events of COVID-19 illness on the Company's ships; (2) Carnival had violated port of

call regulations by concealing the amount and severity of COVID-19 infections onboard its ships; (3) in responding to the outbreak of COVID-19, Carnival failed to follow the Company's health and safety protocols developed in the wake of other communicable disease outbreaks; (4) by continuing to operate, Carnival ships were responsible for continuing to spread COVID-19 at various ports throughout the world; and (5) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

On April 16, 2020, when the Company still had at sea two (2) of its cruise ships, *Bloomberg Businessweek* published an article titled "Carnival Executives Knew They Had a Virus Problem, But Kept the Party Going." In that article, it was revealed that Carnival may have failed to adequately protect passengers from COVID-19 on a series of cruise voyages, and indeed continued to operate new cruise departures despite its knowledge that the threat posed by COVID-19 had materialized on its ships and was likely to proliferate further.

On this news, the Company's share price fell $0.53 per share from a prior close of $12.38 per share to close at $11.85 per share on April 16, 2020.

Then, on May 1, 2020, *The Wall Street Journal* published an article titled "Cruise Ships Set Sail Knowing the Deadly Risk to Passengers and Crew." That article detailed how cruise ships, particularly Carnival ships, facilitated the spread of COVID-19, and provided new facts on early warning signs Carnival and its affiliated cruise lines possessed and the Company's disclosure failures. Further, the article also noted that The House Committee on Transportation and Infrastructure had requested documents from Carnival related "to Covid-19 or other infectious disease outbreaks aboard cruise ships" and that testimony from a separate investigation in Australia revealed that Carnival and its affiliated cruise lines may have misled shore officials by concealing those exhibiting COVID-19 symptoms before docking.

On this news, the Company's share price fell $1.97 per share from a prior close of $15.90 per share to close at $13.93 per share on May 1, 2020.

The Pomerantz Firm, with offices in New York, Chicago, Los Angeles, and Paris is acknowledged as one of the premier firms in the areas of corporate, securities, and antitrust class litigation. Founded by the late Abraham L. Pomerantz, known as the dean of the class action bar, the Pomerantz Firm pioneered the field of securities class actions. Today, more than 80 years later, the Pomerantz Firm continues in the tradition he established, fighting for the rights of the victims of securities fraud, breaches of fiduciary duty, and corporate misconduct. The Firm has recovered numerous multimillion-dollar damages awards on behalf of class members. See **www.pomerantzlaw.com**.

CONTACT:
Robert S. Willoughby
Pomerantz LLP
**rswilloughby@pomlaw.com**

## Newswire Distribution Network & Management

- Home
- Newsroom
- RSS Feeds
- Legal

## About Us

**GlobeNewswire** is one of the world's largest newswire distribution networks, specializing in the delivery of corporate press releases financial disclosures and multimedia content to the media, investment community, individual investors and the general public.

© 2020 GlobeNewswire, Inc. All Rights Reserved.

# EXHIBIT D

# Bernstein Liebhard LLP

**10 East 40th Street**
**New York, New York 10016**
**ph:  (212) 779-1414**
**fax: (212) 779-3218**

**www.bernlieb.com**

## FIRM RESUME

Bernstein Liebhard LLP (the "Firm") was formed in 1993 as a boutique litigation practice to represent institutional and individual investors in shareholder class and derivative litigation and consumers in consumer fraud and antitrust litigation.

The Firm is the only firm in the country to be named by THE NATIONAL LAW JOURNAL to the "Plaintiffs' Hot List," recognizing the top plaintiffs' firms in the country, for thirteen years.  The Firm is also included in THE NATIONAL LAW JOURNAL's "Plaintiffs' Hot List Hall of Fame" and was recognized by THE NATIONAL LAW JOURNAL as one of a select group of "America's Elite Trial Lawyers" for three consecutive years.  The Firm was selected for its "exemplary and cutting-edge work" on behalf of plaintiffs in the Securities Law and Antitrust categories and for "big victories in complex cases that have a wide impact on the law and legal business."

The Firm has been listed for the eleven consecutive years in THE LEGAL 500, a guide to the best commercial law firms in the United States.  THE LEGAL 500 is an independent "guide to 'the best of the best' – the pre-eminent firms in the world's strongest and most competitive legal market."  In addition, the Firm was listed for four consecutive years in BENCHMARK PLAINTIFF: THE DEFINITIVE GUIDE TO AMERICA'S LEADING PLAINTIFF FIRMS & ATTORNEYS ("BENCHMARK PLAINTIFF").  BENCHMARK PLAINTIFF focuses exclusively on plaintiff litigation, "highlighting firms and individuals responsible for bringing the cases that matter."  The Firm has also received

1

Martindale-Hubbell's highest ratings for legal ability (A) and ethical standards (V) and "Peer Review Rated 2012" by the American Association of Justice.

Bernstein Liebhard has also been selected by the legal publication LAW360 to its list of the top six plaintiff-side securities firms in the nation.  The Firm was recognized for its "leadership work" in connection with the $586 million settlement in *In re Initial Public Offering Securities Litigation*, No. 21 MC 92 (S.D.N.Y.) and the $400 million settlement in *In re Marsh & McLennan Cos., Inc. Securities Litigation*, No. 04-CV-8144 (CM) (S.D.N.Y.).  The Firm was also recognized by RiskMetrics Group, Inc. for three consecutive years in its annual Securities Class Action Services list as one of the top plaintiffs' securities class action firms in the country, as measured by annual settlement amounts.

## PRACTICE AREAS

### *SECURITIES LITIGATION*

Since its inception in 1993, Bernstein Liebhard has represented individual and institutional investors in securities litigation, recovering over $3.5 billion for the classes we have represented.  The Firm has successfully served as sole lead counsel and as co-lead counsel in some of the largest securities class action cases in the past decade and has actively litigated scores of actions to successful conclusions.  For example, the Firm, as lead, executive committee counsel, and co-counsel has successfully obtained many multi-million dollar recoveries.  These cases include, among others:

- ***In re Initial Public Offering Securities Litigation***, No. 21 MC 92 (S.D.N.Y. 2009) (a coordinated litigation of over 300 securities class actions, in which a $586 million settlement was obtained after seven full-day mediation sessions);

- ***In re Marsh & McLennan Cos., Inc. Securities Litigation***, No. 04-CV-8144 (CM) (S.D.N.Y. 2009) ($400 million settlement of an action brought against the world's largest insurance broker, arising from the company's improper practice of steering its clients to insurance companies that agreed to pay it billions of dollars in contingent commissions);

2

- *In re Beacon Associates Litigation*, No. 09-CIV-0777 (LBS) (AJP) (S.D.N.Y. 2013) ($219 million settlement on behalf of hedge funds that invested with Bernard L. Madoff, which resolved claims in the *In re Beacon Associates Litigation*, No. 09-CIV-0777 (LBS) (AJP) (S.D.N.Y.) and *In re J.P. Jeanneret Associates Inc.*, No. 09-CIV-3907 (CM) (AJP) (S.D.N.Y.) class actions, as well as several additional lawsuits in federal and New York State court against the settling defendants, including suits brought by the United States Department of Labor and the New York Attorney General);

- *In re Royal Dutch/Shell Transport Securities Litigation*, No. 04-374 (JAP) (D.N.J. 2008) (the case, which arose from Royal Dutch/Shell's 2004 announcements that it had overstated its proved oil and gas reserves by a material amount – about *one*-third of its proved reserves, settled for $166.6 million);

- *In re Fannie Mae Securities Litigation,* No. 04-1639 (FJL) (D.D.C. 2013) (settlement of $153 million, the largest securities settlement in the D.C. Circuit since the passage of the PSLRA, and ranks among the top 5% of securities class action settlements of all time);

- *In re Tremont Securities Law, State Law and Insurance Litigation*, No. 08-CV-11117 (S.D.N.Y. 2011) (settlement in excess of $100 million, in which the Firm represents investors who lost millions of dollars in hedge funds that invested with Bernard L. Madoff);

- *In re Cigna Corp. Securities Litigation*, No. 02CV8088 (E.D. Pa. 2007) ($93 million settlement obtained following four years of vigorous litigation);

- *In re Bankers Trust Securities Litigation*, No. 98-CV-08460 (S.D.N.Y. 2002) ($58 million settlement; 100% recovery of loss);

- *In re Procter & Gamble Co. Securities Litigation*, No. 00-CV-00190 (S.D. Ohio 2001) ($49 million settlement);

- *In re Bausch & Lomb, Inc. Securities Litigation*, No. 94-CV-06270 (W.D.N.Y. 1998) ($42 million settlement);

- *City of Austin Police Retirement System v. Kinross Gold Corp. et al.*, No. 12-CV-01203-VEC (S.D.N.Y.) ($33 million settlement).

- *In re BellSouth Corp. Securities Litigation*, No. 02-CV-2142 (N.D. Ga. 2007) ($35 million settlement);

- *In re Beazer Homes U.S.A., Inc. Securities Litigation*, No. 07-CV-725-CC (N.D. Ga. 2009) ($30.5 million settlement);

- *Di Giacomo v. Plains All American Pipeline, LP*, No. 99-CV-4137 (S.D. Tex. 2001) ($24.1 million settlement);

- *In re Riscorp Inc. Securities Litigation*, No. 96-02374 (M.D. Fla. 1998) ($21 million settlement);

- *In re Tower Group International, Ltd. Securities Litigation*, No. 13-CV-5852 (AT) (S.D.N.Y. 2015) ($20.5 million settlement partial settlement);

3

- *In re Lumenis Securities Litigation*, No. 02-CV-1989 (S.D.N.Y. 2008) ($20.1 million settlement);

- *In re TASER International Securities Litigation*, No. C05-0115 (D. Ariz. 2007) ($20 million settlement);

- *In re Gilat Satellite Networks, Ltd. Securities Litigation*, No. 02-CV-1510 (E.D.N.Y. 2007) ($20 million settlement);

- *In re Kit Digital, Inc. Securities Litigation*, No. 12-CV-04199 (VM) (S.D.N.Y. 2013) $6,001,999 settlement);

- *Peters v. JinkoSolar Holdings*, No. 11-CV-07133 (JPO) (S.D.N.Y. 2015) ($5.05 million settlement); and

- *Szymborski v. Ormat Technologies, Inc.*, No. 10-CV-00132-ECR (D. Nev. 2012) ($3.1 million settlement).

The Firm has also served as lead counsel in numerous corporate governance and corporate takeover litigations (both hostile and friendly) on behalf of stockholders of public corporations. The Firm has prosecuted actions challenging numerous highly publicized corporate transactions which violated fair process and fair price, and the applicability of the business judgment rule. These cases have resulted in multi-million dollar improvements in transaction terms and in strengthening the democratic rights of public shareholders:

- *In re Freeport-McMoRan Copper & Gold, Inc. Derivative Litigation*, No. 8145-VCN (Del. Ch. 2015) (the Firm, as co-lead counsel, recovered $153.5 million for shareholders and obtained an unprecedented provision allowing the settlement to be distributed to Freeport shareholders in the form of a special dividend. The settlement is one of the largest derivative settlements in the Delaware Court of Chancery history);

- *In re Great Wolf Resorts, Inc. Shareholders Litigation*, No. C.A. 7328-VCS (Del. Ch. 2012) (the Firm obtained the elimination of stand-still provisions that allowed third parties to bid for Great Wolf Resorts, Inc. ("Great Wolf") – resulting in the emergence of a third-party bidder and approximately $94 million in additional merger consideration for Great Wolf's shareholders);

- *In re Atlas Energy, Inc. Shareholders Litigation*, No. C.A. 5990-VCL (Del. Ch. 2011) (the Firm obtained a settlement providing an additional $7.45 million in merger consideration for Atlas Energy shareholders);

- *In re Pride International, Inc. Shareholders Litigation*, No. C.A. 6201-VCS (Del. Ch. 2011) (after the completion of expedited discovery and prior to a preliminary injunction hearing, the Firm obtained a proposed settlement providing material modifications to a contested merger agreement and the dissemination of supplemental disclosures in connection with a proxy statement sent to Pride shareholders);

4

- ***In re Mutual Funds Investment Litigation [Federated Sub-Track]***, No. 04-MD-15861 (CCB) (D. Md. 2010) (representing investors in Federated Investors Funds fluctuating mutual funds, the Firm obtained a total settlement of $3,381,500 in addition to significant corporate governance reforms.  The benefits obtained by the Firm were in addition to $72 million that Federated Investors, Inc. ("Federated") paid pursuant to the settlement of regulatory investigations concerning Federated's alleged market-timing and late-trading activities.  The Firm also obtained declaratory and injunctive relief to ensure that the alleged market-timing and late-trading activities would not be repeated);

- ***In re Mutual Funds Investment Litigation [Bank of America/Nations Sub-Track]***, No. 04-MD-15862 (JFM) (D. Md. 2010) (representing investors in Nations Fund Mutual Funds (the "Nations Funds"), the Firm, with lead counsel, achieved settlements that resolved the class action and several related litigations arising from alleged market timing and late trading in various mutual funds in the Bank of America mutual fund family.  The settlements established a jointly-recommended minimum allocation of at least $60 million to shareholders of the Nations Funds from a fund created as a result of Bank of America's settlement of regulatory investigations.  In addition to the monetary allocation, the settlements provide for corporate governance changes concerning the detection and prevention of future market timing and late trading in the Nations Funds.  The Firm and lead counsel also recovered an additional $2,100,000 from non-Bank of America defendants);

- ***Kwait v. Berman***, No. 5306-CC (Del. Ch. 2010) (obtained significant amendments to a voting agreement agreed to by RiskMetrics Group, Inc.'s interested shareholders in connection with a proposed merger, as well as additional disclosures concerning the proposed merger);

- ***In re UnitedGlobalCom Shareholders Litigation***, No. 1012-VCS (Del. Ch. 2008) (plaintiffs, former shareholders of UnitedGlobalCom ("UGC"), successfully achieved a $25 million settlement in a case alleging that a minority exchange transaction with UGC's majority shareholder did not meet the entire fairness standard);

- ***In re Cablevision Systems Corp. Shareholders Litigation***, No. 05-009752 (N.Y. Sup. Ct. 2007) (plaintiffs successfully deterred a going-private transaction proposed by Cablevision's controlling shareholder at an inadequate price.  The proposal was ultimately converted to a $2.5 billion special dividend payable ratably to all Cablevision shareholders.  In connection with the settlement, Cablevision agreed to implement corporate governance reforms and other procedures to ensure that the special dividend was financially fair to Cablevision and its public shareholders);

- ***In re Plains Resources, Inc. Shareholders Litigation***, No. 071-N (Del. Ch. 2004) (plaintiffs challenged the buyout of the public shares of Plains Resources by two of the company's senior executives and Vulcan Energy.  Through the Firm's aggressive efforts as co-lead counsel, which included motions for expedited discovery and a preliminary injunction, the price paid for Plains Resources shares in connection with the buyout was increased twice, yielding an additional $67 million in merger consideration);

- ***In re MONY Group Inc. Shareholder Litigation***, No. 20554 (Del. Ch. 2004) (Delaware Chancery Court issued a preliminary injunction enjoining the shareholder vote on the merger pending the issuance of curative disclosures by the MONY defendants; as part of the settlement, certain of MONY's executives forfeited approximately $7.4 million in change-of-control payments, funding an increase in the consideration received by MONY's shareholders in the merger);

5

- *In re Arco Chemical Co. Shareholders Litigation*, No. 16493-NC (Del. Sup. 2002) (the Firm's advocacy led the Delaware Supreme Court to require the company to broaden the rights of public shareholders in change-of-control transactions);

- *In re AXA Financial Shareholders Litigation*, No. 18268 (Del. Ch. 2002) ($500 million increased merger consideration);

- *In re Kroll-O'Gara Shareholders Litigation*, No. 99 CIV. 11387 (S.D.N.Y. and Ohio State Ct. 2002) (derivative case brought on behalf of Kroll-O'Gara to remedy internecine disputes among the company's senior management; the case settled with significant corporate governance changes, including an independent committee of directors to oversee change-of-control transactions and certain other internal management issues);

- *Shapiro v. Quickturn Design Systems, Inc.*, No. 16850-NC (Del. Ch. 2002) (the Firm successfully represented public stockholders in a trial in Delaware Chancery Court that invalidated a modified "deadhand" poison pill anti-takeover provision; following the affirmance of the trial verdict by the Delaware Supreme Court, the Firm secured the implementation of procedures designed to ensure a full and active auction maximizing shareholder value, paving the way for a takeover of Quickturn at a premium of approximately $51 million);

- *In re Ascent Entertainment Group Inc. Derivative Litigation*, No. 17201-NC (Del. Ch. 2000) (involving the proposed sale of the Colorado Avalanche and the Denver Nuggets, both owned at the time by Ascent, to Ascent's CEO and Chairman; by virtue of the Firm's representation, Ascent commenced a new auction for the sports teams, which resulted in a higher price (approximately $40 million) to be paid for the teams; also, by virtue of the settlement, the parties agreed that the plaintiffs could appoint a director of their choosing to the Ascent board);

- *In re Foamex International Inc. Shareholders Litigation*, No. 16259-NC (Del. Ch. 2000) (the Firm's efforts culminated in the requirements that the company appoint two independent directors, that it constitute a nominating committee to search for and recommend new independent directors, and that any related-party transactions be reviewed and approved by a majority of disinterested directors);

- *In re Archer Daniels Midland Corp. Derivative Litigation*, No. 14403 (Del. Ch. 1997) (the Firm, as lead counsel, effected important corporate governance improvements, including the requirement that a majority of the board be comprised of outside directors; the creation of a nominating committee; the requirement that the audit committee oversee corporate compliance; and the requirement that the audit committee be composed of outside directors); and

- *In re Sears, Roebuck Derivative Litigation*, No. 88 CH 10009 (Ill. Ch. Ct.) (Senior Partner Stanley D. Bernstein pioneered the use of litigation to achieve corporate governance reform in the early 1990s, gaining the addition of outside directors to Sears' board, and expanding the role of outside directors on the company's nominating committee).

6

## *CONSUMER LITIGATION*

Bernstein Liebhard also has an active consumer practice.  The Firm represented thousands of affected tenants of the Stuyvesant Town and Peter Cooper Village rental apartment complexes in Manhattan.  The case centered on allegations that landlords of the rental complexes have, for many years, illegally charged market-rate rents for apartments that should have been rent stabilized under New York City's Rent Stabilization Law, thereby overcharging each affected tenant thousands of dollars per year.  The core legal issue was whether landlords could permissibly deregulate and charge market-rate rents for certain "luxury" apartment units in these complexes in years in which the landlords were simultaneously receiving New York City tax abatements, known as "J-51" benefits.  Prior to obtaining the $146.85 million dollar settlement, the Firm, as co-lead counsel, obtained a landmark ruling in favor of tenants from the New York Court of Appeals, the highest appellate court in New York State.  The Court of Appeals ruled that the New York statutory scheme prevented landlords of rent stabilized buildings from charging market-rate rents while receiving J-51 benefits for as long as they continue to receive those tax benefits.  The Firm continued to aggressively litigate the case and brought nine other cases based on the this decision.  The decision overturned state agency regulations that had been in effect for at least nine years.  CRAIN'S NEW YORK BUSINESS described it as "a decision that will have colossal implications for tenants and landlords across the city."

The Firm won a verdict of $14.7 million in 2009 for the clients and class we represented in *Artie's Auto Body, Inc. v. Hartford Fire Insurance Co.*, No. X08-CV-03-0196141S (CLD) (Conn. Super. Ct.), following a four-week jury trial.  In addition to the $14.7 million jury verdict, in 2013 the Firm obtained a $20 million punitive damage award – the largest punitive damage award in the history of Connecticut's Unfair Trade Practices Act.  Regrettably, the verdict and the punitive damage award were reversed on appeal.

The Firm also successfully litigated a consumer class action which resulted in the re-labeling of a popular home medical testing device to properly reflect the product's limitation in

7

*Wagner v. Inverness Medical Innovations, Inc.*, No. 03-cv-404-J-20 (M.D. Fla.) and obtained favorable settlements in consumer fraud class actions for classes consisting of owners and lessees of certain Volvo automobiles ($30 million) and certain Saab automobiles ($4.25 million).

## ANTITRUST LITIGATION

The Firm's antitrust practice is also active and growing. The Firm served as one of the co-lead counsel in the *In re Processed Egg Products Antitrust Litigation*, No. 08-MD-2002 (E.D. Pa.), where we obtained settlements in excess of $125 million from multiple defendants in this multi-district antitrust case filed against sixteen trade groups and producers alleging an industry-wide, price-fixing conspiracy that raised the price of shell eggs and egg products in violation of the Sherman Antitrust Act.

The Firm served on the Plaintiffs' Executive Committee in *In Re Polyurethane Foam Antitrust Litigation*, MDL No. 2196 (N.D. Ohio), a case involving a price-fixing conspiracy by some of the world's largest manufacturers of flexible polyurethane foam. The case settled for over $400 million just days before trial.

The Firm was a member of the Direct Purchaser Plaintiffs' Executive Committee in *In re Fresh and Process Potatoes Antitrust Litigation*, No. 10-MD-02186-BLW-CWD (D. Idaho), an antitrust class action commenced on behalf of direct purchasers of fresh and processed potatoes that resulted in a $19.5 million settlement.

This Firm also served on the court-appointed Plaintiffs' Executive Committee in the *In re Pool Products Distribution Market Antitrust Litigation*, an antitrust case commenced on behalf of a nationwide class of direct purchasers of pool products, filed against a pool products distributor and the three largest manufacturers of pool products in the United States. The plaintiffs asserted claims against all defendants under Section 1 of the Sherman Act for conspiracy to restrain trade, and against the pool products distributor under Section 2 of the Sherman Act for attempted monopolization. As part of the Plaintiffs' Executive Committee, the Firm secured approximately $16 million recovery for the class.

8

On March 24, 2016, the Firm was appointed to the Executive Committee for the Direct Purchaser Plaintiffs in *In re Packaged Seafood Products Antitrust Litigation*, an action consolidated for pretrial proceedings in the Southern District of California.  This action arises out of a conspiracy by the largest producers of packaged seafood products ("PSPs") in the United States to fix, raise, maintain, and/or stabilize prices for PSPs within the United States, and its territories and the District of Columbia, in violation of Sections 1 and 3 of the Sherman Antitrust Act (15 U.S.C. §§ 1, 3).

The Firm is also part of the litigation team in *In re Broiler Chicken Antitrust Litigation*, a national class action alleging that beginning in 2008, broiler chicken producers coordinated their efforts to artificially reduce the supply of broiler chickens for sale in the United States in violation of Section 1 of the Sherman Act.

## *COMMERCIAL LITIGATION*

Bernstein Liebhard also has an active commercial litigation practice, where it represents businesses, public pension funds, and other entities in high stakes, complex litigation.  For example, the Firm represented the New Mexico Public Employees Retirement Association ("PERA") in an individual action against Wells Fargo Bank and affiliates arising from defendants' mismanagement of PERA's securities lending program.  On the eve of trial, the Firm negotiated a $50 million recovery for PERA, representing over 65% of PERA's damages.

The Firm represented the New Mexico Educational Retirement Board ("ERB") in an action against Wells Fargo Bank and affiliates arising from the mismanagement of ERB's securities lending program.  After two years of litigation, the Firm successfully negotiated a $5 million recovery for the ERB – representing over 50% of its damages.

The Firm acted as special litigation counsel to the Creditors Committee of Pandick Inc. (formerly the largest financial printer in the country) in connection with a complex fraudulent conveyance litigation and successfully recovered from Pandick's banks and directors over $14 million for Pandick's creditors.

9

The Firm also represented the Actrade Liquidation Trust (the "Trust"), the successor to Actrade Financial Technologies, Ltd., a former publicly-traded company on NASDAQ, and Actrade Capital ("Actrade") in two actions – the first (*Meer v. Aharoni*, No. 5141-CC (Del. Ch.)) against Actrade's former Chairman of the Board of Directors related to his misappropriate from Actrade and his fraudulent inflation of Actrade's revenues in order to earn a profit on his options; the second (*Meer v. Deloitte & Touche LLP*, No. 11-cv-06994 (LAK) (S.D.N.Y.)) against Deloitte & Touche, LLP for auditing malpractice and negligence.  The Firm negotiated a $3,050,000 global settlement for both actions in February 2013.

## WHISTLEBLOWER LITIGATION

Bernstein Liebhard also has an active whistleblower practice.  The False Claims Act has proven to be one of the most effective mechanisms to recover funds that have been stolen from the government through fraud by corporations, contractors, and individual wrongdoers.  Since 1986, more than 5,500 *qui tam* actions have been filed and more than $20 billion in settlements and recoveries have been recouped by the government under the False Claims Act.

Although the False Claims Act covers numerous forms of fraud on the government, the False Claims Act does not cover tax fraud.  Blowing the whistle on those who commit tax fraud on the government is governed by the Tax Relief and Health Care Act of 2006.  As with the False Claims Act, the Tax Relief and Health Care Act offers individuals the opportunity to report tax fraud and receive a reward for helping the government recover money lost due to tax fraud or other violations of the tax laws.

In 2010, Congress enhanced the Securities and Exchange Commission's whistleblower program with the adoption of the Dodd-Frank Wall Street Reform and Consumer Protection Act. The amendment, among other things, increases the amount of whistleblower awards payable by the SEC to those who provide the SEC with information concerning violations of the federal securities laws.

BERNSTEIN LIEBHARD LLP

Bernstein Liebhard LLP is dedicated to providing experienced, dedicated, and aggressive representation for whistleblowers looking to blow the whistle on those who commit fraud on the government or who violate the tax laws and the federal securities laws. The Firm's whistleblower lawyers have extensive experience providing legal advice and representation to individuals filing lawsuits against persons and entities who commit fraud and other wrongdoing.

## SUPREME COURT AND APPELLATE PRACTICE

The Firm's Supreme Court and Appellate Practice Group (the "Appellate Practice Group") handles all the Firm's appeals and prepares *amicus curiae* briefs on a *pro bono* basis in important cases affecting the Firm's clients. The group consults with our litigation and trial teams at the earliest stages of litigation to ensure that our clients are well positioned to win not only at the trial level, but also in the event of an appeal by either side.

The securities cases in which the Appellate Practice Group has filed *amicus curiae* briefs include: *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, No. 06-43 (U.S.) and *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, No. 06-484 (U.S.), both before the United States Supreme Court and *In re Dynex Capital Securities Litigation*, No. 06-CV-2902 (2d Cir.), before the United States Court of Appeals for the Second Circuit. These briefs were filed on behalf of eight states and five public pension funds in cases concerning critical issues of investor protection and securities litigation. These states and public pension funds collectively manage approximately $568 billion of pension funds, represent millions of pensioners, and have an acute interest in ensuring that investors' rights are protected.

The Firm also filed an *amicus curiae* brief in the United States Supreme Court on behalf of Professor Arthur R. Miller in *Exxon Shipping Co. v. Baker*, No. 07-219 (U.S.). The appeal, arising from the protracted litigation following the 1989 Exxon Valdez oil spill, addressed

11

complex issues of procedural law, including the proper application of Federal Rule of Civil Procedure 50. The brief, prepared by the Firm at the request of and in collaboration with Professor Miller, identified certain procedural errors by the United States Court of Appeals for the Ninth Circuit that, if ratified by the United States Supreme Court, threatened to undermine the authority of federal district courts to manage their dockets in complex actions.

In October 2009, the Firm filed an *amicus curiae* brief in the United States Supreme Court on behalf of the AARP, a nonpartisan, non-profit organization of nearly forty million members that is dedicated to addressing the needs and interests of people age fifty and over, and the Detectives Endowment Association Annuity Fund in *Merck & Co. v. Reynolds*, No. 08-905 (U.S.), which was decided by the United States Supreme Court in April 2010. Ruling in favor of the plaintiffs, the Court resolved the standard to be applied by lower courts ruling on the definition of the deadline for filing a securities fraud lawsuit under federal law, adopting the view the Firm advocated for its clients: a plain reading of the statute of limitations – "two years after discovery of the facts constituting the violation" – can only mean that the clock starts running when the plaintiff actually discovers facts sufficient to state a claim.

The Appellate Practice Group also filed an *amicus curiae* brief with the United States Supreme Court in support of the plaintiff's position in *Wyeth v. Levine*, No. 06-1249 (U.S.), which was decided by the United States Supreme Court in March 2009. The Court, ruling in favor of the plaintiff, decided that FDA regulations did not preempt consumer lawsuits for injuries caused by defective pharmaceutical drugs.

The Appellate Practice Group filed an *amicus curiae* brief with the United States Court of Appeals for the Second Circuit in *UFCW Local 1776 Participating Employers Health & Welfare Fund 28 v. Eli Lilly & Co.*, No. 09-0222-cv (2d Cir.), on behalf of the AARP and Prescription Access Litigation LLC, in support of plaintiffs-appellees. The *amici's* brief to the Second Circuit argued that deceptive pharmaceutical marketing can affect doctors' medical decisions, harming consumers and leading to high costs and decreased access to treatment. In addition, the group successfully briefed the issue of whether landlords could permissibly deregulate and charge

12

market-rate rents for certain "luxury" apartment units in complexes in years in which the landlords were simultaneously receiving tax abatements from New York City, known as "J-51," before the New York State Court of Appeals in *Roberts v. Tishman Speyer Properties, L.P.*, No. 131 (N.Y.).  The New York State Court of Appeals ruled that the New York statutory scheme prevents landlords of rent stabilized buildings from charging market-rate rents while receiving J-51 benefits for as long as they continue to receive those tax benefits.  The decision is reported at *Tishman Speyer Properties, L.P.*, 13 N.Y.3d 270 (2009).  The case settled in April 2013 for $146.85 million ($68.75 million cash).

## JUDICIAL PRAISE

Courts have repeatedly praised the efforts of the Firm and its partners:

*"I would also like to commend the lawyers in this case.  Extremely thorough professional presentations were made under very trying circumstances . . . . They were all done to the highest quality of the legal profession, and the advocacy was always aggressive but within the bounds of good professional propriety . . . thank you for the excellent job that you did."*

- Honorable Alfred J. Jennings, Jr. of the Connecticut Superior Court (Stamford/Norwalk Division), following a successful four-week jury trial.[1]

_____

*"[L]et me say one more thing.  I compliment[ ] everybody in the way they've presented themselves here and I want you to know that I mean that sincerely . . . .  I'm happy to say that the lawyers in this case have, again, conducted themselves in the highest professional manner.  And I'm also pleased to say that this does not surprise me, having had the opportunity to preside over a lot of these class action litigations . . . ."*

- Honorable Joel A. Pisano of the United States District Court for the District of New Jersey.[2]

---

[1] *Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*, No. X08-CV-03-0196141S (CLD) (Conn. Super. Ct.), Trial Tr., Nov. 17, 2009 at 15.

13

———————————————

*"the quality of the representation to achieve what they [Bernstein Liebhard] have achieved speaks for itself.  The quality was extremely high."*

- Honorable Deborah A. Batts of the United States District Court for the Southern District of New York.[3]

———————————————

*"[Bernstein Liebhard] accomplish[ed] an exceptional result because of the nationwide benefit to all women diagnosed with [Polycystic Ovarian Syndrome] and the benefit to the medical community."*

- Magistrate Judge (now District Court Judge) Marcia Morales Howard of the United States District Court for the Middle District of Florida.[4]

———————————————

*"But I did want to thank . . . counsel [Bernstein Liebhard] for excellent, excellent oral argument.  Certainly helped the Court significantly.  And I want to thank you . . . for what is a sterling indication of what the bar can produce when you have qualified people before it."*

- Judge Stephen A. Bucaria of the Nassau County Supreme Court.[5]

———————————————

*"I'm impressed with the innovative nature . . . of the benefit that's been provided . . . It's my turn to make a compliment in open court:  that the plaintiff is represented by highly competent counsel [Stanley D. Bernstein], a counsel that demonstrates consistently to me an incredible work ethic in achieving the benefits that were achieved here."*

- Vice Chancellor (now Delaware Supreme Court Chief Justice) Myron T. Steele.[6]

———————————————

*"Plaintiffs are represented by counsel [Bernstein Liebhard] who are skilled in federal securities and class action litigation . . . .  Counsel have been diligent and well prepared . . . .  Plaintiffs' counsel has performed an important public service in this action and have done so efficiently and with integrity . . . .  You have the thanks of this court."*

---

[2] *In re Royal Dutch/Shell Transp. Sec. Litig.*, No. 04-374 (JAP) (D.N.J.), Tr. of Hr'g, Sept. 26, 2008 at 60-61.

[3] *In re Lumenis Sec. Litig.*, No. 02-CV-1989 (S.D.N.Y.), Tr. of Hr'g, Aug. 25, 2008 at 6.

[4] Wagner v. Inverness Med. Innovations, Inc., No. 03-CV-404-J-20 (M.D. Fla.).

[5] *Carlson v. Long Island Jewish Hosp.*, No. 020098/05 (N.Y. Sup. Ct.).

[6] *In re Illinois Cent. Corp. S'holders Litig.*, No. 16184 (Del. Ch.), Tr. of Hr'g, Feb. 25, 1999 at 29-30.

BERNSTEIN LIEBHARD LLP

- Senior Judge Denise Cote of the United States District Court for the Southern District of New York.[7]

_____

### *"The quality of the legal work throughout has been high and conscientious. . . ."*

- Judge Reena Raggi of the United States District Court for the Eastern District of New York (now of the United States Court of Appeals for the Second Circuit).[8]

_____

### *"the performance of counsel [Bernstein Liebhard] . . . has been absolutely outstanding. It has been a pleasure to be involved with each of you in handling this case."*

- Chief Judge Gene Carter (now Senior District Judge) of the United States District Court for the District of Maine.[9]

_____

### *"Mr. Bernstein, it has actually been a pleasure getting to know and work with you on this . . . . [Y]ou make a really good presentation."*

- Former Judge Wayne R. Andersen (retired) of the United States District Court for the Northern District of Illinois.[10]

_____

### *"Counsel [Bernstein Liebhard] . . . have been professional and realistic in this matter . . . . The court has been impressed with the competence and candor of counsel . . . ."*

- Former Judge Robert J. Cindrich (retired) of the United States District Court for the Western District of Pennsylvania.[11]

---

[7] *In re Take Two Interactive Software, Inc. Sec. Litig.*, No. 01 CIV. 9919 (S.D.N.Y.), Tr. of Hr'g, Oct. 4, 2002 at 40, 44.

[8] *In re Tower Air, Inc. Sec. Litig.*, No. 94 CIV. 1347 (E.D.N.Y.), Tr. of Hr'g, Feb. 9, 1996 at 52.

[9] *Nensel v. Peoples Heritage Fin. Group, Inc.*, No. 91-324-P-C (D. Me.), Tr. of Hr'g, Dec. 17, 1992 at 12.

[10] *Hager v. Schawk, Inc.*, No. 95 C6974 (N.D. Ill.), Tr. of Hr'g, May 21, 1997 at 22.

[11] *DeCicco v. Am. Eagle Outfitters, Inc.*, No. 95-1937 (W.D. Pa.), Report and Recommendation of Magistrate Judge Kenneth Benson, Nov. 25, 1996 at 6 (adopted as opinion of court by Judge Cindrich, Dec. 12, 1996).

15

BERNSTEIN LIEBHARD LLP

## ATTORNEY BIOGRAPHIES

## STANLEY D. BERNSTEIN
SENIOR PARTNER

**Stanley D. Bernstein** is a founding partner of Bernstein Liebhard LLP and has successfully represented plaintiffs in complex commercial litigation, securities fraud litigation, shareholder and derivative litigation, and antitrust litigation for over thirty years. Mr. Bernstein is a recognized leader in the securities and corporate governance bar. He frequently addresses lawyers and business professionals concerning various aspects of plaintiffs' litigation and was featured as the cover story in DIRECTORSHIP magazine in an interview entitled "Investors v. Directors." Mr. Bernstein also heads the Firm's *qui tam*/whistleblower practice group.

Mr. Bernstein had been widely recognized for his achievements:

- LAWDRAGON named him one of the "500 Leading Lawyers in America," "500 Leading Litigators in America," "500 Leading Plaintiffs' Lawyers," and "100 Lawyers You Need to Know in Securities Litigation;

- The National Association of Corporate Directors and DIRECTORSHIP magazine listed him in the *Directorship 100* - the list of "The Most Influential People in the Boardroom" (2009-2012);

- Named a *Super Lawyer* by SUPER LAWYERS magazine (2007-2009; 2012-2018);

- Recommended by THE LEGAL 500 (2011-2012; 2014-2016);

- Recognized by BENCHMARK PLAINTIFF: THE DEFINITIVE GUIDE TO AMERICA'S LEADING PLAINTIFF FIRMS & ATTORNEYS (2012-2015); and

- Ranked in CHAMBERS USA GUIDE (2012-2016).

---

*Education*

- New York University School of Law, J.D., honors, 1980

- Cornell University, B.S., 1977

*Admissions*

New York

Florida

U.S. Supreme Court

U.S. Court of Appeals

- Second Circuit

U.S. District Courts

- Southern District of New York

- Eastern District of New York

---

16

Mr. Bernstein has litigated high-profile cases against the most prominent defense firms in the country.  He has earned a reputation for being a tenacious litigator who has negotiated some of the largest securities fraud settlements in history.  For example, as Chair of the Plaintiffs' Executive Committee in the *In re Initial Public Offering Securities Litigation*, Mr. Bernstein negotiated a $586 million settlement of 300 coordinated actions, after seven full-day mediation sessions.  He also negotiated significant settlements in *In re Marsh & McLennan Cos., Inc. Securities Litigation* ($400 million); *In re Royal Dutch/Shell Transport Securities Litigation* ($166.6 million); and *In re Bankers Trust Securities Litigation* ($58 million, representing 100% of losses).

Mr. Bernstein also led an individual action on behalf of the New Mexico Public Employees Retirement Association ("PERA") against Wells Fargo Bank and affiliates arising from defendants' mismanagement of PERA's securities lending program.  On the eve of trial, Mr. Bernstein negotiated a $50 million recovery for PERA, representing over 65% of PERA's damages.

Mr. Bernstein is also eager to try any case when the interests of a client are best-served through trial.  For example, he was trial counsel for stockholders in a trial in the Delaware Chancery Court that invalidated an anti-takeover device in *Shapiro v. Quickturn Design Systems, Inc.*  He was also trial counsel in a pro bono case representing the Westchester Day School in litigation concerning a bitter zoning dispute.  After obtaining a favorable verdict, Mr. Bernstein negotiated a $4.75 million settlement – the then-highest reported recovery under the applicable federal statute.

Mr. Bernstein has also been lead counsel in many of the leading securities cases enforcing and expanding the rights of shareholders, including *in In re Sears, Roebuck Derivative Litigation* and *In re Archer Daniels Midlands Corp. Derivative Litigation* (pioneering cases which improved corporate governance at both companies).  Recently, Mr. Bernstein represented the City of Hialeah Employees Retirement System in a derivative action alleging that certain current and former directors of DeVry Education Group breached their fiduciary duties by allowing and

17

approving a misleading advertising campaign.  After successfully opposing defendants' motion to dismiss the case, Mr. Bernstein negotiated a cash settlement comprising of a $16 million payment to the company from the company's Directors and Officers insurance carrier.

Mr. Bernstein also represents corporations in complex commercial litigation.  Recently, Mr. Bernstein represented the creditors' committee in the Altegrity, Inc. and USIS Investigations, Inc. ("USIS") bankruptcy proceedings in connection with claims against USIS's former officers and a director for negligence and breaches of fiduciary duties under Delaware law arising from their alleged failures to adequately protect the confidential information of tens of thousands of government employees from a cyberattack in 2013-2014.  The data breach exposed the sensitive and confidential information of over 33,000 actual and potential employees of the U.S. government to malicious state-sponsored hackers, destroyed USIS's business, forced USIS and its parent company, Altegrity, into bankruptcy and compromised national security.  Mr. Bernstein successfully negotiated a confidential multi-million dollar global settlement with the defendants in both cases.  Mr. Bernstein also represented the Trustee of the Actrade Liquidation Trust in two lawsuits; the first, *Meer v. Aharoni*, No. 5141-CC (Del. Ch.), an action against Actrade's former chairman for misappropriation of funds and fraud resulting in the ultimate collapse of Actrade; the second, *Meer v. Deloitte & Touche, LLP*, No. 11-CV-06994 (HB) (S.D.N.Y.), a malpractice action against Actrade's accountant for failing to conduct proper audits.  The cases resulted in a multi-million dollar settlement.

Mr. Bernstein also chairs the Firm's antitrust practice.  Most recently, Mr. Bernstein served as co-lead counsel and co-trial counsel in *In re Processed Egg Products Antitrust Litigation*, No. 08-MD-02002 (GP) (E.D. Pa.), a class action filed against egg producers and trade groups alleging an industry-wide, price-fixing conspiracy that raised the price of shell eggs and egg products in violation of the Sherman Antitrust Act in the Eastern District of Pennsylvania.  As co-lead counsel, Mr. Bernstein recovered over $200 million from certain settling defendants and in May of 2018, served as co-trial counsel in a trial against the remaining, non-settling defendants.  The trial lasted over four weeks.

18

Mr. Bernstein is admitted to the Bars of the States of New York and Florida, the United States Supreme Court, the United States Court of Appeals for the Second Circuit, and the United States District Courts for the Southern and Eastern Districts of New York.

BERNSTEIN LIEBHARD LLP

## SANDY A. LIEBHARD
SENIOR PARTNER

**Sandy A. Liebhard** is a 1988 graduate of Brooklyn Law School and since that time has practiced all aspects of securities law. Mr. Liebhard has been repeatedly recognized as a "local litigation star" for his securities work in the 2012-2015 editions of BENCHMARK PLAINTIFF: THE DEFINITIVE GUIDE TO AMERICA'S LEADING PLAINTIFF FIRMS & ATTORNEYS and was recommended in the 2014 edition of THE LEGAL 500 for his work in securities litigation.

For more than twenty years, Mr. Liebhard has been successfully representing plaintiffs in complex litigations. Mr. Liebhard served on the Plaintiffs' Executive Committee in *In re Initial Public Offering Securities Litigation* ($586 million recovery) and was involved in the *In re Fannie Mae Securities Litigation*, where a $153 million settlement received final approval.

Mr. Liebhard has been lead or co-lead counsel in such major securities cases as: *In re AXA Financial Shareholders Litigation* ($500 million in increased merger consideration); *In re Lin Broadcasting Corp. Shareholders Litigation* (recovering $64 million in increased merger consideration); *In re Tenneco Securities Litigation* ($50 million recovery); *In re Bausch & Lomb, Inc. Securities Litigation* (achieving $42 million recovery for defrauded shareholders); and *In re BellSouth Corp. Securities Litigation* ($35 million recovery).

Mr. Liebhard is also active in the Firm's complex litigation practice. Mr. Liebhard, serving as co-lead counsel in *Roberts v. Tishman Speyer Properties, L.P.*, secured a $146.85 million settlement ($68.75 million cash) on behalf of the tenants of the Stuyvesant Town and Peter Cooper Village rental apartment

> ***Education***
>
> - Brooklyn Law School, J.D., 1988
> - Brooklyn College, B.S., 1985
>
> ***Admissions***
>
> New York
>
> U.S. District Courts
>
> - Southern District of New York
> - Eastern District of New York

20

BERNSTEIN LIEBHARD LLP

complexes in Manhattan for rent overcharges stemming from the landlord having illegally charged market-rate rents for apartments that should have been rent stabilized under New York City's Rent Stabilization Law.

Mr. Liebhard is admitted to the Bar of the State of New York, and the United States District Courts for the Southern and Eastern Districts of New York.

21

## MICHAEL S. BIGIN
PARTNER

**Michael S. Bigin** has been recognized by the legal industry for his work on behalf of clients.  Mr. Bigin was selected to SUPER LAWYERS MAGAZINE'S New York Metro Rising Stars list in 2014 and was named a Super Lawyer by SUPER LAWYERS MAGAZINE in 2017 and 2018.   Mr. Bigin has also been recommended by THE LEGAL 500 UNITED STATES in 2013 and 2016.

Mr. Bigin has practiced complex litigation for over 20 years and has successfully litigated against dozens of large public companies including:  *In re IKON Office Solutions, Inc. Securities Litigation*, No. 98-CV-4606 (E.D. Pa.) ($111 million recovery); *In re Computer Associates Securities Litigation*, No. 02-CV-1226 (E.D.N.Y.) (settlement of 5.7 million shares, valued at $134 million); *In re Marsh & McLennan Cos., Inc. Securities Litigation*, No. 04-CV-8144 (CM) (S.D.N.Y.) ($400 million recovery); *In re Royal Dutch/Shell Transport Securities Litigation*, No. 04-374 (JAP) (D.N.J.) ($166.6 million recovery); *In re Cigna Corp. Securities Litigation*, No. 02-CV-8088 (MMB) (E.D. Pa.) ($93 million recovery); *City of Austin Police Retirement System v. Kinross Gold Corp.*, No. 12-CV-01203-VEC (S.D.N.Y.) ($33 million recovery); *In re Gilat Satellite Networks, Ltd. Securities Litigation*, No. 02-CV-1510 (E.D.N.Y.) ($20 million); *In re Terayon Communication Systems, Inc. Securities Litigation*, No. C-00-1967 (N.D. Cal.) ($15 million); and *Szymborski v. Ormat Technologies, Inc.*, No. 10-CV-00132-ECR (D. Nev.) ($3.1 million settlement representing more than four times the average recovery for similar actions according to a study by experts at Cornerstone Research).   Mr. Bigin also recovered funds for investors in *Peters v. Jinkosolar*

*Education*

- St. John's University School of Law, J.D., 1999
- State University of New York at Oswego, B.A., B.S.,1995

*Admissions*

New York

Connecticut

U.S. Court of Appeals

- Second Circuit
- Ninth Circuit
- Eleventh Circuit

U.S. District Courts

- Southern District of New York
- Eastern District of New York
- Eastern District of Wisconsin

BERNSTEIN LIEBHARD LLP

*Holding Co. Inc.*, No. 11-CV-07133-JPO (S.D.N.Y.) ($5.05 million settlement).   Prior to this settlement, Mr. Bigin successfully argued the *Jinkosolar* case before the Second Circuit Court of Appeals, which granted a rare reversal of the District Court's decision and clarified the materiality standard under the Securities Act of 1933.

Currently, Mr. Bigin represents a number of public pension funds in various securities fraud class actions.  For example, Mr. Bigin represents the Oklahoma Firefighters and Police Pension and Retirement Systems in *Avila v. LifeLock Inc.*, 15-cv-01398-SRB (D. Arizona), a securities fraud action alleging that executives made material misrepresentations to investors concerning LifeLock's identity protection business and the status of a Federal Trade Commission investigation; the City of Atlanta Firefighters' Pension Fund in *Speaks v. Taro Pharmaceutical Industries, LTD*, 16-cv-08318-ALC (S.D.N.Y.), where investors allege that defendants inflated Taro's stock price by representing that Taro's growth occurred in a highly competitive environment, while Taro secretly colluded with its competition to fix generic drug prices; and the Houston Municipal Employees Pension System in *Ramanitharan v. REV Group, Inc.*, 18-cv-1270-LA (E.D. Wisc.), a securities class action alleging that the defendants issued false and misleading statements concerning the REV Group, Inc.'s net income and adjusted EBITDA guidance in violation Sections 10(b) and 20(a) of the Securities Exchange Act of 1934.

In addition to class actions, Mr. Bigin represents individual clients in commercial disputes, commercial insurance matters, *qui tam* actions, employment claims, and consumer protection matters.  For example, Mr. Bigin won summary judgment on behalf of his client concerning a $1.9 million fee dispute after completing discovery, which involved obtaining testimony from multiple, senior partners of law firms.  Additionally, Mr. Bigin has advised and represented individual whistleblowers alleging violations of the False Claims Act, violations of the Social Security Act, Medicare and Medicaid fraud, insider trading, and tax fraud.

Mr. Bigin is admitted to practice in the States of New York and Connecticut, the United States District Courts for the Southern and Eastern Districts of New York, the Eastern District of Wisconsin, and the United States Court of Appeals for the Second, Ninth, and Eleventh Circuits.

23

## STEPHANIE M. BEIGE
PARTNER

**Stephanie M. Beige** received her bachelor's degree in 1996 from Dowling College, graduating *magna cum laude*, and received her J.D. in 2000 from Touro College Jacob D. Fuchsberg Law Center, graduating *summa cum laude*, where she was a member of the Touro Law Review.

Ms. Beige focuses her practice on commercial litigation, securities litigation, and employment litigation, including workplace sexual harassment and discrimination claims and ERISA litigation. She has devoted her entire career to representing plaintiffs in litigation. Ms. Beige has been named a Super Lawyer and has been selected to the New York Metro Super Lawyers Top Women List in 2016-2018 by SUPER LAWYERS MAGAZINE for her work in securities litigation. Ms. Beige has also been recommended by THE LEGAL 500 in 2013, 2015-2018.

During the past nineteen years, Ms. Beige has been involved in the successful prosecution of numerous class actions on behalf of aggrieved investors. Notably, she was a member of the team representing the State of New Jersey, Department of Treasury, Division of Investment, as co-lead plaintiff in *In re Marsh & McLennan Cos., Inc. Securities Litigation* (S.D.N.Y.) where a $400 million recovery was obtained for investors. The litigation was brought against the world's largest insurance broker, Marsh & McLennan Cos., Inc., in connection with the company's improper practice of steering its clients to insurance companies that agreed to pay it billions of dollars in contingent commissions. The $400 million settlement was reached after five years of hard-fought litigation which included over 100 depositions and over 36 million pages of document discovery.

### Education

- Touro College Jacob D. Fuchsberg Law Center, J.D., *summa cum laude*, 2000

- Dowling College, B.S., *magna cum laude*, 1996

### Admissions

New York

U.S. Court of Appeals

- Second Circuit

U.S. District Courts

- Southern District of New York

- District of Colorado

- Eastern District of Wisconsin

BERNSTEIN LIEBHARD LLP

Ms. Beige also represented the Mississippi Public Employees' Retirement System in *In re Cigna Corp. Securities Litigation* (E.D. Pa.), a securities class action which settled on the eve of trial for $93 million dollars.  Other successes include:  *In re TASER International Securities Litigation* (D. Ariz.) ($20 million recovery); *Rush v. Footstar, Inc.* (S.D.N.Y.) ($19.3 million recovery); and *In re SeeBeyond Technologies Securities Litigation* (C.D. Cal.) .($13.1 million recovery).

Ms. Beige litigated an individual action on behalf of the New Mexico Public Employees Retirement Association ("PERA") against Wells Fargo Bank and affiliates arising from defendants' mismanagement of PERA's securities lending program.  Ms. Beige was instrumental in the negotiation of a $50 million recovery for PERA – obtained on the eve of trial – representing over 65% of PERA's damages.

Ms. Beige is currently working on several securities fraud class actions against numerous issuers for allegedly misleading investors, including *In re Tremont Securities Law, State Law and Insurance Litigation*, No. 08-CV-11117 (S.D.N.Y.) (a partial settlement in excess of $100 million approved), in which the Firm represents investors who lost millions of dollars in hedge funds that invested with Bernard L. Madoff; and the Houston Municipal Employees Pension System in *Ramanitharan v. REV Group, Inc.*, 18-cv-1270-LA (E.D. Wisc.), a securities class action alleging that the defendants issued false and misleading statements concerning the REV Group, Inc.'s net income and adjusted EBITDA guidance in violation Sections 10(b) and 20(a) of the Securities Exchange Act of 1934.

Ms. Beige also represents plaintiffs in complex litigation and commercial litigation.  Most recently, Ms. Beige represented the creditors' committee in the Altegrity, Inc. and USIS Investigations, Inc. ("USIS") bankruptcy proceedings in connection with claims against USIS's former officers and a director for negligence and breaches of fiduciary duties arising from their alleged failures to adequately protect the confidential information of tens of thousands of government employees from a cyberattack in 2013-2014.  The data breach exposed the sensitive and confidential information of over 33,000 actual and potential employees of the U.S. government to malicious state-sponsored hackers, destroyed USIS's business, forced USIS and its parent

company, Altegrity, into bankruptcy and compromised national security.  The litigation resulted in a confidential multi-million dollar global settlement.

Ms. Beige also represented the plaintiff in *Lewis v. 20th Century Fox Television, et al.*, Case No. BC 683422 (MPL) (Cal. Sup.), an idea theft case brought against defendants Twentieth Century Fox Television and FOX Network Company.  Plaintiff is the author of the script entitled *The Godmother* and alleged that defendants breached their implied contracts by using his ideas and his script in connection with the creation of *The Mick* (a network television show that aired on the Fox Network) without his permission and without compensation.  The parties agreed to confidentially settle the action just weeks before the case was scheduled to begin trial.

Ms. Beige is admitted to the Bar of the State of New York and admitted to practice before the United States Court of Appeals for the Second Circuit and the United States District Courts for the Southern District of New York, the District of Colorado, and the Eastern District of Wisconsin.

BERNSTEIN LIEBHARD LLP

## DANIEL C. BURKE
PARTNER

**Daniel C. Burke** earned his bachelor's degree in 1990 from the State University of New York at Albany (B.A., English/History), and earned his J.D. in 1993 from St. John's University School of Law, where he was a member of *St. John's Journal of Legal Commentary*.

Mr. Burke was recognized as a leader in the areas of class actions and mass torts by *Super Lawyers* from 2013-2017. In addition, he was named as one of the National Trial Lawyers Top 100 for 2014, and one of the Nation's Top One Percent by the *National Association of Distinguished Counsel* in 2015.

*Education*

- St. John's University School of Law, J.D., 1993

- State University of New York at Albany, B.A., 1990

*Admissions*

New York

U.S. District Courts

- Southern District of New York

- Eastern District of New York

- Northern District of New York

Mr. Burke's practice is focused on mass tort pharmaceutical, medical device and consumer products litigation.  He has actively litigated high-profile cases on behalf of thousands of injured plaintiffs in cases involving prescription drugs including Yaz/Yasmin, medical devices such as the Biomet M2a Magnum hip prosthesis and Zimmer Nexgen knee prosthesis, as well as over-the-counter consumer products including Fixodent and Poligrip denture adhesives and ReNu with MoistureLoc contact lens solution.  He has supervised the day-to-day management of complex, multi-party mass tort litigation in state and federal courts and multidistrict litigation throughout the United States.

His extensive experience has been recognized by his peers and the Courts, and is reflected by Mr. Burke receiving multiple appointments to leadership positions in mass tort litigations over the past ten years including:  Plaintiffs' Steering Committee in *In re: Biomet M2a Magnum Hip Implant Products Liability Litigation* (MDL 2391), Liaison Counsel in the *New York Coordinated Plavix-Related Proceedings* (Index No. 560001/12), Plaintiffs' Steering Committee

27

in *In re: Zimmer Nexgen Knee Implant Products Liability Litigation* (MDL 2272), Discovery and Law & Briefing Sub-Committees for *In re: Denture Cream Products Liability Litigation* (MDL 2051); and the Science and Discovery Sub-Committees for *In re: Yasmin & Yaz (Drospirenone) Marketing, Sales Practices & Products Liability Litigation* (MDL 2100).

Most recently, in September 2018, Mr. Burke was appointed by the U.S District Judge Karen K. Caldwell, Eastern District of Kentucky, to serve on the Plaintiffs' Executive Committee in *In re: Onglyza (Saxagliptin)* and *Kombiglyze (Saxagliptin and Metformin) Products Liability Litigation* (MDL 2809).

Currently, Mr. Burke represents plaintiffs in a wide array of drug litigations including those involving Gadolinium-Based Contrast Agents, HIV antiviral medications (TDF), PPIs, Zofran, Fluoroquinolone Antibiotics, Testosterone Replacement Therapy, Incretins, SGLT-2 Inhibitors, Abilify, Actemra, Mirena IUD, Fosamax, Xarelto, Taxotere and Risperdal. Additionally, he is litigating matters involving medical devices including Forced Air Warming Blankets, IVC Filters, Defective Hip, Knee, Shoulder & Elbow Implants, Transvaginal and Hernia Mesh and Power Morcellators. He is also investigating consumer product claims related to various cancers caused by Cell Phone Radiation and the use of Talc.

Mr. Burke is admitted to the Bar of the State of New York. He is also admitted to practice before the United States District Courts for the Southern, Eastern and Northern Districts of New York, and he is frequently admitted *pro hac vice* to represent clients in various state and federal courts throughout the United States.

## LAURENCE J. HASSON
PARTNER

**Laurence J. Hasson** received his bachelor's degree in 2003 from Brandeis University (B.A., History and American Studies), graduating *magna cum laude* and with Phi Beta Kappa and Phi Alpha Theta honors, and received his J.D. in 2006 from the Benjamin N. Cardozo School of Law, where he was a Heyman Scholar, a board member of the award-winning Moot Court Honors Society, and competitively selected to participate in the Bet Tzedek Legal Services Clinic.

Mr. Hasson concentrates his practice on securities, commercial, and complex class action litigation, and he is also a member of the Firm's *qui tam*/whistleblower practice group. Mr. Hasson has been selected by SUPER LAWYERS MAGAZINE to the New York Metro Rising Stars list for 2015-2019.  He was also recommended by THE LEGAL 500 in 2013.

Prior to becoming associated with the Firm in June 2012, Mr. Hasson was an associate at a large Manhattan class action firm, where he focused on advising institutional investors worldwide on securities litigation and litigation strategy.

While at the Firm, Mr. Hasson has worked on numerous class actions that have resulted in substantial recoveries for investors, including:  *City of Austin Police Retirement System v. Kinross Gold Corporation*, No. 12-CV-01203-VEC (S.D.N.Y.) ($33 million recovery), *In re Tower Group International, Ltd. Securities Litigation*, 13-CV-5852-AT (S.D.N.Y.) (settlement of $20.5 million with Tower defendants); *Peters v. Jinkosolar Holding Co., Ltd.*, No. 11-CV-07133-JPO (S.D.N.Y.) ($5.05 million recovery); and *In re KIT Digital, Inc. Securities Litigation*, No. 12-CV-4199 (S.D.N.Y.) ($6 million recovery).

---

*Education*

- Benjamin N. Cardozo School of Law, J.D., 2006

- Brandeis University, B.A., *magna cum laude*, 2003

*Admissions*

New York

U.S. Court of Appeals

- Second Circuit

U.S. District Courts

- Southern District of New York

- Eastern District of New York

---

BERNSTEIN LIEBHARD LLP

Mr. Hasson was also competitively selected to join the Federal Bar Council's Inn of Court, through which he, along with a small team led by a federal judge, develops and presents programming for continuing legal education.   Mr. Hasson has presented in several such programs, including:

- "First Amendment and National Security," which was held on January 8, 2013 at the Theodore Roosevelt United States Courthouse in Brooklyn, New York;

- "Who Owns the Past? Cultural Property Repatriation and Where We Are Today," which was held on December 9, 2014 at the Museum of Jewish Heritage in New York, New York;

- "United States v. New York Times: A Reenactment of The Pentagon Papers Case," which was held on January 15, 2015 at the Thurgood Marshall U.S. Courthouse in New York, New York.   This presentation was part of the 225th Anniversary Celebration of the U.S. District Court for the Southern District of New York;

- "Sex, Lies, Still Photos & Videotape. Many Wrongs? Any Rights?," which was held on April 12, 2016 at the Daniel Patrick Moynihan United States Courthouse in New York, New York; and

- "The Current Wars", which was held on November 15, 2016 at the Theodore Roosevelt United States Courthouse in Brooklyn, New York.

- "A Jury of Her Peers: A True Crime and the Journalist Who Immortalized It", which was held on April 10, 2019 at the Theodore Roosevelt United States Courthouse in Brooklyn, New York.

Mr. Hasson is admitted to the Bar of the State of New York and to practice before the United States Court of Appeals for the Second Circuit, and the United States District Courts for the Southern and Eastern Districts of New York.

BERNSTEIN LIEBHARD LLP

## REUBEN S. KERBEN
OF COUNSEL

**Reuben S. Kerben** received his bachelor's degree in 2004 from the Sy Syms School of Business at Yeshiva University (B.S., Business Management), and earned his J.D. in 2009 from the Maurice A. Deane School of Law at Hofstra University. During college Mr. Kerben received several awards following his participation in business competitions, including the Syracuse University Panasci Business Plan Competition, the Yeshiva University Dr. William Schwartz Student Business Plan Competition and the Palo Alto Software Business Plan Competition.

*Education*

- Maurice A. Dean School of Law at Hoftra University, J.D., 2009

- Sy Syms School of Business at Yeshiva University, B.S., 2004

*Admissions*

New York

U.S. District Courts

- Southern District of New York

- Eastern District of New York

Prior to law school, Mr. Kerben was the founder and chief executive officer of Spiral Universe Inc., a cloud based educational software company which was later acquired by Software Technology, Inc.

Mr. Kerben is active in the Firm's mass tort practice, focusing in the areas of pharmaceutical liability and defective medical devices.  Currently, he is involved with cases associated with prescription drugs, such as Risperdal and Zofran, and defective medical devices, such as Transvaginal Mesh and Mirena IUD.

Mr. Kerben has argued appeals before the United States Court of Appeals for the Second Circuit, and has represented defendants in felony trials in New York City.  Mr. Kerben is committed to pro bono practice; having represented many immigrant children facing deportation before the Immigration Courts in New York, New York.

Mr. Kerben is admitted to the Bar of the State of New York and to practice before the United States Court of Appeals for the Second Circuit, and the United States District Courts for the Southern and Eastern Districts of New York.

31

## JOSEPH R. SEIDMAN, JR.
SENIOR COUNSEL

**Joseph R. Seidman, Jr.** received his bachelor's degree in 1994 from Queens College of the City University of New York and received his J.D. in 1997 from St. John's University School of Law.

Mr. Seidman has litigated complex class actions for over 20 years.  Mr. Seidman has worked on numerous securities fraud cases from inception through settlement, including:  *City of Austin Police Retirement System v. Kinross Gold Corp.,* No. 12-CV-01203-VEC (S.D.N.Y.) ($33 million recovery); *In re Beazer Homes U.S.A., Inc. Securities Litigation*, No. 07-CV-725-CC (N.D. Ga.) ($30.5 million recovery); *In re Tower Group International, Ltd. Securities Litigation*, 13-CV-5852 (S.D.N.Y.)

| *Education* |
| --- |
| • St. John's University School of Law, J.D., 1997 |
| • Queens College of the City University of New York, B.S., 1994 |
| *Admissions* |
| New York |
| U.S. Court of Appeals |
| • Sixth Circuit |
| U.S. District Courts |
| • Southern District of New York |
| • Eastern District of New York |

(partial settlement of $20.5 million); *In re Taser International Securities Litigation*, No. C05-0115 (D. Ariz.) ($20 million recovery); *In re Willbros Group, Inc. Securities Litigation*, No. 06-CV-1778 (S.D. Tex.) ($10.5 million recovery); *In re KIT digital, Inc. Securities Litigation*, No. 12-CV-4199 (S.D.N.Y.) ($6,001,999 recovery);  *Peters v. JinkoSolar Holding Ltd.*, 11-CV-7133 (S.D.N.Y.) ($5.05 million recovery); and *In re Biolase, Inc. Securities Litigation*, No. 13-1300-JLS (FFMx) (C.D. Cal.) ($1.75 million recovery).

Mr. Seidman was part of the team that successfully litigated an appeal before the Second Circuit Court of Appeals, which reversed a dismissal of the *JinkoSolar* case and affirmed the materiality standard for securities actions.

Mr. Seidman also worked on *In re Freeport-McMoRan Copper & Gold, Inc. Derivative Litigation*, C.A. No. 8110-VCN (Del. Ch.), a $153.5 million recovery that represented the second largest derivative settlement in Delaware.

BERNSTEIN LIEBHARD LLP

Currently, Mr. Seidman represents a number of public pension funds in various class actions. For example, Mr. Seidman represents the City of Atlanta Firefighters' Pension Fund in *Speaks v. Taro Pharmaceutical Industries, LTD*, 16-cv-08318-ALC (S.D.N.Y.), where investors allege that defendants inflated Taro's stock price by representing that Taro's growth occurred in a highly competitive environment, while Taro secretly colluded with its competition to fix generic drug prices. Mr. Seidman also represents the Houston Municipal Employees Pension System in *Bitar v. REV Group, Inc.*, Case No. 2:18-cv-1268-LA (E.D. Wisc.), where investors allege, *inter alia*, that defendants knowingly issued unachievable financial guidance. In addition, Mr. Seidman represents the Oklahoma Firefighters Pension and Retirement System in *Avila v. LifeLock Inc.*, 15-cv-01398-SRB (D. Arizona), where investors allege that executives made material misrepresentations to investors concerning LifeLock's identity protection business and the status of a Federal Trade Commission investigation.

Mr. Seidman also represents a class of direct purchaser plaintiffs in an antitrust action, *In re Packaged Seafood Products Antitrust Litigation*, Case No. 15-MD-2670 JLS (MDD) (S.D. Cal.). The plaintiffs in *Packaged Seafood* allege, *inter alia*, that several seafood companies illegally conspired to raise prices on various tuna products.

Mr. Seidman is admitted to the Bar of the State of New York. He is also admitted to practice before the United States Court of Appeals for the Sixth Circuit, and the United States District Courts for the Southern and Eastern Districts of New York.

## PETER J. HARRINGTON
ASSOCIATE

**Peter J. Harrington** received his bachelor's degree in 2006 from Fordham University (B.A., Political Science), graduating *cum laude*.  He received his J.D. in 2010 from the St. John's University School of Law, where he served as executive notes and comments editor of the JOURNAL OF CIVIL RIGHTS AND ECONOMIC DEVELOPMENT (formerly the ST. JOHN'S JOURNAL OF LEGAL COMMENTARY).  Mr. Harrington authored the article "Untying the Knot:  Extending Intestacy Benefits to Non-Traditional Families by Severing the Link to Marriage," 23 J. CIV. RTS. & ECON. DEV. 323 (2011).  While in law school, Mr. Harrington was a legal intern in the Mayor of New York City, Michael R. Bloomberg's office and worked for the St. John's University School of Law Securities Arbitration Clinic, representing individual investors on a *pro bono* basis in securities arbitration claims involving misrepresentation, unsuitability, and unauthorized trading.

*Education*

- St. John's University School of Law, J.D., 2010

- Fordham University, B.A., 2006

*Admissions*

New York

U.S. District Courts

- Southern District of New York

- Eastern District of New York

Mr. Harrington concentrates his practice on securities, commercial, and complex class action litigation.  In 2015 - 2018, Mr. Harrington was selected to the New York Metro Rising Stars list by SUPER LAWYERS MAGAZINE.

Mr. Harrington has worked on several securities fraud class actions including *City of Austin Police Retirement System v. Kinross Gold Corporation*, No. 12 CV-01203-VEC (S.D.N.Y.), in which the Firm recovered $33 million for investors.

Most recently, Mr. Harrington worked on an individual action brought by the Public Employees Retirement Association of New Mexico against Wells Fargo Bank and affiliates arising from defendants' mismanagement of the pension fund's securities lending program. The case settled on the eve of trial for $50 million -- representing over 60% of the plaintiff's

34

alleged damages.   Mr. Harrington was also involved in a similar action on behalf of the New Mexico Educational Retirement board that resulted in a $5 million settlement, representing 54% of the plaintiff's alleged damages.

Mr. Harrington is currently working on a securities fraud class action against Lifelock, Inc. alleging that LifeLock, Inc. and certain of its officers and directors violated the federal securities laws by making material misrepresentations about LifeLock's core business practices and about the severity of the FTC's investigation into the company for violating a 2010 consent order.

He is also a member of the Firm's Portfolio Monitoring and Case Evaluation team, where he investigates new matters involving potential violations of the federal securities laws and state laws, as well as mergers and acquisitions.   He is currently investigating several potential new matters on behalf of individual and institutional investors.

Mr. Harrington is admitted to the Bar of the State of New York.   He is also admitted to practice before the United States District Courts for the Southern and Eastern Districts of New York.

BERNSTEIN LIEBHARD LLP

## LISA SRIKEN
ASSOCIATE

**Lisa Sriken** received her bachelor's degree in 2001 from Binghamton University (B.A., Political Science) and earned her J.D. (Concentration in International Law) from Hofstra University School of Law in 2004.

Ms. Sriken began her legal career as a discovery attorney working on securities, intellectual property, antitrust, and regulatory compliance matters for prominent defense firms on behalf of international corporate clients. She later transitioned to representing aggrieved investors in complex securities class action litigation, specializing in cases involving allegations of fraud, bribery and corruption against foreign companies. In a previous position, Ms. Sriken was an instrumental part of the team that successfully attained a record $3 billion settlement on behalf of the plaintiff class in *In re Petrobras Securities Litigation*, No. 14-cv-9662 (S.D.N.Y.).

Ms. Sriken focuses her practice on representing plaintiffs in securities and antitrust class action litigation. Among other things, she is currently working on the *In re Broiler Chicken Antitrust Litigation*, No. 16-cv-08637 (N.D. Ill.).

Ms. Sriken is a longtime volunteer and advocate on behalf of immigrants and underprivileged youth. She is proficient in French and Portuguese.

Ms. Sriken is admitted to the Bar of the State of New York and to practice before the United States District Court for the Southern District of New York.

*Education*

- Hofstra University School of Law, J.D., 2004

- Binghamton University, B.A., 2001

*Admissions*

New York

U.S. District Courts

- Southern District of New York

36

BERNSTEIN LIEBHARD LLP

## MORRIS DWECK
ASSOCIATE

**Morris Dweck** received his J.D. in 2014 from the Benjamin N. Cardozo School of Law. He was awarded a Cardozo Scholarship Award throughout his three years in Law School. His note concerning the rare side effects of drugs and diseases was published by the CARDOZO LAW JOURNAL OF PUBLIC LAW, POLICY AND ETHICS. Mr. Dweck was named a Rising Star by SUPER LAWYERS in 2016-2018.

> *Education*
>
> • Benjamin N. Cardoza School of Law, J.D., 2014
>
> • Macaulay Honors College at Brooklyn College, B.A., 2010
>
> *Admissions*
>
> New York
>
> New Jersey

From the beginning of his legal career Mr. Dweck has worked in the field of Mass Torts, specifically in the areas of medical device and pharmaceutical product liability litigation. He has vigorously represented clients in various mass tort litigation including: Benicar (litigation discovery team), IVC Filter, DePuy ASR hip, Stryker Rejuvenate, ABGII and LFIT V40 hip implants, and Transvaginal Mesh litigation against Bard, J&J, and Boston Scientific. Mr. Dweck is currently handling the diverse and growing Hernia mesh litigation with various products and defendants, as well as the complex Proton Pump Inhibitor litigation.

Mr. Dweck is admitted to the Bars of the State of New York and New Jersey. As an active member of the New York City Bar Association, he is currently serving as a committee member on the Products Liability Committee. He is also a member of the New York State Trial Lawyers Association and the American Association for Justice. Mr. Dweck has served as a mentor for a number of students in law school. He currently serves as the Director of Ritual Programming at Congregation Magen David of Manhattan in the West Village, where he teaches classes on Jewish law and ethics.

BERNSTEIN LIEBHARD LLP

## GEORGIANNA BOSS
ASSOCIATE

**Georgianna Boss** received her bachelor's degree in 2009 from the University of Michigan (B.A. Political Science), graduating *cum laude*.  She received her J.D. in 2012 from the University of Detroit Mercy School of Law.  While in law school, she developed a passion for litigation.  She sought an internship with the Detroit Misdemeanor Public Defender where her vigorous representation of indigent clients won her the coveted Richard Krisciunas 3L Litigator Award in 2012.

| *Education* |
| --- |
| • University of Detroit Mercy School of Law, J.D., 2012 |
| • University of Michigan, B.A., 2009 |
| *Admissions* |
| New York |
| Florida |

After law school, Ms. Boss worked at the Broward County Public Defender's office in Fort Lauderdale, Florida, where she first chaired over 30 trials.  The Broward Association of Criminal Defense Attorneys recognized her litigation skills by awarding her the Top Litigator award in 2013 and 2014.

Prior to joining the firm, Ms. Boss litigated medical malpractice cases in New York City.  Ms. Boss litigated multiple issues of first impression involving New York's Public Health Law 2801-d in various courts throughout the State of New York on behalf of her clients.

38

BERNSTEIN LIEBHARD LLP

## MATTHEW GUARNERO
ASSOCIATE

**Mr. Guarnero** is an associate in the firm's New York office and focuses his practice on securities and antitrust litigation on behalf of individual and institutional investors. Mr. Guarnero previously practiced at two national litigation firms where he gained experience prosecuting antitrust, commodities manipulation, and securities fraud claims on behalf of both institutional and individual investors.

Matthew earned his Juris Doctor from the State University of New York at Buffalo Law School in 2015, and his Bachelor of Arts in Political Science from the State University of New York at Geneseo in 2012.  While in law school, Matthew was part of a select group of students to participate in SUNY Buffalo Law School's On Finance and the Law Program. Matthew was also a member of the Moot Court Board at SUNY Buffalo Law School.

Matthew is admitted to practice law in New York and New Jersey state courts, and the United States District Court for the Southern District of New York.  Matthew currently serves on the New York City Bar Association's Securities Litigation Committee.  Matthew is also a Junior Member of the Columbus Citizens Foundation where he volunteers for the Siamo Amici Initiative.

---

*Education*

- State University of New York at Buffalo Law School, J.D., 2015
- State University of New York at Geneseo B.A., 2012

*Admissions*

New York

New Jersey

U.S. District Courts

- Southern District of New York

---

39

# EXHIBIT E



# MARK MIGDAL & HAYDEN



# Practice areas

## Complex Commercial Litigation

We know that there is no playbook for complex commercial litigation. And rarely is there a silver bullet. Our fierce team of litigators has aggregated the best of its varied experiences to develop and implement optimal strategy on a case-by-case basis.

Our commercial litigation experiences range from the public defender's office, to some of the top law firms in the world, to federal court clerks, all of which we bring to bear on each matter. With our firm's case load evenly split between federal and state court, we are equally comfortable in either forum.

Being resident in Miami, much of the litigation we handle touches real estate – construction defects, disputes among joint venture partners, between borrowers and lenders, commercial landlords and tenants, or developers and property owners. We also routinely advise and litigate disputes in the realm of "business torts" – ranging from allegations of breaches of fiduciary duty, corporate divorce, broker disputes, professional negligence claims, RICO (Racketeer Influenced and Corrupt Organizations Act), breaches of contract and all fraud.

We work with our network of seasoned mortgage industry professionals to assist financial institutions and government sponsored entities, or GSEs, in maximizing their recovery on deficiency balances, and we are one of the few law firms in Florida with deep experience in litigating closing protection letter claims against title insurance companies. MM&H also regularly handles repurchase and indemnity claims against loan originators, professional negligence claims against closing agents and appraisers and fraud claims against builders.



## International Arbitration & Cross-Border Disputes

In our modern global economy, international arbitration has emerged as the primary method to resolve cross-border disputes.

As a law firm based in Miami, a leading arbitration hub, MM&H has gained substantial experience in representing clients across many countries and industry sectors in the resolution of their disputes through arbitration. Providing sophisticated counsel in arbitration, mediation, early assessment of the available dispute resolution mechanisms when our clients venture abroad, our firm's attorneys are highly experienced and able to represent clients in front of numerous arbitration institutions, including the American Arbitration Association (AAA), the International Centre for Dispute Resolution (ICDR), the London Court of International Arbitration (LCIA), the International Centre for Settlement of Investment Disputes (ICSID), and the International Chamber of Commerce (ICC) – International Court of Arbitration.

As part of our early assessment, we like to assist clients in determining the dispute resolution provision that will best meet their needs before the dispute arises, and craft dispute resolution provisions that are tailored to most efficiently and effectively resolve their anticipated disputes. After the dispute arises, we consider whether mediation, conciliation and all other ADR tools are viable options for resolving the dispute. These processes can be particularly useful in resolving disputes in ongoing commercial relationships.



# ETAN MARK

> ❝ *My company has more than $1.5B in assets under management and works with a half-dozen different attorneys every quarter. Etan is not just our lawyer – he is our company's consiglieri. His responsiveness, counsel and advocacy skills are true differentiators."*
>
> Managing Principal, Florida real estate development company

### AWARDS



Chambers & Partners USA, America's Leading | Business Lawyers, 2019, General Commercial Litigation | South Florida Legal Guide, Top Up and Comer, 2016-2018 | Florida's Super Lawyers, 2009-2018 (Rising Star in Business Litigation) | Florida Trend, Legal Elite, 2018, Commercial Litigation | Florida Trend, Legal Elite – Top Up and Comer, 2013, 2016, 2017 | Martindale-Hubbell, AV® Preeminent™ rated | South Florida Business Journal, Top 40 Under 40, 2015 | Daily Business Review, Rising Stars 40 Under 40, 2013

### LIST OF ASSOCIATIONS, SPEAKING ENGAGEMENTS & PUBLISHED ARTICLES
Please visit www.markmigdal.com/etan-mark/

---

**MM&H** MARK MIGDAL & HAYDEN

## THINGS DO NOT HAPPEN
## THINGS ARE MADE TO HAPPEN.

JOHN F. KENNEDY
(AND MORE RECENTLY PETYR BAELISH)

E: etan@markmigdal.com   T: (305) 374-6622

MICHIGAN, 00 | GEORGE WASHINGTON LAW, 03

Foremost, Etan is a litigation strategist and collaborator, working with clients to advise on what they should and (often) should not do when presented with the unique challenges of a business in litigation, or one facing the prospect of litigation. Etan is also passionate about the future of the legal practice, and when it benefits his clients, is committed to applying those trends to his practice.

Etan has been ranked by Chambers & Partners USA in commercial litigation (we think he's the youngest business litigator ranked in Florida). Sources interviewed by Chambers – none of whom is his mother – have said that "He's absolutely fantastic; a very smart, strategic litigator. His ability to present in court is outstanding." When interviewed, his mother opined: "He is a good boy but he should've been a cardiologist."

Many of Etan's cases touch either real estate or allegations of fraud; often both. He also serves as an "inside-outside" counsel, helping clients avoid or mitigate risk in the day-to-day operations of their businesses. His representative clients include public and private companies, real estate developers, investors and owners, tech entrepreneurs, gaming operators, family offices, hotels and banks. For some strange reason, Etan is particularly enamored with the ins and outs of the Racketeer Influenced and Corrupt Organizations Act (RICO) and has written and read extensively on the subject. The rest of the time, he listens to podcasts (Dan Carlin's Hardcore History is his favorite), wrings his hands about the state of American politics and is terrorized by his pre-teen daughter (and to a lesser extent, his son).

Etan began his legal career working as a business and securities litigator at a top 10 American Lawyer "Big Law" firm in New York. Since leaving New York for higher sea levels, Etan has become a devotee of alternative value propositions focused on efficiency, collaboration and bespoke service (that are sometimes hard to come by in "Big Law"). Etan worked as a law clerk to a federal district court judge in Miami, where he gained an insider's view on effective advocacy. Following his clerkship, Etan owned and was the CEO of a company that leveraged the global marketplace by outsourcing certain legal services to top attorneys and other legal service providers in India. Prior to founding MM&H, Etan was a partner at Berger Singerman's Miami office, and was manager of the firm's Dispute Resolution team.

### EXPERIENCE
Berger Singerman – Partner
iDiligence  – CEO
Law Clerk to the Honorable K. Michael Moore,
U.S. District Court Judge, Southern District of Florida
Weil Gotshal & Manges, New York

   





## JOSH MIGDAL

> " *At every turn during his representation, Josh provided sound advice which took into account cost and future business endeavors. Josh is both a zealous advocate and trusted counselor.*"
>
> Jon Bourbeau,
> CEO Pacer Partners

**AWARDS**

Recipient of Sandra C. Goldstein Young Leadership Award from Greater Miami Jewish Federation Super Lawyer Rising Star 2010-2017

**ASSOCIATIONS**

- Florida Regional Board Member of Anti-Defamation League
- Co-chair of the Greater Miami Jewish Federation's Network Executive Board
- Board Member of Greater Miami Jewish Federation
- Board Member of JCS

**EXPERIENCE**

Hanzman, Criden & Love
Hall, Lamb & Hall
Boyd Richards
Stolzenberg, Gelles, Flynn & Arango

**LIST OF SPEAKING ENGAGEMENTS & PUBLISHED ARTICLES**

https://www.markmigdal.com/ josh-migdal/

### THE FUTURE BELONGS TO THOSE WHO SEE IT COMING

DAVID BOWIE

E: josh@markmigdal.com   T: (305) 374-6617

WISCONSIN-MADISON, 02  |  LOYOLA, 05

Josh takes great pride in understanding the issues which confront his clients and then crafting an efficient and effective strategy tailored to achieving his clients' goals. For example, in the aftermath of the financial crisis, Josh successfully implemented an innovative legal theory to obtain recovery for government sponsored entities and financial institutions from title insurers pursuant to closing protection letter claims. Josh is one of only a handful of lawyers in Florida that stridently advocates to secure this type of recovery from title insurers on such claims. Josh is also a formidable opponent in complex commercial litigation, corporate divorce, business torts, professional negligence, real estate disputes and repurchase and indemnity claims.

Josh, a Midwesterner and above average poker player, has immersed himself in South Florida's community and has been fortunate to be able to act in leadership roles for a number of organizations. His most recent appointment, in June this year, was to the board of directors of Florida's Jewish Community Services (JCS).










## CULTURE EATS STRATEGY FOR BREAKFAST.

PETER DRUCKER

E: don@markmigdal.com   T: (305) 374-6620

# DON HAYDEN

> " *Don is very analytical, knowledgeable of the law and very good at finding unconventional solutions."*
>
> Chambers USA, 2019

NOTRE DAME, 82  |  LOYOLA, 85

Although age is just a state of mind at MM&H, with thirty-two years of experience as a commercial litigator and a reputation as a seasoned practitioner in the international arbitration arena, Don has been around the block (and the globe) a few times during his career. Don prides himself as being a trusted advisor who can evaluate complex claims, especially for those clients who find themselves in multiple jurisdictions given today's global economy.

Don has been ranked in Chambers & Partners since 2009 for commercial litigation, and has been regularly recognized as a top attorney by Best Lawyers in America, South Florida Legal Guide, Florida's Super Lawyers, Florida Trend Legal Elite and the Legal 500 for either litigation or international arbitration. In 2010, he was inducted as a Fellow of the Litigation Counsel of America.

Over the years, Don has represented AT&T, Knauf Plasterboard, Borg Warner, Banco do Brasil, Travelers Insurance, Google, and SAP to name a few.

Throughout his career, Don has been committed to pro bono representation. He served as the Chair of the widely recognized Pro Bono Program of Baker & McKenzie in North America for over seven years. He co-counseled with Lambda Legal in Langbehn v. Jackson Memorial Hospital, a high- profile case that led to an executive order by President Obama requiring all health care facilities receiving federal funds to have equal visitation rights for same sex families. In addition, he was involved in the drafting of an amicus brief on behalf of leading juvenile rights organizations, in Gill v. State, which led to Florida courts overturning the state's prohibition against homosexuals adopting, and in Windsor v. the Internal Revenue Service, he assisted in drafting an amicus brief on behalf of Fortune 500 companies in favor of marriage equality. He also was awarded for his work in the areas of foster care and juvenile justice by Lawyers for Children America and the Miami-Dade Public Defender's Office.

## AWARDS



**RANKED IN**
**Chambers**
**USA**
**2019**

**Donald J Hayden**

Chambers and Partners, America's Leading Business Lawyers, Commercial Litigation, 2009-Present | Best Lawyers in America, Commercial Litigation and International Arbitration, 2012-Present |  Legal 500, International Arbitration, 2012-2015 | Law 360 Editorial Advisory Board – International Arbitration, 2016- Present | Florida's Super Lawyers, Business Litigation, 2001 – Present | Florida Trend Magazine's "Legal Elite" and "Top Commercial Litigator," 2009- Present | South Florida Legal Guide, "Top Lawyer", 2015-Present | Martindale-Hubbell "AV-1 Preeminent" ranking 2000- Present

## EXPERIENCE

Berger Singerman, Florida
Baker & McKenzie, Chicago and Miami Offices

## LIST OF SPEAKING ENGAGEMENTS  & PUBLISHED ARTICLES

https://www.markmigdal.com/don-hayden/

## ASSOCIATIONS

- Chartered Institute of Arbitrators (CIArb) – Fellow
- Miami International Arbitration Society – Founding Member, Board of Directors, 2013-Present
- Miami International Arbitration Foundation – Secretary, 2015-Present
- American Bar Association, Litigation Counsel of America – Fellow, 2010-Present
- American Bar Association, Section of Litigation – Co-chair, International Litigation Committee, 2002-2006
- American Bar Association, Section of International Law & Practice, 2014-Present
- International Council for Commercial Arbitration, 2014-Present
- Law360 International Arbitration Editorial Advisory Board, 2015-Present
- Member of the Florida Bar's Civil Rules Committee, 2016-Present
- Federal Bar Association – Member
- Lexis Legal Advisory Board – Member, 2009-Present
- Lambda Legal – National Leadership Council, 2008-Present
- Catalyst Miami – Board of Directors, 2014-2016
- The Miami Foundation – Chairman of GLBT Fund Grants Committee, 2014-Present

   





> PEOPLE CALL ME A PERFECTIONIST,
> BUT I'M NOT. I'M A RIGHTIST. I DO
> SOMETHING UNTIL IT'S RIGHT AND THEN
> I MOVE ON TO THE NEXT THING.
>
> JAMES CAMERON

# DANIEL MALAND

 *Dan is a pleasure to work with.  He is diligent and responsive, providing pro-active thinking and sound judgment at every stage of the case."*
Partner, Florida Law Firm

**E: daniel@markmigdal.com   T: (305) 374-6621**

UNIVERSITY OF FLORIDA, 07  |  EMORY UNIVERSITY SCHOOL OF LAW, 10

Daniel is a third-generation Miamian admitted to practice in both New York and Florida, whose everyday goal is to effectively resolve his corporate and individual clients' disputes, in state and federal court or arbitration.

He has particular expertise in representing multinational corporations and high net worth individuals in bet-the-company litigation, representing federal court-appointed receivers in the prosecution and administration of their estates, providing white collar criminal defense, and assisting clients with government investigations. Daniel also consults on emerging technologies, with a focus on cyber security, blockchain, distributed ledger technologies, and smart contracts, as well as the implementation of such technology in maritime industries

Daniel currently is a member of the Florida Bar's Blockchain and Digital Currency Taskforce, and serves as the Young Lawyer Liaison to the Committee on Carriage of Goods of the Maritime Law Association. Daniel has been recognized as a rising star by Super Lawyers on multiple occasions.

A Blue Key graduate of the University of Florida, Daniel earned his J.D. from Emory University School of Law, where he served as Notes and Comments Editor to the Emory Bankruptcy Developments Journal and earned the Dean's Award Recipient for his work on behalf of Emory's International Humanitarian Law Clinic.

While in law school, Daniel volunteered in the New Orleans Public Defenders Office and interned for then United States District Judge Adalberto Jordan, who now sits on the United States Court of Appeal for the Eleventh Circuit.

Prior to moving back home to Miami, Daniel practiced as a litigator in New York, and had the privilege of representing President Obama's Task Force on the Auto Industry in its handling of the financial bailout of Chrysler and General Motors. He also served as a judicial law clerk to the Honorable Cathy L. Waldor, United States Magistrate Judge for the District of New Jersey in 2014-2015.

Daniel has been engaged in civil rights pro bono matters his entire career. Notably, Daniel successfully litigated for and obtained the immediate release of a detained asylum seeker facing certain death in his home country and has been recognized by the Legal Aid Society for his assistance representing foreign-born victims of domestic violence in obtaining American permanent residence status.

## AWARDS

Super Lawyers, New York and Florida, Rising Star for General Litigation  |  The Legal Aid Society of New York, Recognition for Outstanding Pro Bono Service

## ASSOCIATIONS

- Member, Florida Bar's Blockchain and Digital Currency Taskforce
- Miami ACCESS Steering Committee, AJC
- Charles Bronfman Convenor, Israel Policy Forum
- Young Lawyer Liaison to the Committee on Carriage of Goods of the Maritime Law Association
- Florida Blue Key

## EXPERIENCE

Kozyak Tropin & Throckmorton, LLP,  Florida

Chadbourne & Parke LLP / Norton Rose Fulbright LLP,  New York

Law Clerk to the Honorable Cathy Waldor, U.S. District Court District of New Jersey

Wilson Elser Moskowitz Edelman & Dicker LLP, New York

Cadwalader, Wickersham & Taft LLP, New York

## LIST OF SPEAKING ENGAGEMENTS  & PUBLISHED ARTICLES

www.markmigdal.com/daniel-maland/

   

# REPRESENTATIVE CASES



## Class Action Litigation

- Represented target defendant in the Chinese Manufactured Drywall Litigation, which involved hundreds of national class actions consolidated in a multi-district proceeding in the federal court in New Orleans. Knauf Plasterboard, one of the world's largest privately-held building materials manufacturers was the primary defendant in litigation involving over 30,000 impacted found primarily throughout the Southeastern U.S. Litigation arising from installation of Chinese drywall product in new home construction.

- Counsel to major property insurer in putative class action based on alleged failure of insurer to pay for building code upgrades.

- Obtained summary judgment for title insurer faced with class action related to alleged failure to provide reissue rate.

- Counsel to major insurer in various class actions and putative class actions alleging hundreds of millions in damages for fraud in connection with the sale of deferred annuities to seniors.

- Represented major retailer in putative class action alleging failure of company to make requisite accommodations for blind individuals accessing company's public website.

- Represented major insurer on appeal to Ninth Circuit from district court's ruling in RICO class action that it had jurisdiction to prohibit defendant from settling cases in other forums that might affect claims of class members before that court.

- Obtained summary judgment for title insurer faced with class action related to alleged failure to provide reissue rate.

- Counsel to insurance company in deceptive sales practices class action involving over 300,000 class members.

- Counsel to major insurer in breach of contract and bad faith class action denying certification.

- Counsel to major insurer in putative class action alleging unfair trade practices and state statutory violations, resulting in dismissal of action.

- Represented provider of residential mortgage foreclosure processing services in putative federal securities class action in district court and on appeal, obtaining dismissal from the district court, affirmed by the Eleventh Circuit Court of Appeals in Philadelphia Financial Management of San Francisco, LLC, et al. v. DJSP Enterprises, Inc., et al., 572 F. App'x 713 (11th Cir. 2014).

- Counsel to a potential class exceeding 75,000 members, adverse to international mega-corporation Herbalife, seeking more than $1 billion in damages. At the time of writing, claims are pending against Herbalife in federal courts in California and Florida and in arbitration tribunals throughout the United States. Lavigne et al. v. Herbalife, currently pending in the United States District Courts for the Central District of California, the Southern District of Florida and Eleventh Circuit Court of Appeals.

- Represented investors in Ponzi scheme litigation, including a putative class in Daccache v. Raymond James & Associates, Inc., et al., Case No. 16-cv-21575-FAM/JJO (S.D. Fla.), a multimillion dollar Ponzi scheme involving sales to EB-5 investors at the Jay Peak ski resort in Vermont resulting in a settlement recovery of over $150 million for investors.

- Class counsel on behalf of hundreds of Florida small business owners and consumers, often senior citizens, against a New York corporation for fraud and violation of the Florida Deceptive and Unfair Trade Practices Act in connection with the sale of electronic credit card payment processing equipment and related services. Chorba v. Northern Leasing Systems, Inc.; Case No.: 1:19-cv-08731(MKV) (S.D.N.Y.)

## Securities

- Represented high net worth Spanish developer in significant misappropriation and unauthorized trade claim against major broker dealer and rogue individual broker which was resolved through settlement at mediation before final hearing.

- Obtained dismissal of 10b-5 claims against senior officer of a public company involved in the time share industry as being time-barred and for failure to state control person liability against the executive under Section 20(a) of the Exchange Act.

- Counsel to defrauded investor in connection with multi-million dollar "pump-and-dump" scheme.

- Counsel to investors in private equity funds, REITs, high-yield bonds and other financial vehicles in lawsuits against financial advisors and banks.

- Counsel to bondholders in a series of multi-billion dollar breach of fiduciary duty and securities lawsuits against AT&T, Cox, Comcast and others arising from their role as controlling shareholders in the first company to provide high-speed internet access via cable modem.

- Represented Cannacord Genuity Limited, f/k/a Collins Stewart, a major London brokerage house, in a securities fraud action in which it was alleged that it contributed to approximately $400 million in losses suffered in connection with an IPO raising monies for an Orlando commercial real estate and entertainment development which was resolved after aggressive motion practice.

- Represented company in connection with SEC proceedings concerning alleged overstatements and misallocation of revenue related to foreclosure processing services in company's financial statements.

## RICO

- Defense counsel to individuals and entities accused of extortion, mail fraud and wire fraud relating to public records requests and the filing of allegedly extortionate lawsuits. Order of dismissal, with prejudice, available at Town of Gulf Stream v. O'Boyle, No. 15-80182-CIV, 2015 WL 3970612, at *1 (S.D. Fla. June 30, 2015), aff'd sub nom. Town of Gulf Stream, et al., v. Martin O'Boyle, et al., No. 15-13433, 2016 WL 3401681 (11th Cir. June 21, 2016).

- Defense counsel to international bank accused of assisting former South American head-of-state in the laundering of millions of dollars, commission of fraud and the violation of the RICO. Statute.

- Defense counsel to former principal of publicly traded real estate investment company accused of participating in RICO enterprise.

- Defense counsel to engineering company accused of violations under the False Claims Act, RICO, the Florida Deceptive and Unfair Trade Practices Act and common law fraud. Order of dismissal, with prejudice, available at: U.S. ex rel. Sanchez v. Abuabara, No. 10-61673-CIV, 2012 WL 1999527 (S.D. Fla. June 4, 2012).

- Defense counsel in case alleging RICO violations, including mail fraud and wire fraud, by a national provider of mortgage and consumer loan processing services, mortgage settlement services, default solutions and loan performance analytics.

- Successfully represented President of the Republic of Colombia, Ecopetrol, the state-owned petroleum company, as well as other senior government officials by obtaining dismissal of RICO and other fraud claims arising out of alleged kickbacks in the award of oil exploration and drilling rights with stated damages of more than $250 million.

- Plaintiff's counsel to regional company in action for RICO violations, civil theft, breach of contract, and unjust enrichment.

## Fraud Litigation

- Successfully obtained favorable judgment for Citicorp Investment Bank after federal bench trial where plaintiff claimed securities fraud in the sale of promissory notes and stock warrants.

- Counsel to prominent Miami real estate developers in defense of fraud claims.

- Recovered in excess of $30,000,000 in dozens of cases as South Florida counsel for one of the largest financial institutions in the country and a government sponsored enterprise prosecuting claims seeking recovery from title insurers for breach of closing instructions, fraud and dishonesty and

# REPRESENTATIVE CASES



against loan sellers seeking repurchase and/or indemnification for breach of Master Correspondent Loan Purchase Agreements.

- South Florida counsel to owner of $3.6 billion in assets under management, including approximately 15,000 multi-family units and 10 hotels, related to a variety of litigation and business dispute involving those assets in South Florida.

- Counsel to defrauded investor in connection with multi-million dollar "pump-and-dump" scheme.

- Defense counsel to SAP software implementation consultant accused of fraud and deceptive practices.

- Defense of claims for breach of fiduciary duty and conversion for alleged improper use of corporate funds by 50% owner of closely held telecommunications company.

- Counsel to real estate developers in connection with allegations of fraud, breach of fiduciary duty and tortious interference relating to the purchase and potential sale of tracts of land in Broward County.

- Defense counsel to individuals and entities accused of extortion, mail fraud and wire fraud relating to public records requests and the filing of allegedly extortionate lawsuits. Order of dismissal, with prejudice, available at Town of Gulf Stream v. O'Boyle, No. 15-80182-CIV, 2015 WL 3970612, at *1 (S.D. Fla. June 30, 2015), aff'd sub nom. Town of Gulf Stream, et al., v. Martin O'Boyle, et al., No. 15-13433, 2016 WL 3401681 (11th Cir. June 21, 2016).

- Defense counsel to international bank accused of assisting former South American head-of-state in the laundering of millions of dollars, the commission of fraud and the violation of the RICO statute.

- Obtained recovery of $1,750,000 for real estate executive for breach of promissory note, negligent misrepresentation and fraud.

- Representation of major art dealer in number of related matters involving allegations that significant artwork including works by Andy Warhol and others were not originals as represented prior to sale.

- Represented provider of residential mortgage foreclosure processing services, resulting in favorable summary judgment ruling in connection with state common law fraud and negligent misrepresentation claims based on alleged misstatements and omissions in the sale of securities.

- Represented various trustees in connection with more than 100 "clawback" (avoidance) actions.

## Bankruptcy and Insolvency

- Represented Judge Herbert Stettin as Chapter 11

Trustee for the law firm of Rothstein, Rosenfeldt & Adler, P.A. This case is reported to be the largest Ponzi scheme in Florida history and involves approximately $1.2 billion in claims. The confirmed Plan of Reorganization is expected to provide a 100% distribution to all allowed general unsecured creditors.  In re RRA, 09-34791-RBR (Bankr. S.D. Fla. 2009)

- Represented Daniel Stermer as Assignee in the assignment for benefit of creditors for The Peer Center, a mental health support facility in Broward County. The Peer Center's assets were sold and its operations closed. All creditors received a distribution and over $100,000 was donated to a charitable cause dedicated to the same mission as The Peer Center.

- Successfully defended an involuntary bankruptcy petition against a foreign national and obtained an award of damages and attorneys' fees under 303(i) of the Bankruptcy Code.

- Represented CP Miami LLC in connection with the Chapter 11 Proceedings of Commodore Parking Plaza LP, and obtained a transfer of the debtor's assets to CP Miami through a Chapter 11 Plan.

- Represented private education institution in connection with an out of court restructuring with its largest lender (a national bank) and obtained a reduction of 50% of the principal loan amount.

- Represented various buyers of assets in connection with chapter 7 and chapter 11 bankruptcy proceedings.

- Represented various defendants in adversary proceedings before bankruptcy courts.

## Business Torts

- Represented one of venture partners against Waste Management and other venture partner involving tortious interference and other claims arising from Waste Management's $510 million purchase of the assets being used by the joint venture to compete in the Broward county waste market.

- Obtained emergency freeze order for Palm Beach privately held company which resulted in recovery of more than half of the $7.5 million loss due to employee embezzlement within 60 days of discovery and initiated negligence claims against accounting firm and financial institutions that failed to uncover embezzlement scheme over 10-year period.

- Successfully defeated all derivative and direct claims of more than $15 million against majority shareholders and individual officers and directors after full trial arising out of failed launch of medical device.

- Obtained $15 million settlement for minority

shareholder in derivative claim arising out of claims of self-dealing and breach of fiduciary duty by majority shareholders and officers and directors of publicly held company.

- Represented South Florida staffing company in federal trademark claim brought by nationally recognized competitor claiming infringement of trade name.

- Obtained Eleventh Circuit decision affirming trial court's summary judgment in favor of The Golf Channel where plaintiff-appellant failed to establish protectible trademark interest.

- Obtained summary judgment for national auto glass repair and replacement company of antitrust claims brought by independent glass companies relating to alleged violations of Sections 1 and 2 of the Sherman Act.

- Obtained dismissal of RICO, Robinson-Patman and commercial bribery claims against machine tool manufacturer based upon the termination of one of its long-time distributors and replacement with another company.

- Obtained appellate decision reversing jury verdict for approximately $4.5 million in damages and attorney's fees for alleged antitrust violations in its entirety on behalf of Browning Ferris International.

- Defense counsel to SAP software implementation consultant accused of fraud and deceptive practices.

- Represented oil and gas company in a professional liability claim related to a defective Phase I environmental report prepared by a prominent environmental engineering firm.

- Obtained summary judgment, affirmed on appeal, in defense of a legal malpractice claim brought against a law firm arising from the drafting of estate planning documents. Zohlman v. Zoldan 90 So.3d 296 (Fla. 3d DCA 2012).

- Obtained summary judgment for law firm, affirmed on appeal, related to statute of limitations. Veitch v. Wasserman, 117 So. 3d 424 (Fla. 3d DCA 2012).

- Obtained emergency injunctive relief and money damages for client who held exclusive licensing rights to merchandise related to major rock band during its North American tour and enjoined the band through third party merchandisers from selling competing merchandise throughout the entirety of the tour schedule.

- Successfully represented Judge Stettin in connection with the appeal to the Eleventh Circuit Court of Appeal of the Federal Government's attempt to forfeit the assets of Scott W. Rothstein. United States v. Rothstein Rosenfeldt Adler P.A., 717 F.3d 1205 (11th 2013).

# REPRESENTATIVE CASES



## Insurance

- Obtained summary judgment for Travelers' Insurance Company based upon interpretation of standard provisions of employee dishonesty bond and finding that plaintiff's coverage was limited to limits of original bond coverage.
- Obtained landmark decision in which Fourth Circuit's reversed summary judgment in favor of insured finding that damages for which insurance recovery sought fell outside the available coverages of the industry- standardized D&O fiduciary bond.
- Obtained Eleventh Circuit decision in favor of insurer on issues of the application of the attorney-client privilege and work product doctrine to claims and forensic accounting documentation.
- Represented oil and gas company in a professional liability claim related to a defective Phase I environmental report prepared by a prominent environmental engineering firm.
- Obtained summary judgment, affirmed on appeal, in defense of a legal malpractice claim brought against a law firm related to the drafting of estate planning documents. Zohlman v. Zoldan 90 So.3d 296 (Fla. 3d DCA 2012).
- Recovered in excess of $30,000,000 in dozens of cases as South Florida counsel for one of the largest financial institutions in the country and a government sponsored enterprise prosecuting claims seeking recovery from title insurers for breach of closing instructions, fraud and dishonesty and against loan sellers seeking repurchase and/or indemnification for breach of Master Correspondent Loan Purchase Agreements.
- Plaintiff's counsel to Lincoln Road art gallery in connection with a multi-million dollar dispute with its landlord and a neighboring tenant.
- Represented condominium and homeowner's association related to various claims for director and officer liability.
- Obtained full recovery for all damages sought and attorneys' fees after full bench trial for employer against third party administrator of employee benefits program based upon violation of ERISA statute and breach of fiduciary duty claims.
- Counsel to major insurers in connection with market conduct and regulatory issues affecting the sale of life and annuity products to identify and reduce litigation risk.
- Counsel to major insurer in various opt-out lawsuits concerning allegedly unlawful and negligent practices in the sale of deferred annuities.

## Appellate Litigation

- Filed amicus brief to US Supreme Court on behalf of child advocacy and juvenile justice organizations across the country in support of petition of writ of certiorari seeking uniform recognition of valid adoption orders involving the adoption of children by same sex couples.
- Obtained landmark decision on behalf of leading pharmaceutical company establishing "learned intermediary doctrine" as the controlling doctrine for determining adequacy of warnings for the pharma industry and in health care in general.
- Obtained Eleventh Circuit decision affirming trial court's summary judgment in favor of The Golf Channel where plaintiff-appellant failed to establish protectible trademark interest.
- Multiple related lawsuits involving claims of securities fraud brought in both the state and federal courts were successfully thwarted repeatedly through separate decisions from the Eleventh Circuit at the federal level and the Fourth Circuit Court of Appeals at the state court level.
- Obtained appellate decision reversing jury verdict for approximately $4.5 million in damages and attorney's fees for alleged antitrust violations in its entirety on behalf of Browning Ferris International.
- Obtained favorable appellate decision from Second Circuit Court of Appeals affirming lower court's refusal to reinstate federal proceedings capping an extended representation over many years to prevent a $1 billion claim against Banco do Brasil, a major international financial institution, from being here in the United States. Through contorted pleading of the claims and manipulation of the Brazilian courts, the plaintiff sought to have the matter reinstated which had originally been dismissed on forum non conveniens grounds. Mendes Junior International Company V. Banco do Brasil, S.A. 394 Fed. Appx. 787 (2d Cir. 2010; Mendes Junior Int'l Co. V. Banco do Brasil,, S.A., 15 F. Supp. 332 (S.D.N.Y. 1998).
- Represented national organization as amicus curiae in the United States Supreme Court, which affirmed the lower court's ruling, in a matter involving interpretation and application of the Securities Litigation Uniform Standards Act (SLUSA) and its potential impact on the ability of bankruptcy trustees to exercise their fiduciary duties.
- Represented national organization as amicus curiae in the United States Supreme Court on petition for writ of certiorari on grounds of a circuit split and interest in uniformity in the application of the Bankruptcy Code, in particular §546(e), which impacts a bankruptcy trustees' ability to effectively administer the bankruptcy estate through use of the trustees' avoidance powers.
- Represented judgment debtor on appeal in the Eleventh Circuit and in the Supreme Court on a certified question concerning the district court's ruling that Florida statute of limitations barred appellants' post-judgment collection efforts.
- Represented prominent Miami based brokerage firm in connection with appeal of $9 million judgment for breach of contract in Third District Court of Appeal.
- Represented federal criminal defendant and obtained reversal of conviction for Hobbs Act conspiracy to rob a stash house of cocaine in Eleventh Circuit Court of Appeals based on insufficiency of the evidence, including briefing and argument of evidentiary, constitutional, and federal sentencing issues. United States v. Sardinas, 386 F. App'x 927 (11th Cir. 2010).
- Representation of criminal defendants on federal sentencing issues on appeal in the Eleventh Circuit from convictions for conspiracy, robbery, narcotics and trafficking.
- Represented federally recognized Indian Tribe on petition for writ of certiorari to the United States Supreme Court involving issue of federal question jurisdiction in action to enforce Tribal court judgment and supplemental briefing in response to Solicitor General's brief.

## Cross-border Disputes

- Obtained dismissal of claims under Florida Whistleblower's Statute by terminated executive working in Latin American operations against leading internet and technology company through motion practice as well as favorable resolution of wrongful discharge claims in related arbitration in US and civil litigation in Argentina.
- Successfully represented President of the Republic of Colombia, Ecopetrol, the state-owned petroleum company, as well as other senior government officials by obtaining dismissal of RICO and other fraud claims arising out of alleged kickbacks in the award of oil exploration and drilling rights with stated damages of more than $250 million.
- Successfully recovered approximately $4 million for Venezuelan stakeholder in Texas federal court interpleader action involving claims by Venezuelan government controlled entity, Petroles de Venezuela, S. A. (PDVSA), arising out of expropriation of client's Venezuelan operations.
- Represented Florida company in its claims against Bariven, a wholly owned subsidiary of PDVSA, the Venezuelan state-owned oil company in substantial claims arising out of sale of powdered milk from China contaminated with melamine involving parallel proceedings in Miami and Cayman Islands.
- Successfully obtained transfer of action for

# REPRESENTATIVE CASES



misappropriation of trade secrets and breach of fiduciary duties based upon choice of law and forum selection clauses of distributorship agreement for Samsung Semiconductors.

- Represented a Venezuelan National in connection with an international transaction over $15 million.
- Represented Spanish and Mexican telecommunications companies in various litigations arising out of their investments in U.S. radio and television companies eventually resulting in significant money damage claims for those Spanish and Mexican investors arising from misappropriations and breaches of fiduciary duties by their U.S. partner.
- Obtained dismissal of all claims including claims for civil theft, conversion and tortious interference against Mexican senior executive arising out of termination of long term contract with Mexican state government entity after federal bench trial.
- Represented Republic of Ecuador in both ICC arbitration proceedings and related U.S. litigation involving breach of multi-year electrical utility concessions agreement.
- Obtained dismissal of all claims including fraud and civil conspiracy against major French aircraft engine manufacturer, Safran Group and its subsidiaries, including fraud, civil conspiracy and theft of trade secrets through focused motion practice.

## International Arbitration

- Obtained significant settlement for high net worth Spanish family against leading international financial broker for losses resulting from unauthorized transactions by rogue agent that resulted in losses of more than $8 million.
- Represented South African gold mining and exploration company in ICDR arbitration involving breach of contract claims and ownership interests in gold mine resulting in significant arbitration award eventually resolved though settlement after award.
- Represented Ecuadorian distributor in ICC arbitration involving claims by Korean manufacturer and counterclaims by distributor arising out of the termination of the distribution agreement for Ecuador and other Latin American companies.
- Represented Brazilian aviation parts provider with long term exclusive sales representative agreements for major European aviation conglomerate in its wrongful termination claims involving independent contracts with various subsidiaries and affiliate companies requiring prosecuting parallel ICC and LCIA proceedings as well as ancillary judicial proceedings eventually resulting in negotiation of omnibus settlement.

- Obtained significant award in reinsurance arbitration involving leading international carriers and reinsurance companies in coverage dispute arising from construction of major Latin American energy project.
- Represented general contractor in ICDR arbitration in claims against major US energy company in claims relating to construction of Brazilian power generation plant which was favorably resolved after full hearing through settlement prior to award.

## Real Estate & Construction Litigation

- Counsel to homeowners' association of 40+ unit Miami Beach residential luxury condominium building for construction defect claims against the building's general contractor, developer and subcontractors.
- Plaintiff's counsel to owner of Hollywood office building in connection with its multi-million dollar lawsuit against its general contractor.
- Obtained pre-suit recovery for owner of large commercial office complex in connection with construction defect claims related to the faulty installation of a roof asserted against contractors, architect and roof manufacturer.
- Obtained favorable settlement of real estate fraud claim for real estate developer based upon material misrepresentations and omissions by broker involved in the sale of large commercial property in Palm Beach County after successful motion practice narrowing exposure.
- Counsel to Miami-based hotel/condominium in connection with $250+ million LLC dispute among owners of the company, triggering significant litigation concerning corporate governance and LLC member rights.
- Counsel to real estate developers in connection with allegations of fraud, breach of fiduciary duty and tortious interference relating to the purchase and potential sale of tracts of land in Broward County.
- Plaintiff's counsel to Lincoln Road art gallery in connection with a multi-million dollar dispute with its landlord and a neighboring tenant.
- Counsel to real estate investors in connection with the purchase of debt (and eventual foreclosure) of dozens of parcels in Palm Beach County.
- Counsel to luxury residential real estate owners alleging a breach of contract by a developer.
- Represented Canadian investors in Fort Lauderdale hotel property in mortgage foreclosure action with lender liability counterclaims resulting in successful resolution through renegotiation of financing and monetary recovery on counterclaims.

- Represent borrowers and lenders in a variety of commercial foreclosure matters and litigated substantial lender liability counterclaims on behalf of guarantors and borrowers.
- Counsel to investors in private equity funds, REITs, high-yield bonds and other financial vehicles in lawsuits against financial advisors and banks.
- Counsel to prominent Miami real estate developers in defense of fraud claims.
- Recovered in excess of $30,000,000 in dozens of cases as South Florida counsel for one of the largest financial institutions in the country and a government sponsored enterprise prosecuting claims seeking recovery from title insurers for breach of closing instructions, fraud and dishonesty and against loan sellers seeking repurchase and/or indemnification for breach of Master Correspondent Loan Purchase Agreements.
- Obtained pre-suit recovery for owner of large commercial building in connection with construction defect claims related to the faulty installation of a roof asserted against contractors, architect and roof manufacturer.
- Obtained summary judgment for law firm, affirmed on appeal, related to statute of limitations. Veitch v. Wasserman, 117 So. 3d 424 (Fla. 3d DCA 2012).
- South Florida counsel to owner of $3.6 billion in assets under management, including approximately 15,000 multi-family units and 10 hotels, related to a variety of litigation and business disputes involving those assets in South Florida.
- Represented condominium and homeowners' association related to officer and director liability claims.
- Defeated both motions for summary judgment seeking to exclude our client from obtaining consequential damages and damages related to water intrusion.

TECHNOLOGY
COMMUNICATION
WORKFLOW

#Law*Realigned*



MARK MIGDAL & HAYDEN  BRICKELL CITY TOWER  80 SW 8TH STREET, SUITE 1999  MIAMI, FL 33130  T: 305 374 0440