**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

|  |  |
|---|---|
| IN RE CARNIVAL CORP. SECURITIES LITIGATION | Case No.  1:20-cv-22202-KMM <br><br> <u>CLASS ACTION</u> |
| ABRAHAM ATACHBARIAN, individually and on behalf of all others similarly situated, <br><br> Plaintiff, | Case No.  1:20-cv-23011-RNS <br><br> <u>CLASS ACTION</u> |
| CARNIVAL CORPORATION, CARNIVAL PLC, ARNOLD W. DONALD, DAVID BERNSTEIN, and MICKY ARISON, <br><br> Defendants. |  |

**PLAINTIFF ABRAHAM ATACHBARIAN'S MEMORANDUM
<u>OF LAW IN OPPOSITION TO CONSOLIDATION</u>**

### I. <u>Introduction</u>

Plaintiff, Abraham Atachbarian ("Plaintiff" or "Atachbarian"), submits this memorandum

of law in opposition to the six motions to consolidate Plaintiff's action captioned, *Atachbarian v.*

*Carnival Corporation, et al.*, Case No. 1:20-cv-023011, presently pending before the Hon. Robert

N. Scola, Jr. (the "*Atachbarian* Action" or "Plaintiff's Action")[1], with the consolidated action

---

[1] Atachbarian and the named defendants ("Defendants") in the *Atachbarian* Action have filed a Joint
Motion and Stipulation before Judge Scola, stipulating to transfer of the *Atachbarian* Action to this Court.

1

presently pending in this Court (the "Consolidated Action")[2].  Plaintiff seeks deferral of any consolidation until the lead plaintiff process in Plaintiff's action is completed.  Alternatively, Plaintiff asks the Court to coordinate his Action with the Consolidated Actions until the lead plaintiff selection process in his Action is completed.

Six motions seeking consolidation and for appointment as lead plaintiff were filed in this Court on July 27, 2020, pursuant to the Private Securities Litigation Reform Act (the "PSLRA").[3] Pursuant to the PSLRA, each of those motions seeks the consolidation of Plaintiff's Action with the Consolidated Action before the determination of the lead plaintiff appointment, as well as seeking lead.  For the reasons stated below, Plaintiff opposes the consolidation of the *Atachbarian* Action with the Consolidated Action until the separate lead plaintiff appointment process commenced in *Atachbarian* Action has been completed as:  (1) the notice disseminated in the first filed action, by *Service Lamp*, failed to place options traders, and particularly sellers of put options for the shares of Carnival Corporation ("Carnival") on notice of their ability to move for lead, thereby eliminating an entire class of purchasers of call options and put sellers from the lead plaintiff process (the "Options Class"); and (2) none of the common share purchasers who have

---

[2] The constituent actions were captioned *Service Lamp Corp. Profit Sharing Plan v. Carnival Corp.*, No. 1:20-cv-22202 ("*Service Lamp*", the "*Service Lamp Action*"), and *Elmensdorp v. Carnival Corp.*, No. 1:20-cv-22319 ("*Elmensdorp*," together with *Service Lamp*, the "Constituent Actions").

[3]  The six pending motions for appointment as lead plaintiff and consolidation are:  (1)  Stuart Roy Rosenblatt's Motion for Consolidation of The Related Actions, Appointment As Lead Plaintiff, And Approval Of Selection Of Counsel (ECF No. 17); (2) Notice of Motion and Motion Of Movant Joseph Fuscaldo To: (1) Consolidate Related Actions; (2) Appoint Lead Plaintiff; and (3) Approve Selection Of Counsel ( ECF No. 18); (3) Notice of Motion of Stephen Harris For Consolidation, Appointment as Lead Plaintiff, and Approval of Lead Counsel (the "Harris Motion")(ECF No. 20); (4) Motion of Liuna Pension Fund of Central and Eastern Canada for Consolidation, Appointment as Lead Plaintiff, And Approval of Selection of Lead Counsel, and Incorporated Memorandum of Law in Support thereof (the "Liuna Motion")(ECF No. 21); (5) Motion of The New England Carpenters Pension and Guaranteed Annuity Funds and the Massachusetts Laborers' Pension and Annuity Funds for Appointment as Lead Plaintiff, Approval of Their Selection Of Counsel, and Consolidation of Related Actions (the "New England Motion", the "New England Mot. at _") (ECF No. 23); and (6) Lead Plaintiff Movants Roy and Joan McCarroll's Motion for Consolidation, Appointment As Lead Plaintiff, and Approval Of Selection of Lead Counsel and Incorporated Memorandum of Law (ECF No. 25) (collectively, the "Movants").

moved for lead, transacted in options for Carnival shares, *i.e.* purchased call options or sold put options for Carnival shares, and as such they should not and cannot represent the Options Class members that Plaintiff seeks to represent.

Plaintiff filed a separate action on July 21, 2020 and on July 23, 2020 disseminated a notice pursuant to the PSLRA on behalf of persons or entities who purchased call options or sold put options for Carnival securities.  *See* Declaration of Howard T. Longman dated August 10, 2020 (the "Longman Declaration", "Longman Dec., Ex. A.   The lead plaintiff motions in that process are due on September 21, 2020.  It is anticipated that pursuant to the PSLRA, a lead plaintiff could be appointed by the Court by December 20, 2020.  Thus, Plaintiff seeks to have the Court defer any determination regarding consolidation until such appointment, and thereafter to have the Court appoint as a co-lead plaintiff, a proper representative of the Options Class. *See Boilermakers Nat'l Annuity Trust Fund v. Wamu Mortg. Pass*, Case No. C09-0037 MJP, 2009 U.S. Dist. LEXIS 123089, at *6 (W.D. Wa. Dec. 18, 2009) (deferring consolidation until after deadline for lead in second case filed).  Alternatively, the Court could coordinate the Atachbarian Action with the Consolidated Action so as not to delay the lead plaintiff process in the Consolidated Action.

## II. Procedural History

On May 27, 2020 Service Lamp filed the first action against Carnival, and two individual defendants on behalf of a class consisting of all those who purchased or otherwise acquired Carnival common stock and securities between January 28, 2020 and May 1, 2020, inclusive ("the "Service Lamp Class Period")(ECF No. 1).  The Service Lamp Action alleges that during the Service Lamp Class Period, defendants disseminated materially false and misleading statements and made omissions of material fact regarding its preparedness for the coming pandemic, when it knew that that its health and safety protocols were not sufficient.  The Service

Lamp complaint asserts claims against Carnival and certain of its officers under the Securities Exchange Act of 1934 (the "Exchange Act").  On the same day, Service Lamp disseminated a notice pursuant to the PSLRA solely on behalf of "[a]ll persons or entities who purchased or otherwise acquired the securities of Carnival" during the Service Lamp Class Period, indicating that such purchasers or acquirors of Carnival securities had until July 27, 2020 to move for appointment as lead plaintiff.  *See* Longman Dec., Ex. B.

On June 3, 2020, the *Elmensdorp* Action was filed. 1:20-cv-22319 (ECF No. 1).  It contains similar allegations to those made in the *Service Lamp* Action, but only on behalf of purchasers of Carnival *common* stock and American Depository Shares ("ADS") but with a longer class period: from September 26, 2019 to April 30, 2020 (the "*Elmensdorp* Class Period"). The same day, Elmensdorp disseminated a notice with the longer class period, consistent with its complaint, but only put on notice purchasers or other acquirors of Carnival *common stock*  and ADS purchasers and noted that purchasers had until July 27, 2020 to move for appointment as lead.[4]  On July 6, 2020, the Court entered on order consolidating the *Service Lamp* and *Elmensdorp* Actions. (ECF No. 10). See Longman Dec., Ex. C.

Recognizing that neither the *Service Lamp* nor the *Elmensdorp* Actions included options purchasers or put sellers, and that the Elmensdorp notice specifically invited only common shareholders and Depository Share purchasers to move for lead, on July 21, 2020 Atachbarian filed a separate action which was assigned to Judge Scola.  That action also alleges that Carnival and certain related entities and individuals violated federal securities laws in making statements regarding Carnival's preparedness for Covid-19.  However, it was specifically brought on behalf of purchasers of call options or sellers of put contracts for Carnival shares, during the period of

---

[4] Significantly, certain of the counsel for Elmensdorp, are now counsel for movant New England.

4

January 27, 2020 to May 1, 2020 (the "Options Class").   On July 23, 2020, Atachbarian disseminated a new notice to the Options Class, and in particular put sellers who were specifically excluded from both the *Service Lamp* and *Elmensdorp* notices, and indicated that putative Options Class members have until September 21, 2020 to move for lead of the Options Class. That notice is outstanding.

### III. Argument

A. Neither the Service Lamp Notice nor the Elmensdorp Notice Was Sufficient to
Put Members of the Options Class on Notice to Move for Lead

The PSLRA requires that a plaintiff commencing a securities class action in federal court publish "[n]ot later than 20 days after the date on which the complaint is filed . . . a notice advising members of the purported plaintiff class . . . of the pendency of the action, the claims asserted therein, and the purported class period." 15 U.S.C. §78u-4(a)(3)(A)(i)(I). The purpose of the PSLRA's notice requirement is "'to encourage the most capable representatives of the plaintiff class to participate in class action litigation, parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders.'*" In re Cyberonics Inc. Sec. Litig.*, 468 F. Supp. 2d 936, 938 (S.D. Tex. 2006) (quoting H.R. Conf. Rep. No. 104-369, at 32 (1995)).   The initial notice called for under the PSLRA is straight-forward. "This notice must identify the claims alleged in the lawsuit and the purported class period and *inform potential class members*" of their right to intervene in the litigation. *Ravens, v. Iftikar*, 174 F.R.D. 651, 657 (N.D. Cal. 1997) (quoting the Statement of Managers in H.R. Conf. Rpt. No. 104-369 at 33) (emphasis added).

Both the Service Lamp and Elmensdorp notices failed to include call options purchasers and sellers of put contracts for Carnival shares as among those who could move for lead.

5

Moreover, even if the Service Lamp Notice had been sufficient, which it was not, the Elmensdorp Notice specifically noted that its action was only on behalf of common shareholders and ADS purchasers—completely confusing the situation as to which securities could move for lead. Thus, given the lack of proper notice to those class members, no movant can represent members of the Options Class, requiring a second notice—the notice disseminated by Atachbarian.  Courts have required a second notice, where the initial complaint was brought on behalf of a class of plaintiffs who purchased completely different kinds of securities, since the new class of securities purchasers may have disregarded the original notice.  *See Vanleeuwen v. Keyuan Petrochemicals, Inc*., No. CV 11-9495 PSG (JCGx), 2013 U.S. Dist. LEXIS 72683, at *13-16 (C.D. Cal. May 9, 2013) ("courts have required plaintiffs to republish notice when the amended pleading affects a new class of plaintiffs"). In *Vanleeuwen*, for instance, the court required the lead plaintiff of public securities to publish a second notice where its amended complaint added private placement purchasers who were not originally noticed in the first notice. *Id*. at *12.  *See also Sgarlata v. PayPal Holdings, Inc., et al.*, No. 3:17-cv-06956-EMC, ECF No. 39 (Stipulation, Ex. A) at Longman Dec. Ex. D); and 2018 U.S. Dist. LEXIS. 59166, *2 (N.D. Cal. Mar. 30. 2018)(republication was required because the initial plaintiff purchased options after the first disclosure at the end of the class period and the initial PSLRA notice did not mention "a broader class definition"); *In re Cloudera Secs. Litig*., No. 19-CV-03221-LHK, 2020 U.S. Dist. LEXIS 47102 at *11 (N.D. Cal. Mar. 18, 2020 (new class definition included members who did not previously purchase the company's stock, but acquired it in exchange for another company's stock due to a merger)*; Kaplan v. S.A.C. Capital Advisors, L.P.*, 947 F. Supp. 2d 366, 367 (S.D.N.Y. 2013) (class was redefined to include "investors who traded contemporaneously with and opposite to" the defendants); *Waldman v. Wachovia Corp*., No. 08 Civ. 2913 (SAS), 2009

U.S. Dist. LEXIS 83597, at *3-5 (S.D.N.Y. Sept. 14, 2009) (class was changed from those who purchased auction rate securities directly from Wachovia to those who purchased auction rate securities in any auction where Wachovia served as an auction dealer); *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, No. 05 Civ. 1898 (SAS), 2005 U.S. Dist. LEXIS 10780, at *7-9 (S.D.N.Y. June 1, 2005) (same).

Indeed, the law is well settled that under these circumstances, "fairness dictates that those new class members ought to be informed of the existence of pending claims that may affect their rights" and they should be provided with "a reasonable opportunity to identify themselves and present themselves for the Court's consideration." *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 2005 U.S. Dist. LEXIS 10780, at *9; *Waldman v. Wachovia Corp.*, 2009 U.S. Dist. LEXIS 83597, at *5.  That is particularly true where, as here, the lead or potential lead plaintiff lacks standing to bring the new claims.  *See* Longman Dec. Exhs. E and F (Memorandum in Opposition to Ex Part Application to Consolidate and Order Granting Plaintiffs' *Ex Parte* Motion to Consolidate and Ordering Republication of PSLRA Notice  filed in *In re STEC, Inc. Sec. Litig.*, No. SACV-09-01304-JVS (MLGx)(ECF Nos. 68 and 71), granting republication of notice where lead plaintiff did not have standing to assert claims in newly filed complaint).

At least two of the movants, Harris and Liuna, recognized this problem and now move to be lead of a class including options purchasers and put sellers in their motions. Of course, this does not rectify the fact that the notice excluded Options Class members from moving for lead, nor do either of these movants have standing to represent options purchasers and put sellers. *See* Harris Motion, ECF No. 20, and Liuna Motion, ECF No. 21.

Movant New England makes a number of arguments.  First, it argues that the *Atachbarian* Action and the Constituent Actions, are substantially similar and that only the first filed action can commence the period for lead plaintiff motions.  New England Mot. at 8 n. 4. This argument again does not address the inadequate notice issue.  In so arguing, moreover, New England relies upon the inapposite case *In re Sunbeam Sec. Litig.*, No. 98-8258, 1998 U.S. Dist. LEXIS 21490  (S.D. Fla. Dec. 4, 1998), a case which has nothing to do with the adequacy of notice. Sunbeam involved a challenge by a second group of investors who were purchasers of Sunbeam shares during an extended class period, to a lead plaintiff structure and potential consolidation of their case with the original action.  The court granted consolidation and affirmed the lead plaintiff selection because there was no showing that the lead plaintiff would not adequately protect the interests of the other common shareholders.  Given that all of the plaintiffs in issue were common shareholders of Sunbeam, the court found that any differences or conflicts could be resolved through the filing of an amended complaint.  That is not the situation here, where Atachbarian and members of the proposed Options Class are purchasers and sellers of contracts for Carnival shares, and thus, as discussed below, have different interests than the common shareholders. Moreover, none of the movants, much less the presumptive lead plaintiff, New England, has standing to bring claims on behalf of members of the Options Class, so that this issue cannot be resolved through the filing of an amended complaint by the movant.[5]

New England then argues that options are considered securities for Section 10(b) purposes and therefore, the Service Lamp Notice did provide notice to options purchasers and put sellers.  New England Motion at 18.  (ECF No. 23).  The provision that New England cites

---

[5] The movant could file an amended complaint that includes claims on behalf of an options class, and in particular, put sellers.  However, that would entail having a representative for those claims as movant does not have standing to bring those claims.

is a general one, which discusses the definition of security as used in the statute and does not address the context in which the term security is used in the Service Lamp Notice.   It assumes that putative class members reviewing the Service Lamp Notice will somehow be aware of the statutory definition of securities under Section 10(b), and that the statutory definition somehow applies to a PSLRA notice.  In any event, the Service Lamp Notice was specifically addressed to "[a]ll persons or entities who purchased or otherwise acquired the securities of Carnival Corporation".  Options, and in particular, put contracts, are not securities of Carnival but are contracts for the sale or purchase of the securities of the company.  To state the obvious, moreover, put *sellers* are not purchasers or acquirors of any security as the Service Lamp Notice stated.   Moreover, the Elmensdorp Notice, which invited only common share purchasers and ADS purchasers to move, completely confused the issue, and the investing public.[6]

New England further argues that courts have rejected the notion that potential differences in the nature of investments justifies separate treatment.  New England Mot. at 18-19. That argument is far too simplistic, nor is it supported by the cases that it cites.  In *Johnson v. J.C. Penney Co.*, No. 6:1-CV-722, 2015 U.S. Dist. LEXIS 185879 (E.D. Tx. June. 10, 2015), for instance, the lead plaintiff, a common share purchaser refused to assert claims on behalf of options purchasers after almost a year of litigation.  An options purchaser filed a separate action. The court only consolidated the actions when the lead plaintiff agreed to assert a claim on behalf of the

---

[6] On August 10, 2020, the Defendants filed the Defendants' Memorandum of Law in Support of Motions to Consolidate Related Actions, ECF No. 27, stating that the *Atachbarian* Action and the Consolidated Action should be consolidated and reiterating an argument made by New England. Atachbarian, however, does not disagree that the Actions should at some point be consolidated but only that the consolidation be delayed until a lead is appointed on behalf of the Options Class since it otherwise has no protection.  This is especially true since certain of the counsel for New England, the presumptive lead, who filed the Elmensdorp Action, did not file an action on behalf of all acquirors of securities but disseminated a notice only on behalf of common shareholders and ADS purchasers.  As such, it specifically eliminated call purchasers and put sellers from moving for lead plaintiff indicating that it does not plan to take any steps to protect the Options Class.

options purchasers and to appoint the options plaintiff as the class representative. *Id*. at \*6.  In *In re Bank of Am. Corp. Sec., Derivative, & ERISA Litigation*, No. 09 MDL 2058 (DC), 2010 U.S. Dist. LEXIS 37799  (S.D.N.Y. Apr. 9, 2010), the court only denied the lead motion of the options purchasers when the original lead plaintiff represented that it was still considering adding options claims, and admonished that the lead plaintiff would "surely" have an incentive to add such claims if they were meritorious.  In *Hedick v. Kraft Heinz Co.*, Case No. 19-cv-1339, 2019 U.S. Dist. LEXIS 174315 (N.D. Ill. Oct. 8. 2019), the court similarly warned that the lead plaintiff had a duty to continue to monitor whether it was capable of adequately protecting the interests of class members, including options purchasers, and that options purchasers would be able to protect their own interests by having the lead removed if it failed to protect their interests.  *Id*. at \*31-32.  In each of those cases, the court acknowledged that options traders had distinctive claims that needed protection, and only denied the options plaintiff's lead plaintiff motion when the common purchaser lead plaintiff committed to bringing claims on their behalves.

In this instance, there is no commitment by any of the movants, including the presumptive lead, New England, to bring claims on behalf of options purchasers and in particular put sellers, and in fact, the operative notice, the Service Lamp Notice, excludes options purchasers and most particularly, put sellers from even moving for lead.  There is no indication here that any of the movants, including New England, plans to take any steps to protect members of the Options Class. In fact, Atachbarian, an active trader of options for cruise line companies, has already experienced firsthand, a common purchaser's refusal to bring claims on behalf of options purchasers even after agreeing to do so in  *Douglas v. Norwegian Cruise Lines*, Case No. 20-21107-Civ-Scola.  In that action, Atachbarian moved to be appointed as lead of an options class or subclass.  After much briefing during the lead plaintiff selection process, Atachbarian agreed to withdraw his motion

10

when the presumptive lead agreed that it would bring claims on behalf of an options class and consider using Atachbarian as the representative.  Longman Dec., Ex. G.  Instead, after its appointment, lead plaintiff filed a consolidated amended complaint without including any claims on behalf of options purchasers or put sellers, completely excluding them from the action, thus precluding them from sharing in any part of a potential recovery.  *See* Case No. 20-21107 (ECF Nos. 48 and 56).

Therefore, it is critical that the lead plaintiff process commenced in the *Atachbarian* Action be allowed to proceed especially since there is no commitment by any movant to assert claims on behalf of options purchasers.

B.  None of the Movants Is an Appropriate Representative of the Options Class

Atachbarian's notice is particularly necessary, as none of the movants has standing to represent the Options Class members, and thus none is appropriate to represent that Class.  Where the movants lack standing, courts have appointed a separate lead plaintiff. *See, e.g.*, *In re Am. Italian Pasta Co. Sec., Litig.*, 05-cv-0725-CV-W-ODS, 2007 U.S. Dist. LEXIS 21365, at *24-25 (W.D. Mo. Mar. 26, 2007)(noting that a lead plaintiff who did not trade options cannot be lead on behalf of a class of options traders).

There are significant differences between common shares and options for Carnival shares which make a separate notice and separate representation particularly necessary here.  For instance, the Carnival options were traded on sixteen (16) different exchanges, including the Chicago Board Options Exchange or the CBOE, during the Class Period, while the common stock was traded on New York Stock Exchange. Each of those exchanges has different hours and trading characteristics, and any efficient market analysis sufficient to support certification of the respective classes, will require different evidence and expert testimony.  There are approximately over 50

different call and put options with different features available on any given day and thus hundreds that were open during the Class Period.  All of this would have to be factored into an analysis of the price impact of the alleged misrepresentations and would require a separate events study analysis to determine the price impact of alleged misrepresentations beyond one performed for the common stock.  Moreover, the issue of whether a purchaser or seller of an options contract suffered damage is a complex one, and option premiums must be factored into the premium paid and/or received to determine damages.  These are calculations that do not have to be made for the purchasers of common stock.

A lead plaintiff who did not trade options has little incentive to spend its time and energy amassing this type of evidence pertinent only to options traders. In fact, they have failed to do so in other cases.  *See, e.g.*, *In re American Realty Capital Properties, Inc. Litig*., No. 1:15-mc-000040-AKH (S.D.N.Y. June 16, 2019) ("*ARCP*")(ECF No. 860).  (Court rejected lead counsel's argument that the class included options purchasers, in light of defendants' argument that insufficient evidence supporting certification of that class was presented.  The Court noted that certification of an options class involves different considerations than certification of a common share purchaser class).  Longman Dec., Ex. H.

Moreover, lead plaintiffs who have not traded in options have often failed to assert claims on behalf of options traders—leaving options traders with no recourse.  *See, e.g., In re Valeant Pharms. Int'l, Inc. Secs. Litig.*, 15-cv-7658 (MAS)(LHG), 2018 U.S. Dist. LEXIS 191439, at *18-19 (D.N.J. Nov. 7, 2018) (class definition excluded sellers of put options and court noted that put sellers are not included in definition of purchasers); *In re New Oriental Educ. & Tech. Group Secs. Litig.*, 293 F.R.D. 483, *486-88 (S.D.N.Y. 2013) (claims of options traders severed after lead plaintiff failed to include the options trader claims).  *See also Douglas v. Norwegian Cruise Lines*,

Case No. 20-21107-Civ-Scola (ECF Nos. 48 and 56), discussed above; *In re Allergan, Inc. Proxy Violation Derivatives Litig.*, Case No. 2:17-cv-04776 (ECF No. 63) (appointing separate options purchaser and put seller class where common purchaser failed to make claims specific to those class members). Longman Dec., at Ex. I.

All of these factors augur in favor of appointing separate leadership to the Options Class through the dissemination of separate notice. *See, e.g., Chill v. Green Tree Financial Corp.*, 181 F.R.D. 398 (D. Minn. 1998) (separate leadership appointed for a class of option traders); *American Italian*, 05-cv-0725-CV-W-ODS, 2007 U.S. Dist. LEXIS 21365, at *24-25 (noting that a lead plaintiff who did not trade options cannot be lead on behalf of a class of options traders). *See also* Longman Dec., at Ex. J (stipulation and order entered in *Wallerstein v. Netflix, Inc, et al.*, Case No. 5:19-cv-04195-LHK (N.D. Cal. Jan. 31, 2020) (ECF No. 54), approving a co-leadership structure with a separate options class, similar to that advocated here).

### Conclusion

For the foregoing reasons, Plaintiff Atachbarian respectfully requests that this Court enter an order deferring ruling on consolidation until the determination of the lead plaintiff process commenced in that Action. Alternatively, the Court could coordinate the actions until the completion of the lead plaintiff process in the *Atachbarian* Action.

Dated:  August 10, 2020

<div style="margin-left:40%">

Respectfully submitted,

/s/ Joshua H. Eggnatz
Joshua H. Eggnatz, Esq. (Fla. Bar No.: 0067926)
E-mail: JEggnatz@JusticeEarned.com
**EGGNATZ | PASCUCCI**
7450 Griffin Rd, Ste. 230
Davie, FL 33314

</div>

Tel : (954) 889-3359
Fax : (954) 889-5913

*Local Counsel for Plaintiff Abraham Atachbarian*

Lynda J. Grant, Esq.
E-mail: LGgrant@grantfirm.com
**THEGRANTLAWFIRM, PLLC**
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel: (212) 292-4441
Fax: (212) 292-4442

*Lead Counsel for Plaintiff Abraham Atachbarian*

Howard T. Longman, Esq.
E-mail: HLongman@ssbny.com
Patrick Slyne, Esq.
E-mail: pkslyne@ssbny.com
**STULL, STULL & BRODY**
6 East 45th Street
New York, NY 10017
Tel: (212) 687-7230
Fax: (212) 490-2022

*Lead Counsel for Plaintiff Abraham Atachbarian*

14