**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| IN RE CARNIVAL CORP. SECURITIES LITIGATION | Case No.  1:20-cv-22202-KMM <br><br> <u>CLASS ACTION</u> |
| ABRAHAM ATACHBARIAN, individually and on behalf of all others similarly situated, <br><br> Plaintiff, | Case No.  1:20-cv-23011-RNS <br><br> <u>CLASS ACTION</u> |
| CARNIVAL CORPORATION, CARNIVAL PLC, ARNOLD W. DONALD, DAVID BERNSTEIN, and MICKY ARISON, <br><br> Defendants. | |

**<u>DECLARATION OF HOWARD T. LONGMAN IN SUPPORT OF</u>**
**<u>ABRAHAM ATACHBARIAN'S OPPOSITION TO CONSOLIDATION</u>**

Howard T. Longman declares under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1.      I am a Senior Attorney in the law firm of Stull, Stull & Brody in New York, New York, one of the counsel for Plaintiff Abraham Atachbarian.

2.      I make this Declaration in support of the Opposition of Plaintiff Abraham Atachbarian to Consolidation.

3.      Attached hereto as Exhibit A is a true and correct copy of the notice disseminated

by Plaintiff Atachbarian on July 23, 2020, pursuant to the PSLRA in the action *Atachbarian v. Carnival Corporation, et al.*, Case No. 1:20-cv-023011, pending before the Hon. Robert N. Scola, Jr.

4.      Attached hereto as Exhibit B is a true and correct copy of notice disseminated by Plaintiff Service Lamp Corp. Profit Sharing Plan on May 27, 2020 pursuant to the PSLRA.

5.      Attached hereto as Exhibit C is a true and correct copy of the notice disseminated by Plaintiff John Elmensdorp on June 3, 2020.

6.      Attached hereto as Exhibit D is a true and correct copy of a Stipulation and Exhibit A entered in *Sgarlata v. PayPal Holdings, Inc., et al.*, No. 3:17-cv-06956-EMC (N.D. Cal. Mar. 20, 2018).

7.      Attached hereto as Exhibits E and F, respectively, are true and correct copies  of the Memorandum in Opposition to Ex Part Application to Consolidate, and the Order Granting Plaintiffs' *Ex Parte* Motion to Consolidate and Ordering Republication of PSLRA Notice filed in *In re STEC, Inc. Sec. Litig.*, No. SACV-09-01304-JVS (MLGx)(C.D. Cal. Mar. 26, 2010).

8.      Attached hereto as Exhibit G is a true and correct copy of Notice of Withdrawal of Motion of Abraham Atachbarian for Appointment as Co-Lead Plaintiff filed in the action captioned *Douglas v. Norwegian Cruise Lines*, Case No. 20-21107-Civ-Scola.

9.      Attached hereto as Exhibit H is a true and correct copy of the Endorsed Letter Opinion entered in the case *In re American Realty Capital Properties, Inc. Litig.*, No. 1:15-mc-000040-AKH (S.D.N.Y. June 16, 2019).

10.      Attached hereto as Exhibit I is a true and correct copy of an order entered in *In re Allergan, Inc. Proxy Violation Derivatives Litig.*, Case No. 2:17-cv-04776 (C.D. Cal. Oct. 13, 2017).

11.      Attached hereto as Exhibit J is a true and correct copy of the Stipulation and Order

entered in *Wallerstein v. Netflix, Inc, et al.*, Case No. 5:19-cv-04195-LHK (N.D. Cal. Jan. 31, 2020).

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on August 10, 2020, in Livingston, New Jersey.

_____
Howard T. Longman

# EXHIBIT A

# Stull Stull & Brody and TheGrantLawFirm File Action Against Carnival on Behalf of Options Traders

Published: Jul 23 2020 14:45:00

## Stull Stull & Brody and TheGrantLawFirm File Action Against Carnival on Behalf of Options Traders

### Business Wire

NEW YORK -- July 23, 2020

To: All Persons or entities who purchased call options or sold put options for the securities of Carnival Corporation (NYSE: CCL), between January 28, 2020 and May 1, 2020, inclusive (the "Class", the "Class Period").

Stull Stull & Brody ("SSB") and TheGrantLawFirm, PLLC ("Grant Firm") commenced a securities class action captioned *Abraham Atachbarian v. Carnival Corporation, et al.*, Case No. 20-23011, in the United States District Court for the Southern District of Florida (the "Action"). A copy of the complaint is available upon request.

The Action alleges that Carnival, Carnival PLC, and certain individual defendants made a series of false and misleading statements and concealed material information relating to the Company's adherence to its health and safety protocols in the wake of the COVID-19 pandemic and its preparedness for it, in order to "keep the party going" on its various cruises, and underplayed the severity of the outbreak. As a result of these false and misleading statements and omissions made throughout the Class Period, options for Carnival's stock, including puts and calls, traded at inflated prices.

Specifically, the Complaint alleges that during the Class Period, Carnival made statements that the risk of COVID-19 to its customers and crew was very low, that is was committed to the safety of its guests and crew, and that it had implemented enhanced policies and procedures to demonstrate that commitment. In the meantime, Carnival was concealing the fact that its policies and practices with respect to COVID-19 were woefully inadequate, that it was continuing to pick up passengers and crew members and putting them at risk as both passengers and crews on its ships were testing positive for the virus, and it was allowing ill passengers to disembark at various ports of call even though passengers had shown signs of illness while on the ship. It further made misrepresentations to authorities at these ports of call. Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

If you suffered a loss arising from your purchase or sale of Carnival options during the Class Period, you have until September 21, 2020, to file a motion with the Court seeking appointment of lead of a class of options purchasers or sellers. Your ability to share in any recovery does not require that you serve as a lead plaintiff.

If you have questions about this matter, please contact either Howard Longman at Stull Stull & Brody, at 973-994- 2315, or email at hlongman@ssbny.com or Lynda J. Grant at 212-292-4441, or email at lgrant@grantfirm.com.

SSB has litigated class actions for the past 40 years and has recovered tens of millions of dollars on behalf of



© 2020 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Services

Stull Stull & Brody and TheGrantLawFirm File Action Against Carnival on Behalf of Options Traders

defrauded shareholders and consumers. Lynda J. Grant has been a New York Metro Super-Lawyer every year since 2014, and has been representing shareholders and consumers for almost 40 years. Prior results do not guarantee similar outcomes.

Attorney Advertising.

View source version on businesswire.com: https://www.businesswire.com/news/home/20200723005826/en/

**Contact:**

Stull Stull & Brody
Howard Longman
973- 994- 2315
hlongman@ssbny.com

Lynda J. Grant
212-292-4441
lgrant@grantfirm.com.

-0- Jul/23/2020 18:45 GMT

**Bloomberg Law**®

© 2020 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Services

# EXHIBIT B

# Barrack, Rodos & Bacine Announces Securities Class Action Lawsuit Against Carnival Corporation With Class Period From January

**Published: May 27 2020 14:35:32**

Barrack, Rodos & Bacine Announces Securities Class Action Lawsuit Against Carnival Corporation With Class Period From January 28, 2020 Through May 1, 2020

To: All persons or entities who purchased or otherwise acquired the securities of Carnival Corporation (NYSE: CCL) ("Carnival") between January 28, 2020, and May 1, 2020, inclusive ("Class Period").

PHILADELPHIA, May 27, 2020 (GLOBE NEWSWIRE) -- Barrack, Rodos & Bacine has commenced a securities class action titled *Service Lamp Corporation Profit Sharing Plan v. Carnival Corporation, et al.*, No. 1:20-cv-22202 in the United States District Court for the Southern District of Florida. A copy of the complaint is available here: http://www.barrack.com/node/686#

The action alleges that Carnival, Arnold W. Donald, Carnival's president and chief executive officer, and the Company's chief financial officer, David Bernstein, made a series of false and misleading statements and concealed material information relating to the Company's adherence to its health and safety protocols in the wake of the COVID-19 pandemic, Carnival's role in facilitating the transmission of the virus, and the Company's violations of port-of-call regulations. As a result of these false and misleading statements and omissions made throughout the Class Period, Carnival common stock and securities traded at inflated prices.

The Complaint alleges that Defendants' misstatements about the Company's business, operations, and prospects concealed from investors that: (1) the Company's medics were reporting increasing events of COVID-19 illness on the Company's ships; (2) Carnival was violating port of call regulations by concealing the amount and severity of COVID-19 infections on board its ships; (3) in responding to the outbreak of COVID-19, Carnival failed to follow the Company's own health and safety protocols developed in the wake of other communicable disease outbreaks; (4) by continuing to operate, Carnival ships were responsible for continuing to spread COVID-19 at various ports throughout the world; and (5) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

If you suffered a loss arising from your investment in Carnival common stock during the Class Period, you have until July 27, 2020, to file a motion with the Court seeking appointment as lead plaintiff. Your ability to share in any recovery does not require that you serve as a lead plaintiff.

If you have questions about this matter, please contact Jeffrey A. Barrack, Esq. by email at <a="" style="">target="_blank">JBarrack@barrack.com or by telephone at (215) 963-0600 or Stephen R. Basser, Esq. by email at <a="" style="">target="_blank">SBasser@barrack.com or by telephone at (619) 230-0800.

Barrack, Rodos & Bacine is a highly experienced securities litigation firm with offices in Philadelphia, PA, New York City, NY, and San Diego, CA. During its more than 40 years in practice, BR&B has recovered over ten billion dollars on behalf of victims of corporate fraud. Prior results do not guarantee similar outcomes.

**Bloomberg Law®**

© 2020 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Services

# EXHIBIT C

8/4/2020 KESSLER TOPAZ MELTZER & CHECK, LLP -- Announces the Filing of a Securities Fraud Class Action Lawsuit against Carnival Corporat

Case 1:20-cv-22202-KMM Document 30-1 Entered on FLSD Docket 08/10/2020 Page 10 of 57

Prepared for: Howard Longman

News ☆ Favorite

Jun 03 2020 23:01:02

**KESSLER TOPAZ MELTZER & CHECK, LLP -- Announces the Filing of a Securities Fraud Class Action Lawsuit against Carnival Corporation (CCL) and Carnival plc (CUK) with Expanded Class Period**

PR Newswire

RADNOR, Pa., June 3, 2020

RADNOR, Pa., June 3, 2020 /PRNewswire/ -- The law firm of Kessler Topaz Meltzer & Check, LLP announces that it has filed a securities fraud class action complaint against Carnival Corporation and Carnival plc (collectively, "Carnival") on behalf of investors who purchased or otherwise acquired Carnival's common stock (NYSE: CCL) and/or Carnival's American Depository Shares ("ADSs") (NYSE: CUK) between **September 26, 2019, and April 30, 2020**, inclusive (the "Class Period"). This action, captioned *John P. Elmensdorp v. Carnival Corporation, et al.,* Case No. 1:20-cv-22319 (the "*Elmensdorp* Action"), was filed in the United States District Court for the Southern District of Florida.



There is one related class action case pending against Carnival in the United States District Court for the Southern District of Florida. The first-filed action issued a notice of its filing pursuant to the federal securities laws on May 27, 2020, which triggered the deadline of July 27, 2020, for any investors who purchased Carnival securities to seek to be appointed as a lead plaintiff representative of the class.***The filing of the Elmensdorp Action does not change the July 27, 2020 lead plaintiff deadline.*** For additional information or to learn how to participate in this action please visit*: **https://www.ktmc.com/carnival-corporation-class-action?utm_source=PR&utm_medium=Link&utm_campaign=Carnival**

Carnival, headquartered in Miami, Florida, operates the world's largest cruise company, carrying nearly forty-five percent of global cruise passengers through nine different business segments, including Carnival Cruise Line, Princess Cruises, Holland America Line, Seaborn, P&O Cruises (Australia), Costa Cruises, AIDA Cruises, P&O Cruises (UK), and Cunard.

The *Elmensdorp* Action alleges that, throughout the Class Period, the Defendants made materially false, and/or misleading statements, and failed to disclose material adverse facts about Carnival's manifest inability to address the spread of infectious disease on its ships and the susceptibility of its ships to the transmission of such diseases among its crew and passengers. As a result of the foregoing, Defendants' statements about Carnival's commitment to the health, safety, and comfort of its passengers and crew members as well as its assurances to safeguarding passengers and crew and, thereby its profitability, were false and/or misleading and/or lacked a reasonable basis.

The Class Period begins on September 26, 2019, when Carnival filed its Form 10-Q for the quarterly period ended August 31, 2019, and a Form 8-K, in which Carnival purported to describe all the primary risks that potentially could impact Carnival and its shareholders, yet the 10-Q and 8-K entirely omitted any reference to the potential harm to shareholders that would be caused by Carnival's inadequate facilities and preparation for a viral infection and/or other outbreaks of diseases on one or more of its ships. These omissions were consistent with a host of pre-Class Period statements wherein Carnival stated that the welfare of its

passengers was paramount, but omitted any reference to its inability to adequately address the spread of infectious disease among passengers and crew members on its ships and its need to downplay outbreaks to maintain bookings and reservations.

In December 2019, a novel strain of coronavirus, COVID-19, was first reported in Wuhan, Hubei province, China. COVID-19 quickly spread to numerous countries and has since been designated a global pandemic by the World Health Organization. Carnival launched several cruise ships in early 2020, putting tens of thousands of passengers and crew at serious risk and turned Carnival's ships into vessels for seeding the virus across the globe. On January 27, 2020, as COVID-19 spread beyond China, Carnival, however, claimed that the risks of COVID-19 posed to the company's guests, crew, and global business were "very low."

Carnival continued to double-down on its statements of "low risk" throughout the next two months by permitting cruises to continue (except those traveling to and from China or where quarantined by authorities) in the face of mounting cruise passenger illnesses and deaths on its own ships due to COVID-19, or soon after disembarking its own ships. On February 3, 2020, just a few days after Carnival reiterated that COVID-19 was "very low" risk to Carnival's guests, crew, and business, Carnival admitted that a passenger who had been onboard its Diamond Princess ship, from January 20, 2020, through January 25, 2020, had tested positive for COVID-19. This diagnosis caused Japanese authorities to conduct a review of all guests and crew as the ship was docked in Yokohama, Japan, causing a delay in the next leg of the ship's journey. On this news, the price of Carnival's common stock declined $0.78 per share, or approximately 2%, from a close of $43.53 per share on January 31, 2020, to close at $42.75 per share on February 3, 2020. Similarly, the price of Carnival's ADSs declined $0.45 per share, or 1.1%, from a close of $41.10 per ADS on January 31, 2020, to close at $40.65 per ADS on February 3, 2020.

Investors began to learn the truth about Carnival's prior false and misleading statements through a series of additional disclosures to the market during the Class Period (on March 4, 2020, March 8, 2020, March 27, 2020, and April 16, 2020).

Finally, on May 1, 2020, and as a result of the many outbreaks on Carnival ships, as well as reporting that exposed the effects of Carnival's actions and inactions, the United States House of Representatives opened an investigation into Carnival's handling of COVID-19, initiated by a letter addressed to Carnival's Chief Executive Officer requesting records regarding Carnival's COVID-19 response (the "Congressional Letter"). The Congressional Letter, which cited prior outbreaks, stated that the request for records was based on concerns that Carnival was "ignoring the public health threat posed by coronavirus to potential future passengers and crew," and that "officials at Carnival were aware of the threats to some of its ships and did not take appropriate actions, which may have led to greater infections and the spread of the disease."

On this news, the price of Carnival's common stock declined $1.97 per share, or 12.4%, from a close of $15.90 per share on April 30, 2020, to close at $13.93 per share on May 1, 2020. Similarly, the price of Carnival's ADSs declined $1.49 per ADS, or 10.7%, from a close of $13.92 per ADS on April 30, 2020, to close at $12.43 per ADS on May 1, 2020.

As a result of the revelation of the truth about Carnival's inability and unwillingness to deal with the spread of infectious diseases on its ships, Carnival investors who purchased shares on U.S. exchanges lost billions of dollars when Carnival's shares declined following the corrective revelations.

Carnival investors who wish to discuss this action and their legal options are encouraged to contact Kessler Topaz Meltzer & Check, LLP (James Maro, Jr., Esq. or Adrienne Bell, Esq.) toll free at (844) 887-9500 or at **info@ktmc.com**.

Carnival investors may, **no later than July 27, 2020**, seek to be appointed as a lead plaintiff representative of the class through Kessler Topaz Meltzer & Check, or other counsel, or may choose to do nothing and remain an absent class member. A lead plaintiff is a representative party who acts on behalf of all class members in directing the litigation. In order to be appointed as a lead plaintiff, the Court must determine that the class member's claim is typical of the claims of other class members, and that the class member will adequately represent the class in the action. Your ability to share in any recovery is not affected by the decision of whether or not to serve as a lead plaintiff.

Kessler Topaz Meltzer & Check prosecutes class actions in state and federal courts throughout the country. Kessler Topaz Meltzer & Check is a driving force behind corporate governance reform, and has recovered billions of dollars on behalf of institutional and individual investors from the United States and around the world. The firm represents investors, consumers, and whistleblowers (private citizens who report fraudulent practices against the government and

share in the recovery of government dollars). For more information about Kessler Topaz Meltzer & Check, please visit **www.ktmc.com**.

Contacts
Kessler Topaz Meltzer & Check, LLP
James Maro, Jr., Esq. or Adrienne Bell, Esq.
280 King of Prussia Road
Radnor, PA 19087
(844)-887-9500 or (610)-667-7706
**info@ktmc.com**

⟲ View original content to download multimedia:**http://www.prnewswire.com/news-releases/kessler-topaz-meltzer--check-llp----announces-the-filing-of-a-securities-fraud-class-action-lawsuit-against-carnival-corporation-ccl-and-carnival-plc-cuk-with-expanded-class-period-301070531.html**

SOURCE Kessler Topaz Meltzer & Check, LLP


**Website: https://www.ktmc.com**
-0- Jun/04/2020 03:01 GMT

✖

# EXHIBIT D

Jennifer Pafiti (SBN 282790)
**POMERANTZ LLP**
468 North Camden Drive
Beverly Hills, CA 90210
Telephone:      (818) 532-6499
E-mail: jpafiti@pomlaw.com

**Attorney for Plaintiff**
*- additional counsel on signature page –*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD SGARLATA, Individually and on Behalf of All Others Similarly Situated,<br><br>              Plaintiff,<br><br>    v.<br><br>PAYPAL HOLDINGS, INC., DANIEL H. SCHULMAN, JOHN D. RAINEY JR., and HAMED SHAHBAZI,<br><br>           Defendants. | Case No.: 3:17-cv-06956<br><br>**STIPULATION AND [PROPOSED] ORDER**<br><br>Date Action Filed:   December 6, 2017 |

STIP. AND [PROPOSED] ORDER              Case No.: 3:17-cv-06956

WHEREAS, the above-captioned action is a proposed class action alleging violations of the federal securities laws against PayPal Holdings, Inc. ("PayPal" or the "Company"), Daniel H. Schulman ("Schulman"), John D. Rainey Jr. ("Rainey"), and Hamed Shahbazi ("Shahbazi") (collectively, "Defendants");

WHEREAS, this action is subject to the requirements of the Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737 (1995) (the "PSLRA"), which sets forth specialized procedures for the administration of securities class actions;

WHEREAS, on December 6, 2017, pursuant to the PSLRA, counsel for plaintiff published a notice over *Globe Newswire*, advising PayPal investors of the pendency of this action and of their right to seek appointment as Lead Plaintiff in this action by filing a motion with the Court on or before February 5, 2018;

WHEREAS, on February 5, 2018, two putative class members moved the Court for appointment as Lead Plaintiff and approval of their respective selections of counsel: (i) Edwin Bell ("Bell"), proposing Pomerantz LLP ("Pomerantz") as Lead Counsel (Dkt. No. 14); and (ii) Michael Eckert ("Eckert"), proposing The Rosen Law Firm, P.A. ("Rosen") as Lead Counsel (Dkt. No. 10);

WHEREAS, on March 15, 2018, the Court held a hearing with respect to the appointment of Lead Plaintiff and appointment of Lead Counsel in this action;

WHEREAS, on March 16, 2018, the Court entered an order appointing movants Michael Eckert and Edwin Bell (collectively, "Eckert and Bell") as Interim Co-Lead Plaintiffs and approving their choices of Pomerantz and Rosen as Interim Co-lead Counsel (Dkt. No. 31);

WHEREAS, having found the initial PSLRA Notice did not mention a broader class definition, the Court ordered that notice be republished, and that the parties "to stipulate to a schedule for publishing an amended notice (which content shall be reviewed and approved by the Court), a consolidated amended complaint, and a briefing schedule for Defendants' response to the consolidate amended complaint" (Dkt. No. 31);

WHEREAS, Interim Co-lead Counsel and counsel for Defendants PayPal, Schulman and Rainey have met and conferred with respect to the content and publication schedule of an

STIP. AND [PROPOSED] ORDER       1       Case No.: 3:17-cv-06956

amended PSLRA notice (the "Amended PSLRA Notice");

WHEREAS, since the filing of the Complaint on December 6, 2017, numerous law firms have issued press released advising PayPal investors that purchased securities during the Class Period of their right to seek appointment as lead plaintiff, but no putative class members other than Bell and Eckert have sought appointment;

WHEREAS, with respect to the Amended PSLRA Notice, the Court has authority to order a shorter period within which to move the Court for appointment as lead plaintiff than the sixty (60) days provided in the PSLRA;

WHEREAS, Interim Co-lead Counsel have communicated with counsel for defendant Shahbazi, a resident of Canada, with respect to service of summons and the complaint in the Action, are advised that Shahbazi's counsel is not currently authorized to accept service, and are working to negotiate an arrangement by which Shahbazi will agree to accept service or effect service under the Hague Convention;

IT IS ACCORDINGLY STIPULATED, by and between the undersigned counsel for the parties, that:

1. Defendants PayPal, Schulman and Rainey hereby accept service of the summons and initial complaint in this action (Dkt. No. 1, 5);

2. A copy of the proposed Amended PSLRA Notice is submitted herewith as Exhibit A for the Court's review and approval;

3. Within three (3) days after entry of an order approving the Amended PSLRA Notice, Interim Co-Lead Counsel shall publish the Amended PSLRA Notice over a national wire service;

4. Per the Amended PSLRA Notice, any additional motions for appointment as lead plaintiff and approval of lead counsel shall be due within sixty (60) days, or such other period that the Court deems appropriate, after publication of the Amended PSLRA Notice, and the parties do not object to an order providing for a shorter period of notice;

5. Interim Co-Lead Plaintiffs shall file an amended complaint within forty five (45) days seventy-five (75) days

after the entry of an order by the Court approving this stipulation;C;

6. Defendants PayPal, Schulman and Rainey shall file their response(s) to the amended complaint within thirty (30) days after the filing of the amended complaint;

7. If Defendants PayPal, Schulman or Rainey move to dismiss the amended complaint, Interim Co-Lead Plaintiffs' opposition shall be due within thirty (30) days after the filing of the motion(s) to dismiss; and any replies shall be due within twenty (20) days after the filing of Interim Co-Lead Plaintiffs' opposition.

Dated: March 29, 2018            POMERANTZ LLP


By: /s/ Louis Ludwig
    Jennifer Pafiti
    468 North Camden Drive
    Beverly Hills, CA 90210
    Phone:    818.532.6499
    Email:    jpafiti@pomlaw.com

    Jeremy A. Lieberman
    J. Alexander Hood II
    600 Third Avenue, 20th Floor
    New York, NY 10016
    Phone:    212.661.1100
    Fax:      212.661.8665
    Email:    jalieberman@pomlaw.com
              ahood@pomlaw.com

    Patrick V. Dahlstrom
    Louis C. Ludwig
    Ten South La Salle Street, Suite 3505
    Chicago, IL 60603
    Phone:    312.377.1181
    Fax:      312.377.1184
    Email:    pdahlstrom@pomlaw.com
              lcludwig@pomlaw.com

    *Interim Co-Lead Counsel*

STIP. AND [PROPOSED] ORDER            3            Case No.: 3:17-cv-06956

Dated:    March 29, 2018              THE ROSEN LAW FIRM, P.A.


                                     By: /s/ Laurence Rosen
                                         Laurence Rosen
                                         355 South Grand Avenue, Suite 2450
                                         Los Angeles, CA 90071
                                         Telephone: (213) 785-2610
                                         Facsimile: (213) 226-4684
                                         Email:    lrosen@rosenlegal.com

                                         *Interim Co-Lead Counsel*

STIP. AND [PROPOSED] ORDER                    4                    Case No.: 3:17-cv-06956

Pursuant to Civil L.R. 5-1(i)(3), all signatories concur in filing this stipulation.

Dated:   March 29, 2018                     ORRICK, HERRINGTON & SUTCLIFFE LLP


                                            By:     /s/ Alexander K. Talarides
                                                    ALEXANDER K. TALARIDES
                                                    The Orrick Building
                                                    405 Howard Street
                                                    San Francisco, CA  94105-2669
                                                    Telephone:     (415) 773-5700
                                                    Facsimile:     (415) 773-5759

                                            *Counsel for Defendants PayPal Holdings, Inc.,*
                                            *Daniel H. Schulman, and John D. Rainey Jr.*


                          **[PR~~OPOS~~OSED] ORDER**

PURSUANT TO STIPULATION, IT IS SO ORDERED. (as modified on p. 2)


   Dated:   3/20/18                                    _____
                                                       Hon. Edward M. Chen
                                                       United States District Court Judge

IT IS SO ORDERED
AS MODIFIED
Judge Edward M. Chen

STIP. AND [PROPOSED] ORDER                 5                 Case No.: 3:17-cv-06956

**Pomerantz LLP and the Rosen Law Firm Announce the Pendency of a Class Action Against PayPal Holdings, Inc. and Certain Officers – PYPL**

NEW YORK, **[DATE]** (GLOBENEWSWIRE) Pomerantz LLP and the Rosen Law Firm, interim Lead Counsel for Interim Lead Plaintiffs, announce that a class action lawsuit is pending against PayPal Holdings, Inc. ("PayPal" or the "Company") (NASDAQ: PYPL) and certain of its officers. The class action was filed in United States District Court, for the Northern District of California, and docketed under 17-cv-06956. Interim Lead Plaintiffs seek to represent a class consisting of investors who purchased or otherwise acquired common shares or options for common shares of PayPal between February 14, 2017 and December 1, 2017, both dates inclusive (the "Class Period"). Plaintiffs seek to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

If you purchased or otherwise acquired PayPal common shares or options for common shares between February 14, 2017, and December 1, 2017, both dates inclusive, you have until **[DATE]**, 2018, to ask the Court to appoint you as Lead Plaintiff for the class.

PayPal operates as a technology platform company that provides online payment systems through a variety of services on behalf of consumers and merchants. On February 14, 2017, PayPal announced an agreement to purchase TIO Networks Corp. ("TIO") for $233 million (the "TIO Acquisition"). TIO is a bill-pay management company that processed roughly $7 billion in bill payments on behalf of 14 million customers in 2016. On July 18, 2017, PayPal announced the completion of the TIO Acquisition.

The Complaint alleges that throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) TIO's data security program was inadequate to safeguard the personally identifiable information of its users; (ii) the foregoing vulnerabilities threatened continued operation of TIO's platform; (iii) PayPal's revenues derived from its TIO services were thus unsustainable; (iv) consequently, PayPal had overstated the benefits of the TIO Acquisition; and (v) as a result, PayPal's public statements were materially false and misleading at all relevant times.

Case 3:17-cv-00955-EMC Document 34-1 Filed 08/28/18 Page 20 of 82

On November 10, 2017, PayPal suspended its TIO services, pending a security review, stating that it had discovered security vulnerabilities on the TIO platform and that the TIO data security program did not meet PayPal's standards.

On December 1, 2017, post-market, PayPal disclosed that personally identifiable information—including names, addresses, bank-account details, and Social Security numbers—for roughly 1.6 million TIO users had potentially been compromised as a result of the previously announced security vulnerabilities.

On this news, PayPal's share price fell $4.33, or 5.75%, to close at $70.97 on December 4, 2017, the following trading day.

# EXHIBIT E

David N. Lake, Esq., State Bar No. 180775
**LAW OFFICES OF DAVID N. LAKE,**
 **A Professional Corporation**
16130 Ventura Boulevard, Suite 650
Encino, California 91436
Telephone: (818) 788-5100
Facsimile: (818) 788-5199
david@lakelawpc.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE STEC, INC. SECURITIES LITIGATION** | Lead Case No.<br>**SACV 09-01304-JVS (MLGx)** |
| This Document Relates to:<br> All Actions. | **Judge: Hon. James V. Selna**<br>**Ctrm: 10C** |
| | **PLAINTIFF GANESH K. MEDA'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO *EX PARTE* APPLICATION TO CONSOLIDATE PURSUANT TO THE COURT'S JANUARY 21, 2010 CONSOLIDATION ORDER AND REQUEST FOR LIMITED DISCOVERY; DECLARATION OF ROY JACOBS, ESQ.** |

Opposition to Ex Parte Application

## I. INTRODUCTION AND SUMMARY

On January 21, 2010 this Court consolidated a series of class actions all alleging in a similar fashion that a fraud was perpetrated upon purchasers of STEC, Inc. ("STEC") shares during a Class Period extending from June 16, 2009 through November 3, 2009 (these consolidated cases will collectively be referred to herein as "STEC I").

The STEC I cases do not allege any deficiencies in STEC's primary product, a new line of solid state drives ("SSD's") used for information storage. *See Sakhai v. Stec, Inc. et al.*, 09 CV 1306, filed November 9, 2009 by STEC I Co-Lead Counsel, Kahn Swick & Foti, LLC. Rather, the primary allegations in STEC I are that: (a) STEC overshipped SSDs to its primary customer, EMC Corp., so as to make revenues appear more robust than they truly were; and (b) that STEC was covering up the difficulty it was having expanding the product line to vendors beyond EMC, whose orders constituted approximately 90% of STEC's business in this key product line. *See e.g., Sakhia* Cplt. ¶¶ 4, 35. On November 3, 2009, STEC shares fell considerably when, according to Lead Counsel in STEC I, the fraud was revealed. The fraud to which the STEC I plaintiffs refer in their complaints was essentially an intentional overshipment of product to EMC. *See id.*

None of the Plaintiffs in STEC I, including the Lead Plaintiffs, have ever asserted that they purchased shares *subsequent to* November 3, 2009, or in reliance upon statements made by STEC management on that date or thereafter.

On November 3, 2009, as alleged in the *Meda* Complaint, Case No. 10 CV 00248 (hereinafter referred to as "STEC II"), STEC's top executive, CEO Manouch Moshayedi ("Moshayedi") made statements which materially differed in substance and subject matter from the statements at the core of STEC I. In essence, Moshayedi asserted on that day that poor sales of SSDs resulted from a failure to properly educate customers as to the benefits and features of its new SSD models, and from insufficient efforts to incentivize the EMC sales force. He asserted that

-2-

this situation would be correctable by adoption of what is known as an MDF—a "Marketing Development Fund." Meda Cplt. ¶ 21. On February 23, 2010, however, Moshayedi was forced to reveal in essence that the MDF had failed, and that sales of SSDs were poor. The STEC II Complaint asserts that the problem at STEC was not intentional overshipment to technology giant EMC (which would have to be complicit in such misconduct for such a scheme to work), but rather the recognition--post-shipment to EMC--that there was significant retail sales resistance to the new line of STEC SSD's. This resistance to the SSDs was due to their price points; to their performance; and to market hesitation to buy due to an expectation that newer versions of STEC SSD's now on the drawing board might better suit their needs. Meda Cplt.¶ 28.

Thus, STEC I and STEC II are completely dissimilar, except for the identity of some defendants.[1] Whereas STEC I focuses on a purported overshipment of a new product to EMC, STEC II concerns no wrongdoing of that nature. Rather, STEC II focuses on misstatements and omissions concerning the MDF Program, and the post-shipment customer reactions to the new SSD product due to *product-specific inadequacies*. There was absolutely no mention in STEC I of any issue with the SSD product itself.

While pre-existing Lead Counsel may sometimes amend their complaints to expand a Class Period, they may only do so without reopening the Lead Plaintiff and Lead Counsel process where: (a) there is a substantial identity of issues between the existing Class claims and the "new" Class claims; and (b) the pre-existing Lead Plaintiffs have standing to complain of misstatements or omissions made subsequent

---

[1] The Class Period alleged in STEC II extends from November 4, 2009 through February 23, 2010.

-3-
Opposition to Ex Parte Application

to their last purchase of the stock.[2] But, these crucial prerequisites have not (and likely cannot) be satisfied here.

## II. ARGUMENT

First, the actions are too dissimilar to be meshed together. STEC I is basically a channel-stuffing claim. Such a claim is based on inventory manipulation, and has nothing at all to do with product specifications, customer reactions, or post-shipment marketing efforts (which in STEC II centers on the questionable "MDF" plan). Where, as here, pre-existing Lead Plaintiffs seek to expand a Class Period to almost double its original size and to sweep in disparate statements, claims and issues, automatic consolidation must be denied. Instead, a full examination of the consolidation and leadership issue is required after notice to "new" class members has gone out (Meda has published such a notice to the STEC II class), and new motions have been heard in due course. This important matter should not be determined via a truncated (and frankly unfair) *ex parte* motion process. *See e.g., Waldman v. Wachovia Corp.,* 2009 U.S. Dist. LEXIS 83597, at *3-5 (S.D.N.Y. Sept. 14, 2009); *In re LeapFrog Enters., Inc. Sec. Litig.,* 2005 U.S. Dist. LEXIS 44899, at *7-12 (N.D. Cal. July 5, 2005) (requiring new notice to enlarged class where the consolidated complaint included new allegations and expanded the class period by nine months). *Accord, Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.,* 2005 U.S. Dist. LEXIS 10780, 2005 WL 1322721, at *3 (S.D.N.Y. June 1, 2005); *In re Select Comfort Corp. Sec. Litig.,* 2000 U.S. Dist. LEXIS 22697, 2000 WL 35529101, at *7-8 (D. Minn. Jan. 27, 2000)

---

[2] That a case is alleged as a class action adds nothing to Article III standing. *Gratz v. Bollinger,* 539 U.S. 244, 289 (2003)(the fact that "a suit may be a class action. . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'")(citations omitted). Here, the *ex parte* motion does not address this threshold Article III standing issue.

---

-4-

(requiring new notice where "entirely new factual and legal allegations . . . affect[ed] a new class of plaintiffs").

Second, consolidation of the claim on this *ex parte* motion raises serious Article III standing issues that movants fail to address, and which must be examined at this juncture. STEC I Lead Plaintiffs Arman Rashtchi ("Rashtchi") and Keith A. Ovitt ("Ovitt") sought appointment based on purchases made during the STEC I Class Period. They do not assert in the *ex parte* motion that they personally purchased any shares during the STEC II Class Period. Without such proof of purchases post-November 3, 2009, they simply lack constitutional standing to bring the STEC II claims. *See e.g., Roberts v. Peat, Marwick, Mitchell & Co.*, 857 F.2d 646, 652 (9th Cir. 1988)(plaintiff lacked standing where purchase and sale occurred before fraud at issue); *Shurkin v. Golden State Vintners, Inc.*, 471 F. Supp. 2d 998, 1023-24 (N.D. Cal. 2006)(class plaintiff's standing is measured by its last purchase date, and statements made post that purchase date cannot be asserted by him on behalf of a class). *Accord, Roots Partnership v. Lands' End, Inc.*, 965 F.2d 1411, 1420 (7th Cir. 1992).

Additionally, Meda objects to consolidation of the STEC II case under the co-leadership of Ovitt, because of doubts that Ovitt even has Article III standing to pursue the claims he has alleged or will allege on behalf of the STEC I Class. It does not appear that, during the STEC I Lead Plaintiff selection process, Ovitt identified himself as Managing Director, PowerShares Capital Management LLC ("PowerShares"), a promoter and manager of exchange traded funds. In recent years, securities class action litigation has seen a rash of fund managers such as Mr. Ovitt suing companies *on their own behalf* when, in fact, they personally did not buy the subject shares. Rather, companies they managed did buy the shares. Needless to say, for standing purposes, the corporate entity and the individual who manages that entity, are juridically distinct. Upon discovery that a manager or investment advisor of a fund was serving (or seeking to serve) as Lead Plaintiff when he or she

or it did not personally buy the shares at issue, the rule is that such a Lead Plaintiff must be removed from his position and/or barred from serving in that capacity. *See e.g., In re Bard Assocs., Inc.,* 2009 U.S. App. LEXIS 26289, at *2-4 (10th Cir. Dec. 2, 2009)(investment advisor barred); *W.R. Huff Asset Management Co. v. Deloitte & Touche LLP,* 549 F.3d 100, 106-11 (2d Cir. 2008)(rejecting investment manager's claim of Article III standing); *In re IMAX Sec. Litig.,* 2009 U.S. Dist. LEXIS 58219 (S.D.N.Y. June 29, 2009); *In re SLM Corp. Sec. Litig.,* 258 F.R.D. 112 (S.D.N.Y. 2009).

The STEC purchases Ovitt claimed in his moving papers to have been personally made by him were large, and it is a matter of public record that at least one PowerShares fund was invested in STEC shares during the period at issue.[3] Were the shares listed on Ovitt's Certification to this Court bought by Ovitt himself or by PowerShares? To address this concern and answer this important standing question, Meda seek permission to propound one interrogatory to Mr. Ovitt in connection with this motion, asking: "Did you <u>personally</u> buy the STEC shares listed on your Certification, or were they bought by one or more distinct entities?" If it turns out that Ovitt is not personally the owner of the subject shares, he must be removed from his leadership position. *See Bard Assocs; W.R. Huff, supra.*

Finally, should the Court determine that there is some efficiency to be gained by consolidating STEC I and STEC II under the current leadership, a middle course to the "all or nothing" approach movants have taken would be to allow Meda to serve as a member of an Executive Committee that would meaningfully participate in this litigation and provide needed Article III standing, yet not duplicating the efforts of whichever firm or firms proceed as STEC I Lead Counsel.

///

---

[3] *See* holdings list of PowerShares Dynamic Small Cap Growth Portfolio, Dec. 31, 2009, available at: http://www.invescopowershares.com/pdf/P-PWT-PC-1.pdf (attached to Declaration of Roy L. Jacobs dated March 16, 2010).

## III. CONCLUSION

For the foregoing reasons, the *ex parte* motion to consolidate should be denied. Alternatively, Meda should be allowed the limited interrogatory discovery requested so as to determine Plaintiff Ovitt's Article III standing. Should consolidation be ordered, Meda should not be "shut out" of the claims that he has uniquely identified, and has clear Article III standing to pursue. Rather, Meda should be appointed to a meaningful role in the litigation as part of an Executive Committee, Chaired by Rashtchi and Ovitt (should Ovitt be able to prove standing).

DATED: March 16, 2010                    LAW OFFICES OF DAVID N. LAKE


By: _____/s/_____
      DAVID N. LAKE
      Attorneys for Plaintiff.

**Of Counsel**:
Roy L. Jacobs, Esq.
ROY JACOBS & ASSOCIATES
60 East 42nd Street 46th Floor
New York, NY 10165
212-867-1156
212-504-8343 (Fax)
Rjacobs@jacobsclasslaw.com

Laurence Paskowitz
PASKOWITZ & ASSOCIATES
60 East 42nd Street 46th Floor
New York, NY 10165
212-685-0969
212-685-2306 (Fax)
Classattorney@aol.com

Opposition to Ex Parte Application

Case 8:09-cv-01304-JVS-MLG Document 68 Filed 03/16/10 Page 8 of 8 Page ID #:962

## DECLARATION OF ROY JACOBS, ESQ.

I, Roy L. Jacobs, declare as follows:

1. I am the principal of Roy Jacobs & Associates, one of the counsel to Plaintiff Ganish K. Meda, in Meda v. STEC, Inc. et al., SACV 10-00248AG (ANx), ("STEC II").

2. I make this Declaration in opposition to the *ex parte* application to consolidate STEC II into the instant action, ("STEC I") on the basis of the Court's January 21, 2010 Consolidation Order, for the reasons set forth in the Memorandum accompanying this Declaration.

3. Attached hereto, as Exhibit A, is a true copy of the holdings list of PowerShares Small Cap Growth Portfolio as of December 31, 2009.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 16th day of March, 2010, at New York, NY.

_____/s/_____

Roy L. Jacobs

Opposition to Ex Parte Application

# EXHIBIT F

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| IN RE STEC, INC. SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Lead Case No.<br>**SACV 09-01304-JVS (MLGx)*****<br>And SACV 10-00248-JVS(MLGx)<br><br>**CLASS ACTION**<br><br>**ORDER GRANTING LEAD PLAINTIFFS'** *EX PARTE* **MOTION TO CONSOLIDATE PURSUANT TO THE COURT'S JANUARY 21, 2010 CONSOLIDATION ORDER AND ORDERING REPUBLICATION OF PSLRA NOTICE**<br><br>Judge:    Hon. James V. Selna<br>Ctrm:     10C |

ORDER
Lead Case No. SACV 09-01304-JVS (MLGx)

WHEREAS, pursuant to this Court's January 21, 2010 Order Consolidating Related Actions And Setting Briefing Schedule ("Consolidation Order," Dkt. No. 54), the Court-appointed Lead Plaintiffs Arman Rashtchi ("Mr. Rashtchi") and Keith A. Ovitt ("Mr. Ovitt"; collectively "Lead Plaintiffs") moved *ex parte* to consolidate a newly filed complaint encaptioned *Meda v. STEC, Inc.,* Case No. SACV 10-00248 AG (ANx) (the *Meda* Action); and

WHEREAS, the *Meda* Action relates to the subject matter of this Consolidated Action, consolidation of the *Meda* Action with the Consolidated Action is appropriate.

However, the Court finds that the Lead Plaintiffs' intended expansion of the class period to include the allegations made in the *Meda* Action in their forthcoming consolidated complaint is significant enough to warrant additional notice to potential lead plaintiffs pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4. See Waldman v. Wachovia Corp., No. 08 Civ. 2913(SAS), 2009 WL 2950362 (S.D.N.Y. Sept. 14, 2009); In re Cyberonics Inc. Sec. Litig., 468 F. Supp. 2d 936 (S.D. Texas 2006); In re LeapFrog Enters., Inc. Sec. Litig., No. C 03 05421 RMW, 2005 WL 5327775 (N.D. Cal. July 5, 2005).

Accordingly, IT IS HEREBY ORDERED, as follows:

1.) Pursuant to this Court's prior Consolidation Order, the *Meda* Action is consolidated with the instant action for all purposes.

2.) Once Lead Plaintiffs have filed their consolidated complaint, they shall comply with the notice provision of 15 U.S.C. § 78u-4(a)(3)(A)(i).

IT IS SO ORDERED.

Dated: March 26, 2010

United States District Judge

-1-

ORDER
Lead Case No. SACV 09-01304-JVS (MLGx)

# EXHIBIT G

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

ERIC DOUGLAS, Individually and on behalf
of all others similarly situated,

       Plaintiff,

vs.

NORWEGIAN CRUISE LINES, FRANK J.
DEL RIO, and MARK A. KEMPA,

       Defendants.

Civil Action No. 1:20-cv-21107-RNS

---

**NOTICE OF WITHDRAWAL OF MOTION OF ABRAHAM ATACHBARIAN FOR
<u>APPOINTMENT AS CO-LEAD PLAINTIFF</u>**

TO: ALL PARTIES AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that based upon discussions with counsel for presumptive

Lead Plaintiff Employer-Teamsters Local Nos. 175 & 505 Pension Trust Fund regarding the

inclusion of sellers of put options and buyers of call options of Norwegian shares in the proposed

class (the "Class") in any amended complaint to be filed in this action ("Action"), and further

review of the motions papers submitted in the Action, movant Abraham Atachbarian

("Atachbarian") hereby withdraws his motion for appointment as a Co-Lead Plaintiff and for the

appointment of his counsel Stull, Stull & Brody for Co-Lead Counsel to the Class.

This withdrawal shall have no impact on Mr. Atachbarian's membership in the proposed

Class, his right to share in any recovery obtained for the benefit of Class members, and his ability

to serve as a representative party.

1

Dated: June 11, 2020                          Respectfully submitted,

                                              /s/ Joshua H. Eggnatz
                                              Joshua H. Eggnatz, Esq. (Fla. Bar No.: 0067926)
                                              E-mail: JEggnatz@JusticeEarned.com
                                              **EGGNATZ | PASCUCCI**
                                              7450 Griffin Rd, Ste. 230
                                              Davie, FL 33314
                                              Tel : (954) 889-3359
                                              Fax : (954) 889-5913

                                              *Local Counsel for Movant Abraham Atachbarian*

                                              Howard T. Longman
                                              E-mail: HLongman@ssbny.com
                                              **STULL, STULL & BRODY**
                                              6 East 45th Street
                                              New York, NY 10017
                                              Tel: (212) 687-7230
                                              Fax: (212) 490-2022

                                              *Counsel for Movant Abraham Atachbarian and*
                                              *Proposed Co-Lead Counsel for the Class*

                                              Lynda J. Grant
                                              E-mail: LGgrant@grantfirm.com
                                              **THEGRANTLAWFIRM, PLLC**
                                              521 Fifth Avenue, 17th Floor
                                              New York, NY 10175
                                              Tel: (212) 292-4441
                                              Fax: (212) 292-4442

                                              *Counsel for Movant Abraham Atachbarian and*
                                              *Proposed Co-Lead Counsel for the Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 11, 2020, a true and accurate copy of the above document was electronically filed with the Clerk of the Court by using the CM/ECF system which will send Notice of Electronic Filing to all counsel of record.

<u>*/s/ Joshua H. Eggnatz*</u>
Joshua H. Eggnatz, Esq. (Fla. Bar No.: 0067926)
E-mail: JEggnatz@JusticeEarned.com
**EGGNATZ | PASCUCCI**
7450 Griffin Rd, Ste. 230
Davie, FL 33314
Tel : (954) 889-3359
Fax : (954) 889-5913

*Local Counsel for Movant Abraham Atachbarian*

3

# EXHIBIT H



**Robbins Geller**
**Rudman & Dowd** LLP

| | | | | | |
|---|---|---|---|---|---|
| Atlanta | Chicago | Melville | Philadelphia | San Francisco |
| Boca Raton | Manhattan | Nashville | San Diego | Washington, DC |

Patrick Coughlin
patc@rgrdlaw.com

RECEIVED
MAY 16 2019
CHAMBERS OF
ALVIN K. HELLERSTEIN
U.S.D.J.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/16/19

May 14, 2019

*The Court decides to expand duckers to purchasers of options. Different considerations come into play with this type of security, at the Core is too advanced to allow expansion.*

*5-16-19*

**VIA ECF AND HAND DELIVERY**

The Honorable Alvin K. Hellerstein
United States District Judge
United States District Court, Southern District of New York
500 Pearl Street, Room 1050
New York, NY 10007

Re:  *In re American Realty Capital Properties, Inc. Litigation,*
     No. 1:15-mc-00040-AKH (S.D.N.Y.)

Dear Judge Hellerstein:

The parties to the above action write jointly to obtain finality as to the Class definition to enable prompt notice to the Class.

Plaintiffs' Complaint asserts claims on behalf of those who purchased or acquired ARCP securities between September 7, 2011 and October 29, 2014. (ECF No. 312.) Following a hearing on August 24, 2017, this Court certified a Class. (ECF No. 505.) On February 8, 2019, Defendants moved for summary judgment with respect to claims based on alleged misstatements and omissions going back to September 7, 2011. During the briefing on summary judgment, counsel for the Class identified February 28, 2013 as the date of the first actionable statement, and Plaintiffs do not oppose entry of summary judgment in favor of Defendants with respect to claims based on alleged misstatements and omissions prior to that date. The parties identified this issue to the Court during the April 17, 2019 hearing, but to avoid any confusion with respect to the Notice to the Class being prepared in advance of the September 9, 2019 trial, the parties request the entry of an order providing for entry of summary judgment on such claims and modification of the Class definition.

The only remaining disagreement as to the Class definition between the parties appears to be whether the Court in its class certification order intended to limit the certified Class to ARCP's common stock, preferred stock, and debt securities, or whether the Class also includes option contracts. ECF No. 505. Plaintiffs believe the Court intended to include options in the Class definition. Defendants believe that the certified Class is limited to ARCP's common stock, preferred stock, and debt securities. Below is a brief statement by each side on this issue. Each side has

**Robbins Geller
Rudman & Dowd** LLP

May 14, 2019
Page 2

submitted as an attachment to this letter their version of a proposed order for the Court to enter based on its resolution of this dispute.

### 1.    Plaintiffs' Position

Plaintiffs' Motion for Class Certification asked the Court to certify a class that included those "who purchased or otherwise acquired American Realty Capital Properties, Inc. ("ARCP" or the "Company") securities (including ARCP common stock, preferred stock and debt securities, as well as those who traded in option contracts on ARCP stock) . . .". ECF No. 368 at n.1.  While the Court's August 31, 2016 Order (ECF No. 505) does not recite a class definition, there is no dispute that the Court's Order grants Plaintiffs' motion, and that no part of the Order indicates that any portion of Plaintiffs' motion is denied.  The parties disagree about the Court's intention to include ARCP's options in the Class certified as options are not explicitly mentioned by the August 31, 2016 Order.

Plaintiffs' position is that because options are derivative of the common stock, and there is no dispute that the Class certified includes the common stock, that the Court likewise intended to include options in the Class.[1]  While the options are estimated to be about 1% of the overall damages, whether options should or should not be included in the Class was not explored during the August 24, 2016 hearing; Defendants did not ask Dr. Feinstein, Plaintiffs' expert of market efficiency, any questions during his deposition related to options; nor did Defendants' supplemental briefing in opposition to class certification make any arguments that options are not properly included in the Class.[2]  As such Plaintiffs believe that the Class certified, as modified by the motion for summary judgment proceedings, is properly defined as:

ALL PERSONS WHO PURCHASED OR OTHERWISE ACQUIRED AMERICAN REALTY CAPITAL PROPERTIES, INC. ("ARCP") PUBLICLY TRADED SECURITIES, INCLUDING ARCP COMMON STOCK, PREFERRED STOCK AND DEBT SECURITIES, AS

---

[1]    In their brief in support of class certification, Plaintiffs argued that: "In general, '[t]he market price for options is directly responsive . . . to changes in the market price of the underlying stock, and to information affecting that price.'" *McIntire v. China MediaExpress Holdings, Inc.*, 38 F. Supp. 3d 415, 433 (S.D.N.Y. 2014) (quoting *Deutschman v. Beneficial Corp.*, 841 F.2d 502, 504 (3d Cir. 1988)).  Where a court has determined the market efficiency requirement is met, "absent special circumstances," option traders may use the FOTM presumption. *Id.*  Here, the Court found that the market for ARCP's stock was efficient and Defendants offered no evidence of any "special circumstances" preventing that determination from applying to ARCP's options. ECF 368 at n.14.

[2]    Defendant Grant Thornton apparently agrees that options were intended to be included in the Class definition.  Grant Thornton's expert report of J. Duross O'Brien, CPA exchanged on May 3, 2019 includes options in the description of the Class.

Robbins Geller
Rudman & Dowd LLP

May 14, 2019
Page 3

WELL AS THOSE WHO TRADED IN OPTION CONTRACTS ON ARCP STOCK DURING THE PERIOD FROM FEBRUARY 28, 2013 THROUGH OCTOBER 29, 2014. EXCLUDED FROM THE CLASS ARE ALL DEFENDANTS, MEMBERS OF THE IMMEDIATE FAMILIES OF EACH OF THE DEFENDANTS, ANY PERSON, FIRM, TRUST, CORPORATION, OFFICER, DIRECTOR, OR OTHER INDIVIDUAL OR ENTITY IN WHICH ANY DEFENDANT HAS A CONTROLLING INTEREST OR WHICH IS RELATED TO OR AFFILIATED WITH ANY DEFENDANT, AND THE LEGAL REPRESENTATIVES, AGENTS, AFFILIATES, HEIRS, SUCCESSORS-IN-INTEREST OR ASSIGNS OF ANY SUCH EXCLUDED PARTY.

A [Proposed] Order is attached herewith as Exhibit 1.

## 2.    Defendants' Position

Plaintiffs' argument that the Class includes option contracts ignores the plain language of the Court's August 31, 2017 certification order (ECF No. 505) (the "Certification Order") and the Court's subsequent confirmation of the scope of the Certification Order in the *Fir Tree* opt-out action. Moreover, Plaintiffs' position, if accepted, would result in certification of a class as to which Plaintiffs presented no supporting evidence of market efficiency, and would prejudice Defendants by bringing a new category of securities into the case nearly two years after the Court's issuance of the Certification Order. The Court should confirm that the certified Class is the Class that the Court specifically described in its Certification Order.

The Certification Order stated that the Court was certifying a class "with respect to ARCP's common stock," and that its holding "also extends to ARCP's preferred stock and debt securities." (ECF No. 505 at 1-2.) Those are the only securities that are in the Class.

The Certification Order made no mention of options or any ARCP securities other than ARCP's common stock, preferred stock, and debt securities. And contrary to Plaintiffs' assertion above, the Certification Order did not state that it was "granting" Plaintiffs' motion (in whole or in part).

Less than four months after issuing the Certification Order, this Court *confirmed* that the Certification Order was limited to ARCP common stock, preferred stock and debt securities in an order in the *Fir Tree* opt-out action. In describing the procedural history of the Class Action in its order on a motion to dismiss in the *Fir Tree* action, the Court noted that after the plaintiffs in the Class Action filed a motion for class certification, "[o]n August 31, 2017, the Court issued a Summary Order certifying the class *with respect to ARCP's common stock, preferred stock, and debt securities* purchased between May 9, 2012 and October 29, 2014." *Fir Tree Capital Opportunity Master Fund, L.P., et al. v. Am. Realty Capital Props., Inc., et al.*, No. 1:17-cv-04975-AKH, ECF No. 84, at 4 (S.D.N.Y. Dec. 14, 2017) (emphasis added).

**Robbins Geller**
**Rudman & Dowd** LLP

May 14, 2019
Page 4

Accordingly, it is clear that the Certification Order was limited to ARCP's common stock, preferred stock, and debt securities. That conclusion is also consistent with Plaintiffs' failure to present *any evidence* on market efficiency for ARCP options in connection with the class certification proceedings. Plaintiffs' expert report on market efficiency submitted in support of their class certification motion did not discuss option contracts or purport to offer any evidence that the options traded in an efficient market. (*See* ECF No. 369-13.) Defendants pointed the Court to this fatal flaw during the class certification proceedings, noting in their opposition to Plaintiffs' motion for class certification that "Plaintiffs offer no evidence regarding the markets for options, derivatives, or any other ARCP security," and arguing that "purchasers of those securities must be excluded from the Proposed Class on this basis alone." (ECF No. 383 at 2.) Then, at the evidentiary hearing on the motion for class certification, Plaintiffs' expert once again made no mention of option contracts. (*See* ECF No. 516.)

Thus, Plaintiffs' interpretation of the Certification Order would mean that the Court certified a Class of financial instruments as to which Plaintiffs did not even attempt to present evidence of market efficiency—a conclusion that would be foreclosed by Supreme Court precedent. *See Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2412 (2014) (holding that a case can proceed as a class action under the fraud-on-the-market presumption of reliance only if plaintiffs have "prov[en] the prerequisites for invoking the presumption," including market efficiency). Plaintiffs' assertion that "Defendants did not ask Dr. Feinstein, Plaintiffs' expert [on] market efficiency, any questions during his deposition related to options" gets it backward—it was *Plaintiffs' burden* to prove market efficiency, not Defendants' burden to disprove market efficiency. Likewise, Plaintiffs' assertion that "Defendants' supplemental briefing in opposition to class certification [did not] make any arguments that options are not properly included in the Class" is entirely misplaced, because Plaintiffs did not present any evidence that the options *were* traded in an efficient market in response to Defendants' argument from their class certification opposition brief identifying that very lack of evidence. Defendants were not required to repeat that same argument given that Plaintiffs had presented no additional evidence on that point.[3]

---

[3] Citing to the May 3, 2019 expert report of Grant Thornton's due diligence expert, J. Duross O'Bryan, Plaintiffs state in a footnote that "Defendant Grant Thornton apparently agrees that options were intended to be included in the Class definition." To clarify, Mr. O'Bryan did not intend to convey in his report that option contracts on ARCP stock are included in the class definition, and Plaintiffs are incorrect in asserting that Grant Thornton has taken that position. Mr. O'Bryan simply intended to quote the class definition set forth in the first paragraph of Plaintiffs' Third Amended Complaint; that quote was modified only to reflect the new, shortened dates of the putative class period and no other changes to the class definition. The options are not relevant to any of the Section 11 claims asserted against Grant Thornton. Nor are the options relevant to Mr. O'Bryan's opinions that Grant Thornton complied with professional standards. In contrast, the beginning and

Robbins Geller
Rudman & Dowd LLP

May 14, 2019
Page 5

Finally, Plaintiffs' argument that the Class should include options would prejudice Defendants by bringing a new category of securities into the case nearly two years after the Court's issuance of the Certification Order. If Plaintiffs thought the Certification Order should have included securities other than those mentioned in the Certification Order, they should have raised the issue at that time.

Accordingly, Defendants request that the Court confirm that the Class definition is as follows:

ALL PERSONS WHO PURCHASED OR OTHERWISE ACQUIRED AMERICAN REALTY CAPITAL PROPERTIES, INC. ("ARCP") COMMON STOCK, PREFERRED STOCK, OR DEBT SECURITIES DURING THE PERIOD FROM FEBRUARY 28, 2013 THROUGH OCTOBER 29, 2014 ("ARCP SECURITIES"). EXCLUDED FROM THE CLASS ARE ALL DEFENDANTS, MEMBERS OF THE IMMEDIATE FAMILIES OF EACH OF THE DEFENDANTS, ANY PERSON, FIRM, TRUST, CORPORATION, OFFICER, DIRECTOR, OR OTHER INDIVIDUAL OR ENTITY IN WHICH ANY DEFENDANT HAS A CONTROLLING INTEREST OR WHICH IS RELATED TO OR AFFILIATED WITH ANY DEFENDANT, AND THE LEGAL REPRESENTATIVES, AGENTS, AFFILIATES, HEIRS, SUCCESSORS-IN-INTEREST OR ASSIGNS OF ANY SUCH EXCLUDED PARTY.[4]

Defendants therefore respectfully request that the Court enter the proposed order attached as Exhibit 2 hereto. An image of a redline showing the difference between Defendants' proposed Class definition and Plaintiffs' proposed Class definition is on the following page, with Plaintiffs' proposed addition to the Class definition in blue:

---

end dates of the putative class period *are* relevant to the scope of Mr. O'Bryan's assignment. The Court should therefore disregard footnote 2 in Plaintiffs' portion of this joint letter.

[4] For the avoidance of doubt, this exclusion does not extend to: (1) any investment company or pooled investment fund in which an Underwriter Defendant may have a direct or indirect interest, or as to which its affiliates may act as an advisor, but of which an Underwriter Defendant or its respective affiliates is not a majority owner or does not hold a majority beneficial interest, or (2) any employee benefit plan as to which an Underwriter Defendant or its affiliates acts as an investment advisor or otherwise may be a fiduciary; provided, however, that membership in the Class by such investment company, pooled investment fund or employee benefit plan is limited to transactions in ARCP Securities made on behalf of, or for the benefit of, persons other than persons that are excluded from the Class by definition. In other words, the Underwriter Defendants cannot make a claim on their own behalf for their ownership share in any of the above entities.

**Robbins Geller
Rudman & Dowd** LLP

May 14, 2019
Page 6

> ALL PERSONS WHO PURCHASED OR OTHERWISE ACQUIRED
> AMERICAN REALTY CAPITAL PROPERTIES, INC. ("ARCP") COMMON
> STOCK, PREFERRED STOCK, OR DEBT SECURITIES, AS WELL AS
> THOSE WHO TRADED IN OPTION CONTRACTS ON ARCP STOCK
> ("ARCP SECURITIES") DURING THE PERIOD FROM FEBRUARY 28, 2013
> THROUGH OCTOBER 29, 2014. EXCLUDED FROM THE CLASS ARE ALL
> DEFENDANTS, MEMBERS OF THE IMMEDIATE FAMILIES OF EACH OF
> THE DEFENDANTS, ANY PERSON, FIRM, TRUST, CORPORATION,
> OFFICER, DIRECTOR, OR OTHER INDIVIDUAL OR ENTITY IN WHICH
> ANY DEFENDANT HAS A CONTROLLING INTEREST OR WHICH IS
> RELATED TO OR AFFILIATED WITH ANY DEFENDANT, AND THE
> LEGAL REPRESENTATIVES, AGENTS, AFFILIATES, HEIRS,
> SUCCESSORS-IN-INTEREST OR ASSIGNS OF ANY SUCH EXCLUDED
> PARTY.[2]

Respectfully,

/s/ Patrick Coughlin

PATRICK COUGHLIN

PJC

# EXHIBIT I

MARC M. SELTZER (54534)
mseltzer@susmangodfrey.com
STEVEN G. SKLAVER (237612)
ssklaver@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

ANDREW J. ENTWISTLE *(Pro Hac Vice)*
aentwistle@entwistle-law.com
VINCENT R. CAPPUCCI *(Pro Hac Vice)*
vcappucci@entwistle-law.com
ARTHUR V. NEALON *(Pro Hac Vice)*
anealon@entwistle-law.com
ROBERT N. CAPPUCCI *(Pro Hac Vice)*
rcappucci@entwistle-law.com
ENTWISTLE & CAPPUCCI LLP
299 Park Avenue, 20th Floor
New York, NY 10171
Telephone: (212) 894-7200
Facsimile: (212) 894-7272

[Additional Counsel for Plaintiff on Signature Page]

*Attorneys for Plaintiff Timber Hill LLC*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| TIMBER HILL LLC, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>PERSHING SQUARE CAPITAL MANAGEMENT, L.P., et al.,<br><br>Defendants. | Case No. 2:17-cv-04776 DOC (KESx)<br><br>The Hon. David O. Carter<br><br><u>CLASS ACTION</u><br><br>ORDER GRANTING PLAINTIFF TIMBER HILL LLC'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF SELECTION OF LEAD COUNSEL AND CONSOLIDATION OF FUTURE RELATED ACTIONS ON BEHALF OF DERIVATIVES INVESTORS [56]<br><br>DATE: October 2, 2017<br>TIME: 8:30 a.m.<br>PLACE: Courtroom 9D |

5294179v1/015666

Having considered Plaintiff Timber Hill LLC's motion for appointment as lead plaintiff and approval of selection of lead counsel for the class, and good cause appearing therefor,

The Court hereby ORDERS as follows:

1. The motion is GRANTED;

2. Plaintiff Timber Hill LLC is APPOINTED as Lead Plaintiff for the class of persons and entities that sold Allergan, Inc. ("Allergan") call options, purchased Allergan put options or sold Allergan equity forward contracts during the period February 25, 2014 through April 21, 2014, inclusive;

3. Plaintiff's selection of Entwistle & Cappucci LLP and Susman Godfrey L.L.P. to serve as Co-Lead Counsel for Lead Plaintiff and the Class is APPROVED; and

4. Pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, any subsequently filed, removed or transferred actions brought on behalf of Allergan derivative securities investors that are related to the claims asserted in the above-captioned Action are CONSOLIDATED for all purposes; and

5. Every pleading in the above-captioned action shall have the following caption: *In re Allergan, Inc. Proxy Violation Derivatives Litigation*, Case No. 2:17-cv-04776-DOC (KESx).

IT IS SO ORDERED.

DATED: October 13, 2017
_____

_David O. Carter_
_____
DAVID O. CARTER
UNITED STATES DISTRICT JUDGE

Submitted by:

MARC M. SELTZER
STEVEN G. SKLAVER
EDGAR G. SARGENT
SUSMAN GODFREY L.L.P.

5294179v1/015666

EDGAR G. SARGENT (*Pro Hac Vice*)
esargent@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, Washington 98101
Telephone (206) 516-3880
Facsimile (206) 516-3883


ANDREW J. ENTWISTLE
VINCENT R. CAPPUCCI
ARTHUR V. NEALON
ROBERT N. CAPPUCCI
ENTWISTLE & CAPPUCCI LLP

*/s/ Marc M. Seltzer*

Marc M. Seltzer
*Attorneys for Plaintiff Timber Hill LLC*

5294179v1/015666

# EXHIBIT J

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| JOHAN WALLERSTEIN, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NETFLIX, INC., WILMOT REED HASTINGS, AND SPENCER ADAM NEUMANN,<br><br>Defendants. | Case No: 5:19-cv-04195-LHK<br><br>STIPULATION AND [PROPOSED] ORDER APPOINTING LEAD PLAINTIFFS AND LEAD COUNSEL |
| DEEPAK VENKATACHALAPATHY, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NETFLIX, INC., REED HASTINGS, and SPENCER NEUMANN,<br><br>Defendants. | Case No. 5:19-cv-04395-LHK |

WHEREAS, this putative class action was commenced on July 22, 2019 on behalf of investors that purchased Netflix, Inc. ("Netflix") securities between April 17, 2019 and July 17, 2019 (the "Class Period"). That same day notice of the action was issued on that date pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") advising Netflix investors of the September 20, 2019 deadline for those seeking appointment as lead plaintiff.

WHEREAS, another putative class action was commenced on July 31, 2019 on behalf of investors that purchased Netflix, Inc. ("Netflix") securities during the same Class Period;

- 1 -

STIPULATION AND [PROPOSED] ORDER APPOINTING LEAD PLAINTIFFS AND LEAD COUNSEL

WHEREAS, on August 12, 2019, this Court issued an Order relating the above-captioned actions (the "Securities Class Actions");

WHEREAS, on September 20, 2019 five consolidation and lead plaintiff motions were filed by: (1) Frederica Papa ("Papa") (Dkt. No. 18); (2) Derek Selanders ("Selanders") (Dkt. No. 22); (3) Leon Cohen ("Cohen") (Dkt. No. 24); (4) TJ Cab Management Inc. ("TJ Cab Management") (Dkt. No. 27); and (5) Ralph Sears ("Sears") (Dkt. No. 32);

WHEREAS, on September 26, 2019, Papa withdrew her lead plaintiff motion (Dkt. No. 38);

WHEREAS, the Securities Class Actions have been filed against Netflix, Inc., et al. (collectively "Defendants"), alleging violations of the federal securities laws;

WHEREAS, the later filed putative class action asserts substantially the same allegations against the exact same Defendants;

WHEREAS, Federal Rule of Civil Procedure 42(a) provides that a court may order all actions consolidated if they involve "common issues of law or fact." The Securities Class Actions involve common legal and factual issues; thus, efficiency and consistency will result from their consolidation;

WHEREAS, Cohen transacted only in Netflix options during the Class Period and has the largest options losses, and is the only movant that has standing to represent Netflix options purchasers;

WHEREAS, TJ Cab Management transacted only in Netflix stock during the Class Period and has the largest stock losses before the Court;

WHEREAS, both movants recognize that they each have significant interest in any recovery sought and satisfy the relevant requirements of adequacy and typicality under Rule 23 of the Federal Rules of Civil Procedure and after reviewing each other's submissions, believe it is in the putative class' best interest that both Cohen and TJ Cab Management be appointed as Lead Plaintiffs to ensure representation for both stock and options purchasers;

- 2 -

STIPULATION AND [~~PROPOSED~~] ORDER APPOINTING LEAD PLAINTIFFS AND LEAD COUNSEL

WHEREAS, Cohen and TJ Cab Management are committed to supervising the conduct of this litigation by their counsel and to ensuring that counsel coordinate appropriately and avoid any duplication of effort in the conduct of the litigation;

IT IS HEREBY STIPULATED, that subject to the Court's approval, Cohen and TJ Cab Management agree to serve as Lead Plaintiffs and The Rosen Law Firm, P.A. ("Rosen") and Faruqi & Faruqi LLP ("Faruqi") agree to serve as Co-Lead Counsel.

## CONSOLIDATION OF RELATED CASES

1. The above-captioned actions are related cases within the meaning of Civil L.R. 3-12. Pursuant to Federal Rule of Civil Procedure 42(a), these cases are hereby consolidated into Civil Action No. 5:19-cv-04195-LHK for pretrial proceedings before this Court. The consolidated action shall be captioned: "In re Netflix Inc. Securities Litigation."

2. For all actions subsequently filed in, or transferred to this District, that are related to the Consolidated Action by the Court, the parties (including the parties to the subsequently filed or transferred action) shall meet and confer regarding potential consolidation. If the parties ultimately stipulate to consolidation, such action will be consolidated with the Consolidated Action. If the parties are unable to agree on consolidation, the parties shall bring the matter to the Court's attention within 10 days after the subsequently filed or transferred action is related to the Consolidated Action. All related actions subsequently consolidated into the Consolidated Action shall be subject to this order.

## MASTER DOCKET AND CAPTION

3. The docket in Civil Action No. 5:19-cv-04195-LHK shall constitute the Master Docket for this action.

4. Every pleading filed in the consolidated action shall bear the following caption:

- 3 -

STIPULATION AND [PROPOSED] ORDER APPOINTING LEAD PLAINTIFFS AND LEAD COUNSEL

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

------------------------------------------------------X

In re Netflix, Inc. Securities Litigation

Master File No. 5:19-cv-04195-LHK

CLASS ACTION

------------------------------------------------------X

5. The file in Civil Action No. 5:19-cv-04195-LHK shall constitute a Master File for every action in the consolidated action. When the document being filed pertains to all actions, the phrase "All Actions" shall appear immediately after the phrase "This Documents Relates To:". When a pleading applies only to some, not all, of the actions, the document shall list, immediately after the phrase "This Documents Relates To:", the docket number for each individual action to which the document applies, along with the last name of the first-listed plaintiff in said action (e.g., "No. 5:19-cv-04195-LHK (Wallerstein))."

6. The parties shall file a Notice of Related Cases pursuant to Civil L.R. 3-12 whenever a case that should be consolidated into this action is filed in, or transferred to, this District. If the Court determines that the case is related, the clerk shall:

    (a)    place a copy of this Order in the separate file for such action;

    (b)    serve on plaintiff's counsel in the new case a copy of this Order;

    (c)    direct that this Order be served upon defendants in the new case; and

    (d)    make the appropriate entry in the Master Docket.

**APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF COUNSEL**

7. Having considered the provisions of Section 21D(a)(3)(B) of the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B), the Court hereby determines that Cohen and TJ Cab Management are the most adequate

- 4 -

plaintiffs and satisfy the requirements of the PSLRA. The Court hereby appoints Cohen and TJ Cab Management as Lead Plaintiffs to represent the interests of the class.

8. Pursuant to Section 21D(a)(3)(B)(v) of the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B)(v), Cohen and TJ Cab Management have selected Rosen and Faruqi to serve as Lead Counsel. The Court approves Rosen and Faruqi as Lead Counsel.

9. Lead Counsel shall have the following responsibilities and duties, to be carried out either personally or through counsel whom Lead Counsel shall designate:

    a.    to coordinate the briefing and argument of any and all motions;

    b.    to coordinate the conduct of any and all discovery proceedings;

    c.    to coordinate the examination of any and all witnesses in depositions;

    d.    to coordinate the selection of counsel to act as spokesperson at all pretrial conferences;

    e.    to call meetings of the plaintiffs' counsel as deemed necessary and appropriate from time to time;

    f.    to coordinate all settlement negotiations with counsel for defendants;

    g.    to coordinate and direct the pretrial discovery proceedings and the preparation for trial and the trial of this matter, and to delegate work responsibilities to selected counsel as may be required;

    h.    to coordinate the preparation and filings of all pleadings; and

    i.    to supervise all other matters concerning the prosecution or resolution of the claims asserted in the Action.

10. No motion, discovery request, or other pretrial proceedings shall be initiated or filed by any plaintiffs without the approval of Lead Counsel, so as to prevent duplicative pleadings or

- 5 -

STIPULATION AND [PROPOSED] ORDER APPOINTING LEAD PLAINTIFFS AND LEAD COUNSEL

discovery by plaintiffs. No settlement negotiations shall be conducted without the approval of Lead Counsel.

11. Service upon any plaintiff of all pleadings, motions, or other papers in the Action, except those specifically addressed to a plaintiff other than the Lead Plaintiffs, shall be completed upon service of Lead Counsel.

12. Lead Counsel shall be the contact between plaintiffs' counsel and defendants' counsel, as well as the spokespersons for all plaintiffs' counsel, and shall direct and coordinate the activities of plaintiffs' counsel. Lead Counsel shall be the contact between the Court and plaintiffs and their counsel.

Dated: October 4, 2019

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/ Laurence M. Rosen
Laurence M. Rosen, Esq. (SBN 219683)
355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Co-Lead Counsel for Movants and [Proposed] Co-Lead Counsel for the Class*

/s/ Benjamin Heikali
Benjamin Heikali SBN 307466
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: 424-256-2884
Facsimile: 424-256-2885
E-mail: bheikali@faruqilaw.com

-and-

- 6 -

STIPULATION AND [PROPOSED] ORDER APPOINTING LEAD PLAINTIFFS AND LEAD COUNSEL

Richard W. Gonnello (*pro hac vice* forthcoming)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
E-mail: rgonnello@faruqilaw.com

*Lead Counsel for Movants and [Proposed] Co-Lead Counsel for the Class*

**GLANCY PRONGAY & MURRAY LLP**
*/s/ Charles H. Linehan*
Lionel Z. Glancy
Robert V. Prongay
Lesley F. Portnoy
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: lportnoy@glancylaw.com

*Attorneys for Movant Derek Selanders*

POMERANTZ LLP
*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
Email: jpafiti@pomlaw.com

POMERANTZ LLP
Jeremy A. Lieberman
(pro hac vice application forthcoming)
J. Alexander Hood II
(pro hac vice application forthcoming)
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com

- 7 -

STIPULATION AND [PROPOSED] ORDER APPOINTING LEAD PLAINTIFFS AND LEAD COUNSEL

Email: ahood@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
(pro hac vice application forthcoming)
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

*Counsel for Movant Ralph Sears*

To ensure efficiency, the Court adopts the following protocols. Other than the Rosen Law Firm, P.A., and Faruqi & Faruqi, LLP, no other law firms shall work on this action for the putative class without prior approval of the Court. Motions for approval of additional Plaintiffs' counsel shall identify the additional Plaintiffs' counsel and their background, the specific proposed tasks, and why the Rosen Law Firm, P.A. and Faruqi & Faruqi, LLP cannot perform these tasks. The Court further orders that any billers who will seek fees in the instant case, including staff, consultants, and experts, shall maintain contemporaneous billing records of all time spent litigating the instant case. By "contemporaneous," the Court means that an individual's time spent on a particular activity should be recorded no later than seven days after that activity occurred. The Court notes that "a one-tenth hour timekeeping practice is generally reasonable." *Jacobson v. Persolve*, 2016 WL 7230873, at \*10 (N.D. Cal. Dec. 14, 2016) (citing *Kalani v. Starbucks Corp.*, 2016 WL 379623, at \*8 (N.D. Cal. Feb. 1, 2016)). Mr. Laurence M. Rosen shall review and approve attorney's fees and costs each month and strike any duplicative or unreasonable fees and costs.

IT IS SO ORDERED.

*Lucy H. Koh*
_____

DATED: January 31, 2020

UNITED STATES DISTRICT JUDGE

- 8 -

STIPULATION AND [~~PROPOSED~~] ORDER APPOINTING LEAD PLAINTIFFS AND LEAD COUNSEL