**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| IN RE CARNIVAL CORP. SECURITIES LITIGATION | Case No. 1:20-cv-22202-KMM <br><br> <u>CLASS ACTION</u> |
| ABRAHAM ATACHBARIAN, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> CARNIVAL CORPORATION, CARNIVAL PLC, ARNOLD W. DONALD, DAVID BERNSTEIN, and MICKY ARISON, <br><br> Defendants. | Case No. 1:20-cv-23011-RNS <br><br> <u>CLASS ACTION</u> |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF THE NEW ENGLAND CARPENTERS PENSION AND GUARANTEED ANNUITY FUNDS AND THE MASSACHUSETTS LABORERS' PENSION AND ANNUITY FUNDS FOR APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF THEIR SELECTION OF COUNSEL, AND CONSOLIDATION OF RELATED ACTIONS, <u>AND IN OPPOSITION TO COMPETING MOTIONS</u>**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ....................................................................................................................... 5

      A.     New England Carpenters and Massachusetts Laborers Should Be
           Appointed Lead Plaintiff ........................................................................................... 5

           1.    New England Carpenters and Massachusetts Laborers Have the
                 Largest Financial Interest in the Relief Sought by the Class ....................... 6

           2.    New England Carpenters and Massachusetts Laborers Satisfy the
                 Requirements of Rule 23 ............................................................................. 7

           3.    The Competing Motions Should Be Denied ................................................ 9

      B.     The Related Actions Should Be Consolidated ......................................................... 10

      C.     Atachbarian's "Notice" Should Be Vacated ........................................................... 15

CONCLUSION ................................................................................................................... 16

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bank of Am. Corp. Sec., Derivative, & Emp't Ret. Income Sec. Act (ERISA) Litig.*,
2012 WL 1308993 (S.D.N.Y. Apr. 16, 2012)..............................................................................14

*In re Bank of Am. Corp. Sec., Derivative & Emp't Ret. Income Sec. Act (ERISA) Litig.*,
2010 WL 1438980 (S.D.N.Y. Apr. 9, 2010).............................................................................13

*Blue Chip Stamps v. Manor Drug Stores*,
421 U.S. 723 (1975)...............................................................................................................4, 11

*Bo Young Cha v. Kinross Gold Corp.*,
2012 WL 2025850 (S.D.N.Y. May 31, 2012) ............................................................................2

*Brustein v. Lampert*,
2005 WL 8154797 (S.D. Fla. June 16, 2005) ............................................................................7

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ...................................................................................................10

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001).............................................................................................3, 8, 9

*Cheney v. Cyberguard Corp.*,
213 F.R.D. 484 (S.D. Fla. 2003).............................................................................................15

*Eastwood Enters. LLC v. Farha*,
2008 WL 687351 (M.D. Fla. Mar. 11, 2008) ...........................................................................6

*Fishbury, Ltd. v. Connetics Corp.*,
2006 WL 3711566 (S.D.N.Y. Dec. 14, 2006) .......................................................................13

*Glauser v. EVCI Career Colls. Holding Corp.*,
236 F.R.D. 184 (S.D.N.Y. 2006) ...........................................................................................12

*Hall v. Medicis Pharm. Corp.*,
2009 WL 648626 (D. Ariz. Mar. 11, 2009)...........................................................................12

*Hedick v. Kraft Heinz Co.*,
2019 WL 4958238 (N.D. Ill. Oct. 8, 2019).............................................................13, 14, 15

*Hevesi v. Citigroup Inc.*,
366 F.3d 70 (2d Cir. 2004)...........................................................................................4, 12, 14

*Inchen Huang v. Depomed, Inc.*,
   289 F. Supp. 3d 1050 (N.D. Cal. 2017) ...............................................................6

*Kabak v. Becton, Dickinson & Co.*,
   2020 WL 3056281 (D.N.J. June 9, 2020) ...................................................4, 13, 15

*Kaplan v. Gelfond*,
   240 F.R.D. 88 (S.D.N.Y. 2007) .........................................................................11

*Khunt v. Alibaba Grp. Holding Ltd.*,
   102 F. Supp. 3d 523 (S.D.N.Y. 2015).................................................................13

*Lax v. First Merchs. Acceptance Corp.*,
   1997 WL 461036 (N.D. Ill. Aug. 11, 1997) ........................................................16

*Luczak v. Nat'l Beverage Corp.*,
   2018 WL 9847842 (S.D. Fla. Oct. 12, 2018).........................................................7

*Miller v. Dyadic Int'l, Inc.*,
   2008 WL 2465286 (S.D. Fla. Apr. 18, 2008) ...................................................5, 15

*Newman v. Eagle Bldg. Techs.*,
   209 F.R.D. 499 (S.D. Fla. 2002).......................................................................3, 9

*Okla. Law Enf't Ret. Sys. v. Adeptus Health Inc.*,
   2017 WL 3780164 (E.D. Tex. Aug. 31, 2017) .................................................5, 15

*In re Orbital Scis. Corp. Sec. Litig.*,
   188 F.R.D. 237 (E.D. Va. 1999).........................................................................12

*In re The Boeing Co. Aircraft Sec. Litig.*,
   2019 WL 6052399 (N.D. Ill. Nov. 15, 2019), *reconsideration denied*, 2020
   WL 476658 (N.D. Ill. Jan. 28, 2020) ...................................................................9

*In re Valeant Pharm. Int'l, Inc. Sec. Litig.*,
   2018 WL 5849466 (D.N.J. Nov. 7, 2018) ......................................................12, 14

**Statutes**

15 U.S.C. § 78c(a)(10)........................................................................................11

15 U.S.C. § 78u-4(a)(3) ..............................................................................1, 5, 7, 9

**Other Authorities**

Fed. R. Civ. P. 23(a)(3)........................................................................................7

Fed. R. Civ. P. 23(a)(4)........................................................................................7

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 (1995)........................8

New England Carpenters and Massachusetts Laborers respectfully submit this memorandum of law in further support of their motion for appointment as Lead Plaintiff (ECF No. 23) and in opposition to the competing motions (ECF Nos. 18, 20, 21, 25).[1]

## PRELIMINARY STATEMENT

On July 27, 2020, New England Carpenters and Massachusetts Laborers filed a timely motion under the PSLRA for an Order: (1) appointing New England Carpenters and Massachusetts Laborers as Lead Plaintiff in the above-captioned securities class actions against Carnival; (2) approving New England Carpenters and Massachusetts Laborers' selection of Lead and Liaison Counsel for the Class; (3) consolidating all related securities class actions; and (4) granting such other relief as the Court may deem just and proper.  In addition to New England Carpenters and Massachusetts Laborers' motion, motions seeking appointment as Lead Plaintiff were also filed by Stuart Roy Rosenblatt (ECF No. 17), Joseph Fuscaldo (ECF No. 18), Stephen Harris (ECF No. 20), LiUNA Pension Fund of Central and Eastern Canada ("LiUNA") (ECF No. 21), and Roy and Joan McCarroll (ECF No. 25).[2]

A straightforward application of the PSLRA provides that the "most adequate plaintiff"— the plaintiff entitled to appointment as lead plaintiff—is the movant asserting the largest financial interest that also makes a *prima facie* showing of typicality and adequacy.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  Here, New England Carpenters and Massachusetts Laborers are the presumptive Lead Plaintiff under the analysis required by the PSLRA.

---

[1]  Unless otherwise noted, all references to "ECF No. __" are to docket entries in *Service Lamp*.  All capitalized terms are defined in New England Carpenters and Massachusetts Laborers' opening brief, unless otherwise indicated.  *See* ECF No. 23-1.

[2]  Subsequently, Stephen Harris and LiUNA have filed notices of non-opposition to competing motions, and Stuart Roy Rosenblatt has withdrawn his motion, all acknowledging that they do not have the largest financial interests in this action, as required for appointment under the PSLRA.  *See* ECF Nos. 26, 28, 29.

*First*, as detailed below, New England Carpenters and Massachusetts Laborers have the "largest financial interest" in this litigation, whether considered as a group or individually.  In fact, New England Carpenters and Massachusetts Laborers, with losses of approximately ***$5,697,419*** on a last-in, first-out ("LIFO") basis (ECF No. 23-4),[3] have a financial interest that is more than seven times the size of the remaining competing movants' claimed losses *combined*:

| MOVANT | CLAIMED LOSSES |
|---|---|
| New England Carpenters and Massachusetts Laborers | $5,697,419 |
| ~~LiUNA~~ | ~~$1,148,179~~ |
| Roy and Joan McCarroll | $660,167 |
| ~~Stephen Harris~~ | ~~$389,561~~ |
| Joseph Fuscaldo | $134,550 |
| ~~Stuart Roy Rosenblatt~~ | ~~$45,996~~ |

Moreover, with losses of $3,541,425 and $2,155,994, respectively, New England Carpenters and Massachusetts Laborers each suffered substantially larger *individual* losses than any competing movant—further demonstrating New England Carpenters and Massachusetts Laborers' superior financial interest in the claims against Carnival.

*Second*, in addition to asserting the dominant financial interest, New England Carpenters and Massachusetts Laborers satisfy the typicality and adequacy requirements of Rule 23 and are

---

[3]   LIFO is the preferred and most widely accepted methodology for calculating movants' losses.  *See Bo Young Cha v. Kinross Gold Corp.*, 2012 WL 2025850, at *3 (S.D.N.Y. May 31, 2012) (observing that "the overwhelming trend . . . nationwide has been to use LIFO") (citations omitted).

perfectly situated to represent all Class members.   Here, New England Carpenters and Massachusetts Laborers are sophisticated institutional investors with the resources, knowledge, motivation, and prior lead plaintiff experience necessary to adequately oversee counsel and ensure that the Class's claims are vigorously and efficiently prosecuted.  *See In re Cendant Corp. Litig.*, 264 F.3d 201, 266, 273 (3d Cir. 2001) (finding that "the purpose of the [PSLRA] was to encourage institutional investors to serve as lead plaintiff").   Moreover, New England Carpenters and Massachusetts Laborers share pre-existing professional relationships among representatives of the funds and they have implemented specific protocols to ensure that the litigation will be prosecuted efficiently under their oversight.   *See* ECF No. 23-5 at ¶¶ 10, 12, 13, 15, 17, 18 ("Joint Declaration") (discussing, *inter alia*, pre-existing professional relationships, pre-motion joint call, motivation for seeking joint appointment, ongoing communication protocols, oversight of counsel and direction for counsel to enter into a joint prosecution agreement).

The presumption, once triggered in New England Carpenters and Massachusetts Laborers' favor, "may be rebutted ***only upon proof*** by a member of the purported plaintiff class that the presumptively most adequate plaintiff . . . will not fairly and adequately protect the interests of the class."  *Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 502 (S.D. Fla. 2002) (citation omitted) (emphasis added).  Given that no "proof" has been—or can be—offered to rebut New England Carpenters and Massachusetts Laborers' presumptive status, New England Carpenters and Massachusetts Laborers should be appointed Lead Plaintiff and the competing motions should be denied.

***Third***, *Atachbarian* shares "common questions of law or fact" with the two actions previously consolidated by the Court and should be consolidated.  *See* ECF No. 10 (explaining that the *Service Lamp* and *Elmensdorp* actions share "common questions of fact and thus

consolidation is appropriate").  Like the consolidated cases, *Atachbarian* similarly alleges violations under Sections 10(b) and 20(a) of the Exchange Act against overlapping Defendants for identical misconduct.  Despite these similarities and despite the Court's prior order, named plaintiff Abraham Atachbarian opposes consolidation of his case because he (wrongly) claims that none of the filed cases explicitly included options traders.  *See* ECF No. 19 (Atachbarian letter expressing intention to oppose consolidation).  The first filed case, *Service Lamp*, was filed on behalf of investors that "purchased or otherwise acquired Carnival common stock ***and securities***."  ECF No. 1 at ¶ 1 (emphasis added).  "Securities" unquestionably include stock options.  *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 751 (1975) ("puts, calls, options, and other contractual rights or duties to purchase or sell securities" are "securities for purposes of Rule 10b-5").  Atachbarian's argument fails without more.

Even if *Service Lamp* did not specifically include options traders, Atachbarian's effort to carve out a niche class "on behalf of options traders" is inconsistent with the PSLRA and should be rejected.  *See Hevesi v. Citigroup Inc*., 366 F.3d 70, 82 n.13 (2d Cir. 2004) ("any requirement that a different lead plaintiff be appointed to bring every single available claim would contravene the main purpose of having a lead plaintiff—namely, to empower one or several investors with a major stake in the litigation to exercise control over the litigation as a whole").  Indeed, courts routinely appoint equity investors to represent options traders.  *See, e.g.*, *Kabak v. Becton, Dickinson & Co.*, 2020 WL 3056281, at \*3 (D.N.J. June 9, 2020) (concluding that the "fragmented" request for appointment of separate options investor as a co-lead plaintiff "finds no support in the PSLRA").  This case should not be the exception.

For these reasons, the Court should also vacate the "notice" published by Atachbarian's counsel purportedly setting a September 1, 2020 lead plaintiff deadline for options traders as a

violation of the PSLRA's "mandatory" procedural requirements.  *See Okla. Law Enf't Ret. Sys. v. Adeptus Health Inc.*, 2017 WL 3780164, at \*3 (E.D. Tex. Aug. 31, 2017) (explaining that where "potential plaintiffs in the [niche class] had adequate notice to file a motion for appointment as lead plaintiff" in connection with the initial class action, "the appropriate time to respond was sixty days from the notice being published in the [initial] action").  The statutory deadline to seek appointment in this case expired on July 27, 2020.  *See* 15 U.S.C. § 78u-4(a)(3)(A) (requiring lead plaintiff motions to be filed within 60 days of publication of the first filed action); ECF No. 23-1 at 7-8.  Atachbarian was well aware of this deadline.  *See* ECF No. 19 (letter filed on July 27, 2020).  Any lead plaintiff motions filed after July 27, 2020, like Atachbarian threatens to file, would violate the PSLRA's strict deadlines and should not be considered.

## ARGUMENT

**A.    New England Carpenters and Massachusetts Laborers Should Be Appointed Lead Plaintiff**

The PSLRA directs courts to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members."  15 U.S.C. § 78u-4(a)(3)(B)(i).  In determining which movant is the most adequate plaintiff, the PSLRA provides that "the court shall adopt a presumption that the most adequate plaintiff . . . is the person or group . . . in the determination of the court, [which] has the largest financial interest in the relief sought by the class; and . . . otherwise satisfies the requirements of Rule 23."  *Id*. § 78u-4(a)(3)(B)(iii)(I); *see also Miller v. Dyadic Int'l, Inc.*, 2008 WL 2465286, at \*3 (S.D. Fla. Apr. 18, 2008) (stating that the PSLRA "creates a presumption . . . that the most adequate plaintiff . . . has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23").  New England Carpenters and

Massachusetts Laborers meet both of these prerequisites and should therefore be appointed Lead Plaintiff.

**1.   New England Carpenters and Massachusetts Laborers Have the Largest Financial Interest in the Relief Sought by the Class**

Based on the movants' respective submissions to the Court, it is indisputable that New England Carpenters and Massachusetts Laborers have sustained the largest losses in connection with their transactions in Carnival securities during the Class Period:



As depicted in the chart above, New England Carpenters and Massachusetts Laborers' losses of approximately ***$5,697,419*** (ECF No. 23-4) are more than ***seven times*** the size of the remaining competing movants' claimed losses ***combined***.  Moreover, while it is well established that groups of institutional investors may aggregate their losses in seeking to be appointed lead plaintiff, *see Eastwood Enters. LLC v. Farha*, 2008 WL 687351, at *2 (M.D. Fla. Mar. 11, 2008), New England Carpenters (with losses of $3,541,425) and Massachusetts Laborers (with losses of $2,155,994) each ***individually*** have substantially greater losses than any other movant.  *See, e.g.*, *Inchen Huang v. Depomed, Inc.*, 289 F. Supp. 3d 1050, 1053 (N.D. Cal. 2017) (appointing group

where a single member, alone, had the largest financial interest of any movant).  Thus, New England Carpenters and Massachusetts Laborers clearly possess the "largest financial interest" and should be appointed Lead Plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

### 2. New England Carpenters and Massachusetts Laborers Satisfy the Requirements of Rule 23

At the lead plaintiff appointment stage, a "candidate for lead plaintiff status must only make a *prima facie* showing" of typicality and adequacy.  *Brustein v. Lampert*, 2005 WL 8154797, at *4 (S.D. Fla. June 16, 2005) (citing *Cendant*, 264 F.3d at 263).

New England Carpenters and Massachusetts Laborers' claims are "typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3); *see also* ECF No. 23-1 at 9-10.  Like other members of the proposed Class, New England Carpenters and Massachusetts Laborers: (1) purchased Carnival securities during the Class Period; (2) at prices artificially inflated by Defendants' materially false and misleading statements and/or omissions; and (3) were damaged thereby.  New England Carpenters and Massachusetts Laborers are adequate because they are capable of "fairly and adequately protect[ing] the interests of the class."  *See* ECF No. 23-1 at 10-11; Fed. R. Civ. P. 23(a)(4).  New England Carpenters and Massachusetts Laborers' interests are clearly aligned with other Class members and there is no evidence of any conflict.  With losses far exceeding those of any other movant, New England Carpenters and Massachusetts Laborers have a sufficient interest in this case to ensure its vigorous prosecution, and have demonstrated their commitment to prosecuting this action efficiently and in the best interests of the Class.  *See Luczak v. Nat'l Beverage Corp.*, 2018 WL 9847842, at *2 (S.D. Fla. Oct. 12, 2018) (holding that representation is adequate when "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the class members' interests are not antagonistic to one another; and (3)

the class has sufficient interest in the outcome of the case to ensure vigorous advocacy") (citation omitted).

Moreover, as large, sophisticated institutional investors, each with billions of dollars in assets, prior service as lead plaintiffs under the PSLRA, and pre-existing relationships, *see* ECF No. 23-5 at ¶¶ 2-5, 10, New England Carpenters and Massachusetts Laborers are the prototypical investor Congress sought to encourage to lead securities class actions.  *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995) ("[I]ncreasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."); *Cendant*, 264 F.3d at 273 (finding that "the purpose of the [PSLRA] was to encourage institutional investors to serve as lead plaintiff") (citations omitted).

New England Carpenters and Massachusetts Laborers have also demonstrated their adequacy by selecting Bernstein Litowitz and Kessler Topaz as Lead Counsel for the Class and Carella Byrne as Liaison Counsel for the Class.  *Id.* at 265 ("[O]ne of the best ways for a court to ensure that . . . [the lead plaintiff] will fairly and adequately represent the interests of the class is to inquire whether the movant has demonstrated a willingness and ability to select competent class counsel . . . .") (citation omitted).  Bernstein Litowitz and Kessler Topaz are both highly qualified and experienced in securities class action litigation and have successfully prosecuted numerous securities fraud class actions on behalf of injured investors both separately and together, including in this District.  *See* ECF No. 23-1 at 14-16.  Moreover, Carella Byrne maintains an office in this District, has substantial experience litigating class actions, and is well qualified to represent the Class as Liaison Counsel.  *See id*. at 16-17.  Given their familiarity with the PSLRA's lead plaintiff obligations and their prior experience successfully leading securities class actions, New England

Carpenters and Massachusetts Laborers have implemented specific protocols—including ongoing communication protocols and instructing counsel to enter into a joint prosecution agreement—to ensure that the litigation will be prosecuted efficiently under their oversight.  *See* ECF No. 23-5 at ¶¶ 15, 18.

Accordingly, because New England Carpenters and Massachusetts Laborers have the largest financial interest in the relief sought by the Class and otherwise satisfy the relevant requirements of Rule 23, the Court should appoint New England Carpenters and Massachusetts Laborers as Lead Plaintiff.

### 3.    The Competing Motions Should Be Denied

As demonstrated above, all other movants' claimed losses are significantly lower than New England Carpenters and Massachusetts Laborers' losses.[4]  Additionally, no "proof" exists to rebut New England Carpenters and Massachusetts Laborers' presumptive status as the most adequate plaintiff under the PSLRA.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (requiring "proof" to rebut presumption); *Cendant*, 264 F.3d at 264 (same); *Newman*, 209 F.R.D. at 502 (same).  This, without more, is sufficient to deny the competing motions under the PSLRA's "straightforward" lead plaintiff selection process.  *See In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002) ("So long as

---

[4]    In addition to failing to assert the largest financial interest, Roy and Joan McCarroll cannot meet the adequacy and typicality requirements of Rule 23.  Other than stating that they are "a married couple residing in Alabama with over 20 years of investing experience," ECF No. 25 at 3, Roy and Joan McCarroll have provided no information, via prior PSLRA experience or declaration, concerning their sophistication and/or ability to oversee this litigation or their counsel.  "The complete dearth of information accompanying" their "lead plaintiff motion leaves the Court with virtually no basis to assess [their] adequacy to lead and direct litigation potentially involving thousands of claims for tens, or perhaps hundreds, of millions of dollars."  *In re The Boeing Co. Aircraft Sec. Litig.*, 2019 WL 6052399, at *5 (N.D. Ill. Nov. 15, 2019), *reconsideration denied*, 2020 WL 476658 (N.D. Ill. Jan. 28, 2020).

the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled

to lead plaintiff status.").

## B.      The Related Actions Should Be Consolidated

All of the movants before the Court, as well as Defendants, agree that the three related

actions pending in this District should be consolidated:[5]

| Case | Civil No. | Date Filed |
|---|---|---|
| *Service Lamp Corporation Profit Sharing Plan v. Carnival Corporation* | 1:20-cv-22202 | May 27, 2020 |
| *Elmensdorp v. Carnival Corporation* | 1:20-cv-22319 | June 3, 2020 |
| *Atachbarian v. Carnival Corporation* | 1:20-cv-23011 | July 21, 2020 |

Consolidation of the above-captioned actions is appropriate given that each action presents

virtually identical factual and legal issues in connection with claims under Sections 10(b) and 20(a)

of the Exchange Act against Carnival and its senior executives that are premised upon substantially

similar alleged misstatements, during overlapping class periods, concerning Defendants'

adherence to Carnival's health and safety protocols in the wake of the COVID-19 pandemic,

Carnival's role in facilitating the transmission of the virus, and the Company's violations of port-

of-call regulations.  In fact, the Court has already consolidated *Service Lamp* and *Elmensdorp*,

upon finding that the cases "have common questions of fact."  *Service Lamp*, ECF No. 10.  The

fact that *Elmensdorp* included a longer class period than that pled in *Service Lamp* did not preclude

consolidation.  Indeed, it is black-letter law that "[d]ifferences in causes of action, defendants, or

the class period do not render consolidation inappropriate" where, as here, "the cases present

sufficiently common questions of fact and law, and the differences do not outweigh the interests

---

[5]      *See* ECF Nos. 17, 18, 20, 21, 25; *see also* ECF No. 27 at 1-2 ("Here, consolidation is appropriate because the Consolidated Action and the *Atachbarian* Action contain substantially similar factual allegations and legal theories.").

of judicial economy served by consolidation." *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007). *Atachbarian* also involves the same common questions of fact and should similarly be consolidated with *Service Lamp* and *Elmensdorp*.

Notwithstanding these facts, Atachbarian—who failed to file a lead plaintiff motion by the July 27, 2020 statutory deadline—incorrectly claims that consolidation of *Atachbarian* with *Service Lamp* and *Elmensdorp* "would be inappropriate" given that "the *Service Lamp* Action is brought only on behalf of those who purchased or otherwise acquired the stock of Carnival" and "any [Carnival] share purchaser who is appointed as lead [plaintiff] during the current process before the Court cannot represent the options traders." ECF No. 19 at 1-2. Atachbarian's attempt to carve out a niche sub-class of Carnival options traders is premised on an incorrect reading of the *Service Lamp* complaint, is inconsistent with the PSLRA's procedural requirements, and would serve only to fracture the organized leadership of this litigation.

As an initial matter, contrary to Atachbarian's suggestion that the class pled in *Service Lamp* (and described in the accompanying notice to investors) is limited to purchasers of Carnival "stock," *see* ECF No. 19, the *Service Lamp* complaint (and accompanying notice) define the class as including investors "who purchased or otherwise acquired Carnival common stock ***and securities*.**" ECF No. 1 at ¶ 1 (emphasis added); *see also* ECF 23-6 (same). The term "securities" is broadly construed under the federal securities laws and unquestionably includes the claims asserted in *Atachbarian* on behalf of investors in call or put options on Carnival stock. *See* 15 U.S.C. § 78c(a)(10) (defining "security" to include "any put, call, straddle, option, or privilege on any security"); *Blue Chip Stamps*, 421 U.S. at 751 ("puts, calls, options, and other contractual rights or duties to purchase or sell securities" are "securities for purposes of Rule 10b-5"). Accordingly, investors who traded Carnival options are already members of the class defined in

11

*Service Lamp. See Hall v. Medicis Pharm. Corp.*, 2009 WL 648626, at *5 (D. Ariz. Mar. 11, 2009) (rejecting argument that class of "securities" purchasers did not include options investors); *In re Orbital Scis. Corp. Sec. Litig.*, 188 F.R.D. 237, 240 (E.D. Va. 1999) ("Even if the shareholders and the optionholders are not identically situated in every respect, they share a mutual interest in having the Court resolve these questions about whether the Defendants made any misstatements or omissions, whether they did so with scienter, and whether the price of [the defendant's] common stock became artificially inflated as a result. . . . The efficiency of resolving these and other questions at once in a single proceeding is beyond serious debate.").[6]

Atachbarian's claim that separate representation for options traders is necessary also "would contravene the main purpose of having a lead plaintiff—namely, to empower one or several investors with a major stake in the litigation to exercise control over the litigation as a whole." *Hevesi*, 366 F.3d at 82 n.13. As such, the appointment of niche lead plaintiffs to represent separate subclasses "would only serve to fracture the leadership and drive up attorneys fees." *Glauser v. EVCI Career Colls. Holding Corp.*, 236 F.R.D. 184, 189 (S.D.N.Y. 2006) (refusing to appoint niche lead plaintiffs). Moreover, given that "the PSLRA mandates that courts must choose a party who has, among other things, the largest financial stake in the outcome of the case, it is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim." *Hevesi*, 366 F.3d at 82.

---

[6] To the extent that Atachbarian is claiming that the *Service Lamp* class definition specifically excludes options *sellers*, that argument does not support the creation of a distinct class or subclass at the lead plaintiff stage. *See, e.g.*, *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, 2018 WL 5849466, at *6 (D.N.J. Nov. 7, 2018) (consolidating claims brought on behalf of options traders and declining to appoint a separate lead plaintiff, where options traders argued that sellers of put options were not encompassed in the alleged class of securities purchasers, because the existing class definition was merely "putative" and "may expand").

Consistent with the PSLRA's statutory framework, courts routinely hold that options traders do not require—and are not entitled to—representation by separate or additional lead plaintiffs. *See, e.g.*, *Kabak*, 2020 WL 3056281, at *3 (appointing equity investor as lead plaintiff for entire class and rejecting options trader's "unavailing" arguments for appointment as an additional lead plaintiff and explaining that the "expressed concern with a lead plaintiff's standing with respect to the claims of each and every class member does not override the PSLRA's statutory scheme calling for the appointment of one lead plaintiff to exercise overall control of the litigation"); *In re Bank of Am. Corp. Sec., Derivative & Emp't Ret. Income Sec. Act (ERISA) Litig.,* 2010 WL 1438980, at *2 (S.D.N.Y. Apr. 9, 2010) (consolidating actions and denying option investor's motion to represent a separate options class); *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 541 (S.D.N.Y. 2015) (concluding that options traders did not merit a subclass); *Fishbury, Ltd. v. Connetics Corp.*, 2006 WL 3711566, at *4 (S.D.N.Y. Dec. 14, 2006) (refusing to appoint options trader as a co-lead plaintiff and rejecting purported conflicts between "stock-option purchasers" as "mere speculation about future standing or class-certification issues").

The analysis in *Hedick v. Kraft Heinz Co.*, 2019 WL 4958238 (N.D. Ill. Oct. 8, 2019), is directly on point. In *Hedick*, a derivatives trader (transacting in put and call options, and futures contracts) argued—much like Atachbarian does here—that: (1) an action asserting claims on behalf of derivatives investors should not be consolidated with similar actions asserting claims on behalf of stock and bond purchasers; and (2) the derivatives class required a separate lead plaintiff because "any other movant with claims based on common stock purchasers . . . cannot adequately represent class members with claims based on investments in the derivatives market." *Id.* at *3, 9. In consolidating the derivatives action with the stock and bond actions, the court concluded that the complaints "are based on the same challenged conduct and there are common questions of law

and fact," and noted that "no party has identified any prejudice that would result from consolidating these actions." *Id.* at *3. Likewise, the court refused to appoint a separate lead plaintiff to represent derivatives investors and explained that "any conflict of interest [between investor classes] remains speculative and therefore does not justify separate representation." *Id.* at *9.[7]

A similar result was reached by the court in *Valeant*, 2018 WL 5849466. There, a derivatives trader (purchasing call options and selling put options) argued that consolidation of stock and derivatives actions was not appropriate, and a separate lead plaintiff was necessary to represent derivatives investors, because the "Lead Plaintiff [who purchased common stock] and its counsel will not protect the interests of derivatives traders due to potentially conflicting positions regarding, among other things, the allocation of any recovery." *Id.* at *2. In rejecting these arguments, the court found that the derivatives trader "ha[d] not sufficiently established that the prejudice, if any, that would result from consolidation is not outweighed by the efficiencies and cost savings of consolidation." *Id.* at *5. Further, the court concluded that separate representation was not needed to prevent conflicts between the classes because the "putative class of [derivatives] traders and the Lead Plaintiff's putative class [of stock purchasers] have stated similar claims and any recovery available to one group does not necessarily diminish the recovery available to the other." *Id.* at *7.

---

[7]     To the extent that any differences between class members' investments ultimately require additional representation in the course of litigation, a lead plaintiff may rely on named plaintiffs (rather than requiring a co-lead plaintiff or separate lead plaintiff at the outset of the case). *See, e.g.*, *Hevesi*, 366 F.3d at 83 ("the PSLRA does not in any way prohibit the addition of named plaintiffs to aid the lead plaintiff in representing a class"); *In re Bank of Am. Corp. Sec., Derivative, & Emp't Ret. Income Sec. Act (ERISA) Litig.*, 2012 WL 1308993, at *2 (S.D.N.Y. Apr. 16, 2012) ("the PSLRA vests lead plaintiffs with control over the litigation as a whole, including authority to name additional class plaintiffs to resolve standing concerns").

Accordingly, consolidation of *Atachbarian* with *Service Lamp* and *Elmensdorp* is appropriate and the Court should appoint New England Carpenters and Massachusetts Laborers as the sole Lead Plaintiff for the consolidated action. *See, e.g.*, *Hedick*, 2019 WL 4958238, at *3; *Kabak*, 2020 WL 3056281, at *3.

### C.     Atachbarian's "Notice" Should Be Vacated

For these same reasons, the Court should also vacate the "notice" published by Atachbarian's counsel, *see* ECF No. 23-8, purportedly setting a separate September 21, 2020 lead plaintiff deadline for Carnival options traders. As discussed above, Carnival options traders were already given notice—in connection with the first-filed *Service Lamp* notice—that investors in Carnival *securities* had until July 27, 2020 to seek appointment as lead plaintiff. *See* ECF No. 23-6 ("If you are a shareholder who purchased Carnival *securities* during the class period, you have until July 27, 2020, to ask the Court to appoint you as Lead Plaintiff for the class.") (emphasis added). This deadline is absolute and cannot be altered. *See, e.g.*, *Adeptus*, 2017 WL 3780164, at *3 ("[C]ompliance with the procedural requirements of the PSLRA is mandatory and should be strictly enforced."); *Miller*, 2008 WL 2465286, at *5 ("[T]he sixty (60) day filing deadline is a hard-and-fast rule with no room for subsequent supplementation or modification.").

Plaintiffs cannot skirt the strict procedural requirements of the PSLRA and trigger an entirely new (or extended) lead plaintiff process simply by filing a new complaint on behalf of a subset of an existing class. *See, e.g.*, *Adeptus Health Inc.*, 2017 WL 3780164, at *3 (explaining that where "potential plaintiffs in the [proposed new class] had adequate notice to file a motion for appointment as lead plaintiff" in connection with the initial action, "the appropriate time to respond was sixty days from the notice being published in the [initial] action"); *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 503 (S.D. Fla. 2003) ("It is widely recognized that the intent of the PSLRA

15

is to have the 'most adequate lead plaintiffs' appointed as soon as practicable in the litigation, and that filing of subsequent actions alleging different class periods [does] not require publication of new notice or start a new 60-day period for the filing of motions to appoint lead plaintiff or lead counsel.") (citation and internal quotation marks omitted); *Lax v. First Merchs. Acceptance Corp.*, 1997 WL 461036, at *4 (N.D. Ill. Aug. 11, 1997) (explaining that "appointment of lead counsel could be delayed indefinitely if new complaints" and notices restarted the lead plaintiff process, and that a rule to the contrary "would clearly thwart the intent of the PSLRA, which was meant to have lead plaintiffs appointed as soon as practicable"). Here, there was ample notice to all Carnival investors about their ability to seek appointment by the July 27, 2020 deadline. Accordingly, allowing a new round of lead plaintiff motions based on Atachbarian's "notice" would contravene the PSLRA's statutory lead plaintiff appointment process and subvert the PSLRA's aim of centralizing authority to direct the litigation in the court-appointed lead plaintiff.

## CONCLUSION

For the reasons stated herein, New England Carpenters and Massachusetts Laborers respectfully request that the Court: (1) appoint them as Lead Plaintiff, (2) approve their selection of Bernstein Litowitz and Kessler Topaz as Lead Counsel for the Class and Carella Byrne as Liaison Counsel for the Class, (3) consolidate all related securities class actions pursuant to Rule 42(a); and (4) vacate the PSLRA "notice" published in the *Atachbarian* action.

Dated: August 10, 2020

Respectfully submitted,

*/s/ Zachary S. Bower*
ZACHARY S. BOWER
Florida Bar No. 17506
**CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.**
Security Building
117 NE 1st Avenue

16

Miami, FL 33132-2125
zbower@carellabyrne.com
Tel: (973) 994-1700
Fax: (973) 994-1744

*Local Counsel for Proposed Lead Plaintiff New England Carpenters and Massachusetts Laborers*

Hannah Ross
Avi Josefson
Michael D. Blatchley
**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444
hannah@blbglaw.com
avi@blbglaw.com
michaelb@blbglaw.com

*Counsel for Proposed Lead Plaintiff New England Carpenters and Massachusetts Laborers and Proposed Lead Counsel for the Class*

Naumon A. Amjed
Darren J. Check
Ryan T. Degnan
**KESSLER TOPAZ MELTZER
  & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
namjed@ktmc.com
dcheck@ktmc.com
rdegnan@ktmc.com
Tel: (610) 667-7706
Fax: (610) 667-7056

*Counsel for Proposed Lead Plaintiff Massachusetts Laborers and Proposed Lead Counsel for the Class*

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 10, 2020, I caused a true and correct copy of the foregoing to be filed with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

/s/ Zachary S. Bower
ZACHARY S. BOWER
Florida Bar No. 17506