## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IN RE CARNIVAL CORP. SECURITIES LITIGATION | Case No. 1:20-cv-22202-KMM <br><br> <u>CLASS ACTION</u> |
| ABRAHAM ATACHBARIAN, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> CARNIVAL CORPORATION, CARNIVAL PLC, ARNOLD W. DONALD, DAVID BERNSTEIN, and MICKY ARISON, <br><br> Defendants. | Case No. 1:20-cv-23011-RNS <br><br> <u>CLASS ACTION</u> |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF THE NEW ENGLAND CARPENTERS PENSION AND GUARANTEED ANNUITY FUNDS AND THE MASSACHUSETTS LABORERS' PENSION AND ANNUITY FUNDS FOR APPOINTMENT AS LEAD PLAINTIFF AND IN OPPOSITION TO <u>COMPETING MOTIONS</u>**

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................1

ARGUMENT ..........................................................................................................................3

      A.     The McCarrolls Have Failed to Rebut New England Carpenters
           and Massachusetts Laborers' Presumptive Lead Plaintiff Status ...........................3

            1.     New England Carpenters and Massachusetts Laborers' Trading Pattern
                  Does Not Render Them Atypical or Inadequate........................................4

            2.     New England Carpenters and Massachusetts Laborers Are Not Subject
                  to a Unique Defense...................................................................................6

      B.     The McCarrolls' Request for a Co-Lead Plaintiff Role Should Be
           Rejected....................................................................................................................8

      C.     Atachbarian's Request for Separate Leadership Is Contrary to the
           PSLRA .....................................................................................................................8

CONCLUSION.......................................................................................................................10

i

## TABLE OF AUTHORITIES

CASES                                                                                            PAGE(S)

*In re Am. Italian Pasta Co. Sec. Litig.*,
  2007 WL 927745 (W.D. Mo. Mar. 26, 2007)...............................................................9

*Basile v. Valeant Pharm. Int'l, Inc.*,
  2015 WL 13652714 (C.D. Cal. May 5, 2015) ...........................................................8

*In re BP, PLC Sec. Litig.*,
  758 F. Supp. 2d 428 (S.D. Tex. 2010) ....................................................................6

*In re Catalina Mkt'g Corp. Sec. Litig.*,
  225 F.R.D. 684 (M.D. Fla. 2003).............................................................................4

*Chill v. Green Tree Fin. Corp.*,
  181 F.R.D. 398 (D. Minn. 1998)............................................................................10

*Christian v. BT Grp., PLC*,
  2017 WL 3705804 (D.N.J. Aug. 28, 2017) ............................................................5

*In re Cloudera, Inc. Sec. Litig.*,
  2020 WL 1288362 (N.D. Cal. Mar. 18, 2020).......................................................10

*Constr. Workers Pension Trust Fund v. Navistar Int'l Corp.*,
  2013 WL 3934243 (N.D. Ill. July 30, 2013)............................................................5

*Doshi v. Gen. Cable*,
  2017 WL 5178673 (E.D. Ky. Nov. 7, 2017)............................................................6

*Einhorn v. Axogen, Inc.*,
  2019 WL 5636382 (M.D. Fla. Apr. 30, 2019)......................................................3, 8

*In re Facebook, Inc., IPO Sec. & Deriv. Litig.*,
  2013 WL 4399215 (S.D.N.Y. Aug. 13, 2013).......................................................10

*Firefighters Pension & Relief Fund of City of New Orleans v. Bulmahn*,
  2013 WL 6388583 (E.D. La. Dec. 6, 2013).............................................................6

*Freeland v. Iridium World Commc'ns, Ltd.*,
  233 F.R.D. 40 (D.D.C. 2006)...................................................................................5

*Freudenberg v. E*Trade Fin. Corp.*,
  2008 WL 2876373 (S.D.N.Y. July 16, 2008) ..........................................................5

*In re Gaming Lottery Sec. Litig.*,
  58 F. Supp. 2d 62 (S.D.N.Y. 1999) .........................................................................5

ii

*Glauser v. EVCI Career Colls. Holding Corp.*,
  236 F.R.D. 184 (S.D.N.Y. 2006) ...................................................................................8

*Grodko v. Cent. European Distribution Corp.*,
  2012 WL 6595931 (D.N.J. Dec. 17, 2012).....................................................................7

*Hedick v. Kraft Heinz Co.*,
  2019 WL 4958238 (N.D. Ill. Oct. 8, 2019).....................................................................9

*Hevesi v. Citigroup Inc.*
  366 F.3d 70 (2d Cir. 2004)..............................................................................................9

*Kabak v. Becton, Dickinson & Co.*,
  2020 WL 3056281 (D.N.J. June 9, 2020) .......................................................................9

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
  947 F. Supp. 2d 366 (S.D.N.Y. 2013)...........................................................................10

*Kornfield v. Opteum Inc.*,
  2008 WL 11408525 (S.D. Fla. Sept. 29, 2008) ..............................................................7

*Luczak v. Nat'l Beverage Corp.*,
  400 F. Supp. 3d 1318 (S.D. Fla. 2019) ...........................................................................7

*Luczak v. Nat'l Beverage Corp.*,
  812 F. App'x 915 (11th Cir. 2020) ..............................................................................4, 7

*Maliarov v. Eros Int'l. PLC*,
  2016 WL 1367246 (S.D.N.Y. Apr. 5, 2016)....................................................................7

*Montoya v. Mamma.com Inc.*,
  2005 WL 1278097 (S.D.N.Y. May 31, 2005) ..............................................................4, 7

*In re Mun. Mortg. & Equity, LLC, Sec. & Derivative Litig.*,
  2008 WL 11363375 (D. Md. Aug. 27, 2008) ..................................................................6

*Newman v. Eagle Bldg. Techs.*,
  209 F.R.D. 499 (S.D. Fla. 2002).....................................................................................4

*Sgarlata v. PayPal Holdings, Inc.*,
  2018 WL 1569831 (N.D. Cal. Mar. 30. 2018)...............................................................10

*In re Snap Inc. Sec. Litig.*,
  2019 WL 2223800 (C.D. Cal. Apr. 1, 2019) ...................................................................6

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*,
  2005 WL 1322721 (S.D.N.Y. June 1, 2005) .................................................................10

iii

*Thorpe v. Walter Inv. Mgmt., Corp.*,
2016 WL 4006661 (S.D. Fla. Mar. 16, 2016)..................................................................2, 4, 7

*United Union of Roofers, Waterproofers & Allied Workers Local Union No. 8 v.
Ocwen Fin. Corp.*,
2014 WL 7236985 (S.D. Fla. Nov. 7, 2014)..........................................................................7

*In re Valeant Pharm. Int'l, Inc. Sec. Litig.*,
2018 WL 5849466 (D.N.J. Nov. 7, 2018) ..............................................................................9

*Vanleeuwen v. Keyuan Petrochemicals, Inc.*,
2013 WL 2247394 (C.D. Cal. May 9, 2013) ........................................................................10

*Waldman v. Wachovia Corp.*,
2009 WL 2950362 (S.D.N.Y. Sept. 14, 2009).......................................................................10

*Weiss v. Friedman, Billings, Ramsey Grp., Inc.*,
2006 WL 197036 (S.D.N.Y. Jan. 25, 2006) ...................................................................2, 4, 7

**STATUTES**

15 U.S.C. § 78u-4(a)(3)(B)(ii) .........................................................................................9

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ....................................................................................1

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).....................................................................................7

**OTHER AUTHORITIES**

Investopedia, *Security Definition*,
https://www.investopedia.com/terms/s/security.asp................................................................10

New England Carpenters and Massachusetts Laborers respectfully submit this reply in support of their motion for appointment as Lead Plaintiff (ECF No. 23) and in opposition to the sole remaining competing motion filed by Roy and Joan McCarroll ("McCarrolls") (ECF No. 25).[1]

## PRELIMINARY STATEMENT

The PSLRA provides a straightforward and sequential process establishing a strong presumption that the Lead Plaintiff is the movant with the "largest financial interest" that makes a *prima facie* showing of typicality and adequacy under Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The PSLRA was specifically designed to prevent the Court from being drawn into a subjective comparison of competing movants who claim to be well-suited to represent the class and instead provides that the presumption can only be rebutted with "***proof***" of inadequacy or atypicality. *Id.*

Here, New England Carpenters and Massachusetts Laborers are the presumptive Lead Plaintiff by virtue of their losses of over $5.6 million—by far, the largest losses of any movant. New England Carpenters and Massachusetts Laborers also readily satisfy the typicality and adequacy requirements of Rule 23. *See, e.g.*, ECF No. 23-5. As sophisticated institutional investors with experience prosecuting securities fraud class actions, they are the paradigmatic Lead Plaintiff Congress envisioned in enacting the PSLRA. The only remaining competing movant— two individual investors, the McCarrolls—concede that New England Carpenters and Massachusetts Laborers have the largest financial interest. *See* ECF No. 31 at 2. New England Carpenters and Massachusetts Laborers are, therefore, the presumptive Lead Plaintiff.

Unable to contest New England Carpenters and Massachusetts Laborers' financial interest

---

[1] Unless noted, all references to "ECF No. __" are to *Service Lamp*, all terms are defined in New England Carpenters and Massachusetts Laborers' opening brief (ECF No. 23-1), and all internal citations are omitted and emphasis is added. Each of the other competing movants either withdrew their motions or otherwise do not oppose New England Carpenters and Massachusetts Laborers.

and qualifications as the very kind of institutional investors encouraged to serve as Lead Plaintiff under the PSLRA, the McCarrolls raise two baseless arguments in an effort to insert themselves and their counsel into the leadership of this case.  Those arguments are meritless.

First, the McCarrolls contend that because New England Carpenters and Massachusetts Laborers held their Carnival shares through some, but not all, of the alleged corrective disclosures, they are inadequate or atypical of the class.  This is wrong.  As courts in this Circuit and across the country have routinely held, the fact that an investor sells shares after a partial corrective disclosure—but before the end of the class period—demonstrates loss causation, and does not impact adequacy or typicality at all.  *See, e.g.*, *Thorpe v. Walter Inv. Mgmt., Corp.*, 2016 WL 4006661, at *10 (S.D. Fla. Mar. 16, 2016) (selling all shares prior to final disclosure does "not create 'economic interests and objectives'" different from other class members).

Second, the McCarrolls argue that New England Carpenters and Massachusetts Laborers' trading pattern subjects them to a "unique defense" because they lack standing to challenge false statements made after their final sales.  This too is wrong, and courts have repeatedly rejected this precise standing challenge.  *See, e.g.*, *Thorpe,* 2016 WL 4006661, at *7-8 & n.5.  In fact, three of the six movants that sought Lead Plaintiff appointment sold their shares before the end of the Class Period—demonstrating that New England Carpenters and Massachusetts Laborers are just like other members of the class and could hardly be considered "unique."  *See Weiss v. Friedman, Billings, Ramsey Grp., Inc.*, 2006 WL 197036, at *5 (S.D.N.Y. Jan. 25, 2006) ("a defense surely cannot be described as unique" where "three out of the seven movants currently before the court sold all their shares before the end of the class period").

The McCarrolls neither attempt to distinguish this overwhelming case law, nor contend the earlier partial disclosures that caused the class to suffer billions of dollars in losses are implausible

or illegitimate.   Instead, the McCarrolls claim—without basis—that the April 16 and May 1 disclosures revealed information that was somehow more significant than the earlier disclosures. This argument is incorrect, as each of the partial disclosures were undeniably related corrective events concerning the same fraud.

Not only is the McCarrolls' speculation about New England Carpenters and Massachusetts Laborers' desire to litigate the later disclosures not "proof" of inadequacy, it is contradicted by sworn evidence demonstrating that these two funds will "ensure that the Carnival securities litigation will be vigorously prosecuted" and will "seek to obtain the greatest possible recovery for the class."  ECF No. 23-5 at ¶7.  Conceding this reality, the McCarrolls argue in the alternative that they should be appointed as "Co-Lead Plaintiffs"—a last-ditch request that is contrary to the McCarrolls' initial motion (which sought their sole appointment) and is fundamentally at odds with the PSLRA.  *See Einhorn v. Axogen, Inc.*, 2019 WL 5636382, at *3 (M.D. Fla. Apr. 30, 2019).

Separately, Atachbarian's opposition to consolidation and effort to create a separate "niche" case and leadership structure for options investors—whose claims are already included in this case—should be rejected as fundamentally inconsistent with the PSLRA and the overwhelming case law rejecting such requests to splinter the leadership of securities class actions.

## ARGUMENT

### A.    The McCarrolls Have Failed to Rebut New England Carpenters and Massachusetts Laborers' Presumptive Lead Plaintiff Status

To rebut the statutorily mandated presumption in favor of New England Carpenters and Massachusetts Laborers, the McCarrolls must offer "proof," not mere speculation, establishing that New England Carpenters and Massachusetts Laborers "will not fairly and adequately protect the interests of the class."  *Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 502 (S.D. Fla. 2002). The McCarrolls have not and cannot do so.

**1. New England Carpenters and Massachusetts Laborers' Trading Pattern Does Not Render Them Atypical or Inadequate**

Rather than offer any "proof," the McCarrolls rely on conjecture and inapposite out-of-circuit case law to wrongly claim that New England Carpenters and Massachusetts Laborers are atypical and inadequate because they sold all of their Carnival shares *after* several partial corrective disclosures but before the end of the Class Period. But courts in this Circuit and across the country have rejected this very argument. For example, at the class certification stage, Judge Ungaro rejected a nearly identical argument from defendants in certifying investors—like New England Carpenters and Massachusetts Laborers here—who sold their shares prior to the final corrective disclosure. There, as here, such a trading pattern was irrelevant to adequacy because the "divestiture of their interests . . . prior to the second alleged corrective disclosure does not create 'economic interests and objectives' that 'differ significantly from the economic interests and objectives of the unnamed class members.'" *Thorpe*, 2016 WL 4006661, at *10. This is because loss causation can be alleged through "a series of partial disclosures," and an investor who retains shares through a partial disclosure can clearly satisfy this element. *See Luczak v. Nat'l Beverage Corp.*, 812 F. App'x 915, 921 (11th Cir. 2020); *see also In re Catalina Mkt'g Corp. Sec. Litig.*, 225 F.R.D. 684, 687 (M.D. Fla. 2003) (that movants sold "prior to the time the alleged fraud was fully disclosed does not indicate an absence of loss causation and does not pose an obstacle").

Courts nationwide are in accord, and have similarly rejected the notion that selling shares after some but not all of the corrective disclosures somehow means a movant is unfit to represent an investor class. *See, e.g.*, *Weiss*, 2006 WL 197036, at *5 (holding presumptive lead plaintiff was "not unable to prove loss causation simply because all of its shares were sold before the end of the Class Period" since the "case involve[d] partial disclosures"); *Montoya v. Mamma.com Inc.*, 2005 WL 1278097, at *2 (S.D.N.Y. May 31, 2005) (appointing movant who sold out of the stock before

4

the end of the class period because it sold a substantial portion of shares after a partial corrective disclosure and "therefore, can allege that the 'subject of the fraudulent statement or omissions was the cause of the actual loss suffered").[2]

While failing to acknowledge the law in this Circuit, the McCarrolls seemingly suggest this case is unique by arguing that the later April 16 and May 1 corrective disclosures are "significantly different" than earlier partial disclosures. ECF No. 31 at 6. But this is not true. The McCarrolls neither challenge the propriety of the earlier disclosures, nor do they argue these disclosures revealed aspects of a separate fraud. Instead, the McCarrolls, based solely on their own say-so, contend only that those disclosures were somehow less important. However, this argument is contradicted by the fact that the early partial disclosures caused Carnival's stock to decline over 35% and wiped out over $4.3 billion in market value. As such, this case is like those that have rejected this very argument, as it presents "a fairly straightforward (and not atypical) case of progressive revelation of a problem that turned out to be more serious than first believed." *BT Grp.*, 2017 WL 3705804, at *8 (appointing institution that sold after initial 2.4% disclosure).

Indeed, the out-of-circuit cases the McCarrolls cite only show why their argument fails. For example, in *Construction Workers Pension Trust Fund v. Navistar International Corp.*, 2013 WL 3934243, *4 (N.D. Ill. July 30, 2013), the court appointed the movant with the largest loss under LIFO—like New England Carpenters and Massachusetts Laborers here—but noted that the

---

[2] *See also, e.g.*, *Freeland v. Iridium World Commc'ns, Ltd.*, 233 F.R.D. 40, 48-49 (D.D.C. 2006) (fact that class representative sold shares before the end of the class period did not render him inadequate); *Freudenberg v. E*Trade Fin. Corp.*, 2008 WL 2876373, at *7 (S.D.N.Y. July 16, 2008) (sale of securities prior to the end of the class period did not render movant inadequate or atypical); *In re Gaming Lottery Sec. Litig.*, 58 F. Supp. 2d 62, 69-71 (S.D.N.Y. 1999) (rejecting argument that sales before the end of the class period rendered class representative inadequate); *Christian v. BT Grp., PLC*, 2017 WL 3705804, at *8 (D.N.J. Aug. 28, 2017) (institution that sold out prior to final corrective disclosure was not "subject to a unique loss causation defense").

movant with a smaller financial interest sold all of its shares after the first, least significant, and "most innocuous of the three disclosures." Similarly, in *Doshi v. General Cable*, 2017 WL 5178673, at *3 (E.D. Ky. Nov. 7, 2017), the court rejected a movant that was a "net gainer" who sold out sixteen months before the end of the class period after a relatively nominal 4.68% decline. New England Carpenters and Massachusetts Laborers are not net gainers, but held their Carnival shares through several massive corrective disclosures that erased 35% of the Company's market value, and suffered a $5.6 million loss that is over eight times greater than the McCarrolls' loss.[3]

**2.      New England Carpenters and Massachusetts Laborers Are Not Subject to a Unique Defense**

The McCarrolls next argue that New England Carpenters and Massachusetts Laborers are subject to a unique defense because they supposedly lack standing to assert claims based on misstatements made after their sales. This argument also has been repeatedly rejected in this Circuit and around the country. In fact, three of the six movants who filed motions seeking appointment here sold all their Carnival shares before the end of the Class Period. This is direct proof that New England Carpenters and Massachusetts Laborers are not subject to any "unique" defense—they are typical of the class. As one court explained, "a defense surely cannot be described as unique" where "three out of the seven movants currently before the court sold all their shares before the end of the class period"—*i.e.,* the fact pattern here. *Weiss*, 2006 WL 197036, at

---

[3] The remaining cases the McCarrolls cite are similarly inapposite. *See In re Snap Inc. Sec. Litig.*, 2019 WL 2223800, *2-4 (C.D. Cal. Apr. 1, 2019) (rejecting one movant that ***purchased*** (not sold) the overwhelming majority of its shares, and another that lacked statutory standing under New Mexico law that purchased a substantial portion of its shares, after partial disclosures); *In re Mun. Mortg. & Equity, LLC, Sec. & Derivative Litig.*, 2008 WL 11363375, at *4 (D. Md. Aug. 27, 2008) (disqualifying proposed lead plaintiff group because most of the "losses were suffered ***before any alleged corrective disclosure***"); *In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 438 (S.D. Tex. 2010) (appointing individual plaintiffs as lead plaintiff for a subclass of investors because, unlike here, the related actions involved "divergent theories"); *Firefighters Pension & Relief Fund of City of New Orleans v. Bulmahn*, 2013 WL 6388583, at *2 (E.D. La. Dec. 6, 2013) (same).

*5 (rejecting argument that presumptive lead plaintiff was subject to unique defense); *see also Montoya*, 2005 WL 1278097, at *2 (appointing lead plaintiff group and rejecting unique defense argument where six of the nineteen movants sold their shares prior to the end of the class period).

In any event, "there is no rule in this Circuit that requires the Lead Plaintiff to have standing on every class issue," and there is no basis to create new law here. *Kornfield v. Opteum Inc.*, 2008 WL 11408525, at *5-6 (S.D. Fla. Sept. 29, 2008); *see also Thorpe*, 2016 WL 4006661, at *7 n.5 (S.D. Fla. Mar. 16, 2016) (despite selling shares prior to final corrective disclosure, plaintiffs "clearly" had standing); *Luczak v. Nat'l Beverage Corp.,* 400 F. Supp. 3d 1318, 1325 (S.D. Fla. 2019) (rejecting argument that plaintiff selling shares before the final corrective disclosure lacked standing), *rev'd on other grounds*, 812 F. App'x 915 (11th Cir. 2020).[4]

At bottom, the McCarrolls' argument that New England Carpenters and Massachusetts Laborers will not vigorously represent the interests of class members who held shares through the final corrective disclosure is based on pure conjecture—not "proof," as required by the PSLRA. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also United Union of Roofers, Waterproofers & Allied Workers Local Union No. 8 v. Ocwen Fin. Corp.*, 2014 WL 7236985, at *3 (S.D. Fla. Nov. 7, 2014) (rejecting arguments "not grounded in evidence"). The evidence demonstrates the

---

[4] The inapposite out-of-circuit cases the McCarrolls cite only demonstrate why their argument fails here. For example, in *Grodko v. Cent. European Distribution Corp.*, 2012 WL 6595931, at *8 (D.N.J. Dec. 17, 2012), the court disqualified movants who sold their shares nine months before the earliest disclosure at issue, and which was related to an entirely separate and distinct fraud occurring at the same company. Unlike in *Grodko*, New England Carpenters and Massachusetts Laborers held their shares through several partial corrective disclosures that even the McCarrolls concede revealed the truth about Carnival's safety practices. Similarly, in *Maliarov v. Eros Int'l PLC*, 2016 WL 1367246, at *4 (S.D.N.Y. Apr. 5, 2016), the court rejected a movant who sold his stock prior to any alleged corrective disclosure and instead urged the court to credit a "leakage" theory of loss causation that was *only* asserted in a complaint filed by that movant on the lead plaintiff deadline. There is no similar "gamesmanship" here, as New England Carpenters and Massachusetts Laborers held their shares through multiple disclosures identified as critical by the competing movant that initially asserted the second largest loss. *See* ECF No. 21 at 5-6.

opposite—as New England Carpenters and Massachusetts Laborers have submitted a sworn declaration stating their commitment to "ensure that the Carnival securities litigation will be vigorously prosecuted" and "obtain the greatest possible recovery for the class."  ECF No. 23-5 at ¶7.  The McCarrolls' baseless speculation to the contrary should be rejected.

**B.       The McCarrolls' Request for a Co-Lead Plaintiff Role Should Be Rejected**

Recognizing their arguments lack merit, the McCarrolls argue they should be forcibly paired with  New England Carpenters and Massachusetts Laborers as "Co-Lead Plaintiffs."  ECF No. 31 at 12.  But this request also ignores the overwhelming case law holding that the forced marriage of co-lead plaintiffs runs contrary to the PSLRA's primary goal of ensuring that investors—not their counsel—control the litigation.  *See, e.g.*, *Einhorn*, 2019 WL 5636382, at *3 ("request to be appointed as co-lead plaintiff is belied by policy considerations regarding control over and cost" of securities litigation); *Glauser v. EVCI Career Colls. Holding Corp.*, 236 F.R.D. 184, 189-90 (S.D.N.Y. 2006).  The McCarrolls' request should be rejected here as well.[5]  *See Basile v. Valeant Pharm. Int'l, Inc.*, 2015 WL 13652714, at *2 (C.D. Cal. May 5, 2015) (appointing two institutional investors as lead plaintiff but rejecting request to force a co-lead plaintiff marriage).

**C.       Atachbarian's Request for Separate Leadership Is Contrary to the PSLRA**

While he ostensibly opposes consolidation, Atachbarian concedes that the above-captioned actions "should at some point be consolidated."  ECF 30 at 9 n.6.  Nevertheless, Atachbarian

---

[5] The McCarrolls misleadingly suggest that New England Carpenters and Massachusetts Laborers did not engage the McCarrolls' counsel when, in fact, the McCarrolls offered no specifics of how they could possibly "assist" in the prosecution of this case, and failed to do so in their opposition. New England Carpenters and Massachusetts Laborers' proposed lead and liaison counsel have prosecuted several of the largest class actions litigated under the federal securities laws, including in this District.  *See generally* ECF No. 23-1 at 14-17 (listing experience).

attempts to manufacture a role for himself and his counsel by claiming that a separate lead plaintiff should represent options investors, and that consolidation should "be delayed until a lead is appointed on behalf of the Options Class." *Id*. This request is meritless, contrary to the PSLRA, and opposed by every other party before the Court. *See* ECF Nos. 27; 31 at 1 n.1; 32 at 10-14.

The PSLRA explicitly states that where there is more than one case asserting "substantially the same claim," "the court shall not [appoint a lead plaintiff] until after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii). Atachbarian cites nothing to suggest the PSLRA's requirements can be ignored to accommodate his desire to pursue a niche case.

More importantly, there is no requirement that a lead plaintiff purchase every security at issue in a litigation. *See* ECF No. 32 at 10-16. As explained by the Second Circuit in *Hevesi v. Citigroup Inc.*, "any requirement that a different lead plaintiff be appointed to bring every single available claim would contravene the main purpose of having a lead plaintiff—namely, to empower one or several investors with a major stake in the litigation to exercise control over the litigation as a whole." 366 F.3d 70, 82 n.13 (2d Cir. 2004). Consistent with the PSLRA, courts have consistently rejected option investors' requests for separate leadership,[6] and Atachbarian cites no authority suggesting a separate options lead plaintiff is appropriate here.[7]

---

[6] *See, e.g.*, *Kabak v. Becton, Dickinson & Co.*, 2020 WL 3056281, at *3 (D.N.J. June 9, 2020) (concluding that "fragmented" request for appointment of separate options lead plaintiff "finds no support in the PSLRA"); *Hedick v. Kraft Heinz Co.*, 2019 WL 4958238, at *9 (N.D. Ill. Oct. 8, 2019) ("any conflict of interest [between investor classes] remains speculative and therefore does not justify separate representation"); *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, 2018 WL 5849466, at *6 (D.N.J. Nov. 7, 2018) (declining to appoint a separate options lead plaintiff).

[7] Atachbarian's reliance on *In re Allergan, Inc. Proxy Violation Derivatives Litig.*, No. 2:17-cv-04776 (C.D. Cal. Oct. 13, 2017), ECF No. 30-1, is misplaced because this case, unlike *Allergan*, is not an insider trading action where damages are capped at the amount of defendants' profits. *See Valeant*, 2018 WL 5849466, at *8 (distinguishing *Allergan*). Similarly, *In re Am. Italian Pasta Co. Sec. Litig.*, 2007 WL 927745 (W.D. Mo. Mar. 26, 2007), is inapposite because it involved the standing of class representatives—not the appointment of a lead plaintiff. *Cf. Hevesi*, 366 F.3d 70, 82 n.13. Likewise, *Wallerstein v. Netflix, Inc.*, No. 5:19-cv-04195-LHK (N.D. Cal. Jan. 31,

Recognizing there is no support for his request, Atachbarian changes course and argues that a separate lead plaintiff process is necessary because the *Service Lamp* notice covering "securities" did not sufficiently alert options investors to the opportunity to seek appointment as lead plaintiff. *See* ECF No. 30 at 5-9. This is wrong. Atachbarian's assertion that investors would not understand the *Service Lamp* notice's use of "securities" to include options is not credible.[8] Indeed, Atachbarian does not cite a single case in which a court held that a notice identifying "securities" was insufficient to alert options investors to the pendency of litigation.[9] Atachbarian's request for separate leadership should be denied.[10]

## CONCLUSION

New England Carpenters and Massachusetts Laborers respectfully request that the Court grant their motion in full.

---

2020), ECF No. 30-1, is irrelevant given that it is a stipulation between movants, while the 22 year-old, pre-*Hevesi* decision in *Chill v. Green Tree Financial Corp.*, 181 F.R.D. 398 (D. Minn. 1998), turned on the then-unsettled question about whether options traders had standing.

[8] *See, e.g.*, Investopedia, *Security Definition*, https://www.investopedia.com/terms/s/security.asp (explaining that the term "security" includes stock, bonds, and options).

[9] To the contrary, unlike here, Atachbarian's cases address the situation where distinct legal claims or securities were ***not included*** in the initial notices. *See Vanleeuwen v. Keyuan Petrochemicals, Inc.*, 2013 WL 2247394, at *5 (C.D. Cal. May 9, 2013) (amended complaint involved "entirely different factual scenario" and expanded class to include purchasers in private offering); *Sgarlata v. PayPal Holdings, Inc.*, 2018 WL 1569831, at *1 (N.D. Cal. Mar. 30. 2018) (lone movant purchased options when complaint and notice included only stock); *In re Cloudera, Inc. Sec. Litig.*, 2020 WL 1288362, at *3 (N.D. Cal. Mar. 18, 2020) (adding theory of liability and defendants, and class of investors acquiring stock through merger); *Kaplan v. S.A.C. Capital Advisors, L.P.*, 947 F. Supp. 2d 366, 367-68 (S.D.N.Y. 2013) (expanding class period by two years and class to include investors trading counter to defendants); *Waldman v. Wachovia Corp.*, 2009 WL 2950362, at *1 (S.D.N.Y. Sept. 14, 2009) (expanding class from investors that purchased securities *from* Wachovia to those where Wachovia *served as a dealer*); *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 2005 WL 1322721, at *1-3 (S.D.N.Y. June 1, 2005) (expanding class period and class to include entirely different certificates).

[10] Atachbarian's claim that option traders would be left "with no recourse" if a separate class action is not created is false, as they "remain free to pursue their claims through an individual action." *In re Facebook, Inc., IPO Sec. & Deriv. Litig.*, 2013 WL 4399215, at *6 (S.D.N.Y. Aug. 13, 2013).

Dated: August 17, 2020

Respectfully submitted,

/s/ Zachary S. Bower
ZACHARY S. BOWER
Florida Bar No. 17506
**CARELLA, BYRNE, CECCHI, OLSTEIN,
BRODY & AGNELLO, P.C.**
Security Building
117 NE 1st Avenue
Miami, FL 33132-2125
zbower@carellabyrne.com
Tel: (973) 994-1700
Fax: (973) 994-1744

*Liaison Counsel for Proposed Lead Plaintiff New England Carpenters and Massachusetts Laborers and Proposed Liaison Counsel for the Class*

Hannah Ross
Avi Josefson
Michael D. Blatchley
**BERNSTEIN LITOWITZ BERGER
   & GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444
hannah@blbglaw.com
avi@blbglaw.com
michaelb@blbglaw.com

*Counsel for Proposed Lead Plaintiff New England Carpenters and Massachusetts Laborers and Proposed Lead Counsel for the Class*

Naumon A. Amjed
Darren J. Check
Ryan T. Degnan
**KESSLER TOPAZ MELTZER
   & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
namjed@ktmc.com
dcheck@ktmc.com
rdegnan@ktmc.com
Tel: (610) 667-7706
Fax: (610) 667-7056

11

*Counsel for Proposed Lead Plaintiff Massachusetts Laborers and Proposed Lead Counsel for the Class*

12

## CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2020, I caused a true and correct copy of the foregoing to be filed with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

/s/ Zachary S. Bower
ZACHARY S. BOWER
Florida Bar No. 17506