**UNITED STATED DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| IN RE CARNIVAL CORP. SECURITIES LITIGATION | Case No. 1:20-cv-22202-KMM <u>CLASS ACTION</u> |
| ABRAHAM ATACHBARIAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>CARNIVAL CORPORATION, CARNIVAL PLC, ARNOLD W. DONALD, DAVID BERNSTEIN, and MICKY ARISON,<br><br>Defendants. | Case No. 1:20-cv-23011-KMM<br><br><u>CLASS ACTION</u> |

**DECLARATION OF HOWARD T. LONGMAN IN SUPPORT OF**
**MOTION OF ABRAHAM ATACHBARIAN FOR APPOINTMENT**
**AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL**

Howard T. Longman declares under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1.      I am a Senior Attorney in the law firm of Stull, Stull & Brody in New York, New York, one of the counsel for Plaintiff Abraham Atachbarian.

2.      I make this Declaration in support of the Motion of Abraham Atachbarian for Appointment as Lead Plaintiff and Approval of Lead Counsel.

3.      Attached hereto as Exhibit A is a true and correct copy of the Service Lamp PSLRA Notice.

4.      Attached hereto as Exhibit B is a true and correct copy of the Atachbarian PSLRA Notice.

5.      Attached hereto as Exhibit C is a true and correct copy of Atachbarian loss calculation by Monument Economics Group.

6.      Attached hereto as Exhibit D is a true and correct copy of the Atachbarian Certification attesting that he is willing to serve as a representative for the Options Class and to provide testimony at deposition and trial, if necessary.

7.      Attached hereto as Exhibit E is a true and correct copy of an *In re American Realty Capital Properties, Inc. Litig.*, No. 1:15-mc-000040-AKH (S.D.N.Y. June 16, 2019) (ECF No. 853) (Endorsed Letter Opinion noting on class certification that different considerations could come into play between options traders and other securities purchasers).

8.      Attached hereto as Exhibit F is a true and correct copy of a court order in *Basile v. Valeant Pharmaceutical Int'l Inc., et al.*, No. 8:14-cv-02004-DOC-KESx (C.D. Cal. Mar. 15, 2017)(ECF No. 318)(on motion for class certification, court required plaintiffs to give notice to derivative traders so that they would have the opportunity to intervene or bring their own claims).

9.      Attached hereto as Exhibit G is a true and correct copy of Stull, Stull & Brody's firm biography.

I declare under the penalty of perjury that the foregoing is true and correct. Executed on September 21, 2020, in Livingston, New Jersey.

_____
Howard T. Longman

2

# Exhibit A

# Barrack, Rodos & Bacine Announces Securities Class Action Lawsuit Against Carnival Corporation With Class Period From January

**Published: May 27 2020 14:35:32**

Barrack, Rodos & Bacine Announces Securities Class Action Lawsuit Against Carnival Corporation With Class Period From January 28, 2020 Through May 1, 2020

To: All persons or entities who purchased or otherwise acquired the securities of Carnival Corporation (NYSE: CCL) ("Carnival") between January 28, 2020, and May 1, 2020, inclusive ("Class Period").

PHILADELPHIA, May 27, 2020 (GLOBE NEWSWIRE) -- Barrack, Rodos & Bacine has commenced a securities class action titled *Service Lamp Corporation Profit Sharing Plan v. Carnival Corporation, et al.*, No. 1:20-cv-22202 in the United States District Court for the Southern District of Florida. A copy of the complaint is available here: http://www.barrack.com/node/686#

The action alleges that Carnival, Arnold W. Donald, Carnival's president and chief executive officer, and the Company's chief financial officer, David Bernstein, made a series of false and misleading statements and concealed material information relating to the Company's adherence to its health and safety protocols in the wake of the COVID-19 pandemic, Carnival's role in facilitating the transmission of the virus, and the Company's violations of port-of-call regulations. As a result of these false and misleading statements and omissions made throughout the Class Period, Carnival common stock and securities traded at inflated prices.

The Complaint alleges that Defendants' misstatements about the Company's business, operations, and prospects concealed from investors that: (1) the Company's medics were reporting increasing events of COVID-19 illness on the Company's ships; (2) Carnival was violating port of call regulations by concealing the amount and severity of COVID-19 infections on board its ships; (3) in responding to the outbreak of COVID-19, Carnival failed to follow the Company's own health and safety protocols developed in the wake of other communicable disease outbreaks; (4) by continuing to operate, Carnival ships were responsible for continuing to spread COVID-19 at various ports throughout the world; and (5) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

If you suffered a loss arising from your investment in Carnival common stock during the Class Period, you have until July 27, 2020, to file a motion with the Court seeking appointment as lead plaintiff. Your ability to share in any recovery does not require that you serve as a lead plaintiff.

If you have questions about this matter, please contact Jeffrey A. Barrack, Esq. by email at <a="" style="">target="_blank">JBarrack@barrack.com or by telephone at (215) 963-0600 or Stephen R. Basser, Esq. by email at <a="" style="">target="_blank">SBasser@barrack.com or by telephone at (619) 230-0800.

Barrack, Rodos & Bacine is a highly experienced securities litigation firm with offices in Philadelphia, PA, New York City, NY, and San Diego, CA. During its more than 40 years in practice, BR&B has recovered over ten billion dollars on behalf of victims of corporate fraud. Prior results do not guarantee similar outcomes.

**Bloomberg Law®**

© 2020 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Services

# Exhibit B

# Stull Stull & Brody and TheGrantLawFirm File Action Against Carnival on Behalf of Options Traders

Published: Jul 23 2020 14:45:00

## Stull Stull & Brody and TheGrantLawFirm File Action Against Carnival on Behalf of Options Traders

### Business Wire

NEW YORK -- July 23, 2020

To: All Persons or entities who purchased call options or sold put options for the securities of Carnival Corporation (NYSE: CCL), between January 28, 2020 and May 1, 2020, inclusive (the "Class", the "Class Period").

Stull Stull & Brody ("SSB") and TheGrantLawFirm, PLLC ("Grant Firm") commenced a securities class action captioned *Abraham Atachbarian v. Carnival Corporation, et al.*, Case No. 20-23011, in the United States District Court for the Southern District of Florida (the "Action"). A copy of the complaint is available upon request.

The Action alleges that Carnival, Carnival PLC, and certain individual defendants made a series of false and misleading statements and concealed material information relating to the Company's adherence to its health and safety protocols in the wake of the COVID-19 pandemic and its preparedness for it, in order to "keep the party going" on its various cruises, and underplayed the severity of the outbreak. As a result of these false and misleading statements and omissions made throughout the Class Period, options for Carnival's stock, including puts and calls, traded at inflated prices.

Specifically, the Complaint alleges that during the Class Period, Carnival made statements that the risk of COVID-19 to its customers and crew was very low, that is was committed to the safety of its guests and crew, and that it had implemented enhanced policies and procedures to demonstrate that commitment. In the meantime, Carnival was concealing the fact that its policies and practices with respect to COVID-19 were woefully inadequate, that it was continuing to pick up passengers and crew members and putting them at risk as both passengers and crews on its ships were testing positive for the virus, and it was allowing ill passengers to disembark at various ports of call even though passengers had shown signs of illness while on the ship. It further made misrepresentations to authorities at these ports of call. Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

If you suffered a loss arising from your purchase or sale of Carnival options during the Class Period, you have until September 21, 2020, to file a motion with the Court seeking appointment of lead of a class of options purchasers or sellers. Your ability to share in any recovery does not require that you serve as a lead plaintiff.

If you have questions about this matter, please contact either Howard Longman at Stull Stull & Brody, at 973-994- 2315, or email at hlongman@ssbny.com or Lynda J. Grant at 212-292-4441, or email at lgrant@grantfirm.com.

SSB has litigated class actions for the past 40 years and has recovered tens of millions of dollars on behalf of



© 2020 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Services

defrauded shareholders and consumers. Lynda J. Grant has been a New York Metro Super-Lawyer every year since 2014, and has been representing shareholders and consumers for almost 40 years. Prior results do not guarantee similar outcomes.

Attorney Advertising.

View source version on businesswire.com: https://www.businesswire.com/news/home/20200723005826/en/

Contact:

Stull Stull & Brody
Howard Longman
973- 994- 2315
hlongman@ssbny.com

Lynda J. Grant
212-292-4441
lgrant@grantfirm.com.

-0- Jul/23/2020 18:45 GMT

© 2020 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Services

# Exhibit C

Carnival Corporation & PLC (CCL)
Plaintiff Abraham Atachbarian Gain/Loss Calculations (Dura)
Class Period: January 27, 2020 - May 1, 2020

| Date | Buy/Sell | Quantity | Security | Price | Effective Price* | $ Consideration | Value** | G/L |
|---|---|---|---|---|---|---|---|---|
| TD Ameritrade Roth IRA | | | | | | | | |
| 2/21/2020 | Sell | 6 | CCL Feb 43.50 Puts | $1.89 | | $1,134 | | |
| 2/27/2020 | Buy | 600 | CCL | $43.50 | $41.61 | -$24,966 | $16.06 | -$15,330 |
| | | | | | | | | |
| 2/27/2020 | Sell | 1 | CCL Apr 43.50 Put | $11.86 | | $1,186 | | |
| 3/17/2020 | Buy | 100 | CCL | $43.50 | $31.64 | -$3,164 | $16.06 | -$1,558 |
| | | | | | | | | |
| TD Ameritrade | | | | | | | | |
| 2/21/2020 | Sell | 5 | CCL Feb 42.5 Puts | $1.13 | | $565 | | |
| 2/27/2020 | Buy | 500 | CCL | $42.50 | $41.37 | -$20,685 | $16.06 | -$12,655 |
| | | | | | | | | |
| 2/24/2020 | Sell | 7 | CCL Feb 39 Puts | $0.77 | | $539 | | |
| 2/27/2020 | Buy | 700 | CCL | $39.00 | $38.23 | -$26,761 | $16.06 | -$15,519 |
| | | | | | | | | |
| 2/27/2020 | Sell | 3 | CCL Mar 39 Puts | $7.40 | | $2,220 | | |
| 3/9/2020 | Buy | 100 | CCL | $39.00 | $31.60 | -$3,160 | $16.06 | -$1,554 |
| 3/10/2020 | Buy | 200 | CCL | $39.00 | $31.60 | -$6,320 | $16.06 | -$3,108 |
| | | | | | | | | |
| e-Trade | | | | | | | | |
| 2/21/2020 | Sell | 15 | CCL Feb 43 Puts | $1.55 | | $2,325 | | |
| 2/25/2020 | Buy | 800 | CCL | $43.00 | $41.45 | -$33,160 | $16.06 | -$20,312 |
| 2/27/2020 | Buy | 700 | CCL | $43.00 | $41.45 | -$29,015 | $16.06 | -$17,773 |
| | | | | | | | | |
| 2/27/2020 | Sell | 2 | CCL Mar 43 Puts | $12.75 | | $2,550 | | |
| 3/30/2020 | Buy | 200 | CCL | $43.00 | $30.25 | -$6,050 | $16.06 | -$2,838 |
| | | | | | | | | |
| 2/27/2020 | Sell | 1 | CCL Mar 43 Puts | $11.94 | | $1,194 | | |
| 3/17/2020 | Buy | 100 | CCL | $43.00 | $31.06 | -$3,106 | $16.06 | -$1,500 |
| | | | | | | | | |
| 3/13/2020 | Sell | 15 | CCL Oct 50 Calls | $0.26 | | $390 | | $390 |
| 3/25/2020 | Sell | 1 | CCL Oct 50 Call | $0.20 | | $20 | | $20 |

* Effective Price is equal to the purchase price adjusted for the sale of the option.
**Value is equal to the mean trading price for CCL from 5/1/2020 - 7/30/2020.

Total:   -$91,737

# Exhibit D

**CERTIFICATION OF NAMED PLAINTIFF**
**PURSUANT TO FEDERAL SECURITIES LAWS**

Abraham Atachbarian declares:

1.      I have reviewed the Class Action Complaint for Violations of Federal Securities Laws ("Complaint") and have authorized its filing.

2.      I did not acquire the securities that are the subject of this action at the direction of counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.      I am willing to serve as a representative party on behalf of the Class (as defined in the Complaint), including providing testimony at deposition and trial, if necessary.

4.      I have made the following transaction(s) in the securities that are the subject of this action during the Class Period set forth in the Complaint**: See Attached Schedule A**.

5.      I have sought to serve or served as a representative party in a class action that was filed under the federal securities laws within the three-year period prior to the date of this Certification in *Atachbarian v. Norwegian Cruise Lines, et al.*, .20-cv-21386 (S.D. Fla, filed 3/31/20).

6.      I will not accept any payment for serving as a representative party on behalf of the Class beyond the my pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 13 th day of July 2020.

*Abraham Atachbarian*
_____
Abraham Atachbarian

1

Case 1:20-cv-22202-KMM   Document 39-2   Entered on FLSD Docket 09/21/2020   Page 12 of 75

# SCHEDULE A

| DATE | DESCRIPTION | QUANTITY | SYMBOL | PRICE | AMOUNT |
|------|-------------|----------|--------|-------|--------|
| | ACCOUNT NAME | | | | |
| 2/5/2020 | Sold 7 CCL Feb 7 2020 43.5 Put @ 0.25 | 7 | CCL Feb 7 2020 43.5 Put | 0.25 | 171.37 |
| 2/7/2020 | Bought 7 CCL Feb 7 2020 43.5 Put @ 0.66 | 7 | CCL Feb 7 2020 43.5 Put | 0.66 | -465.62 |
| 2/7/2020 | Sold 7 CCL Feb 14 2020 43.5 Put @ 1.18 | 7 | CCL Feb 14 2020 43.5 Put | 1.18 | 822.35 |
| 2/14/2020 | Bought 7 CCL Feb 14 2020 43.5 Put @ 0.80 | 7 | CCL Feb 14 2020 43.5 Put | 0.8 | -563.62 |
| 2/14/2020 | Sold 7 CCL Feb 21 2020 43.5 Put @ 1.55 | 7 | CCL Feb 21 2020 43.5 Put | 1.55 | 1081.35 |
| 2/21/2020 | Bought 7 CCL Feb 21 2020 43.5 Put @ 1.72 | 7 | CCL Feb 21 2020 43.5 Put | 1.72 | -1207.62 |
| 2/21/2020 | Sold 7 CCL Feb 28 2020 43.5 Put @ 1.89 | 7 | CCL Feb 28 2020 43.5 Put | 1.89 | 1319.34 |
| 2/27/2020 | Bought 1 CCL Feb 28 2020 43.5 Put @ 11.7 | 1 | CCL Feb 28 2020 43.5 Put | 11.7 | -1170.52 |
| 2/27/2020 | Bought 600 CCL @ 43.5 | 600 | CCL | 43.5 | -26100 |
| 2/27/2020 | REMOVAL OF OPTION DUE TO ASSIGNMENT (CCL Feb 28 2020 43.5 Put) | 6 | CCL Feb 28 2020 43.5 Put | | 0 |
| 2/27/2020 | Sold 1 CCL Apr 3 2020 43.5 Put @ 11.86 | 1 | CCL Apr 3 2020 43.5 Put | 11.86 | 1185.45 |
| 3/17/2020 | Bought 100 CCL @ 43.5 | 100 | CCL | 43.5 | -4350 |
| 3/17/2020 | REMOVAL OF OPTION DUE TO ASSIGNMENT (CCL Apr 3 2020 43.5 Put) | 1 | CCL Apr 3 2020 43.5 Put | | 0 |
| 2/28/2020 | Sold 6 CCL Mar 27 2020 43.5 Call @ 0.22 | 6 | CCL Mar 27 2020 43.5 Call | 0.22 | 128.89 |

***END OF FILE***

ACCOUNT NAME

| Date | Description | Qty | Symbol | Price | Amount |
|---|---|---|---|---|---|
| 2/7/2020 | Sold 1 CCL Feb 21 2020 42.5 Put @ 1.34 | 1 | CCL Feb 21 2020 39.0 Put | 1.34 | 133.48 |
| 2/7/2020 | Sold 4 CCL Feb 21 2020 42.5 Put @ 1.31 | 4 | CCL Feb 21 2020 39.0 Put | 1.31 | 521.91 |
| 2/21/2020 | Bought 5 CCL Feb 21 2020 42.5 Put @ 0.62 | 5 | CCL Feb 21 2020 42.5 Put | 0.62 | -312.58 |
| 2/21/2020 | Sold 5 CCL Feb 28 2020 42.5 Put @ 1.13 | 5 | CCL Feb 28 2020 42.5 Put | 1.13 | 562.4 |
| 2/27/2020 | Bought 500 CCL @ 42.5 | 500 | CCL | 42.5 | -21250 |
| 2/27/2020 | REMOVAL OF OPTION DUE TO ASSIGNMENT (CCL Feb 28 2020 42.5 Put) | 5 | CCL Feb 28 2020 42.5 Put | | 0 |
| 2/24/2020 | Sold 10 CCL Feb 28 2020 39.0 Put @ 0.77 | 10 | CCL Feb 28 2020 39.0 Put | 0.77 | 764.79 |
| 2/27/2020 | Bought 3 CCL Feb 28 2020 39.0 Put @ 7 | 3 | CCL Feb 28 2020 39.0 Put | 7 | -2101.55 |
| 2/27/2020 | Bought 700 CCL @ 39 | 700 | CCL | 39 | -27300 |
| 2/27/2020 | REMOVAL OF OPTION DUE TO ASSIGNMENT (CCL Feb 28 2020 39.0 Put) | 7 | CCL Feb 28 2020 39.0 Put | | 0 |
| 2/27/2020 | Sold 3 CCL Mar 20 2020 39.0 Put @ 7.4 | 3 | CCL Mar 20 2020 39.0 Put | 7.4 | 2218.39 |
| 3/9/2020 | Bought 100 CCL @ 39 | 100 | CCL | 39 | -3900 |
| 3/9/2020 | REMOVAL OF OPTION DUE TO ASSIGNMENT (CCL Mar 20 2020 39.0 Put) | 1 | CCL Mar 20 2020 39.0 Put | | 0 |
| 3/10/2020 | Bought 200 CCL @ 39 | 200 | CCL | 39 | -7800 |
| 3/10/2020 | REMOVAL OF OPTION DUE TO ASSIGNMENT (CCL Mar 20 2020 39.0 Put) | 2 | CCL Mar 20 2020 39.0 Put | | 0 |
| 2/28/2020 | Sold 12 CCL Mar 27 2020 42.5 Call @ 0.3 | 12 | CCL Mar 27 2020 42.5 Call | 0.3 | 353.77 |

***END OF FILE***

ACCOUNT NAME

| Date | Description | Qty | Symbol | Price | Amount | |
|---|---|---|---|---|---|---|
| 2/5/2020 | Bought 9 CCL Feb 7 2020 43.5 Put @ 0.24 | 9 | CCL Feb 7 2020 43.5 Put | 0.24 | -220.65 | long |
| 2/5/2020 | Sold 9 CCL Feb 7 2020 43.5 Put @ 0.24 | 9 | CCL Feb 7 2020 43.5 Put | 0.24 | 211.32 | long |
| 2/5/2020 | Sold 1 CCL Feb 7 2020 43.5 Put @ 0.21 | 1 | CCL Feb 7 2020 43.5 Put | 0.21 | 20.47 | |
| 2/5/2020 | Sold 8 CCL Feb 7 2020 43.5 Put @ 0.22 | 8 | CCL Feb 7 2020 43.5 Put | 0.22 | 171.84 | |
| 2/7/2020 | Bought 9 CCL Feb 7 2020 43.5 Put @ 1.33 | 9 | CCL Feb 7 2020 43.5 Put | 1.33 | -1201.65 | |
| 2/7/2020 | Sold 8 CCL Feb 21 2020 43 Put @ 1.82 | 8 | CCL Feb 21 2020 43 Put | 1.82 | 1451.81 | |
| 2/7/2020 | Sold 2 CCL Feb 21 2020 43 Put @ 1.83 | 2 | CCL Feb 21 2020 43 Put | 1.83 | 364.96 | |
| 2/14/2020 | Sold 8 CCL Feb 21 2020 43 Put @ 1.17 | 8 | CCL Feb 21 2020 43 Put | 1.17 | 931.82 | |
| 2/21/2020 | Bought 18 CCL Feb 21 2020 43 Put @ 1.29 | 18 | CCL Feb 21 2020 43 Put | 1.29 | -2331.3 | |
| 2/21/2020 | Sold 18 CCL Feb 28 2020 43 Put @ 1.55 | 18 | CCL Feb 28 2020 43 Put | 1.55 | 2780.59 | |
| 2/27/2020 | Bought 2 CCL Feb 28 2020 43.0 Put @ 12.53 | 2 | CCL Feb 28 2020 43 Put | 12.53 | -2507.03 | |
| 2/27/2020 | Bought 1 CCL Feb 28 2020 43.0 Put @ 11.71 | 1 | CCL Feb 28 2020 43 Put | 11.71 | -1171.52 | |
| 2/25/2020 | Bought 800 CCL @ 43 | 800 | CCL | 43 | -34400 | |
| 2/25/2020 | REMOVAL OF OPTION DUE TO ASSIGNMENT (CCL Feb 28 2020 43 Put) | 8 | CCL Feb 28 2020 43 Put | | 0 | |
| 2/27/2020 | Bought 700 CCL @ 43 | 700 | CCL | 43 | -30100 | |
| 2/27/2020 | REMOVAL OF OPTION DUE TO ASSIGNMENT (CCL Feb 28 2020 43 Put) | 7 | CCL Feb 28 2020 43 Put | | 0 | |
| 2/27/2020 | Sold 2 CCL Mar 27 2020 43.0 Put @ 12.75 | 2 | CCL Mar 27 2020 43 Put | 12.75 | 2548.31 | |
| 2/27/2020 | Sold 1 CCL Mar 27 2020 43.0 Put @ 11.94 | 1 | CCL Mar 27 2020 43 Put | 11.94 | 1193.45 | |
| 3/17/2020 | Bought 100 CCL @ 43 | 100 | CCL | 43 | -4300 | |
| 3/17/2020 | REMOVAL OF OPTION DUE TO ASSIGNMENT (CCL Mar 27 2020 43 Put) | 1 | CCL Mar 27 2020 43 Put | | 0 | |
| 3/30/2020 | Bought 200 CCL @ 43 | 200 | CCL | 43 | -8600 | |
| 3/30/2020 | REMOVAL OF OPTION DUE TO ASSIGNMENT (CCL Mar 27 2020 43 Put) | 2 | CCL Mar 27 2020 43 Put | | 0 | |
| 3/13/2020 | Sold 15 CCL Oct 16 2020 50.0 Call @ 0.26 | 15 | CCL Oct 16 2020 50 Call | 0.26 | 382.21 | |
| 3/25/2020 | Sold 1 CCL Oct 16 2020 50.0 Call @ 0.20 | 1 | CCL Oct 16 2020 50 Call | 0.2 | 19.47 | |
| 5/27/2020 | Sold 2 CCL Oct 16 2020 50.0 Call @ 0.10 | 2 | CCL Oct 16 2020 50 Call | 0.1 | 18.96 | |

# Exhibit E

**Robbins Geller**
**Rudman & Dowd LLP**

| Atlanta | Chicago | Melville | Philadelphia | San Francisco |
| Boca Raton | Manhattan | Nashville | San Diego | Washington, DC |

Patrick Coughlin
patc@rgrdlaw.com



RECEIVED
MAY 16 2019
CHAMBERS OF
ALVIN K. HELLERSTEIN
U.S.D.J.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/16/19

May 14, 2019

**VIA ECF AND HAND DELIVERY**

The Honorable Alvin K. Hellerstein
United States District Judge
United States District Court, Southern District of New York
500 Pearl Street, Room 1050
New York, NY 10007

Re:   *In re American Realty Capital Properties, Inc. Litigation,*
       No. 1:15-mc-00040-AKH (S.D.N.Y.)

Dear Judge Hellerstein:

The parties to the above action write jointly to obtain finality as to the Class definition to enable prompt notice to the Class.

Plaintiffs' Complaint asserts claims on behalf of those who purchased or acquired ARCP securities between September 7, 2011 and October 29, 2014. (ECF No. 312.) Following a hearing on August 24, 2017, this Court certified a Class. (ECF No. 505.) On February 8, 2019, Defendants moved for summary judgment with respect to claims based on alleged misstatements and omissions going back to September 7, 2011. During the briefing on summary judgment, counsel for the Class identified February 28, 2013 as the date of the first actionable statement, and Plaintiffs do not oppose entry of summary judgment in favor of Defendants with respect to claims based on alleged misstatements and omissions prior to that date. The parties identified this issue to the Court during the April 17, 2019 hearing, but to avoid any confusion with respect to the Notice to the Class being prepared in advance of the September 9, 2019 trial, the parties request the entry of an order providing for entry of summary judgment on such claims and modification of the Class definition.

The only remaining disagreement as to the Class definition between the parties appears to be whether the Court in its class certification order intended to limit the certified Class to ARCP's common stock, preferred stock, and debt securities, or whether the Class also includes option contracts. ECF No. 505. Plaintiffs believe the Court intended to include options in the Class definition. Defendants believe that the certified Class is limited to ARCP's common stock, preferred stock, and debt securities. Below is a brief statement by each side on this issue. Each side has

**Robbins Geller**
**Rudman & Dowd** LLP

May 14, 2019
Page 2

submitted as an attachment to this letter their version of a proposed order for the Court to enter based on its resolution of this dispute.

### 1. Plaintiffs' Position

Plaintiffs' Motion for Class Certification asked the Court to certify a class that included those "who purchased or otherwise acquired American Realty Capital Properties, Inc. ("ARCP" or the "Company") securities (including ARCP common stock, preferred stock and debt securities, as well as those who traded in option contracts on ARCP stock) . . .". ECF No. 368 at n.1. While the Court's August 31, 2016 Order (ECF No. 505) does not recite a class definition, there is no dispute that the Court's Order grants Plaintiffs' motion, and that no part of the Order indicates that any portion of Plaintiffs' motion is denied. The parties disagree about the Court's intention to include ARCP's options in the Class certified as options are not explicitly mentioned by the August 31, 2016 Order.

Plaintiffs' position is that because options are derivative of the common stock, and there is no dispute that the Class certified includes the common stock, that the Court likewise intended to include options in the Class.[1] While the options are estimated to be about 1% of the overall damages, whether options should or should not be included in the Class was not explored during the August 24, 2016 hearing; Defendants did not ask Dr. Feinstein, Plaintiffs' expert of market efficiency, any questions during his deposition related to options; nor did Defendants' supplemental briefing in opposition to class certification make any arguments that options are not properly included in the Class.[2] As such Plaintiffs believe that the Class certified, as modified by the motion for summary judgment proceedings, is properly defined as:

ALL PERSONS WHO PURCHASED OR OTHERWISE ACQUIRED AMERICAN REALTY CAPITAL PROPERTIES, INC. ("ARCP") PUBLICLY TRADED SECURITIES, INCLUDING ARCP COMMON STOCK, PREFERRED STOCK AND DEBT SECURITIES, AS

---

[1] In their brief in support of class certification, Plaintiffs argued that: "In general, '[t]he market price for options is directly responsive . . . to changes in the market price of the underlying stock, and to information affecting that price.'" *McIntire v. China MediaExpress Holdings, Inc.*, 38 F. Supp. 3d 415, 433 (S.D.N.Y. 2014) (quoting *Deutschman v. Beneficial Corp.*, 841 F.2d 502, 504 (3d Cir. 1988)). Where a court has determined the market efficiency requirement is met, "absent special circumstances," option traders may use the FOTM presumption. *Id.* Here, the Court found that the market for ARCP's stock was efficient and Defendants offered no evidence of any "special circumstances" preventing that determination from applying to ARCP's options. ECF 368 at n.14.

[2] Defendant Grant Thornton apparently agrees that options were intended to be included in the Class definition. Grant Thornton's expert report of J. Duross O'Brien, CPA exchanged on May 3, 2019 includes options in the description of the Class.

**Robbins Geller
Rudman & Dowd LLP**

May 14, 2019
Page 3

WELL AS THOSE WHO TRADED IN OPTION CONTRACTS ON ARCP STOCK DURING THE PERIOD FROM FEBRUARY 28, 2013 THROUGH OCTOBER 29, 2014. EXCLUDED FROM THE CLASS ARE ALL DEFENDANTS, MEMBERS OF THE IMMEDIATE FAMILIES OF EACH OF THE DEFENDANTS, ANY PERSON, FIRM, TRUST, CORPORATION, OFFICER, DIRECTOR, OR OTHER INDIVIDUAL OR ENTITY IN WHICH ANY DEFENDANT HAS A CONTROLLING INTEREST OR WHICH IS RELATED TO OR AFFILIATED WITH ANY DEFENDANT, AND THE LEGAL REPRESENTATIVES, AGENTS, AFFILIATES, HEIRS, SUCCESSORS-IN-INTEREST OR ASSIGNS OF ANY SUCH EXCLUDED PARTY.

A [Proposed] Order is attached herewith as Exhibit 1.

**2.    Defendants' Position**

Plaintiffs' argument that the Class includes option contracts ignores the plain language of the Court's August 31, 2017 certification order (ECF No. 505) (the "Certification Order") and the Court's subsequent confirmation of the scope of the Certification Order in the *Fir Tree* opt-out action. Moreover, Plaintiffs' position, if accepted, would result in certification of a class as to which Plaintiffs presented no supporting evidence of market efficiency, and would prejudice Defendants by bringing a new category of securities into the case nearly two years after the Court's issuance of the Certification Order. The Court should confirm that the certified Class is the Class that the Court specifically described in its Certification Order.

The Certification Order stated that the Court was certifying a class "with respect to ARCP's common stock," and that its holding "also extends to ARCP's preferred stock and debt securities." (ECF No. 505 at 1-2.) Those are the only securities that are in the Class.

The Certification Order made no mention of options or any ARCP securities other than ARCP's common stock, preferred stock, and debt securities. And contrary to Plaintiffs' assertion above, the Certification Order did not state that it was "granting" Plaintiffs' motion (in whole or in part).

Less than four months after issuing the Certification Order, this Court *confirmed* that the Certification Order was limited to ARCP common stock, preferred stock and debt securities in an order in the *Fir Tree* opt-out action. In describing the procedural history of the Class Action in its order on a motion to dismiss in the *Fir Tree* action, the Court noted that after the plaintiffs in the Class Action filed a motion for class certification, "[o]n August 31, 2017, the Court issued a Summary Order certifying the class *with respect to ARCP's common stock, preferred stock, and debt securities* purchased between May 9, 2012 and October 29, 2014." *Fir Tree Capital Opportunity Master Fund, L.P., et al. v. Am. Realty Capital Props., Inc., et al.*, No. 1:17-cv-04975-AKH, ECF No. 84, at 4 (S.D.N.Y. Dec. 14, 2017) (emphasis added).

**Robbins Geller
Rudman & Dowd** LLP

May 14, 2019
Page 4

Accordingly, it is clear that the Certification Order was limited to ARCP's common stock, preferred stock, and debt securities. That conclusion is also consistent with Plaintiffs' failure to present *any evidence* on market efficiency for ARCP options in connection with the class certification proceedings. Plaintiffs' expert report on market efficiency submitted in support of their class certification motion did not discuss option contracts or purport to offer any evidence that the options traded in an efficient market. (*See* ECF No. 369-13.) Defendants pointed the Court to this fatal flaw during the class certification proceedings, noting in their opposition to Plaintiffs' motion for class certification that "Plaintiffs offer no evidence regarding the markets for options, derivatives, or any other ARCP security," and arguing that "purchasers of those securities must be excluded from the Proposed Class on this basis alone." (ECF No. 383 at 2.) Then, at the evidentiary hearing on the motion for class certification, Plaintiffs' expert once again made no mention of option contracts. (*See* ECF No. 516.)

Thus, Plaintiffs' interpretation of the Certification Order would mean that the Court certified a Class of financial instruments as to which Plaintiffs did not even attempt to present evidence of market efficiency—a conclusion that would be foreclosed by Supreme Court precedent. *See Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2412 (2014) (holding that a case can proceed as a class action under the fraud-on-the-market presumption of reliance only if plaintiffs have "prov[en] the prerequisites for invoking the presumption," including market efficiency). Plaintiffs' assertion that "Defendants did not ask Dr. Feinstein, Plaintiffs' expert [on] market efficiency, any questions during his deposition related to options" gets it backward—it was *Plaintiffs' burden* to prove market efficiency, not Defendants' burden to disprove market efficiency. Likewise, Plaintiffs' assertion that "Defendants' supplemental briefing in opposition to class certification [did not] make any arguments that options are not properly included in the Class" is entirely misplaced, because Plaintiffs did not present any evidence that the options *were* traded in an efficient market in response to Defendants' argument from their class certification opposition brief identifying that very lack of evidence. Defendants were not required to repeat that same argument given that Plaintiffs had presented no additional evidence on that point.[3]

---

[3] Citing to the May 3, 2019 expert report of Grant Thornton's due diligence expert, J. Duross O'Bryan, Plaintiffs state in a footnote that "Defendant Grant Thornton apparently agrees that options were intended to be included in the Class definition." To clarify, Mr. O'Bryan did not intend to convey in his report that option contracts on ARCP stock are included in the class definition, and Plaintiffs are incorrect in asserting that Grant Thornton has taken that position. Mr. O'Bryan simply intended to quote the class definition set forth in the first paragraph of Plaintiffs' Third Amended Complaint; that quote was modified only to reflect the new, shortened dates of the putative class period and no other changes to the class definition. The options are not relevant to any of the Section 11 claims asserted against Grant Thornton. Nor are the options relevant to Mr. O'Bryan's opinions that Grant Thornton complied with professional standards. In contrast, the beginning and

**Robbins Geller**
**Rudman & Dowd** LLP

May 14, 2019
Page 5

Finally, Plaintiffs' argument that the Class should include options would prejudice Defendants by bringing a new category of securities into the case nearly two years after the Court's issuance of the Certification Order. If Plaintiffs thought the Certification Order should have included securities other than those mentioned in the Certification Order, they should have raised the issue at that time.

Accordingly, Defendants request that the Court confirm that the Class definition is as follows:

ALL PERSONS WHO PURCHASED OR OTHERWISE ACQUIRED AMERICAN REALTY CAPITAL PROPERTIES, INC. ("ARCP") COMMON STOCK, PREFERRED STOCK, OR DEBT SECURITIES DURING THE PERIOD FROM FEBRUARY 28, 2013 THROUGH OCTOBER 29, 2014 ("ARCP SECURITIES"). EXCLUDED FROM THE CLASS ARE ALL DEFENDANTS, MEMBERS OF THE IMMEDIATE FAMILIES OF EACH OF THE DEFENDANTS, ANY PERSON, FIRM, TRUST, CORPORATION, OFFICER, DIRECTOR, OR OTHER INDIVIDUAL OR ENTITY IN WHICH ANY DEFENDANT HAS A CONTROLLING INTEREST OR WHICH IS RELATED TO OR AFFILIATED WITH ANY DEFENDANT, AND THE LEGAL REPRESENTATIVES, AGENTS, AFFILIATES, HEIRS, SUCCESSORS-IN-INTEREST OR ASSIGNS OF ANY SUCH EXCLUDED PARTY.[4]

Defendants therefore respectfully request that the Court enter the proposed order attached as Exhibit 2 hereto. An image of a redline showing the difference between Defendants' proposed Class definition and Plaintiffs' proposed Class definition is on the following page, with Plaintiffs' proposed addition to the Class definition in blue:

---

end dates of the putative class period *are* relevant to the scope of Mr. O'Bryan's assignment. The Court should therefore disregard footnote 2 in Plaintiffs' portion of this joint letter.

[4] For the avoidance of doubt, this exclusion does not extend to: (1) any investment company or pooled investment fund in which an Underwriter Defendant may have a direct or indirect interest, or as to which its affiliates may act as an advisor, but of which an Underwriter Defendant or its respective affiliates is not a majority owner or does not hold a majority beneficial interest, or (2) any employee benefit plan as to which an Underwriter Defendant or its affiliates acts as an investment advisor or otherwise may be a fiduciary; provided, however, that membership in the Class by such investment company, pooled investment fund or employee benefit plan is limited to transactions in ARCP Securities made on behalf of, or for the benefit of, persons other than persons that are excluded from the Class by definition. In other words, the Underwriter Defendants cannot make a claim on their own behalf for their ownership share in any of the above entities.

**Robbins Geller**
**Rudman & Dowd** LLP

May 14, 2019
Page 6

> ALL PERSONS WHO PURCHASED OR OTHERWISE ACQUIRED
> AMERICAN REALTY CAPITAL PROPERTIES, INC. ("ARCP") COMMON
> STOCK, PREFERRED STOCK, OR DEBT SECURITIES ("; AS WELL AS
> THOSE WHO TRADED IN OPTION CONTRACTS ON ARCP STOCK
> ("ARCP SECURITIES") DURING THE PERIOD FROM FEBRUARY 28, 2013
> THROUGH OCTOBER 29, 2014. EXCLUDED FROM THE CLASS ARE ALL
> DEFENDANTS, MEMBERS OF THE IMMEDIATE FAMILIES OF EACH OF
> THE DEFENDANTS, ANY PERSON, FIRM, TRUST, CORPORATION,
> OFFICER, DIRECTOR, OR OTHER INDIVIDUAL OR ENTITY IN WHICH
> ANY DEFENDANT HAS A CONTROLLING INTEREST OR WHICH IS
> RELATED TO OR AFFILIATED WITH ANY DEFENDANT, AND THE
> LEGAL REPRESENTATIVES, AGENTS, AFFILIATES, HEIRS,
> SUCCESSORS-IN-INTEREST OR ASSIGNS OF ANY SUCH EXCLUDED
> PARTY.[2]

Respectfully,

/s/ Patrick Coughlin

PATRICK COUGHLIN

PJC

# Exhibit 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————— x
In re AMERICAN REALTY CAPITAL   :   Civil Action No. 1:15-mc-00040-AKH
PROPERTIES, INC. LITIGATION   :
—————————————————————   :   <u>CLASS ACTION</u>
  :
This Document Relates To:   :
  :
  ALL ACTIONS.   :
  :
————————————————————— x


[PROPOSED] ORDER

WHEREAS, Plaintiffs' Third Amended Class Action Complaint for Violations of the Federal Securities Laws (Dkt. No. 312) (the "Complaint") asserts claims against Defendants in the above-captioned action under Sections 11 and 15 of the Securities Act of 1933 and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder based on alleged misstatements or omissions, including ones made prior to February 28, 2013;

WHEREAS, on August 31, 2017, the Court certified a class in this action (the "Class");

WHEREAS, on February 8, 2019, Defendants filed motions seeking summary judgment as to most or all of Plaintiffs' claims;

WHEREAS, in Class Plaintiffs' Omnibus Opposition to Defendants' Motions for Summary Judgment with Respect to Class Plaintiffs' Section 10(b) Issues, Plaintiffs stated that at trial, Plaintiffs would pursue claims only as to alleged actionable statements or omissions made on or after February 28, 2013.

THEREFORE, IT IS HEREBY ORDERED as follows:

1. Summary judgment is hereby granted in favor of all Defendants on all claims asserted in the Complaint based on alleged misstatements or omissions made prior to February 28, 2013;

2.      From the date of this Order, the Class is now defined as:[1]

ALL PERSONS WHO PURCHASED OR OTHERWISE ACQUIRED AMERICAN REALTY CAPITAL PROPERTIES, INC. ("ARCP") COMMON STOCK, PREFERRED STOCK, OR DEBT SECURITIES, AS WELL AS THOSE WHO TRADED IN OPTION CONTRACTS ON ARCP STOCK ("ARCP SECURITIES") DURING THE PERIOD FROM FEBRUARY 28, 2013 THROUGH OCTOBER 29, 2014. EXCLUDED FROM THE CLASS ARE ALL DEFENDANTS, MEMBERS OF THE IMMEDIATE FAMILIES OF EACH OF THE DEFENDANTS, ANY PERSON, FIRM, TRUST, CORPORATION, OFFICER, DIRECTOR, OR OTHER INDIVIDUAL OR ENTITY IN WHICH ANY DEFENDANT HAS A CONTROLLING INTEREST OR WHICH IS RELATED TO OR AFFILIATED WITH ANY DEFENDANT, AND THE LEGAL REPRESENTATIVES, AGENTS, AFFILIATES, HEIRS, SUCCESSORS-IN-INTEREST OR ASSIGNS OF ANY SUCH EXCLUDED PARTY.[2]

---

[1] Defendants' agreement to this stipulation and proposed order is not an acknowledgment that class certification was appropriate or that this action may properly proceed as a class action. Defendants hereby reserve all rights to challenge the Court's class certification order by a motion to decertify the class, on appeal, or otherwise.

[2] For the avoidance of doubt, this exclusion does not extend to: (1) any investment company or pooled investment fund in which an Underwriter Defendant may have a direct or indirect interest, or as to which its affiliates may act as an advisor, but of which an Underwriter Defendant or its respective affiliates is not a majority owner or does not hold a majority beneficial interest, or (2) any employee benefit plan as to which an Underwriter Defendant or its affiliates acts as an investment advisor or otherwise may be a fiduciary; provided, however, that membership in the Class by such investment company, pooled investment fund or employee benefit plan is limited to transactions in ARCP Securities made on behalf of, or for the benefit of, persons other than persons that are excluded from the Class by definition. In other words, the Underwriter Defendants cannot make a claim on their own behalf for their ownership share in any of the above entities.

SO ORDERED.

DATED:     May ___, 2019
           New York, New York

                                    _____
                                    ALVIN K. HELLERSTEIN
                                    United States District Judge

# Exhibit 2

# Exhibit F

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| **ANTHONY BASILE ET AL.,** | **Case No.: SACV 14-2004-DOC (KES)** |
| **Plaintiffs,** | |
| **vs.** | **ORDER RE MOTION TO CERTIFY CLASS [229]; MOTION TO DISMISS FOR FAILURE TO JOIN PARTIES [264]** |
| **VALEANT PHARMACEUTICAL INTERNATIONAL, INC. ET AL.** | |
| **Defendants.** | |

-1-

Case 1:20-cv-22202-KMM Document 39-2 Entered on FLSD Docket 09/21/2020 Page 31 of 75
Case 8:14-cv-02004-DOC-KES Document 313 Filed 05/15/17 Page 2 of 27 Page ID
#:13789

Before the Court are Plaintiffs' Motion for Class Certification ("Motion") (Dkt. 229) and Defendants' Motion to Dismiss for Failure to Join Parties ("Motion to Dismiss") ("MTD") (Dkt. 264).

## I.  BACKGROUND

Here, Plaintiffs State Teachers Retirement System of Ohio ("Ohio STRS"), Iowa Public Employees Retirement System ("Iowa PERS"), and Patrick T. Johnson ("Johnson") (collectively, "Plaintiffs") bring a putative class action for violations of securities law against Defendants Pershing Square Capital Management, L.P. ("Pershing Square"), PS Management GP, LLC ("PS Management"), William Ackman ("Ackman"), PS Fund 1, LLC ("PS Fund 1"), Pershing Square, L.P. ("PSLP"), Pershing Square II, L.P. ("PS II"), Pershing Square GP, LLC ("PSGP"), Pershing Square International ("PS International"), Pershing Square Holdings, Ltd. ("PS Holdings"), Michael Pearson ("Pearson"), Valeant Pharmaceuticals International, Inc. ("Valeant"), and Valeant Pharmaceuticals International ("Valeant USA") (collectively, "Defendants").[1] *See generally* Second Amended Complaint ("SAC") (Dkt. 138).

### A.  Facts

Plaintiffs argue that Defendants deprived Plaintiffs and other Allergan shareholders of billions of dollars of value in violation of federal securities laws. *Id.* ¶ 1. Specifically, in 2014 Valeant—a pharmaceutical company who allegedly operates by acquiring smaller, innovative pharmaceutical companies—informed Pershing that Valeant intended to attempt to acquire, non-party Allergan, Inc. ("Allergan"). *Id.* ¶¶ 1, 31–32. Pershing, through William Ackman, its founder and CEO, in turn agreed to acquire an approximately 10% stake in Allergan that Pershing would use to support Valeant's takeover efforts. *Id.* ¶ 1. Plaintiffs allege that at this time, the parties were aware that Valeant would ultimately make a tender offer for Allergan. *See id.*

This arrangement was mutually beneficial to both Pershing and Valeant. When a hostile takeover bid is announced and a tender offer made, stock prices typically increase, and if a

---

[1] For clarity, the Court will refer to Defendants Pershing Square, PS Management, Ackman, PS Fund 1, PSLP, PS II, PSGP, PS International, and PS Holdings, as "Pershing," and to Defendants Pearson, Valeant, and Valeant USA as "Valeant."

substantial tender offer goes through, stock holders can expect a large payout. Pershing's advanced notice of the Valeant bid allowed them to acquire billions of dollars' worth of Allergan stock knowing that the price was likely to sharply increase, while those selling the stock—the putative class members—where unaware of the impending increase in value. *See id.* ¶ 2. In exchange for this information, Valeant secured an ally in its takeover bid who would have a large stake in its target, Allergan. *Id.* ¶ 3.Valeant and Pershing further agreed that if Valeant was ultimately unsuccessful in its bid for Allergan, Pershing would give Valeant 15% of the profits it made from trading the Allergan stock to Valeant. *Id.* ¶ 4.

Defendants signed a contract ("the Relationship Agreement") agreeing to the above stated terms on February 25, 2014. *Id.* ¶ 5; *see also* Declaration of Michael Shipley ("Shipley Decl.") (Dkt. 253) Ex. 2 ("the Relationship Agreement"). That same day, Pershing began to buy up shares of Allergan. *Id.* From February 25 to April 8, 2014, Pershing used a funding vehicle named "PS Fund 1" to buy over 14 million Allergan shares at prices as low as $117.91, for a total cost of roughly $2 billion. *Id.* ¶ 6. This represented a 4.9% stake in Allergan. *Id.* By acquiring only 4.9% of the company, Pershing was able to avoid Securities and Exchange Commission ("SEC") rules that require a party to disclose when it acquires a 5% stake in a company. *Id.* This disclosure must occur within ten days of crossing the 5% threshold. *Id.* During the ten day SEC grace period, from April 10 to April 21, 2014, Pershing amassed another 13.9 million shares of Allergan, giving it control of roughly 9.7% of all of Allergan's shares, with an aggregate value of $3.2 billion. *Id.* Plaintiffs also allege that to avoid detection of many of these trades, Pershing used Nomura International plc ("Nomura") as an intermediary. *Id.* ¶ 52.

On April 21, 2014, Valeant announced its intention to acquire Allergan, and Pershing disclosed its 9.7% stake in Allergan. *Id.* ¶ 7. Immediately Allergan's stock price increased by $20 per share.

On June 18, 2014, Valeant made a tender offer for Allergan. *Id*. ¶ 164. Upon announcing the tender offer, Pearson explained: "On April 22, we announced our offer for Allergan. We suspected at the time it would ultimately have to go directly to Allergan shareholders. We were

correct." *Id.* Third-party bidder Actavis plc's ("Actavis") tender offer to Allergan shareholders of $219 per share won out over Valeant's $200 per share bid. *Id.* ¶ 8. For reference, the putative class member sold their shares at between $115 and $143 a share. Mot. at 5. Pershing is alleged to have made $2.2 billion in profits off the sale of Allergan stock even after it paid a $400 million "kick-back" to Valeant. SAC ¶ 8.

### B. Procedural History

Plaintiffs brought suit on December 16, 2014. *See* Complaint (Dkt. 1). In the operative complaint, the SAC, Plaintiffs allege three claims. First, Plaintiffs allege all Defendants violated § 14(e) of the Securities Exchange Act ("Exchange Act") and corresponding Rule 14e-3, which prohibits trading while in possession of nonpublic material information in connection with a tender offer. SAC ¶¶ 196–207. Second, Plaintiffs allege all Defendants violated § 20A(a) of the Exchange Act. *Id.* ¶¶ 208–15. Third, Plaintiffs allege Pershing Square, PS Management, Ackman and Pearson violated § 20(a) of the Exchange Act because they acted as "controlling persons of PS Fund 1 within the meaning of Section 20(a) of the Exchange Act." *Id.* ¶¶ 216–26.

Plaintiffs filed the instant Motion on October 11, 2016. Through that Motion, Plaintiffs seek to certify a class ("the Class") consisting of:

> All persons who sold Allergan common stock contemporaneously with purchases of Allergan common stock made or caused by Defendants during the period February 25, 2014 through April 21, 2014, inclusive (the "Class Period") and were damaged thereby (collectively, the "Class").[2]

Defendants opposed the Motion on December 20, 2016 ("Opp'n") (Dkt. 253), and Plaintiffs replied on January 17, 2017 ("Reply") (Dkt. 267).

---

[2] Per the Motion,
> [t]he Class excludes Defendants; their officers and directors during the Class Period; members of the immediate family of the individual Defendants and of the excluded officers and directors; any entity in which any of the foregoing has or had a controlling interest; any affiliates, parents or subsidiaries of the Defendants; the legal representatives, agents, affiliates, heirs, successors or assigns of any of the foregoing, in their capacities as such; and Nomura International plc, and any of its affiliates, parents, or subsidiaries (collectively, "Nomura").

Mot. at 1 n.2.

-4-

On January 16, 2017, Defendants moved to dismiss the SAC for failure to join indispensable parties under Federal Rule of Civil Procedure 19. Plaintiffs opposed on January 30, 2017 ("MTD Opp'n") (Dkt. 276), and Defendants replied on February 6, 2017 ("MTD Reply") (Dkt. 284).

The Court held a hearing on the two Motions on February 13, 2017 and February 14, 2017.

## II.  LEGAL STANDARD

### A.  Class Certification

Federal Rule of Civil Procedure 23 governs class actions. Fed. R. Civ. P. 23. A party seeking class certification must demonstrate the following prerequisites: "(1) numerosity of plaintiffs; (2) common questions of law or fact predominate; (3) the named plaintiff's claims and defenses are typical; and (4) the named plaintiff can adequately protect the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citing Fed. R. Civ. P. 23(a)).

After satisfying the four prerequisites of numerosity, commonality, typicality, and adequacy, a party must also demonstrate either: (1) a risk that separate actions would create incompatible standards of conduct for the defendant or prejudice individual class members not parties to the action; or (2) the defendant has treated the members of the class as a class, making appropriate injunctive or declaratory relief with respect to the class as a whole; or (3) common questions of law or fact predominate over questions affecting individual members and that a class action is a superior method for fairly and efficiently adjudicating the action. Fed. R. Civ. P. 23(b)(1)–(3).

"A party seeking class certification must affirmatively demonstrate compliance with Rule 23—that is, the party must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (emphasis in original). The party may not rest on mere allegations, but must provide facts to satisfy these requirements. *Doninger v. Pac. Northwest Bell, Inc.*, 564 F.2d 1304, 1309 (9th Cir. 1977). A class certification motion requires a district court to conduct

a "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*, 564 U.S. at 351. However, neither "the possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis for declining to certify a class which apparently satisfies [Rule 23]." *United Steel Workers v. ConocoPhillips Co.*, 593 F.3d 802, 809 (9th Cir. 2010). "[N]othing in either the language or history of Rule 23 . . . gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." *Id.* (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78 (1974)).

The decision to grant or deny a motion for class certification is committed to the trial court's broad discretion. *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010).

### III.    DISCUSSION

#### A.    The Four Requirements of Rule 23(a)

##### 1.    Numerosity under Rule 23(a)(1)

Numerosity, the first prerequisite of class certification, requires that the class be "so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). A proposed class of at least forty members presumptively satisfies the numerosity requirement. *See Jordan v. Los Angeles County*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds by County of Los Angeles v. Jordan*, 459 U.S. 810 (1982); *Slaven v. BP America, Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000). Defendants do not argue numerosity is lacking. *See generally* Opp'n. In numerous instances Defendants have conceded that the proposed Class would exceed one hundred members. *See, e.g.*, Declaration of Eli R. Greenstein ("Greenstein Decl.") (Dkt. 229) Ex. A ("Pershing Defendants' Responses and Objections to Plaintiffs' First Set of Request for Admission") Response No. 3. Accordingly, the Court is satisfied Rule 23's numerosity requirement is met here.

## 2. Typicality under Rule 23(a)(3)

"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (quotation marks omitted). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id.* The typicality requirement demands that a named plaintiff's claims be "reasonably co-extensive with those of absent class members," although "they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

"The purpose of the typicality requirement is to assure that the interests of the named representative aligns with the interests of the class." *Hanon*, 976 F.2d at 508. "[A] named plaintiff's motion for class certification should not be granted if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'" *Id.*

Plaintiffs argue for typicality by noting that the proposed class representatives, like other class members, "sold Allergan common stock contemporaneously with Defendant's insider trading and suffered damages as a result of Defendants' omissions and misconduct." Mot. at 11. Plaintiffs note that each of the proposed representatives sold Allergan stock on the same day the Pershing Defendants purchased stock. *Id.* Plaintiffs further argue that due to the volume and timing of trades made by the Pershing Defendants, any stocks sold during in the class period are "contemporaneously traded" stocks. Specifically, Plaintiffs point out that the Pershing Defendants purchased, either directly or indirectly through Nomura, Allergan common stock on all but two of the thirty-nine trading days during the Class period. Greenstein Decl. Exs. 11, 12. This Court has found larger gaps sufficient to qualify as contemporaneity. *See Middlesex Ret. Sys. v. Quest Software Inc.*, 527 F. Supp. 2d 1164, 1196 (C.D. Cal. 2007) (finding eight days between plaintiff's and defendant's transactions qualified as contemporaneous trades).

Defendants do not dispute that Plaintiffs are within the Class definition,[3] and the Court is satisfied that the proposed representatives are within the Class definition.

However, Defendants do dispute typicality on other grounds, arguing that the proposed Class representatives are subject to unique defenses that render them atypical. Opp'n at 11. First, Defendants argue that Ohio STRS and Johnson's "gains" exceeded their losses. *Id.* at 11–15. Defendants rightly note that insider trading damages stop accruing a reasonable time after the material nonpublic information the insider trader acted on is disclosed to the public. Opp'n at 12 (citing *Short v. Belleville Shoe Mfg. Co.*, 908 F.2d 1385, 1392 (7th Cir. 1990)). The Exchange Act also provides that "[n]o person permitted to maintain a suit for damages under the provisions of this chapter shall recover . . . a total amount in excess of the actual damages to that person on account of the act complained of." 15 U.S.C. § 78bb(a)(1).

Defendants also cite *Gordon v. Sonar Capital Mgmt. LLC*, 92 F. Supp. 3d 193 (S.D.N.Y. 2015). There, the court determined that where a plaintiff net traded in the same direction as an insider trading defendant over the class period, that plaintiff could not establish he had been damaged by the defendants. *Id.* at 205. The *Gordon* court explained that under those circumstances, the plaintiff had unwittingly *gained* from the fact that there was information unknown to the general market. *Id.* Accordingly, that court found that a plaintiff was not typical where he had net traded in the same direction as the defendants and therefore was subject to the potentially meritorious defense that he had not been harmed by the defendants' insider trading.

Defendants point out that Plaintiffs are seeking damages based on Actavis's successful bid for Allergan at $219 per share. Opp'n at 12. Defendants argue that under this logic, both Ohio STRS and Johnson suffered no damages, because their profits exceeded any potential losses due to the fact that they held shares through the announcement of the merger. *Id.* at 13. To elaborate, while Ohio STRS sold 164,100 shares during the Class period, it also held 513,271 shares through the announcement of the Actavis merger. Declaration of Robert M. Daines ("Daines Decl.") (Dkt. 259) ¶ 40, Ex. 9. Johnson exercised 1,250 options and sold those

---

[3] Defendants do dispute that contemporaneity is established as to Plaintiffs, and as to the Class members in general. The Court takes up those arguments below.

shares during the Class period, but at the time of announcement of the merger he still held 700 shares and 7,348 options. *Id.* Defendants contend that because of the increase in the value of the shares and options that Johnson and Ohio STRS held through the announcement of the merger, Johnson and Ohio STRS both profited from Defendants' actions. *See* Opp'n at 13; Daines Decl. ¶ 41, Ex. 10 (estimating that Ohio STRA netted just under $40 million and Johnson just under $800,000 after subtracting the harm from the alleged insider trading from the increase in the value of the shares those Plaintiffs held at the time of the announcement of the merger). Defendant contends that because of Plaintiffs' "legally flawed theory that Defendants' fraud persisted until closing of the Actavis transaction," Plaintiffs should have to offset their gains over that prolonged period. Opp'n at 14–15.

Defendants do not appear to argue that Johnson or Ohio STRS were buying up shares of Allergan during the Class period. Indeed, Defendants have not disputed either Johnson or Ohio STRS's representations that they did not buy any shares of Allergan common stock during the class period. *See* Shipley Decl. Ex. 1 at 8–10, 13. Further, Johnson did not purchase shares even after the close of the Class period. *See id.* at 13. In *Gordon*, the only relevant purchases that resulted in offsetting the plaintiff's losses were purchases by the plaintiff *during the class period* where the plaintiff was *also* benefiting from the fact that there was information unknown to the market. *Gordon*, 92 F. Supp. 3d at 205. Merely holding shares during the class period does not result in an offsetting gain. *See cf. In re Schering-Plough Corp. Sec. Litig.*, No. CIV.A. 01-0829, 2003 WL 25547564, at *9 (D.N.J. Oct. 10, 2003) ("[The plaintiff's] claim is based on losses that resulted from purchases of Schering-Plough stock made during the Class Period. Any capital gains made with respect to the sale of shares purchased before the Class Period are irrelevant.").

Defendants vigorously disputed this issue at oral argument, contending that Ohio STRS and Johnson were net gainers who benefited from the Defendants actions. Defendants are able to make this argument because they draw no distinction between their legal actions and their alleged illegal insider trading actions. The core of Plaintiffs' insider trading allegations is that Defendants withheld information and improperly traded on that information—that is the root of

the harm that Plaintiffs are seeking to remedy through this action. While Plaintiffs may have profited due to Valeant's attempted takeover of Allergan and the Actavis tender offer, Plaintiffs did not profit because Defendants withheld information from the market. Plaintiffs sold tens of thousands of shares during the class period while Defendants were buying up shares, allegedly knowing that a potential tender offer was on the horizon. Plaintiffs were allegedly harmed because they sold their shares for less than the market would have valued the shares at had the market had Defendants' knowledge. That Plaintiffs held other shares that increased in value due to the Defendants' attempts to acquire Allergan is irrelevant to whether Plaintiffs were harmed by Defendants' withholding of information. Defendants' arguments, construed in the most logical light, ultimately go more to the issue of how long after the close of the Class period and the disclosure of the material nonpublic information damages can continue to accrue, rather than the issue of whether Plaintiffs actually profited from the alleged scheme.

Further, other courts have declined to reach the issue of whether plaintiffs should be excluded from the class on the grounds that a plaintiff was a net "winner" at the class certification stage. *See In re Bank of Am. Corp. Sec., Derivative, & Employee Ret. Income Sec. Act (ERISA) Litig.*, 281 F.R.D. 134, 149 (S.D.N.Y. 2012) ("The ultimate issue of whether certain plaintiffs' losses are to be offset by any purported inflation of Merrill share prices need not be resolved at this time."). The Court is satisfied that the fact that Johnson and Ohio STRS may have made money as a result of the merger does not subject them to unique defense in relation to their insider trading claims such that they are rendered atypical.

Defendants' second argument against Ohio STRS's typicality is that Ohio STRS has "spoliated evidence." Opp'n at 15.  Specifically, Defendants argue that Ohio STRS's longstanding policy of requiring employees to save all documents for only ninety days and otherwise allowing employees to delete or discard documents may well amount to culpable spoliation. Shipely Decl. Ex. 13, 61:1–64:9.[4]

---

[4] Of note, under Ohio STRS's policy, employees are encouraged to mark for retention any document they perceive to be a "record" that needs to be saved. *See* Shipely Decl. Ex. 13, 61:1–64:9.

-10-

Defendants acknowledge that "[o]rdinarily, the destruction of documents in accord with a facially neutral document retention policy is not culpable spoliation." Opp'n at 16 (citing *Arthur Andersen LLP v. United States*, 544 U.S. 696, 704 (2005)). However, Defendants argue that because Ohio STRS is a frequent participant in securities litigation and because it has such an "aggressive" document destruction policy, its policy is improper. Opp'n at 15. Defendants also contend that Ohio STRS waited too long after deciding to participate in this litigation before saving all relevant documents, pointing out that Ohio STRS did not issue a litigation hold until a month after it moved to be appointed as lead plaintiff in this case. *Id.*

Defendants cite two cases for the proposition that destruction of documents under these circumstances under an otherwise neutral policy amounts to spoliation of evidence: *Hynix Semiconductor Inc. v. Rambus Inc.*, 897 F. Supp. 2d 939 (N.D. Cal. 2012), and *Micron Tech., Inc. v. Rambus Inc.*, 917 F. Supp. 2d 300 (D. Del. 2013). However, both these cases are distinguishable. In *Hynix*, the destruction of documents was part of the litigation plan and aimed at disposing of potentially harmful documents. *Hynix*, 897 F. Supp. 2d at 980–81. Likewise in *Micron*, the defendant considered its document destruction policy to be part of its litigation strategy, and came up with it in response to the threat of litigation. *Micron*, 917 F. Supp. 2d at 307–10. Here, there is no evidence of such willful wrongdoing.

Defendants also make the troubling accusation that because Ohio STRS failed to protect documents form destruction, critical documents—including any email or other internal communications regarding Ohio STRS class period sales of Allergan stock— where all destroyed. Opp'n at 16. Defendants suggest that this may be in part because Ohio STRS failed to follow up with its employees to ensure the litigation hold was respected. Opp'n at 16. Plaintiff has offered evidence neither of these accusations are accurate. Reply at 15–16. Specifically, Plaintiffs offered a declaration stating that Ohio STRS preserved all materials that were relevant as soon as the litigation hold went into effect. Declaration of Edward G. Timlin (Timlin Decl.) (Dkt. 266) ¶ 18. Further, Plaintiffs contend Ohio STRS has produced over 4,000 documents from within the class period and that it has produced sixty-two versions of its Large

-11-

Case 1:20-cv-22202-KMM Document 39-2 Entered on FLSD Docket 09/21/2020 Page 41 of 75
Case 8:14-cv-02004-DOC-RES Document 518 Filed 03/15/17 Page 12 of 27 Page ID
#:13799

Cap Analyst model, which guided its decisions to sell Allergan stock during the relevant period. *Id.* ¶¶ 6, 9, 11.

After the hearing, the Court asked Special Master Judge James Smith to help establish whether there was actually evidence of spoliation. Judge Smith concluded that there was not. Special Master Order No. 22 (Dkt. 317) at 2–3. Instead, he stated "Pershing's contentions in this regard are based upon its conclusions as to what it hoped for or believed it would receive from Ohio and not on any facts upon which the Court could conclude Ohio engaged in the intentional destruction of or non-production of documents Ohio was under a duty to produce." *Id.*

Accordingly, the Court is satisfied that the proposed class representatives are typical.

### 3. Adequacy of Named Representative under Rule 23(a)(4)

Due process requires that absent class members have an adequate representative. *See Hansberry v. Lee*, 311 U.S. 32, 43 (1940). An adequate representative is one who will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). A representative is adequate where: (1) there is no conflict of interest between the representative and its counsel and absent class members, and (2) the representative and its counsel will "pursue the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 120 (internal citations and quotations omitted). Defendants argue that the proposed Class representatives are inadequate due to intra-Class conflicts and that co-Class counsel Bernstein, Litowitz, Berger & Grossmann LLP ("BLB&G") is inadequate because of conflicts arising out of a prior putative class action it prosecuted. Opp'n 3–11.

### a. Plaintiffs' Adequacy

Plaintiffs argue that they are adequate representatives because they, like the rest of the Class members, were damaged when they sold their common stock during the Class period and therefore share the rest of the Class's interest in vigorously prosecuting this action. Mot. at 14. Further, Plaintiffs have submit declarations affirming their willingness to prosecute this action and pursue the interests of absent class members. Greenstein Decl. Exs. 3–5.

-12-

Case 1:20-cv-22202-KMM Document 39-2 Entered on FLSD Docket 09/21/2020 Page 42 of 75
Case 8:14-cv-02004-DOC-KES Document 518 Filed 03/15/17 Page 13 of 27 Page ID
#:13800

Defendants disagree that Plaintiffs are adequate, arguing that as to Plaintiffs' § 20A claims, the Plaintiffs' recovery is capped at the total profit made by Defendants as a result of the alleged insider trading. Opp'n at 4 (citing 15 U.S.C. §§ 78t-1(b)(1)). Defendants argue that this capped pool creates a zero-sum game, in which Plaintiffs are incentivized to sell each other out in order to amass a larger portion of the limited damages for themselves. *Id.* Specifically, Defendants contend Plaintiffs who traded late in the Class period are incentivized to argue that the Defendants took their first "substantial steps" to commence a tender offer under § 14e later in the class period, because the later the Court finds there were "substantial steps," the fewer plaintiffs there are to share in the capped recovery. Opp'n at 5. At oral argument Plaintiffs did also conceded that both their § 20A and § 14e claims would be capped at the Defendants' profits plus interest.

Defendants' arguments do not merely suggest that these Plaintiffs are not adequate representatives, but rather that this case is not suitable for class treatment at all because the conflict between class members is too deep. However, it has "repeatedly" been recognized that "intra-class conflicts relating to the times at which particular class members purchased their securities, and which could potentially motivate different class members to argue that the securities were relatively more or less inflated at different time periods, relate to damages and do not warrant denial of class certification." *In re Diamond Foods, Inc., Sec. Litig.*, 295 F.R.D. 240, 254–55 (N.D. Cal. 2013) (quoting *In re Connetics Corp. Sec. Litig.*, 257 F.R.D. 572, 578 (N.D. Cal. 2009)). Additionally, the Ninth Circuit has affirmed certification in the face of arguments by defendants that plaintiffs had countervailing interests regarding the level of price inflation at any given time. *Blackie v. Barrack*, 524 F.2d 891, 908 (9th Cir. 1975). The Circuit noted that any such conflict "is peripheral, and substantially outweighed by the class members' common interests." *Id.* at 909.

At oral argument, Defendants sought to distinguish these cases by arguing that in those cases the class members' interests diverged as to *damages*, whereas here they diverge as to *liability*. To elaborate on Defendants' arguments, in the above-cited cases the plaintiffs were competing over the amount of damages and each had incentive to maximize their recovery at

the expense of the other class members' recovery. However, here, Defendants point out that late-trading Plaintiffs may have an incentive to argue that substantial steps occurred later in order to limit competition for a limited damages pool, and thereby preclude *any* finding of liability for large swaths of early-trading Plaintiffs.

At the outset, the Court notes that the damages pool is calculated based on when a substantial step was taken, meaning that the later the first substantial step is found, the smaller the damages pool is. To illustrate the point, if a substantial step was taken on April 17, 2017 and not before, those class members that traded after April 17, 2017 can only recover the Defendants' gains from April 17 until the end of the class period. Accordingly, this situation does not present a true zero-sum game as the damages pool shrinks the later a substantial step is found. However, this alone does not resolve the issue.

Defendants' expert, Robert M. Daines, found that, due to varied trading rates both on the Defendants' end and on the market side, if substantial steps are found before the class period begins the Class members' receive a per-share recovery of approximately $7.85. Daines Decl. ¶ 26. However, if the first "substantial step" occurred during the Class period, the recovery per recovering Plaintiff could potentially be higher. For example, if the first "substantial step" occurred on April 11, 2014, then the per-share recovery for each share sold from April 11, 2014 through April 21, 2014, inclusive, would be $11.46. *Id.* This fact creates tension between early-trading and late-trading Plaintiffs.

Defendants cited several cases at oral argument for the proposition that the situation described above precludes certification: *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 (1997); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999); *Hesse v. Sprint Corp.*, 598 F.3d 581, 589 (9th Cir. 2010); *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013); and *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 959 (9th Cir. 2009). However, these cases are not analogous to the instant case. In these cases, the named plaintiff either had different claims from some of the class members, or was offered some incentive payment that caused their interests to diverge from that of the class members. Here, the Plaintiffs all have the identical claims and there is no indication that there has been any improper incentive scheme proposed to

the named Plaintiffs. Rather, some Plaintiffs could make out their claims on slightly different factual grounds than other Plaintiffs, and may have some incentive to make arguments that could disadvantage other Plaintiffs.

Ultimately, the Court does not find this tension fatal to class certification. The Class members' interest generally align because they all want to show that Defendants did take substantial steps. Further, the critical alleged substantial step is the Defendants entering into the Relationship Agreement. The Relationship Agreement laid out the Defendants' commitments to each other, purports to define how Allergan would be pursued, and was presumably the result of extensive negotiations and conversations between the Defendants. *See generally* The Relationship Agreement. The Relationship Agreement was entered into on February 25, 2014—the day the Class period began. *See id.* at 1. It is highly likely that the Class claims as to the existence of a substantial step will rise and fall on the jury's interpretation of the Relationship Agreement and its assessment of the negotiations and discussions that led to the Agreement. Therefore, the Class members' claims will likely fail or succeed together as the execution of the Relationship Agreement coincides with the beginning of the Class period.

Additionally, accepting Defendants' argument would result in double-digit numbers of subclasses, theoretically, each arguing for their own substantial step and attempting to undermine the substantial step proposed by the other subclasses. In absence of any indication that any Plaintiff wants to advance this argument, the Court sees no reason to introduce extensive chaos into this case. Accordingly, on this issue the Court finds that any conflict "is peripheral, and substantially outweighed by the class members' common interests." *Blackie*, 524 F.2d at 909.

Next, Defendants contend that there is a conflict between late and early sellers of the Allergan common stock because the material nonpublic information that Defendants had in their possession changed throughout the Class period. Opp'n at 5. Arguments about the shifting character of the material nonpublic information are really arguments to limit the Defendants' liability rather than arguments that truly touch on adequacy, and are more properly argued at

Case 1:20-cv-22202-KMM Document 39-2 Entered on FLSD Docket 09/21/2020 Page 45 of 75
Case 8:14-cv-02004-DOC-KES Document 518 Filed 03/15/17 Page 16 of 27 Page ID
#:13803

trial or summary judgment, rather than the class certification stage. Accordingly, the Court finds that these arguments do not show that Plaintiffs are inadequate representatives.

Finally, Defendants argue that the "contemporaneous trading" standing rule, applicable in insider trading cases, creates significant intra-Class conflicts. In support of this argument, Defendants cite *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997 (9th Cir. 2002). There, the panel rejected the plaintiffs' proposal that anyone who traded within two months of the illegal trades should be considered a contemporaneous trader. *Id.* at 1002. The panel explicitly found that it was not necessary to "define the exact contours" of a "contemporaneous trading period." *Id.* Instead, that court noted "that a contemporaneous trading period of two months would gut the contemporaneous trading rule's premise—that there is a need to filter out plaintiffs who could not possibly have traded with the insider, given the manner in which public trades are transacted." *Id.* Defendants argue this rule creates an incentive for Plaintiffs who traded simultaneously with the Defendants to narrow the window of contemporaneity down to seconds, while other class members will seek a period of a day. *See* Opp'n at 6–7.

Defendants' arguments on this point suggest that no securities class action would ever be certified unless the plaintiffs could conclusively show that each class member directly sold to the defendants or their agent—essentially imposing a proof of privity requirement. Case law forecloses this outcome. This Court has already determined, in this case, that sales within a day of the Defendants' acquisitions are sufficiently proximate to be considered contemporaneous. Order Denying Motion to Dismiss (Dkt. 102) at 15. This ruling is in line with other courts that have found trades within a week or more of a defendant's trades to satisfy the contemporaneity requirement. *See Middlesex*, 527 F. Supp. 2d. at 1196 (C.D. Cal. 2007) (finding eight days to be contemporaneous); *see also City of Westland Police & Fire Ret. Sys. v. Sonic Solutions*, No. C 07-0511 CW, 2009 WL 942182, at *12 (N.D. Cal. Apr. 6, 2009) (finding purchase of stock nine days after a sale was contemporaneous).

Nor does a close reading of *Brody* support the Defendants' argument. In *Brody*, the circuit said that insider trading rules are meant to protect investors who "traded with an insider or have traded *at about the same time* as an insider." *Brody*, 280 F.3d at 1005 (emphasis

added). Further, "it would make a mockery of the 'disclose or abstain' rule if we were to permit the fortuitous matching of buy and sell orders to determine whether a duty to disclose had been violated." *Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 495 F.2d 228, 236 (2d Cir. 1974). The Court rejects as unfounded Defendants' attacks on the proposed Class representatives' adequacy based on any incentive to narrow the window of contemporaneous trading.

Accordingly, the Court finds that the Plaintiffs are adequate representatives.

### a. Class Counsel's Adequacy

Plaintiffs argue that Class counsel is also adequate because they are experienced in securities litigation and have recovered billions of dollars on behalf of injured investors. Mot. at 15. Further, Plaintiffs cite Class counsel's vigorous prosecution of this case to date as further evidence of Class counsel's adequacy. *Id.*

Defendants do not oppose these arguments, but instead argue that co-lead counsel BLB&G has a conflict because of previous litigation in which BLB&G participated. Opp'n at 9–11. In 2014, BLB&G represented Allergan investors in a putative class action in the Chancery Court of Delaware (the "Delaware Action") seeking declaratory relief regarding Allergan's bylaws. *See* Shipley Decl. Ex. 7. PS Fund 1, as the holder of 9.7% of Allergan stock, was a member of the putative class in the Delaware Action, although not actually represented by BLB&G. Opp'n at 10.

The Delaware Action was filed in response to the Allergan Board's public interpretation of the company's bylaws as preventing the removal and replacement of all of the members of the Allergan Board at a single meeting. *See* Shipley Decl. Ex. 7 ¶¶ 2. The Complaint in that action noted the Board had "refused to engage with Pershing and Valeant," and had issued its interpretation of the bylaws "as a mechanism to prevent stockholders from forcing the recalcitrant Board's engagement with the high-premium, value-maximizing takeover proposal in the short-term through removal and replacement." *Id.* ¶ 63. However, the Complaint also said that while "[p]laintiffs take no position as to whether any stockholders should campaign to remove the entire Board, or whether the Pershing/Valeant takeover proposal is good for

-17-

stockholders," plaintiffs considered it "critical that the stockholders have unfettered access to all the mechanisms for corporate action afforded to them under the Certificate and the Bylaws." *Id.* ¶ 13.

These facts raise eyebrows as to BLB&G's adequacy—after all, BLB&G appears to have pursued a line of litigation on behalf of its former clients that could have helped the Defendants execute their takeover of Allergan. However, despite Defendants' efforts to suggest otherwise, BLB&G is in no way implicated in the insider trading scheme that Defendants are alleged to have undertaken.

The Court notes that Special Master Robert O'Brien has previously considered Defendants' arguments on this point and found no conflict. Special Master Order No. 5 ("Order No. 5") (Dkt. 222) at 9–14. In reaching that conclusion, the Special Master found: (1) while PS Fund 1's status as a putative class member in the Delaware Action and a Defendant here is a "factual oddity," it does not create any identifiable conflict; (2) there is no identified conflict of interest between the proposed class in the Delaware Action and the proposed Class here, and BLB&G never represented those classes simultaneously; and (3) BLB&G is not conflicted out simply because they might take different or inconsistent positions on behalf of their clients here than they did on behalf of their clients in the Delaware Action. *Id.* However, as the Special Master noted in his order, his findings on this point—while insightful and appreciated by the Court—were only made for the purposes of ruling on the discovery motion before him, and do not bind the Court in ruling on this class certification Motion. *Id.* at 9 n.4.

Defendants argue that BLB&G's participation in the Delaware Action will be relevant to Defendants' arguments that Defendants formulated the plan to commence a tender offer only in response to Allergan stockholders' demands that the Defendants employ more aggressive tactics to complete the takeover. Opp'n at 10. In particular, Defendants state they will introduce an email from BLB&G attorney Mark Lebovitch stating "[I] have now heard from other influential hedge funds who believe our theory works and may privately contact [P]ershing to urge them to go in for the kill shot." Opp'n at 10 (citing Shipley Decl. Ex 8). However, in context that email appears to be referencing hedge funds encouraging Pershing to attempt to

-18-

remove and replace all of the Allergan Board members in a single meeting, and does not indicate that BLB&G or hedge funds were urging Defendants to make a tender offer—making it likely the email is irrelevant to Defendants' defense. *See* Shipley Decl. Ex. 8.

Even assuming *arguendo* that the email is relevant to the Defendants' defense, if the email were admitted at trial, the Court could redact class counsel's name and merely state that this was an email sent by an attorney who was representing shareholders in a lawsuit seeking declaratory relief regarding the shareholders' right to remove the Allergan Board. Class counsel's personal identity and the identity of his firm is irrelevant to the weight and significance of the email—it would be the singular Orange County juror indeed who would already know anything about either Lebovitch or BLB&G. Therefore, at this time, the Court does not find a conflict between BLB&G or Lebovitch and the Class based on either BLB&G's participation in the Delaware Action or Lebovitch's email.

Accordingly, the Court finds that proposed Class counsel is adequate.

### 4. Commonality under Rule 23(a)(2)

The "commonality" prerequisite mandates that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality requires that the class's claims are based on a "common contention . . . capable of classwide resolution," meaning that determination of the "truth or falsity" of that contention "will resolve an issue that is central to the validity of [the class's] claims." *Wal-Mart*, 564 U.S. at 350.

The requirements of Rule 23(a)(2) have "been construed permissively," and just one common question of law or fact will satisfy the rule. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019. "The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion [predominance] requirements of Rule 23(b)(3)." *Id.*

Plaintiffs offer a host of common questions of law and fact:

Case 1:20-cv-22202-KMM Document 39-2 Entered on FLSD Docket 09/21/2020 Page 49 of 75
Case 8:14-cv-02004-DOC-KES Document 518 Filed 03/15/17 Page 20 of 27 Page ID
#:13807

(i) whether Defendants violated the federal securities laws; (ii) whether Pershing traded Allergan common stock while in possession of material nonpublic information; (iii) whether Valeant had the requisite knowledge regarding how Pershing would use the nonpublic information tipped by Valeant; (v) whether Valeant took "substantial steps" toward a tender offer; (vi) whether Pershing was an "other person" within the meaning of Rule 14e-3; (viii) the proper measure of damages; and (ix) whether Ackman, Pearson, Pershing Square, PS Management GP, LLC, and Pershing Square GP, LLC . . . were "control persons" within the meaning of §20(a).

Mot. at 9–10. The Court is satisfied that Plaintiffs have identified common questions of law and fact. Indeed, Defendants do not appear to dispute this, but instead argue that the common questions do not predominate as required for certification under 23(b)(3). *See* Opp'n at 17. The Court will address those arguments below.

### B. Rule 23(b)

After satisfying the requirements of Rule 23(a), the proposed class must also satisfy at least one of the three requirements listed in Rule 23(b). Here, Plaintiff seeks certification under Rule 23(b)(3). Mot. at 15. The Court has concluded that the prerequisites of Rule 23(a) are satisfied. Thus, the Court must determine if the requirements of Rule 23(b)(3) are met. Under Rule 23(b)(3), common questions of law or fact must predominate and the class device must offer a superior means of resolving the dispute. The Court must also consider whether Plaintiffs have shown that damages can be feasibly and efficiently measured.

#### 1. Predominance

"Rule 23(b)'s predominance criterion is even more demanding than Rule 23(a)." *Comcast Corp. v. Behrend,* 133 S. Ct. 1426, 1432 (2013). Rule 23(b) requires that courts "take a 'close look' at whether common questions predominate over individual ones." *Id.* The predominance inquiry "tests whether proposed class actions are sufficiently cohesive to warrant adjudication by representation." *Amchem,* 521 U.S. at 623. In determining whether common questions predominate, the Court identifies the substantive issues related to plaintiff's claims

Case 1:20-cv-22202-KMM Document 39-2 Entered on FLSD Docket 09/21/2020 Page 50 of 75
Case 8:14-cv-02004-DOC-KES Document 518 Filed 03/15/17 Page 21 of 27 Page ID
#:13808

(both the causes of action and affirmative defenses), and then considers the proof necessary to establish each element of the claim or defense; and considers how these issues would be tried. *See* Schwarzer, et al., Cal. Prac. Guide Fed. Civ. Pro. Before Trial Ch. 10–C § 10:412. The predominance inquiry requires that plaintiff demonstrate common questions predominate as to each cause of action for which plaintiff seeks class certification. *Amchem,* 521 U.S. at 620. "Because no precise test can determine whether common issues predominate, the court must pragmatically assess the entire action and the issues involved." *Romero v. Producers Dairy Foods, Inc.,* 235 F.R.D. 474, 489 (E.D.Cal. 2006).

Section 14(e) prohibits "fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer." Under Rule 14e-3(a), once an "offering person" "has taken a substantial step or steps to commence . . . a tender offer, . . . any other person who is in possession of material information relating to such tender offer" that he knows or has reason to know is nonpublic and that he received directly or indirectly from the offering person must either abstain from trading or disclose the information to the public before trading. 17 C.F.R. § 240.14e-3(a). Relatedly, Rule 14e-3(d) makes it unlawful for an "offering person" to communicate "material nonpublic information relating to a tender offer to any other person under circumstances in which it is reasonably foreseeable that such communication is likely to result in a violation of this section." 17 C.F.R. 240.14e-3(d).

Section 20A makes a person who violates the Exchange Act "by purchasing or selling a security while in possession of material nonpublic information" liable "to any person who, contemporaneously with the purchase or sale of securities that is the subject of such violation, has purchased . . . securities of the same class." 15 U.S.C. § 78t-1.

Here, the common questions concern whether Defendants violated the Exchange Act and, if so, whether such violations affected the price Class members sold their stock for. Courts have certified 23(b)(3) actions on similar common questions. *See In re Unioil Sec Litig.,* 107 F.R.D. 615, 622 (C.D. Cal.1985) ("As plaintiffs' claim is based on a common nucleus of misrepresentations, material omissions and market manipulations, the common questions predominate over any differences between individual class members with respect to damages,

-21-

Case 1:20-cv-22202-KMM Document 39-2 Entered on FLSD Docket 09/21/2020 Page 51 of 75
Case 8:14-cv-02004-DOC-KES Document 518 Filed 03/15/17 Page 22 of 27 Page ID
#:13809

causation or reliance."); *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138-VRW, 2007 WL 1991529, at *5 (N.D. Cal. June 30, 2007) (certifying a class where "the common questions concern whether defendants violated the Securities Act and, if so, whether such violations affected the price plaintiffs paid for [the] stock.") Showings of the critical elements of Plaintiffs' claims—including issues of substantial steps, material omissions, scienter, Pershing's status as an "other person," and violations of the duty to disclose of abstain—will be common to the whole Class. Defendants dispute this, citing the same arguments regarding individualized issues that the Court rejected above. *See* Opp'n at 17. The Court finds those arguments equally unconvincing in this context.

Defendants also argue that individual issues of reliance predominate, rendering this case unfit for class certification. *Id.* at 18. Where reliance is a required element, if no presumption of reliance applies, then every plaintiff must prove direct reliance and individual issues overwhelm common ones. *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2407–8 (2014). In response, Plaintiffs contend that reliance is not an element of §14(e) or Rule 14e-3 claims. Reply at 17. Further, Plaintiffs contend that the Class's reliance is assumed under *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), and under the fraud-on-the-market presumption under *Basic Inc. v. Levinson*, 485 U.S. 224 (1988). Finding that the *Affiliated Ute* presumption applies, the Court does not reach the argument for the fraud-on-the-market presumption.

*Affiliated Ute* holds that in cases "involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery." 406 U.S. at 153. Instead, it is necessary only that "the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision." *Id.* at 153–54. This is a case involving a duty to disclose—accordingly *Affiliated Ute* applies. Further, as to materiality, "[a] failure of proof on the *common* question of materiality ends the litigation and thus will never cause individual questions of reliance or anything else to overwhelm questions common to the class." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013). Accordingly, Plaintiffs need not show materiality at the class certification stage. *Id.*

Defendants appear to concede that the *Affiliated Ute* presumption applies here, but argue that they can rebut the presumption. Opp'n at 20. It is true that the *Affiliated Ute* presumption is rebuttable rather than conclusive. *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 159 (2008). While the Supreme Court has not addressed whether a party is entitled to rebut the *Affiliated Ute* presumption at the class certification phase, the Supreme Court has found that the fraud-on-the-market presumption is rebuttable, reasoning that "an indirect proxy should not preclude direct evidence when such evidence is available." *Halliburton*, 134 S. Ct. at 2415. The Court agrees with Defendants that this reasoning strongly suggests that a defendant should be entitled to attempt to rebut the *Affiliated Ute* presumption, which is itself a proxy, at the class certification phase.

Defendants attempt to the refute the *Affiliated Ute* presumption by arguing that evidence shows that the alleged material nonpublic information regarding Valeant's intent to make a tender offer had no effect on Allergan's stock price. Opp'n at 19–20. Defendants cite no authority that this showing would rebut the *Affiliated Ute* presumption. Further, this argument is not squarely on point with *Affiliated Ute*, as *Affiliated Ute* did not rely on an assumption that the market in question was efficient. In any event, the Court is unconvinced by Defendants' arguments. Defendants' arguments center on the fact that when Valeant explicitly mentioned a tender offer, and later made a tender offer, the stock price was unaffected. *See* Opp'n at 18–19. However, the material information may be "relating" to a tender offer and need not be literally the fact of a tender offer. *See* 17 C.F.R. § 240.14e-3 (a). Plaintiffs cite evidence that after the April 21, 2014 announcement of Valeant's intent to acquire Allergan the stock price did spike, Greenstein Decl. Ex. 9, and Plaintiffs contend that this disclosure was in connection with an ultimate plan to make a tender offer—and Plaintiffs offer evidence that the market understood it that way too. Daines Decl. ¶ 37 n.47 (noting analyst speculated that "a tender offer may be launched"); Declaration of Eil Greenstein in Support of Reply ("Greenstein Reply Decl.") (Dkt. 268) Ex. 12 at 1 ("VRX/Pershing might have to launch a tender offer for AGN's shares.").

Defendant also seeks to rebut the *Affliated Ute* presumption by arguing that the Plaintiffs each admitted that they would have traded as they did even if they had the same information as

Case 1:20-cv-22202-KMM Document 39-2 Entered on FLSD Docket 09/21/2020 Page 53 of 75
Case 8:14-cv-02004-DOC-RES Document 518 Filed 03/15/17 Page 24 of 27 Page ID
#:13811

Pershing. Opp'n at 20. The Court has reviewed the portions of the deposition testimony that Defendants cite in support of this argument. Defendants use highly creative inferences and assumptions to construct concrete admissions out of vague, abstract statements. The Court does not agree that Ohio STRS or Johnson admitted they would have sold even if they had known about Valeant's plans, especially in light of the fact that both Plaintiffs said the *exact opposite* during depositions. Shipley Decl. Ex. 5 at 129:1–13 (Ohio STRS analyst testifying that "if I had known what Mr. Ackman had known, I would not have sold the stock"); *id.* Ex. 12 (Johnson stating that had he known of Valeant's intentions, "I would absolutely not have exercised these options").

The IPERS investment manager testified that when a cash withdrawal was made, the management company would liquidate the stocks in proportion to IPERS's total holding of the stock, rather than based on any analysis of the market and the stocks IPERS held. *Id.* Ex. 15 at 66:21–70:6. However, the vast majority of IPERS's trades during this period where not made due to these models. Accordingly the Court is satisfied that individual reliance can likely be presumed.

Next, Defendants contend that Plaintiffs have failed to demonstrate a viable methodology for calculation of damages that can produce a class-wide result, as required under *Comcast Behrend*, 133 S. Ct. 1426 (2013). Opp'n at 21 (citing *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1167 (9th Cir. 2014)). Defendants note that Plaintiffs have stated they intend to calculate damages based a "common formula that measures the difference between the selling price actually received and the true value of the shares had there been no material omissions and misconduct by Defendants." *Id.* at 21–22 (quoting Greenstein Decl. Ex. 10 ("Expert Report of Mukesh Bajaj") ¶¶ 68–69). Defendants contend that this "formula" for calculating damages is at such a high level of generality that it is not a meaningful methodology. Opp'n at 22.

However, the Supreme Court has endorsed similar damages calculations. *See Affiliated Ute*, 406 U.S. at 155 ("In our view, the correct measure of damages . . . is the difference between the fair value of all that the . . . seller received and the fair value of what he would have received had there been no fraudulent conduct."). Further, the Ninth Circuit has dismissed

any concerns about damages calculations in a similar context, stating "the amount of price inflation during the period can be charted and the process of computing individual damages will be virtually a mechanical task." *Blackie*, 524 F.2d at 905.

Therefore, the Court finds that common questions of law and fact predominate.

### 2. Superiority

The second prong of the analysis under Rule 23(b)(3) also requires a finding that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). A class action is superior "[w]here classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino*, 97 F.3d at 1234. "[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy. Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).

Defendants argue against superiority by pointing out that 92% of Allergan's shares during the Class period were owned by institutional investors who sold such a large number of stocks that they are sufficiently incentivized to pursue individual recovery. Opp'n at 23–24. However, absent class resolution, the courts could be called on to adjudicate more than 1,000 individual damages claims based on the same underlying conduct. "[E]ach member of the class pursuing a claim individually would burden the judiciary, which is contrary to the goals of efficiency and judicial economy advanced by Rule 23." *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 486–87 (C.D. Cal. 2012). Further, individualized actions could well leave thousands of retail investors—the other 8% of Allergan's shareholders—without any recovery, which the Court finds weighs in favor of a finding of superiority. Further, the Court does not foresee difficulties in management that would preclude class-wide resolution or undermine other gains in judicial efficiency.

Accordingly, the Court concludes superiority is established.

## C. Due Process Argument and Rule 19 Motion

Finally, in their Opposition to Class Certification and in a separate Motion to Dismiss, Defendants argue that the proposed Class cannot be certified and the action should be dismissed because the Class includes only those who sold Allergan *common stock* and not those who traded other price-interdependent derivative securities. Opp'n at 24–25; *see generally* MTD. Defendants argue that these other traders are necessary parties under Federal Rule of Civil Procedure 19(a)(1)(B)(i).

Plaintiffs have conceded that recovery by anyone against the Defendants is capped at the Defendants' gains—meaning that if Plaintiffs here succeed in recovering all of Defendants gains, there will be nothing left for other parties who were also harmed by the Defendants' actions. However, Plaintiffs have also shown that other courts have certified § 20A classes that exclude options traders. Reply at 25 (citing *S.A.C Capital*, 311 F.R.D. at 373 (ADR purchasers and sellers); *In re Bridgepoint, Educ., Inc. Sec. Litig.*, 2015 U.S. Dist. LEXIS 5137, at *10–12 (S.D. Cal. Jan. 15, 2015) (common stock purchasers); *Johnson*, 257 F.R.D. at 596 (C.D. Cal. 2009) (same); *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 42, 53–54 (S.D.N.Y. 2012) (same)). Defendants contend that be that as it may, there are no reasoned decisions certifying classes under § 14e. However, the §20A cases cited above also dealt with a damages cap and those courts did not require that every conceivable plaintiff be joined in those cases. *See* 15 U.S.C. §§ 78t-1(b)(1).

Further, in the Ninth Circuit "[w]here a party is aware of an action and chooses not to claim an interest, the district court does not err by holding that joinder was 'unnecessary.'" *Altmann v. Republic of Austria*, 317 F.3d 954, 971 (9th Cir. 2002). Defendants state that there is insufficient evidence to show that the derivative sellers of Allergan stock during the class period are aware of this litigation, and that this rule therefore does not apply to these circumstances. MTD Reply at 9. This point is well taken. While there likely are many derivative sellers who are aware of this $2 billion class action, there are surely others who are not. However, Plaintiffs at oral argument made the point that derivative sellers can also be given notice the same time the Class members are given notice of this lawsuit meaning they

will have notice and opportunity to intervene or bring their own claims before the case is resolved. This procedure is proper, because not every party need be joined under Rule 19 before a class action can be properly certified. *See Shimkus v. Gersten Companies*, 816 F.2d 1318, 1321 (9th Cir. 1987) (finding that a "class was properly certified," although parties ultimately did need to be added under Rule 19).

Accordingly, the Court DENIES WITHOUT PREJUDICE Defendants Motion to Dismiss.

## IV. DISPOSITION

For the reasons explained above, the Court GRANTS Plaintiffs' Motion for Class Certification and DENIES Defendants' Motion to Dismiss.

_David O. Carter_

DAVID O. CARTER
UNITED STATES DISTRICT JUDGE

DATED: March 15, 2017

-27-

# Exhibit G

# STULL, STULL & BRODY
## ATTORNEYS AT LAW

**New York Office:**
6 EAST 45TH STREET
Fifth Floor
NEW YORK, NY  10017
Telephone: (212) 687-7230
Telecopier: (212) 490-2022

**BEVERLY HILLS OFFICE:**
8383 Wilshire Blvd.
Suite 800
Beverly Hills, CA 90211
Telephone: (323) 456-8638
Telecopier: (323) 456-8601

## BRIEF BIOGRAPHY OF STULL, STULL & BRODY

For more than forty five years, Stull, Stull & Brody's ("SS&B") high-quality legal representation has been nationally recognized.

SS&B's efforts were recognized by a late member of the United States Congress, the Representative Paul E. Gillmor, Rep. Ohio 5th District.  As The Honorable Congressman Gillmor wrote in connection with *In re Merck & Co., Inc. Securities, Shareholder Derivative and ERISA Litig.,* Case No 3:05-CV-01151 (MDL 1658):

> I was one of the court appointed lead plaintiffs in *In re Safety-Kleen Rollins Shareholders Litigation*, Civil Action No. 3:00-CV1343-17, which was pending before Judge Joseph Anderson in the District of South Carolina.  In that case, which alleged, among other things, violation of the Securities Exchange Act of 1934, I and the other court appointed lead plaintiffs selected Stull, Stull & Brody to be one of the lead counsel for the plaintiffs.  That case resulted in a settlement recovery for the class of a very substantial portion of the money that could have been recovered if the case had gone to trial net of fees, expenses and administration fees.
>
> During the course of that litigation, which lasted for about five years, Stull, Stull & Brody kept me apprised of all significant developments in the action such as class certification, settlement negotiations, litigation strategy, pending motions, court rulings and trial preparation.  I would regularly speak to counsel by telephone at which time the foregoing topics would typically be discussed and I would have the opportunity to ask questions and provide input.

(Letter from Rep. Paul E. Gillmor of January 2, 2007, annexed hereto)

Based upon SS&B's results, the "Top 100 Settlements Semi-Annual Report" for the second half of 2012, which "identifies the largest securities class action settlements filed after the passage of the Private Securities Litigation Reform Act of 1995, ranked by the total value of the settlement fund[,]" shows that SS&B ranked in the top ten in a section that lists the law firms that served as lead or co-lead counsel for each litigation in the Top 100 settlements and identifies the most frequent lead or co-lead counsel appearing in the Top 100 settlements.

Indeed, SS&B has earned a national reputation for the zealous representation of plaintiffs in complex litigations, including securities class actions, ERISA actions and consumer class actions. SS&B has litigated hundreds of cases achieving an aggregate of more than two billion dollars in recoveries for aggrieved class members. SS&B's skill and expertise are demonstrated by its results, recovering at least $100 million for aggrieved investors while serving in a leadership role in each of the following class actions:

- *In re Merck & Co., Inc., Sec., Derivative & "ERISA" Litig.,* MDL No. 1658 (SRC), Case No. 2:05-CV-01151-SRC-MF (D.N.J.); Case No. 2:05-CV-02367-SRC-MF (D.N.J.) (recovery of $1.062 billion).

- *In re Initial Public Offerings Securities Litig.*, 21 MC 92 (S.D.N.Y. 2009) (recovery of $586 million; SS&B served on plaintiffs' executive committee)

- *In re BankAmerica Corp. Securities Litig.*, MDL No. 1264 (E.D. Mo. 2002) (recovery of $490 million, which at that time was the highest ever securities settlement in a case without an institutional lead plaintiff)

- *In re Geodyne Resources, Inc. Securities Litig.* (S.D.N.Y and Harris County Tex.) (recovery of $125 million cash plus an additional $75 million of contingent benefits)

- *In re Computer Associates Sec. Litig.*, Master File No. 98-CV-4839 (TCP) (E.D.N.Y. 2003) (recovery of 5.7 million shares valued at $133.5 million)

- *Spahn v. Edward D. Jones & Co., L.P.*, 04-CV-00086 (E.D. Mo. 2007) (recovery of $72.5 million in credits for current Edward Jones customers and $55 million in cash for former Edward Jones customers. In addition, defendants paid class notice and settlement administration costs)

- *In re Peregrine Systems, Inc. Sec. Litig.*, Civil Action No. 02-CV-870 J (RBB) (S.D. Ca. 2006, S.D. Ca. 2009) (recovery of $117.5 million)

- *In re American Express Financial Advisors Sec. Litig.*, 04-CV-1773 (S.D.N.Y.) (recovery of $100 million in cash and implementation of significant remedial measures. In addition, defendants paid an estimated $15 to $18 million for class notice and settlement administration costs)

- *In re Ikon Office Solutions, Inc. Sec. Litig.*, MDL No. 1318 (E.D. Pa. May 9, 2000) (recovery of $111 million, the then-largest ever securities settlement in the Eastern District of Pennsylvania)

- *In re AOL Time Warner ERISA Litig.*, Civil Action No. 02 CV 8853 (SWK) (S.D.N.Y.) (recovery of $100 million in cash to the company's 401(k) plan in what the court noted was "one of the largest ERISA settlements to date")

- *In re Salomon Brothers Treasury Litig.*, Consolidated Action No. 91 Civ. 5471 (RPP) (S.D.N.Y. 1994) (recovery of $100 million)

SS&B maintains offices in Manhattan and California, enabling the firm to efficiently handle litigations on a nationwide basis.  Due to the consistency and seniority of its attorneys, including attorneys who have been with the firm for more than twenty years, SS&B is able to leverage its vast experience efficiently and effectively to achieve favorable results on behalf of class members in many cases.  SS&B's lawyers possess outstanding credentials and the firm has received numerous acknowledgements for its achievements.

SS&B's expertise has also been recognized by the following courts: *In re Frontier Group Insurance, Inc. Sec. Litig.*, 172 F.R.D. 31 (E.D.N.Y. 1997); *In re Allegheny International Inc. S'holder Litig.*, 86-835 (W.D. Pa.) (Order, December 10, 1987, Diamond J.); *Zucker v. United States Steel*, C-1-79-588 (S.D. Ohio) (Order, October 14, 1981, Rubin, C.J.); *Friedman v. Colgate Palmolive*, 80 Civ. 2340 (CPS) (E.D. N.Y.) (Order, June 16, 1981, Sifton, J.); *Zuckerman v. Sparton*, G79-457-C.A. (W.D. Mich.) (Opinion and Order, April 14, 1981, Fox, J.); *Mottoros v. Abrams*, 524 F. Supp. 254 (N.D. Ill. 1981); *Koenig v. Smith*, 79 C 452 (ERN) (E.D.N.Y.) (Memorandum Opinion and Order, December 3, 1980, Neaher, J.); *Koenig v. Kenneally*, 79 Civ. 0487 (LBS) (S.D.N.Y.) (Opinion No. 49289, November 5, 1979, Sand, J.); *In Re Commonwealth Oil-Tesoro Petroleum Sec. Litig.*, MDL No. 347 (Order, July 24, 1979, Higginbotham, J.); *Wietschner v. McCulloch*, CV 78-4036-RMT (C.D. Ca.) (Order, June 29, 1979, Takasugi, J.); *Fruchthandler v. LTV Corp.*, 77C 1879 (E.D.N.Y.) (Order, May 10, 1978, Nickerson, J.); *Lewis v. Adikes*, 76 F.R.D. 68 (E.D.N.Y. 1977); *Lewis v. Black*, [1976-77 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 95,738 (E.D.N.Y. 1976) (Mishler, C.J.); and *Fruchthandler v. Blakely*, 73 F.R.D. 318 (S.D.N.Y. 1976).

## SEMINAL CASES

Throughout its 40 year history, SS&B has been involved with a number of seminal cases that have significantly affected the landscape of securities litigation.

- ♦ In *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633 (2010), in a case brought on behalf of investors in Merck securities alleging that they were defrauded due to misrepresentations made by Merck, the United States Supreme Court issued a ruling making it easier for defrauded investors to file actions claiming violation of the Securities Exchange Act of 1934 by holding that the statute of limitations does not begin to run until the investor should have known that a materially false statement was knowingly or recklessly made.

- ♦ In *Rand v. Monsanto Company*, 926 F.2d 596 (7th Cir. 1991), the firm appeared on behalf of the plaintiff in a landmark decision establishing the principle that a class representative plaintiff need not be willing to bear all of the class' costs in an action to satisfy the adequacy of representation requirement of Federal Rule of Civil Procedure 23.

- ♦ In *In re Lucent Technologies, Inc. ERISA Litig.*, Civil Action No. 01-cv-3491 (JAP) (D.N.J. 2005), the firm was largely responsible for a frequently-cited district court decision that denied defendants' motion to stay the ERISA litigation until a related

3

securities class action was resolved.  SS&B's briefing in opposition to the stay motion highlighted the significant differences between ERISA and securities class actions, even when those actions involve the same factual issues.  The court ruled that "resolution of the securities class action . . . will not necessarily resolve all issues in this matter" and "[t]he legal issues here will still have to be determined, and a stay or continuance shall not change that fact."

♦ In *Small v. Fritz Companies Inc.*, 30 Cal. 4th 167 (2003), the firm successfully argued before the California Supreme Court that a non-trading shareholder has the right to sue a corporation for damages where the shareholder relies on false financial statements issued by the corporation.  The decision represented a significant change in legal doctrine and was widely heralded as a potent new weapon for investors.

♦ In *Howard v. Everex*, 228 F.3d 1057 (9th Cir. 2000), SS&B successfully advocated that a corporate officer can be liable in a private anti-fraud action for signing a document filed with the SEC that he knows (or is reckless in not knowing) contains misrepresentations, even if the officer was not involved in preparing the document.  The Ninth Circuit decision was a precursor to Section 302(a) of the Sarbanes-Oxley Act of 2002 which now requires corporate officers that sign documents filed with the SEC to certify the accuracy of information therein.

♦ In *Lewis v. Black*, 74 F.R.D. 1 (E.D.N.Y. 1975), the firm established that neither the personality nor the motive of a proposed class representative was determinative of whether he would provide vigorous advocacy on behalf of the class, thereby preventing defendants from compelling representatives to respond to questions regarding motives and actions in past cases.

♦ In *In re Cabletron Systems, Inc. Sec. Litig.*, 311 F.3d 11 (1st Cir. 2002), the firm was instrumental in obtaining a reversal of a district court order dismissing a complaint under the pleading requirements of the Private Securities Litigation Reform Act.  This case established in the First Circuit that plaintiffs are not required to name confidential sources in a complaint.

♦ In *In re Frontier Group Insurance Litig.*, Master File No. 94 Civ. 5213 (E.D.N.Y. 2002), the firm was instrumental in defeating a *Daubert* challenge, thereby enabling the expert to testify as to aggregate damages based on the use of a trading model.

♦ In *Harman v. Lyphomed, Inc.*, 122 F.R.D. 522 (N.D. Ill. 1988), the firm established the applicability of the fraud-on-the-market theory of reliance for stocks trading on the NASDAQ.

♦ The firm was instrumental in establishing new law on fraud-on-the-market theory in *Finkel v. Docutel/Olivetti Corp.*, 817 F.2d 356 (5th Cir. 1987), *cert. denied*, 485 U.S. 959 (1988), and *Mottoros v. Abrams*, 524 F. Supp. 254 (N.D. Ill. 1981).

4

♦ In *In re Wilmington Trust Corp. ERISA Litig.*, 2013 U.S. Dist. LEXIS 125891 (D. Del. Sept. 4, 2013), among the first reported decisions of its kind, the court granted plaintiffs' motion to proceed without class certification, allowing plaintiffs to represent all participants in an ERISA plan because of the derivative nature of ERISA's fiduciary duties.

Serving in a leadership role, SS&B has obtained more than two billion dollars on behalf of class members. A sampling of such cases includes:

## <u>Settled Securities and Antitrust Class Action Cases</u>

♦ *In re Merck & Co., Inc., Sec., Derivative & "ERISA" Litig.,* MDL No. 1658 (SRC), Case No. 2:05-CV-01151-SRC-MF (D.N.J.); Case No. 2:05-CV-02367-SRC-MF (D.N.J.) (recovery of $1.062 billion).

♦ *In re Initial Public Offerings Sec. Litig., 21 MC 92 (S.D.N.*Y.) (recovery of $586 million, SS&B served on Plaintiffs' Executive Committee)

♦ *In re BankAmerica Corp. Sec. Litig.*, MDL No. 1264 (E.D. Mo.) (recovery of $490 million)

♦ *In re Geodyne Resources, Inc. Sec. Litig.* (S.D.N.Y and Harris County Tex.) (recovery of $125 million cash settlement plus contingent benefits of additional $75 million)

♦ *In re Computer Associates Sec. Litig.*, Master File No. 98-CV-4839 (TCP) (E.D.N.Y.) (recovery of 5.7 million shares valued at $133.551 million))

♦ *Spahn v. Edward D. Jones & Co., L.P.*, 04-CV-00086 (E.D. Mo.) (recovery of $72.5 million in credits for current Edward Jones customers and $55 million in cash for former Edward Jones customers.  In addition, defendants paid an estimated $15 to $18 million for class notice and settlement administration costs)

♦ *In re Peregrine Systems, Inc. Sec. Litig.*, Civil Action No. 02-CV-870 J (RBB) (S.D. Ca.) (recovery of $117,567,922)

♦ *In re American Express Financial Advisors Sec. Litig.*, 04-CV-1773 (S.D.N.Y.) (recovery of $100 million in cash and implementation of significant remedial measures.   In addition, defendants paid all class notice and settlement administration costs, which is estimated to be $15 to 18 million)

♦ *In re Ikon Office Solutions, Inc. Sec. Litig.*, MDL No. 1318 (E.D. Pa.) (recovery of $111 million)

♦ *In re Salomon Brothers Treasury Litig.*, Consolidated Action No. 91 Civ. 5471 (RPP) (S.D.N.Y. 1994) (recovery of $100 million)

♦ *In re Priceline.com, Inc. Sec. Litig.*, Master File No. 3:00CV01884 (AVC) (D. Conn.) (recovery of $80 million)

♦ *In re Westinghouse Sec. Litig.,* Civil Action No. 91-354 (W.D. Pa.) (recovery of $67.25 million)

♦ *Bachman v. AG Edwards, Inc.*, Cause No. 22052-01266-02 (Mo. Cir. Ct.) (recovery of $60 million)

♦ *In re Thomas & Betts Sec. Litig.*, Case No. 00-2127 (W.D. Tenn.) - related case: *Pifko v. KPMG LLP*, Civ. Action No. 01-CV-2553 (W.D. Tenn.) (recovery of $51.15 million)

♦ *In re Tenneco Inc. Sec. Litig.*, Civ. Action No. H-91-2010 (S.D. Tex.) (recovery of $50 million)

♦ *In re Apria Healthcare Group Sec. Litig.*, Master File No. 797060 (Cal. Super. Ct, Orange Cty) (recovery of $42 million)

♦ *Levitan v. McCoy, Jr.*, Case No. 00 C 5096 (N.D. Ill.) *(recovery of $39.9 million)*

♦ *In re Cannon Group Sec. Litig.*, 86-5559-WMB (JRx) (C.D. Ca.) (recovery of $33 million)

♦ *Teichler v. DSC Communications Corp.*, CA 3-85-2005-T (N.D. Tex.) (recovery of $30 million)

♦ *Berger v. Compaq Computer Corp.*, Civ. Action No. 98-1148 (S.D. Tex.) (recovery of $28.65 million)

♦ *In re: Northeast Utilities Sec. Litig.*, Civil Action No. 397 CV 00189 AVC (D. Ct.) (recovery of $25 million)

♦ *Lasky v. Brown (United Companies Financial Corp.) Sec. Litig.*, Civil Action No. 99-1035-B-M2 (M.D. La.) (recovery of $20.5 million)

♦ *Lasker v. Kanas* (North Fork Bancorporation), Index No. 103557/06 (NY Sup. Ct.) (recovery of $20 million and other consideration)

♦ *Feinberg v. Hibernia Corp.*, Civil Action No. 90-4245 (E.D. La.) (recovery of $20 million)

♦ *In re Dreyfus Aggressive Growth Mutual Fund Litig.*, Master File No. 98 Civ. 4318 (HB) (S.D.N.Y.) (recovery of $18.5 million)

♦ *In re Rambus, Inc. Sec. Litig.*, Master File No. C-06-4346-JF (N.D. Cal.) (recovery of $18.33 million)

6

- *In re C.R. Bard, Inc. Sec. Litig.*, Master File No. 90-948 (AMW) (D.N.J.) (recovery of $17.9 million)

- *Spring v. Continental Illinois Corp.*, 84 C 4648 (N.D. Ill. 1987) (recovery of $17.5 million)

- *In re Rhythms Sec. Litig.*, Civil Action No. 02-K-35 (GCL) (D. Co.) (recovery of $17.5 million)

- *Morse v. Abbott Laboratories*, C.A. No. 90 C 1982 (N.D. Ill.) (recovery of approximately $14 million on a claims-made basis.  SS&B served as co-lead trial counsel in representing a class of purchasers of common stock of Abbott Laboratories.  On March 15, 1994, the jury returned a verdict in favor of the plaintiff class in the amount of $15,279,219.  The case was settled during the pendency of post-trial motions.)

- *In re Green Tree Financial Corp. Stock Litig.*, Master File No. 97-2666 (JRT/RLE) (D. Minn.) (recovery of $12.45 million)

- *In re Elscint Sec. Litig.*, Civ. Action No. 85-2662-K (D. Mass.) (recovery of $12 million)

- *In re National Medical Enterprises Sec. Litig. II*, Case No. CV 93-5224 TJH (Bx) (C.D. Ca.) (recovery of $11.65 million)

- *Bash v. Diagnostic, Inc.*, Civil Action No. 94-784 (D.N.M.) (recovery of $10.7 million)

- *In re Cybermedia, Inc. Sec. Litig.*, Master File No. 98-1811CBM (Ex) (C.D. Ca.) (recovery of $10.5 million)

- *In re Cabletron Systems, Inc. Sec. Litig.*, C 97-542 (D.R.I.) (recovery of $10.5 million)

- *In re Physicians Corp. of America Sec. Litig.*, Case No. 97-3678-CIV (S.D. Fla.) (recovery of $10.2 million)

- *In re Complete Management Inc. Sec. Litig.*, Master File No. 99 Civ. 1454 (NRB) (S.D.N.Y.) (recovery of $10.15 million)

- *In re U.S.A. Detergent Sec. Litig.,* 97-CV-2459 (D.N.J.) (recovery of $10 million)

- *In Re: Biopure Corp. Sec. Litig.*, Docket No. 03-CV-12628 (NG) (D. Mass.) (cash recovery of $10 million)

- *In re Nice Systems, Ltd. Sec. Litig.*, Master File No. 2:01 CV 737 (Judge Greenaway) (D.N.J.) (recovery of $10 million)

7

♦ *Harman v. Lyphomed*, 88 C 476 (N.D. Ill.) (recovery of $9.99 million)

♦ *In re Beverly Enterprises, Inc. Sec. Litig.*, Master File No. CV 88-01189-RSWL (Tx) (C.D. Ca.) (recovery of $9.975 million)

♦ *Bharucha v. Reuters Holdings PLC,* Case. No. 90-cv-03838 (E.D.N.Y.) (recovery of $9.5 million)

♦ *Greenfield v. Compuserve Corp.*, Case No. 96-CV-06-4810 (Franklin County, Ohio) (recovery of $9.5 million)

♦ *In re Stratosphere Sec. Litig.*, Master File No. CV-S-96-00708-PMP (RLH) (D. Nev.) (recovery of $9 million)

♦ *In re Steven Madden Ltd. Sec. Litig.*, No. 00-CV-3676 (JG) (E.D.N.Y.) (recovery of $9 million)

♦ *In re Gibraltar Financial Corp. Sec. Litig.*, CV 87-07876 MRP (Gx) (C.D. Ca.) (recovery of $8.5 million)

♦ *In re FHP Sec. Litig.*, Master File No. SACV 91-580-GLT (RWRx) (C.D. Ca.) (recovery of $8.25 million)

♦ *Zucker v. Maxicare Health Plans, Inc.*, Case No. 88-02499-LEW (Tx) (C.D. Ca.) (recovery of $8.1 million)

♦ *In re Orion Pictures Corp. Sec. Litig.*, Master File No. 91 CV 1903 (CBA) (E.D.N.Y.) (recovery of $8 million)

♦ *Berlinsky v. Alcatel*, 94-CIV-9084 CBM (S.D.N.Y.) (recovery of $8 million)

♦ *In re Triton Energy Corp. Sec. Litig.*, Master File No. 3:92-CV-1069-H (N.D. Tex.) (recovery of $8 million)

♦ *Ganesh v. Computer Learning Center*, Civil Action No. 98-CV-00859 (E.D. Va.)(recovery of $7.5 million)

♦ *In re Metris Companies, Inc. Sec. Litig.*, Civil Action No. 02-CV-3677 JMR/FLN (D. Minn.) (recovery of $7.5 million)

♦ *In re Cityscape*, CV 97 5668 (E.D.N.Y.) (recovery of $7 million)

♦ *In re Dime Savings Bank of New York Sec. Litig.*, MDL Docket No. 846 (E.D.N.Y.) (recovery of $6.8 million)

♦ *In re Western Digital Sec. Litig.*, SACV 91-375(A) GLT (RWRx) (C.D. Ca.) (recovery of $6.75 million)

8

♦ *In re Bank of New England Corp. Class Action and S'holder Litig.*, C.A. Nos. 89-2582-S, 89-2811-S (D. Mass.) (recovery of $6.5 million)

♦ *Bobbitt v. Andrew J. Filipowski,* No. 06-11072-PBS (D. Mass.) (recovery of $6.3 million)

♦ *In re Berkshire Realty Company, Inc. S'holder Litig.*, C.A. No. 17242 (Del. Ch.) (recovery of $6.25 million)

♦ *Gerstein v. Micron Technology, Inc.,* Civil No. 89-1262 (D. Id.) (recovery of $6 million)

♦ *In re Ziff-Davis, Inc. Sec. Litig.*, Master File No. 98-CIV-7158 (SWK) (S.D.N.Y.) (recovery of $6 million)

♦ *Dynegy Inc. v. Bernard V. Shapiro*, No. 2002-00080 (129th Judicial District, Harris Cty, TX) (recovery of $6 million)

♦ *In re FleetBoston Financial Corp. Sec. Litig.*, Civ. No. 02-4561 (WGB) (D.N.J.) (recovery of $5.5 million)

♦ *In re Ascend Communications Sec. Litig.*, Case No. 97-9376 MRP (AN) (C.D. Ca.) (recovery of $5.45 million)

♦ *Miller v. International Murex Technologies Corp.*, Civ. No. 93 Civ. 336 (E.D.N.Y.) (recovery of $5.4 million)

♦ *In re Brightpoint, Inc. Sec. Litig.*, Case No. IP 01 1796 C-T/K (recovery of $5.25 million)

♦ *Kushner v. Wang Laboratories*, Civil Action No. 89-1963-Y (D. Mass.) (recovery of $5 million)

♦ *In re SouthEast Banking Corp. Sec. Litig.*, Master File No. 90-0760-CIV-MOORE (S.D. Fla.) (recovery of $5 million)

♦ *Wells v. Southmark Corp.*, CA3-85-1518-G (N.D. Tex.) (recovery of $5 million)

♦ *In Re: Interlink Electronics Inc. Sec. Litig.*, 05-CV 08133 (AG) (SH) (C.D. Cal.) (recovery of $5 million)

♦ *Chilton v. Smith Barney Fund Management LLC*,1:05-cv-07583-WHP (S.D.N.Y.) (recovery of $4.95 million)

♦ *In re Regeneron Pharma., Inc. Sec. Litig.,* Civil Action No. 03 CV 311 (RWS) (S.D.N.Y.) (recovery of $4.7 million)

♦ *In re Sunglass Hut Intl., Inc. Sec. Litig.*, Case No. 97-0191-CIV-MOORE (S.D. Fl.) (recovery of $4.5 million)

- *Clive T. Miller v. Apropos Technology, Inc.*, No. 01 C 8406 (N.D. Ill.) (recovery of $4.5 million)

- *In re Fidelity Holdings Sec. Litig.*, Case No. CV 00 5078 (CPS) (VVP) (E.D.N.Y.) (recovery of $4.45 million)

- *Adam Burstyn v. Worldwide Xceed Group, Inc.*, Case No. 01 CV 1125 (GEL) (S.D.N.Y.)(recovery of $4.4 million)

- *In re NetEase.com Sec. Litig.*, Civil Action No. 01-CV-9405 (RO) (S.D.N.Y.) (recovery of $4.35 million)

- *In re Flextronics, Inc. Sec. Litig.*, No. C-03-2102 PJH (N.D. Ca.) (recovery of $4.25 million)

- *Schaffer v. Timberland Co.*, 94-634-JD (D.N.H.) (recovery of $4.2 million)

- *In re HMO America Sec. Litig.*, Civ. No. 92 C 3305 (CPK) (N.D. Ill.) (recovery of $4 million)

- *In re Nanophase Technologies Corp. Sec. Litig.*, Case No. 98 C 3450 (N.D. Ill.) (recovery of $4 million)

- *In re Quintex Sec. Litig.*, Master File No. CV-89-6182-R (C.D. Ca.) (recovery of $4 million)

- *Walsingham v. Biocontrol Tech. Inc.*, Civil Action No. 96-809 (W.D. Pa.) (recovery of $3.7 million)

- *In re Irvine Sensors Corp. Sec. Litig.*, Master File No. SA 02-00159 GLT (MLGx) (C.D. Ca.) (recovery of $3.5 million)

- *Miller v. Material Sciences Corp.*, Civil Action No. 97-CV-2450 (N.D. Ill.) (recovery of $3.25 million)

- *In re iTurf Inc. S'holder Litig.*, Consolidated Civil Action No. 18242 NC (Del. Ch.) (recovery of $3.25 million)

- *In re Safety Kleen Rollins S'holder Litig.*, Case No. 3:00-1343-17 (D.S.C.)(recovery of $3.15 million)

- *In re Kay Jewelers Sec. Litig.*, Civil Action No. 90-1663A (E.D. Va.) (recovery of $3 million)

- *Clarkson v. Greyhound Lines, Inc.*, 96-11329-C (Dist. Ct., Dallas Cty, Tex.) (recovery of $3 million)

- *In re TwinLab Corp. Sec. Litig.*, Master File No. 00-CV-6975 (DRH) (E.D.N.Y.) (recovery of $3 million)

10

- *In re Spectrian Corp. Sec. Litig.*, Master File No. C-97-4672-CW (N.D. Ca.) (recovery of $2.975 million)

- *In re Arotech Corp. Sec. Litig.*, Master File No. 07-CV-1838 (E.D.N.Y.) (RJD) (VVP) (recovery of $2.9 million)

- *In re Mutual Funds Investment Litig.*, MDL 1586, Case No. 04-MD-15863 (JFM) (D. Md.); *Parthasarathy v. RS Investment Management, L.P.*, Case No. 04-cv-3798-JFM (D. Md.) (recovery of $2.83 million)

- *Moriarty v. Molina*, Case No. 99-0255-CIV-MORENO (S.D. Fla. 2003) (recovery of $2.8 million)

- *In re Peritus Software Services, Inc. Sec. Litig.*, Civ. Action No. 98CV10955 WGY (D. Mass.) (recovery of $2.8 million)

- *In re 2TheMart.com, Inc. Sec. Litig.*, Case No. 99-1127 DOC (ANx) (C.D. Ca.) (recovery of $2.7 million)

- *McBride v. Vision Twenty-One, Inc.,* Case No. 99-138-CIV-T-25F (M.D. Fl.) (recovery of $2.5 million)

- *In re Pharmaprint Inc. Sec. Litig.*, Civ. No. 00-61 (AJL) (D.N.J.) (recovery of $2.3 million)

- *In Re: Columbia Entities Litig.*, 04-CV-11704 (D. Mass.) (settled for a reduction in the overall rate charged as advisory fees (i.e., "breakpoints) when a mutual funds advised by the advisers reach certain levels of assets under management, enhanced shareholder communications, and a $100,000 contribution to research expenses for the benefit of the settling funds).

### **Settled ERISA Cases**

- *In re AOL Time Warner ERISA Litig.*, Civil Action No. 02 CV 8853 (SWK) (S.D.N.Y.) (recovery of $100 million in cash to the company's 401(k) plan in what the court noted was "one of the largest ERISA settlements to date")

- *In re Global Crossing Ltd. ERISA Litig.*, Master File No. 02-cv-7453 (GEL) (S.D.N.Y.) (recovery of $79 million in cash to the company's 401(k) plan; SS&B served as liaison counsel))

- *Overby v. Tyco International, Ltd.*, Case No. 02-CV-1357-B (D.N.H.) (recovery of $70.525 million in cash to the company's 401(k) plan; over 80 million pages of discovery were produced to counsel and over 250 days of deposition were taken)

11

♦ *In re Lucent Technologies, Inc. ERISA Litig.*, Civil Action No. 01-cv-3491 (JAP) (D.N.J.) (recovery of $69 million in cash and stock to the company's 401(k) plan)

♦ *In re WorldCom, Inc. ERISA Litig.*, Master File No. 02-4816 (DLC) (S.D.N.Y.) (recovery of $47.15 million in cash to the company's 401(k) plan; SS&B served as local counsel)

♦ *Harrington v. Household International, Inc.*, Civil Action No. 02 C 8257 (SY) (N.D. Ill.) (recovery of $46.5 million in cash to the company's 401(k) plan)

♦ *National City Corp. Sec., Derivative & ERISA Litig.*, 1:08-cv-07000-PAG (N.D. Ohio) (recovery of $43 million in cash to the company's 401(k) plan)

♦ *In re Cardinal Health, Inc. ERISA Litig.*, No. C2-04-643 (ALM) (S.D. Ohio) (recovery of $40 million in cash to the company's 401(k) plan)

♦ *Zilhaver v. UnitedHealth Group, Inc.*, Case No. 06-cv-2237 (JMR) (D. Minn.) (recovery of $17 million in cash to the company's 401(k) plan)

♦ *In re Sears, Roebuck & Co. ERISA Litig.*, No. 02 C 8324 (JWD) (N.D. Ill.) (recovery of $14.5 million in cash to the company's 401(k) plan)

♦ *Kenney v. State Street Corp*, No. 09-10750-PBS (D. Mass.) (recovery of $10 million in cash to the company's 401(k) plan)

♦ *Russell v. Conseco Services, LLC* 1:02-cv-1639-LJM (S. D. Ind.) (recovery of $9.975 million in cash to the company's 401(k) plan)

♦ *In re 2014 Avon Products, Inc. ERISA Litig.*, 1:14-cv-10083-LGS (S.D.N.Y) (recovery of $6.25 million in cash to the company's 401(k) plan is pending preliminary approval)

♦ *In Re SunTrust Banks, Inc. ERISA Litigation*, Docket No. 1:08-cv-03384-RWS (N.D. Ga. Oct 31, 2008) (recovery of $4.75 million in cash to the company's 401(k) plan)

♦ *In re: Diebold ERISA Litig.*, Case No. 06-cv-00170 (SEL) (N.D. Ohio) (recovery of $4.5 million in cash to the company's 401(k) plan)

♦ *In re Sprint Corp. ERISA Litig.*, Master File No. 2:03-CV-02202-JWL (D. Kan.) (recovery of $4 million in cash to the company's 401(k) plan, and increased benefits to participants in the company's 401(k) plans including: increased vesting of employee accounts; increased company matching of employer contributions; participant-friendly plan amendments; and improved participant communications)

♦ *Walter v. Level 3 Communications, Inc.*, 1:09-cv-00658-REB (D. Colo.) (recovery of $3.2 million in cash to the company's 401(k) plan)

♦ *In Re: Wilmington Trust Corp. ERISA Litig.,*1:11-cv-00101-SD (D. Del.) (recovery of $3 million in cash to the company's 401(k) plan and recognizing that "SS&B's ERISA litigation experience, particularly litigation appearing similar to the issue at bar, indicates extensive experience and knowledge of applicable law.")

♦ *Griffin v. Flagstar Bancorp, Inc.*, 2:10-cv-10610-PDB-MKM (E.D. Mich) (recovery of $3 million in cash to the company's 401(k) plan, representing 85% of likely recoverable damages, was recognized as "excellent" by the court)

♦ *Lipman v. Terex Corp.*, 3:10-cv-00006-RNC (D. Conn.) (recovery of $2.5 million in cash to the company's 401(k) plan)

SS&B's advocacy in these and other ERISA actions, which have been brought on behalf of 401(k) retirement plan participants and beneficiaries, has also yielded new law in the ERISA field, including the *Lucent* and *Wilmington Trust* opinions cited in the Seminal Cases section above.

## Settled Consumer Class Action Cases

♦ *Szymczak v. Nissan North America Inc.*, 10-cv-07493-VB (S.D.N.Y.)(recovery including cash and direct monetary benefits of over $14 million on behalf of multi-state nationwide class of car owners of certain Nissan vehicles for damage to vehicles' transmissions caused by leaking radiator fluid)

♦ *Lubitz, et al. v. DaimlerChrysler Corp.*, BER-L-4883-04 (NJ Super., Bergen Cty) (recovery valued at $14.5 million to owners of Jeep Grand Cherokees, model years 1999 through 2004 for defective brake assemblies on behalf of a nationwide settlement class)

♦ *In re: The Home Depot, Inc. Data Security Breach Litig.*, Case No.: 1:14-md-02583-TWT (N.D. Ga) (SS&B served as a member of the court appointed Consumer Plaintiffs' Steering Committee, recovery of $13 million to the settlement class and provision for 18 months of Identity Guard® Essentials monitoring services for settlement class members who had information compromised, plus attorneys' fees, costs, and expenses and Home Depot the costs of notifying the class and administering the settlement)

♦ *In Re Anthem, Inc. Data Breach Litig.*, Case No. 15-MD-02617-LHK (N.D. Ca.) (SS&B developed unique claims on behalf of current and former federal employees in a massive data breach of health insurer Anthem, Inc. and its multiple state subsidiaries involving theft of Anthem insureds' PHI and PII, including social security numbers and medical records; a proposed settlement between the

13

plaintiffs and Anthem set up a $115 million settlement fund and required Anthem to enhance its cybersecurity)

♦ *Spillman v. Hiko Energy, LLC*, Docket No. 651798/2015 (N.Y. Sup Ct. May 21, 2015) (recovery of $2.1 million as part of *Chen v. Hiko Energy LLC,* Case No. 7:14-cv-01771 (SDNY))

## Settled Derivative Cases

♦ *In re Trump Hotels S'holder Derivative Litig.*, 98-Civ-7820 (GEL) (S.D.N.Y.) (recovery of assets for corporation valued at approximately $10 million)

♦ *Esther Sadowsky Testamentary Trust v. Brendsel (Federal Home Loan Mortgage Corp.)*, 05-cv-2596 (S.D.N.Y.) (recovery of approximately $100 million for the company as well as significant corporate governance measures)

♦ *In re Bank of New York Corporate Derivative Litig,*, Index No. 604465/99 (Sup. Ct. NY) (recovery of $26.5 million for the company and the adoption of significant corporate governance measures)

♦ *In re FirstEnergy S'holder Derivative Litig.*, 03-CV-1826 (N.D. Oh.) (recovery of approximately $25 million for the company and the adoption of significant corporate governance measures)

♦ *In re Hewlett-Packard Company Derivative Litig.*, 1:06-cv-071186 (Cal. Super. Ct., Santa Clara County), 2426-VCN (Del. Ch.) (resulted in numerous widespread and substantial corporate governance changes directed toward HP's code of business ethics and guidelines were implemented as a result of a derivative action stemming from the board of directors' alleged leak of an investigation that ultimately led to the firing/resignation of various high level officers and directors of HP.)

♦ *Molloy v. Boynton*, No. 3:17-cv-01157-TJC-MCR (S.D. Fl.) (alleging wrongful demand refusal on behalf of holders of Rayonier, Inc.) (settlement effecting significant corporate governance measures was approved)

♦ *In re Emerson S'holder Litig.,* 87-CV-4046 (JBW) (E.D.N.Y.) (recovery of $7.5 million for the company and the adoption of significant corporate governance measures)

♦ *Gallic v. Appelbaum*, 3:06-cv-5523-FLW-TJB (D.N.J.) (recovery for the company of $1,387,471 as a repayment for backdated stock options received; repricing of stock options worth potentially $8,113,847; and significant corporate governance changes designed to strengthen the granting of, and accounting for, stock options)

♦ *Hirt v. United States Timberlands Serv. Co., LLC*, C.A. No. 19575 (Del. Ch.) (recovery for the company of $3.1 million in the form of an offer increase of about 9%, from $2.75 per partnership unit to $3.00 per partnership unit)

14

♦ *In re Foundry Networks, Inc. Deriv. Litig.*, 1:06-cv-068878 (Cal. Super. Ct., Santa Clara Cty) (recovery for the company of $2.1 million, repricing of certain allegedly backdated stock options, and significant corporate governance reforms)

♦ *Lasker v. Massengill (In re State Court Western Digital Corp. Deriv. Litig.)*, 06-CC-00159 (Cal. Super. Ct., Orange Cty) (recovery of $522,680 for the company and significant corporate governance changes designed to strengthen its granting of, and accounting for, stock options)

♦ *In re Titan Corp. Derivative Litig.*, GIC 832018 (Cal. Super. Ct., San Diego Cty) (recovery of increased merger consideration from $22.76 to $23.10 per share of Titan common stock, a reduction in the termination fee; and, additional disclosures relating to the merger)

♦ *Ekas v. Burris (Citrix Systems, Inc.)*, 07-016114-11 (Fla. Cir. Ct., Broward Cty) (resulted in significant corporate governance changes designed to strengthen the granting of, and accounting for, stock options)

♦ *In Re Jabil Circuit Options Backdating Litig.*, 06-CV-01257 (M.D. Fla.) (resulted in significant corporate governance changes designed to strengthen the granting of, and accounting for, stock options)

♦ *Edelstein v. Brodie,* Case No. 3:07-cv-00596-FLW-JJH (D.N.J.) (resulted in significant corporate governance changes designed to strengthen the granting of, and accounting for, stock options)

♦ *Soojian v. Jacobs f/b/o Royal Dutch Petroleum Company*, No. 04-cv-4160 (D.N.J.) (resulted in the adoption of significant corporate governance changes)

## Attorneys

The below sets forth basic educational information and select legal experience for SS&B attorneys in the New York and Beverly Hills offices.

## New York Office

**Jules Brody** was named by *Super Lawyers* magazine as a Super Lawyer in 2010, 2013, and 2014. Mr. Brody is a graduate of Brooklyn College, magna cum laude, and received his LL.B. from the New York University School of Law in 1964. Mr. Brody was named to the Dean's List and was an editor of the Law Review. Mr. Brody was the author of "The Equitable Power to Assess Counsel Fees" which was published in the New York University Intramural Law Review in May 1964. At NYU, Mr. Brody was a John Norton Pomeroy Scholar and received the American Jurisprudence Prize in Commercial Law and graduated in the top 10% of his class. He was admitted to the New York State Bar in 1964. Mr. Brody received his LL.M. in taxation from the graduate division of the NYU School of Law in 1967. Mr. Brody is also admitted to practice before the United States District Court for the Southern and Eastern Districts of New York, the United States

15

Court of Appeals for the Second, Fourth and Fifth Circuits, and has been specially admitted to practice before various U.S. District Courts throughout the United States.

**Howard T. Longman** was named by *Super Lawyers* magazine as a Super Lawyer in 2014-2017. Mr. Longman who grew up in Virginia, received his undergraduate degree from the University of Virginia and his J.D. from New York Law School in 1982. Mr. Longman is a member of the New York and New Jersey State Bars and has also been admitted to practice before the United States District Court for the Southern and Eastern Districts of New York and other courts around the country on a *pro hac vice* basis. Some of the notable cases which Mr. Longman developed from inception and acted as co-lead counsel or in a lead role through conclusion include: *In Re Peregrine Sec. Litig.*, Civil Action No. 02-CV-870 J (RBB) (S.D. Ca.) (recovery of $117,567,922); *In Re Rambus Sec. Class Action Litig.*, Master File No. C-06-4346-JF (N.D.Ca.) ($18 million settlement); *In Re Biopure Sec. Litig.*, 1:03-cv-12628-NG( D. Mass.)($10 million settlement*); In re Geodyne Sec. Litig.*, Harris County Texas (No. 94-052860) and in the Southern District of New York (Master File 94 Civ. 8547 (SHS)) ($125 million cash settlement plus contingent benefits of additional $75 million); *In Re Dreyfus Aggressive Growth Mutual Fund Litig.*, Master File No. 98 Civ. 4318 (HB) (S.D.N.Y.) ($18.5 million settlement resulting in a recovery to class members of over 80% of class members' losses); and *Szymczak v. Nissan North America Inc.,*10-cv-07493-VB (S.D.N.Y.) (*co-lead counsel in case which resulted in cash recovery and direct monetary benefits valued at over $14 million obtained on behalf of a multi-state nationwide class of owners and leasees of certain Nissan vehicles with damage to transmissions as the result of radiator fluid leakage).

**Patrick Slyne** received his J.D. from the University of Wyoming in 1988. He is a member of the Colorado, Connecticut, New York and Wyoming state bars, and is admitted to practice before the United States District Courts for Wyoming, Connecticut, Eastern District of New York, and Southern District of New York, and the United States Court of Appeals for the First Circuit and Ninth Circuit. Notable cases for which Mr. Slyne had substantial responsibility include: *In re Hewlett-Packard Co. Deriv. Litig.* (Del. 2008) (conferred substantial benefit on HP through corporate governance changes to improve the functioning, interaction and working relationships among senior HP officers and outside members of the HP board of directors); *Esther Sadowsky Testamentary Trust v. Brendsel (Federal Home Loan Mortgage Corporation)* (S.D.N.Y. 2006) (assisted Freddie Mac in securing $100 million cash from D&O carriers and $9 million cash from certain counter parties for alleged breaches of fiduciary duties in accounting for and reporting of complex multi-billion dollar derivatives transactions); *In re Computer Associates Sec. Litig.* (E.D.N.Y. 2003) (recovered 5.7 million CA shares worth $133.551 million for alleged improper revenue recognition on multi-year enterprise software license contracts); *In re IKON Office Solutions, Inc. Sec. Litig.* (E.D. Pa. 2000) (recovered $111 million cash for alleged misrepresentation of earnings and prospects in office equipment leasing and services business); *In re Westinghouse Sec. Litig.* (W.D. Pa. 1999) (recovered $67.25 million cash for alleged overstatement of financial position due to unrecognized losses in real estate portfolios); *In re Salomon Brothers Treasury Litig.* (S.D.N.Y. 1994) (recovered $100 million cash for alleged manipulation of public market prices of U.S. Treasury

16

securities); *In re Tenneco Inc., Sec. Litig. (*S.D. Tex. 1992) (recovered $50 million cash for alleged overstatement of financial results for failure to mark-to-market dealer inventories of heavy machinery and equipment).

**Aaron L. Brody** received his undergraduate degree, *summa cum laude*, in 1990, and his J.D. from New York University School of Law in 1995.  At NYU, Aaron Brody concentrated on securities law and was a staff editor on the Review of Law and Social Change.  Aaron Brody is a member of the New York State Bar and is admitted to practice before the United States District Courts for the Southern and Eastern Districts of New York.  Cases in which Aaron Brody had substantial responsibility include: *In re Initial Public Offerings Sec. Litig.* (recovery of $586 million); *In re BankAmerica Corp. Sec. Litig.*, MDL No. 1264 (recovery of $490 million); *Spahn v. Edward D. Jones & Co. L.P.*, 04-CV-00086 (recovery of $127.5 million); and *In re American Express Financial Advisors Sec. Litig.*, Civil Action No. 04-CV-1773 (S.D.N.Y.) (recovery of $118 million).

**Tzivia Brody** received her undergraduate degree, *magna cum laude*, in 1992, and her J.D. from the Benjamin M. Cardozo School of Law in 1995.  Ms. Brody is a member of the New York State Bar and is admitted to practice before the United States District Court for the Southern and Eastern Districts of New York. Cases in which Ms. Brody had substantial responsibility include *In re Computer Associates Sec. Litig.*, (recovery estimated at $133.551 million) and *In re Ikon Office Solutions, Inc. Sec. Litig.* (recovery of $111 million).

## California Office

**Patrice L. Bishop** received her undergraduate degree from New York University and her J.D. from Loyola Law School - Los Angeles in 1994.  Ms. Bishop is a member of the California State Bar and is admitted to practice before the Supreme Court of the United States, United States District Courts for the Northern, Central, Southern and Eastern Districts of California, the Northern and Central Districts of Illinois, and the United States Court of Appeals for the Second, Eighth and Ninth Circuits. Ms. Bishop has been with the firm for over 20 years. During that time, among other cases, Ms. Bishop was one of the two primary attorneys from SS&B who worked as court appointed co-lead counsel on *In Re Peregrine Sec. Litig.,* Southern District of California (recovery of $117,567,922), on behalf of shareholders alleging violations of, *inter alia*, Section 11 of the Securities Act and Section 14(a) of the Exchange Act.  She was also the lead attorney in *In re Metris Companies, Inc. Sec. Litig., District of Minnesota* (recovery of $7.5 million), taking nearly every percipient and expert witness deposition for plaintiffs and making nearly every argument in court.  Her work *in Kimeldorf, et al. v. First Union Real Estate Equity and Mortg. Inv., et al.* resulted in a temporary restraining order and preliminary injunction restraining a proposed merger, and significantly enhanced terms for preferred shareholders.  She has also participated, including examining and cross-examining witnesses, in two separate trials, each over six weeks long, in cases brought under the federal securities laws.

PAUL E. GILLMOR
5TH DISTRICT, OHIO

COUNTIES: ASHLAND (PART), CRAWFORD,
DEFIANCE, FULTON, HENRY, HURON, LUCAS (PART),
MERCER (PART), PAULDING, PUTNAM, SANDUSKY, SENECA,
VAN WERT, WILLIAMS, WOOD, WYANDOT (PART)

DEPUTY MAJORITY WHIP



## Congress of the United States
### House of Representatives
Washington, DC 20515–3505

January 2, 2007

COMMITTEE ON ENERGY AND COMMERCE

SUBCOMMITTEES:
ENVIRONMENT AND HAZARDOUS MATERIALS
CHAIRMAN
TELECOMMUNICATIONS AND THE INTERNET
HEALTH

COMMITTEE ON FINANCIAL SERVICES

SUBCOMMITTEES:
CAPITAL MARKETS, INSURANCE AND
GOVERNMENT SPONSORED ENTERPRISES
FINANCIAL INSTITUTIONS AND CONSUMER CREDIT

**Via Federal Express and ECF**
The Honorable Stanley R. Chesler
United States District Judge
Martin Luther King, Jr. Federal Building
        and United States Courthouse
50 Walnut Street
Newark, NJ  08608

Re:  In re Merck & Co, Inc., Securities, Shareholder Derivative and ERISA Litig.
        (MDL 1658); Case No. 3:05-cv-01151 SRC-MF

Dear Judge Chesler:

I was one of the court appointed lead plaintiffs in *In re Safety-Kleen Rollins Shareholders Litigation*, Civil Action No. 3:00-CV1343-17, which was pending before Judge Joseph Anderson in the District of South Carolina.  In that case, which alleged, among other things, violation of the Securities Exchange Act of 1934, I and the other court appointed lead plaintiffs selected Stull, Stull & Brody to be one of the lead counsel for the plaintiffs.  That case resulted in a settlement recovery for the class of a very substantial portion of the money that could have been recovered if the case had gone to trial, net of attorneys fees, expenses and administrate fees.

During the course of that litigation, which lasted for about five years, Stull, Stull & Brody kept me apprised of all significant developments in the action such as class certification, settlement negations, litigation strategy, pending motions, court rulings and trial preparation.  I would regularly speak to counsel by telephone at which time the foregoing topics would typically be discussed and I would have the opportunity to ask questions and provide input.

Respectfully submitted,

Paul E. Gillmor