**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:20-cv-22202-KMM

IN RE CARNIVAL CORP. SECURITIES
LITIGATION.
                                                                    /

**OMNIBUS ORDER**

THIS CAUSE came before the Court upon (1) Plaintiffs New England Carpenters Pension and Guaranteed Annuity Funds and the Massachusetts Laborers' Pension and Annuity Funds' ("Funds") Motion for Appointment as Lead Plaintiff, Approval of their Selection of Counsel, and Consolidation of Related Actions ("Funds' Mot.") (ECF No. 23), and (2) Non-Party Abraham Atachbarian's ("Atachbarian") Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel of an Options Class or Subclass ("Atachbarian's Mot.") (ECF No. 39).[1]  The Funds and Atachbarian filed memorandums in support of their respective Motions and responses in opposition to each other's Motions.  (ECF Nos. 23-1, 30, 33, 39-1, 40).  The Motions are now ripe for review.

**I.    BACKGROUND**

On January 28, 2020, Carnival Corporation ("Carnival") filed its annual report on Form 10-K for the fiscal year ending November 30, 2019 with the Securities and Exchange Commission

---

[1] Also before the court are motions to be appointed lead plaintiff by Plaintiffs Joseph Fuscaldo, Stephen Harris, LiUNA Pension Fund of Central and Eastern Canada, and Roy and Joan McCarroll. (ECF Nos. 18, 20, 21, 25).  However, each of these Plaintiffs subsequently filed notices of non-opposition to competing bids for appointment as lead plaintiff, or abandoned their motions. (ECF Nos. 26, 28, 38); *Teran v. Subaye, Inc.*, 11 Civ. 2614(NRB), 11 Civ. 3886(NRB), 2011 WL 4357362, at *2 n.2 (S.D.N.Y. Sept. 16, 2011) (finding that a potential lead plaintiff that failed to submit an opposition or reply brief "presumably [] abandoned the motion").  Accordingly, Joseph Fuscaldo, Stephen Harris, LiUNA Pension Fund of Central and Eastern Canada, and Roy and Joan McCarroll's motions to be appointed lead plaintiff (ECF Nos. 18, 20, 21, 25) are DENIED AS MOOT.

("SEC"). ("Compl.") (ECF No. 1 ¶ 4). The report chronicled Carnival's commitment to "compliance culture," and stated that Carnival had followed and was following all appropriate and required safety measures. *Id.* ¶¶ 27–29. The report made no mention of inadequate measures to protect passengers from the burgeoning COVID-19 pandemic. *Id.* Also on January 28, 2020, Carnival announced the resignation of a director of Carnival and a member of Carnival's Health, Environmental, Safety and Security committees, effective January 27, 2020. *Id.* ¶ 4. Accordingly, the report did not bear that director's signature. *Id.*

Between February 5, 2020, and April 16, 2020, several of Carnival's cruise ships underwent quarantines in relation to the global spread of COVID-19. *Id.* ¶¶ 5–6. Between February 12, 2020 and March 19, 2020, Carnival published several press releases related to the COVID-19 pandemic and its impact on Carnival's operations. *Id.* ¶¶ 33–38. Carnival did not disclose that COVID-19 diagnoses were rising on Carnival's active cruise ships, or that Carnival had failed to adhere to regulations and safety protocols in handling these outbreaks. *Id.* ¶ 39.

Bloomberg Businessweek published an article on April 16, 2020, revealing "that Carnival may have failed to adequately protect passengers from COVID-19 on a series of cruise voyages, and indeed continued to operate . . . despite its knowledge that the threat posed by COVID-19 had materialized on its ships." *Id.* ¶ 40. Additionally, the Bloomberg Businessweek article "intimated" that Carnival executives were aware of such failures and failed to disclose them in the 2019 annual report. *Id.* ¶ 42. Two weeks later, the Wall Street Journal published an article connecting Carnival's cruise ships to the global spread of COVID-19 and providing "new facts on early warning signs Carnival . . . possessed and the Company's disclosure failures." *Id.* ¶ 44. Carnival's share price fell after Bloomberg Businessweek's and the Wall Street Journal's revelations. *Id.* ¶¶ 43, 46.

On May 27, 2020, Plaintiff Service Lamp Corporation Profit Sharing Plan filed the Complaint pursuant to the Private Securities Litigation Reform Act ("PSLRA"), on behalf of itself and all other persons and entities similarly situated, alleging that Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"). *See generally* Compl. On July 6, 2020, the Court consolidated *Elmensdorp v. Carnival Corp.*, No. 1:20-cv-22319-KMM with the instant case. (ECF No. 10). Plaintiffs of this consolidated action all are holders of common stock of Carnival. *Id.*

On July 21, 2020, Atachbarian filed a class-action complaint on behalf of himself and all others similarly situated against Defendants based on the same facts and alleging the same securities violations ("Atachbarian Action"). *See generally Atachbarian v. Carnival Corp.*, No. 1:20-cv-23011-KMM (S.D. Fla.). The Atachbarian Action Plaintiffs are sellers of put contracts and purchasers of calls option for shares of Carnival. *See generally* (Atachbarian ECF No. 1).[2]

The instant Motions concern whether the Atachbarian Action should be consolidated with the instant case and which Plaintiff should be appointed lead plaintiff pursuant to the PSLRA.

## II.     LEGAL STANDARD

Class actions brought pursuant to the Exchange Act are governed by the PSLRA. 15 U.S.C. § 78u-4. The PSLRA requires the Court to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of the class members." 15 U.S.C. § 78u-4(a)(3)(B)(i); *see also Mulvaney v. Geo Grp., Inc.*, No. 16-cv-81494-MIDDLEBROOKS, 2016 WL 10519276, at *1–2 (S.D. Fla. Nov. 21, 2016). Any plaintiff that (1) filed the complaint or made a motion for appointment as lead plaintiff, (2) has the largest financial interest in the claim, and (3) otherwise satisfies Federal Rule of Civil

---

[2] References to docket entries in the Atachbarian Action are noted as "Atachbarian ECF No. __"

Procedure 23's requirements, is the presumptive lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii); *Dillard v. Platform Spec. Prods. Corp.*, No. 16-cv-80490-MIDDLEBROOKS, 2016 WL 10586300, at *2 (S.D. Fla. June 30, 2016). This presumption can only be rebutted by another member of the purported plaintiff class with proof that the presumptive lead plaintiff either (1) "will not fairly and adequately protect the interests of the class; or [(2)] is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Kabak as Tr. of Stephen Kabak & Joy Schary Living Tr. v. Becton, Dickinson and Co.*, 20-2155 (SRC), 2020 WL 3056281, at *2 (D.N.J. June 9, 2020) (quoting 15 U.S.C. § 78u-4(a)(3)(b)(iii)(II)) (internal quotation marks omitted); *Mulvaney*, 2016 WL 10519276, at *1.

If any party moves to consolidate a separate action on behalf of a class alleging substantially similar claims under the PLSRA, the Court must determine whether consolidation is appropriate before appointing lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(ii). Rule 42(a) of the Federal Rules of Civil Procedure allows the Court to consolidate actions having common questions of law or fact. Fed. R. Civ. P. 42(a). Consolidation under the PSLRA is advised where "more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed." 15 U.S.C. § 78u-4(a)(3)(A)(ii). A court should consider whether the risk of inconsistent judgments on parallel factual and legal issues, the burden on the parties, and inefficient use of resources in keeping the cases separate outweighs the risks of prejudice and potential confusion in consolidation. *In re Sunbeam Sec. Litig.*, No. 98-8258-CIV, 1998 WL 1990884, at *2 (S.D. Fla. Dec. 4, 1998).

**III.   DISCUSSION**

The Funds argue that the Court should consolidate the Atachbarian Action with the instant case. *See* (ECF No. 23-1 at 17–19) (arguing that the cases "present virtually identical factual and

legal issues" and noting that "courts have repeatedly rejected the notion that potential differences in the nature of the investment justifies separate treatment"). Atachbarian objects to consolidation because purchasers and sellers of contracts for shares "have different interests than . . . common shareholders." (ECF No. 30 at 8). Further, Atachbarian argues that the instant case's notice only identified "those who *purchased* or otherwise *acquired* the securities of Carnival" but not those who sold put options. (ECF No. 33 at 2).

As to the appointment of lead plaintiff, the Funds argue that they are the most adequate Plaintiff under § 78u-4(a). Specifically, they contend that they "incurred losses of approximately $5.7 million" on their relevant transactions. (ECF No. 23-1 at 8). Further, the Funds argue that their claims are "based on the same legal theories and arise from the same events and course of conduct" as claims typical of the class, and that they are "exactly the type of investors Congress sought . . . to encourage to lead securities class actions." *Id.* at 9–11. Atachbarian does not dispute these arguments. But, despite both the Funds' arguments that they are the most adequate plaintiffs, and Atachbarian's general objection to consolidation, Atachbarian moves for consolidation on the condition that Atachbarian be appointed co-lead plaintiff of a sub-class of option holders and put sellers. *See* (ECF No. 39-1 at 10).

### A. Consolidation is Appropriate

Because the PSLRA requires resolution of consolidation motions before lead plaintiff motions, the Court first considers whether the Atachbarian Action should be consolidated with the instant case. "In securities actions where the complaints are based on the same 'public statements and reports' consolidation is appropriate if there are common questions of law and fact and the defendants will not be prejudiced." *Vincelli v. Nat'l Home Health Care Corp.*, 112 F. Supp. 2d 1309, 1313 (M.D. Fla. 2000) (quoting *Werner v. Satterlee, Stephens, Burke & Burke*, 797 F. Supp. 1196, 1211 (S.D.N.Y. 1992)). Atachbarian does not dispute that these actions arise out of the same

public statements and reports by Defendant. Indeed, both Complaints concern Defendant's failure to disclose to investors the spread of COVID-19 on Defendant's ships and Defendant's failure to comply with safety regulations. Compl. ¶ 8; (Atachbarian ECF No. 1 ¶¶ 63–68).

However, the Atachbarian Complaint is brought "on behalf of himself and all other sellers of *put contracts* and purchasers of *calls option*," while the Complaint in the instant case is brought "on behalf of all those who purchased or otherwise acquired Carnival *common stock and securities*." (Atachbarian ECF No. 1 at 1); Compl. ¶ 1. Thus, Atachbarian contends the interests of sellers of puts and options purchasers will not be protected in a consolidated action unless he is appointed the lead plaintiff of such a sub-class. *See generally* (ECF No. 39-1).

As an initial matter, while Atachbarian cites to some cases that stand for the proposition that separate sub-classes or severing of claims *can* be appropriate in the context of a consolidated class action, he identifies no case that *requires* such treatment. *See generally* (ECF Nos. 30, 33, 39-1). Indeed, there is no obstacle to the consolidation of claims brought by holders of different types of securities. *See generally In re New Oriental Educ. & Tech. Grp. Sec. Litig.*, 293 F.R.D. 483 (S.D.N.Y. 2013) (a class action under the PSLRA consisting of the consolidation of two class actions of purchasers of American Depositary Shares of the defendant corporation and one class action made up of purchasers and sellers of option contracts). Even where cases to be consolidated are not "identical," consolidation is appropriate so long as the cases "present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation." *In Re Bank of Am. Corp. Sec. Derivative and ERISA Litig.*, 258 F.R.D. 260, 268 (S.D.N.Y. 2009) (citation omitted).

Here, the differences in the nature of the securities held by the Funds and Atachbarian do not outweigh the interests of judicial economy served by consolidation of two class actions

premised on the exact same alleged violations by Defendants. Accordingly, consolidation of the Atachbarian Action with the instant case is appropriate.

### B. The Funds are the Most Adequate Plaintiff and the Presumptive Lead Plaintiff

Next, the Court addresses the Funds' Motion. All Plaintiffs that initially opposed the Funds' request to be appointed lead plaintiff have withdrawn or abandoned their opposition. Although Atachbarian opposes consolidation and requests appointment as co-lead plaintiff of a sub-class of option holders and put sellers, he does not challenge the Funds' entitlement to the role of lead plaintiff.

Per the PSLRA, the plaintiff "most capable of adequately representing the interests of the class members" is the plaintiff with the "largest financial interest in the relief sought by the class" and that "otherwise satisfies the requirements of Rule 23" of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The plaintiff that makes such a showing is presumed the "most adequate plaintiff," and should thus be appointed as lead plaintiff. *Id.* To satisfy the PSLRA's Rule 23 requirement, the plaintiff need only make a preliminary showing that its claims are typical of those in the class and that the party will adequately protect the interests of the class. *Jahm v. Bankrate, Inc.*, No. 14-cv-81323-MIDDLEBROOKS, 2015 WL 13650037, at *2 (S.D. Fla. Jan. 16, 2015).

Here, the Funds make a preliminary showing that they incurred losses of approximately $5.7 million on purchases of 206,149 shares of Carnival stock purchased during the class period. (ECF No. 23-1 at 8); (ECF No. 23-4). This represents a greater loss incurred than any other Plaintiff that moved for lead plaintiff consideration, and a significantly larger loss than that realized by Atachbarian. *See* (ECF No. 29-2 at 9). Additionally, the Funds argue that they, like all class members, "purchased Carnival securities during the [c]lass [period], [] at prices allegedly artificially inflated by Defendants' materially false and misleading statements and/or omissions,

and [were] damaged as a result." (ECF No. 23-1 at 9). The Funds also contend that their interests are not antagonistic to the class's interests, and that their potential recovery represents an outcome sufficient to ensure vigorous advocacy. *Id.* at 10. Finally, the Funds demonstrate that their selections of Bernstein Litowitz Berger & Grossman LLP ("Bernstein Litowitz") and Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") as lead counsel are more than adequate as the firms are preeminent securities class action law firms with extensive experience in successfully prosecuting securities fraud class actions together. *Id*. at 14–16.

Accordingly because (1) the Funds meet the statutory requirement for the presumption of adequacy as lead plaintiffs, (2) the Funds selected adequate law firms as lead counsel, and (3) no competing Plaintiff rebuts their presumption of adequacy, the Court finds that appointing the Funds as lead plaintiffs, and Bernstein Litowitz and Kessler Topaz as lead counsel, is warranted. *See Kabak*, 2020 WL 3056281, at *2–3.

### C. The Formation of a Sub-Class for Options and Put Investors is Not Warranted

Finally, the Court turns to Atachbarian's Motion. "The fragmented lead plaintiff arrangement . . . finds no support in the PSLRA, which not only sets forth two objective factors for lead plaintiff but in fact requires that the class member meeting those factors be appointed to direct the litigation on behalf of all plaintiffs unless contrary evidence is presented. *Id.* at *3 (finding that a plaintiff's "motion to be appointed as a co-lead plaintiff" of a separate class of options investors "lack[ed] merit"). Indeed, courts have rejected attempts to fracture PSLRA class actions into sub-classes of holders of different types of securities represented by separate lead plaintiffs. *See, e.g.*, *In re CenturyLink Sales Pracs. and Sec. Litig.*, No. 17-2795 (MJD/KMM), 2018 WL 1902725, at *5 (D. Minn. Apr. 20, 2018) (denying a motion to "appoint separate bond and stock lead plaintiffs in a consolidated action" where one prospective co-lead plaintiff "suffered exponentially greater losses than the other" because doing so would undermine the purpose of the

PSLRA); *In re New Oriental Educ. & Tech. Grp. Sec. Litig.*, 293 F.R.D at 486 ("Where a lead plaintiff has omitted certain claims from the class definition, a party may not assert those claims and seek to become co-lead plaintiff on that basis."); *see also In re Bank of Am. Corp. Sec., Derivative, and Emp. Ret. Income Sec. Litig.*, No. 10 Civ. 275(PKC), 2011 WL 4538428, at *2 (S.D.N.Y. Sept. 29, 2011) (rejecting a request to lead a separate class of options traders in a consolidated PSLRA class action because allowing sub-classes represented by separate lead plaintiffs and counsel "invites the type of lawyer-driven litigation that the PSLRA seeks to avoid").

Atachbarian argues that his Plaintiffs have interests that are not represented by the Funds because the Funds do not hold options contracts and have not sold puts. *See generally* Atachbarian Mot. However, "[n]othing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action." *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 (2d Cir. 2004). Indeed, "it is not a requirement that a lead plaintiff under the PSLRA suffer losses on each type of security that may be at issue in the class action." *In re Northwestern Corp. Sec. Litig.*, 299 F. Supp. 2d 997, 1007 (D.S.D. 2003); *see also Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 325 (S.D.N.Y. 2004) (holding that options investors' and common stockholders' interests were not so disparate as to warrant appointment of a "niche" lead plaintiff).

Furthermore, as to Atachbarian's concern of notice to investors, the Funds note that "over 90 notices were published informing investors in Carnival 'securities' to seek appointment as [l]ead [p]laintiff," including some that specifically identified options holders. (ECF No. 23-1 at 8); (ECF Nos. 40-1, 40-2). As such, the would-be plaintiffs that could have joined Atachbarian's sub-class were sufficiently on notice of this lawsuit and their right to participate. Thus, Atachbarian's arguments for appointment as a co-lead plaintiff of sub-class of options holders and put sellers are unavailing.

## IV. CONCLUSION

UPON CONSIDERATION of the Motions, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that the Funds' Motion for Appointment as Lead Plaintiff, Approval of their Selection of Counsel, and Consolidation of Related Actions (ECF No. 23) is GRANTED, and Atachbarian's Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel of an Options Class or Subclass (ECF No. 39) is DENIED.

Accordingly, it is further ORDERED that No. 1:20-cv-23011-KMM is CONSOLIDATED with the above fashioned case for all purposes, including trial. The Clerk of the Court is instructed to administratively CLOSE No. 1:20-cv-23011-KMM. All future filings MUST be made in the lead case, No. 1:20-cv-22202-KMM, only. All pending motions in No. 1:20-cv-23011-KMM are DENIED AS MOOT.

The Court hereby APPOINTS Plaintiffs New England Carpenters Pension and Guaranteed Annuity Funds and the Massachusetts Laborers' Pension and Annuity Funds as LEAD PLAINTIFFS, and Bernstein Litowitz Berger & Grossman LLP and Kessler Topaz Meltzer & Check, LLP as LEAD COUNSEL. It is further ORDERED that Lead Plaintiffs will file an amended or consolidated complaint, or designate one of the initial complaints as the operative complaint, within thirty (30) days from the date of this Order. Defendants will answer or otherwise respond within twenty-one (21) days of the filing or designation of the operative complaint.

DONE AND ORDERED in Chambers at Miami, Florida, this __30th__ day of October, 2020.

_K. M. Moore_
K. MICHAEL MOORE
CHIEF UNITED STATES DISTRICT JUDGE

c: All counsel of record